**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AKORN, INC., *et al.*,[1] | ) | Case No. 20-11177 (___) |
| Debtors. | ) | (Joint Administration Requested) |

**DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

## Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC. The location of the Debtors' service address is: 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

2 A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Duane Portwood in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 20, 2020 (the "Petition Date") and incorporated by reference herein. Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

(a) authorizing, but not directing, the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto in an aggregate amount not to exceed approximately $8,499,000 on an interim basis; and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the Petition Date to consider entry of the Final Order.

## **Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

**Background**

5. Akorn, Inc., together with its Debtor and non-Debtor subsidiaries (collectively, "Akorn") is a specialty pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals, branded as well as private-label over-the-counter consumer health products, and animal health pharmaceuticals. Akorn is an industry leader in the development, manufacturing, and marketing of specialized generic pharmaceutical products in alternative dosage forms. Headquartered in Lake Forest, Illinois, Akorn has approximately 2,180 employees worldwide and maintains a global manufacturing presence, with pharmaceutical manufacturing facilities located in Illinois, New Jersey, New York, Switzerland, and India. Akorn's operations generated approximately $682 million in revenue and approximately $124 million of Adjusted EBITDA in 2019. The Debtors commenced these chapter 11 cases to conduct an orderly sale process that will position the Debtors for sustained future success by right-sizing their balance sheet and addressing their litigation overhangs.

6. On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

**The Debtors' Workforce**

7. As of the Petition Date, the Debtors employ approximately 1,680 employees (the "Employees") in the United States, including approximately 1,676 full-time Employees and

approximately four part-time Employees. The Debtors also periodically retain contractors and temporary workers to fulfill certain duties on a short and long-term basis (the "Temporary Workers"). As of the Petition Date, the Debtors retain approximately 70 Temporary Workers.

8. The Employees and Temporary Workers perform a variety of functions critical to the preservation of value and the administration of the Debtors' estates. In many instances, the Employees and Temporary Workers include personnel who are intimately familiar with the Debtors' businesses, processes, and systems and cannot be easily replaced. Without the continued, uninterrupted services of the Employees and the Temporary Workers, the ability of the Debtors to maximize creditor recoveries and the general administration of the Debtors' estates will be materially impaired.

9. Additionally, many of the Employees and the Temporary Workers rely on their compensation and benefits to pay their daily living expenses. Thus, the Employees and the Temporary Workers will be exposed to significant financial hardships if the Debtors are not permitted to continue paying their compensation and providing the Employees with health and other benefits. Without the continued, uninterrupted services of their Employees and Temporary Workers, the Debtors' reorganization efforts will be threatened. Accordingly, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

## Employee Compensation and Benefits

10. In return for their valuable service, the Debtors offer their Employees (a) compensation in the form of wages and paid time off in the ordinary course, as well as pursuant

to certain bonus, incentive, and severance programs, all subject to federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, and taxes); (b) reimbursement of approved expenses; (c) certain employee benefits such as health insurance, medical, vision, and dental benefits, retirement health and related benefits, workers' compensation benefits, life insurance, supplemental life insurance and AD&D insurance, 401(k) program and 401(k) matching contributions, short and long-term disability coverage, COBRA benefits, certain non-employee director compensation, travel and relocation expense reimbursement, auxiliary benefits; and (d) certain other benefits that the Debtors have historically provided in the ordinary course (collectively, the "Employee Compensation and Benefits").

11. Subject to Court approval, the Debtors intend to continue their applicable prepetition Employee Compensation and Benefits in the ordinary course. Out of an abundance of caution, the Debtors further request authority to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course during these chapter 11 cases without the need for further Court approval, subject to the Bankruptcy Code and any other provisions of applicable law.

12. By this motion, the Debtors seek authority to make the following payments related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| **Employee Obligation** | **Interim Amount** |
|---|---|
| **Employee Compensation** | |
| Unpaid Compensation | $4,900,000 |
| Temporary Worker Compensation | $200,000 |
| Withholding Obligations | $1,200,000 |
| Payroll Processing Fees | $60,000 |

| Employee Obligation | Interim Amount |
|---|---|
| Reimbursable Expenses | $80,000 |
| **Non-Insider Employee Incentive Programs** | N/A |
| **Non-Insider Severance Program** | N/A |
| **Employee Benefits Programs** | |
| Health Benefit Plans | $1,600,000 |
| FSA Costs | $27,000 |
| HSA Amounts | $7,000 |
| Life and AD&D Insurance | $55,000 |
| Disability Benefits | $80,000 |
| Company Funded Aflac Policies | $110,000 |
| 401(k) Matching Contributions | $120,000 |
| Travel, Moving, and Relocation Program | $60,000 |
| **Postpetition Non-Employee Directors Compensation** | $0 |
| **Total** | **$8,499,000** |

13. As of the Petition Date, the Debtors estimate that approximately $8,499,000 will become due and owing within the first 25 days of these chapter 11 cases on account of Employee Compensation and Benefits. The Debtors do not believe any Employee is owed any prepetition amounts in excess of the $13,650 priority wage cap imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, but to the extent the Debtors owe any amounts over the priority wage cap, such amounts will be paid pursuant to the Final Order only.

## I. Employee Compensation and Withholding Obligations.

### A. Unpaid Compensation.

14. In the ordinary course, the Debtors incur obligations to their Employees for, among other things, wages, salaries, overtime, and other obligations described herein (collectively, the "Employee Compensation"). As of the Petition Date, the Debtors estimate that they owe approximately $4,900,000 on account of Employee Compensation earned by Employees prior to

the Petition Date (the "Unpaid Compensation"), all of which will come due within the first 25 days of these chapter 11 cases. As described above, loss of Unpaid Compensation that the Employees are owed could cause such Employees to experience financial hardship. In light of the substantial benefit the Employees will have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship.

15. Accordingly, by this motion, the Debtors seek authority, but not direction, to pay their Employees any Unpaid Compensation due in the ordinary course and consistent with past practice and to continue the Employee Compensation in the ordinary course during the administration of these chapter 11 cases. The Debtors do not believe any Employee is owed Unpaid Compensation in excess of the $13,650 priority wage cap imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, but to the extent the Debtors owe any amounts over the priority wage cap to any Employee, such amounts will be paid pursuant to the Final Order only.

**B. Temporary Worker Compensation.**

16. The Debtors make payments to Temporary Workers (the "Temporary Worker Compensation") for the performance of certain services critical to the Debtors' operations. The Debtors' business relies on the support of Temporary Workers to perform a variety of functions, including, among others, warehousing and distribution, production support, quality investigations, document management and data review, and housekeeping, among other things. The number and services of Temporary Workers varies depending on the Debtors' needs at a particular location. The Debtors believe the authority to continue paying the Temporary Workers is critical to minimize disruption of the Debtors' business and maximize the value of the Debtors' estates. As of the Petition Date, the Debtors estimate that approximately $200,000 will

become due and owing within the first 25 days of these chapter 11 cases on account of Temporary Worker Compensation.

17. Accordingly, by this motion, the Debtors seek authority, but not direction, to pay amounts related to Temporary Worker Compensation and to continue the Temporary Worker Compensation in the ordinary course consistent with past practice. The Debtors do not believe that they owe any individual Temporary Worker an amount in excess of the $13,650 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code, but to the extent the Debtors owe any amounts over the priority wage cap to any Temporary Worker, such amounts will be paid pursuant to the Final Order only.

**C. Withholding Obligations.**

18. During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions"), and forward such amounts to various third-party recipients.

19. In addition to the Deductions, certain federal and state laws require that the Debtors withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate

federal, state, and local taxing authorities at the same time the Employees' payroll checks are disbursed.

20. As of the Petition Date, the Debtors estimate that they will have approximately $1,200,000 in unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") outstanding, all of which would come due within the first 25 days of these chapter 11 cases. By this motion, the Debtors seek authority, but not direction, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course during these chapter 11 cases.

**D. Payroll Processing.**

21. The Debtors pay Automatic Data Processing, Inc. ("ADP") for payroll processing services related to certain Withholding Obligations for the Debtors' United States Employees. As of the Petition Date, the Debtors estimate that they owe approximately $60,000 on account of prepetition payroll services and fees (the "Unpaid Payroll Processing Fees"), all of which will come due within the first 25 days of these chapter 11 cases. By this motion, the Debtors seek authority, but not direction, to pay the Unpaid Payroll Processing Fees in the ordinary course and consistent with past practice and to continue payroll processing in the ordinary course during the administration of these chapter 11 cases.

**E. Reimbursable Expenses.**

22. In the ordinary course, the Debtors reimburse Employees or pay credit card invoices of certain Employees for approved expenses incurred within the scope of their employment on behalf of the Debtors (the "Reimbursable Expenses"). The Reimbursable Expenses are largely on account of costs incurred related to employee travel for reasonable business-related purposes. Travel arrangements are to be made through the Debtors' approved online booking tool and travel

agency, American Express Global Business Travel, or through other providers the Debtors have approved. The Debtors pay approximately $620 for such services per month along with an annual fee of approximately $3,000. Employees who pay for Reimbursable Expenses up front apply for reimbursement by submitting an expense report to the Debtors. Once they have determined that the charges are for legitimate reimbursable business expenses, the Debtors reimburse Employees for these expenses. In addition, the Debtors also offer certain of their Employees corporate credit cards for the purchase of authorized goods and services.[3] The Debtors' inability to reimburse such expenses could impose hardship on such individuals where such individuals otherwise incurred obligations for the Debtors' benefit. As of the Petition Date, the Debtors estimate that they owe approximately $80,000 in aggregate Reimbursable Expenses, all of which will come due within the first 25 days of these chapter 11 cases.

23. Although the Debtors ask that reimbursement requests be submitted promptly, delays in submission occur, and Employees may submit reimbursement requests for prepetition expenses after the Petition Date. Employees incur the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses will be reimbursed fully. Accordingly, by this motion, to avoid harming Employees who have incurred Reimbursable Expenses and who may become personally liable for such expenses, the Debtors request authority, but not direction, to pay the Reimbursable Expenses and to continue to pay the Reimbursable Expenses in the ordinary course during these chapter 11 cases.

---

[3] Pursuant to the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions and (II) Granting Related Relief*, filed contemporaneously herewith, the Debtors seek authority to pay amounts on account of outstanding obligations related to the Company Cards (as defined therein).

## II. Non-Insider Employee Incentive Programs (Final Order Only).[4]

24. The Debtors maintain a number of incentive programs to drive performance among their Employees (collectively, and each as defined herein, the "Non-Insider Employee Incentive Programs"), including a non-insider annual incentive program for all salaried non-insider Employees in the United States (the "Non-Insider Annual Incentive Program"). Under the Non-Insider Annual Incentive Program, non-insider Employees are paid quarterly in arrears based on such Employee's salary and incentive targets. Payouts on account of the Non-Insider Annual Incentive Program are based, in part, on the eligible Employee's target annual incentive amount and target long-term incentive amount, both of which are equal to a percentage of the applicable Employee's annual base salary. A portion of the Employee's target annual incentive amount under the Non-Insider Annual Incentive Program is subject to the Debtors' manufacturing sites meeting specific Food and Drug Administration ("FDA") standards, or if the FDA has not inspected the manufacturing site, obtaining third-party verification that the Debtor-owned manufacturing sites are in compliance with FDA requirements as of December 31, 2020 (the "Quality Metric"). If the Quality Metric is not achieved, the final payment for fourth quarter will be reduced accordingly.

[4] The Debtors are only seeking relief with respect to the Non-Insider Employee Incentive Programs pursuant to the Final Order. The Debtors believe that none of the Employees proposed to be paid on account of the Non-Insider Employee Incentive Programs are "insiders" of the Debtors for purposes of section 503(c) of the Bankruptcy Code because none of the Employees: (a) participate in the management of the Debtors; (b) have decision-making authority with respect to policies of the Debtors; (c) report directly to the Debtors' board of directors; (d) were appointed by the Debtors' board of directors; (e) qualify as an "insider" under Rule 16a-1(f) of the Securities Exchange Act; (f) undertake budget control over the Debtors' business operations; (g) are compensated in the form of equity of the Debtors; or (h) are relatives of any insider of the Debtors. To the extent the Debtors propose to make an incentive payment to, or implement an incentive program for, any insiders, the Debtors will seek separate approval from the Court with respect to such payments or programs.

Salaried Employees are eligible for payment under the Non-Insider Annual Incentive Program beginning their first full calendar quarter of employment.

25. The Debtors also maintain a sales incentive program for certain non-insider sales Employees (the "Sales Incentive Program"). Under the Sales Incentive Program, Employees are paid a quarterly bonus for achieving certain sales targets upon reaching a percentage of such Employee's sales goals.

26. Historically, the Debtors maintained a long-term incentive program (the "Long Term Incentive Program") for certain Employees. Under the Long Term Incentive Program, Employees at the vice-president level and above received equity in the form of options and restricted stock units that vest ratably over a four-year period. Employees below the level of vice-president in the Long Term Incentive Program earned cash awards, 50% of which will vest in 2020, and 50% of which will vest in 2021. For the Long Term Incentive Program plan year 2019, Employees below the level of vice president in the Long Term Incentive Program also earned cash awards. The Non-Insider Annual Incentive Program has replaced the Long Term Incentive Program.

27. The Debtors also maintain a length of service bonus program for hourly non-exempt Employees. Employees are eligible to receive an annual cash award based on such Employee's length of service with the Debtors. The Debtors also occasionally pay discretionary spot bonuses, either in cash or in the form of gift cards, through such Employee's payroll. These bonuses are payable at the discretion of the Employee's manager.

28. The Non-Insider Employee Incentive Programs are critical to incentivizing Employee performance, particularly in the context of these chapter 11 cases. Accordingly,

pursuant to the Final Order only, the Debtors seek authority, but not direction, to pay in a manner consistent with historical practice any unpaid prepetition amounts on account of Non-Insider Employee Incentive Programs and to continue the Non-Insider Employee Incentive Programs in the ordinary course during these chapter 11 cases.

## III. Non-Insider Severance Program (Final Order Only).[5]

29. The Debtors maintain a non-insider employee severance program (the "Non-Insider Severance Program") for their salaried Employees. Consistent with historical practice, the Non-Insider Severance Program allows the Debtors to pay severance to certain non-Insider salaried Employees upon their separation from the Debtors that is not for "cause." The Debtors pay severance to salaried Employees based on seniority within the organization (*i.e.*, not length of service), less any payments required by applicable law, including the Worker Adjustment and Retraining Notification Act (the "WARN Act"). Prior to receiving severance, Employees are required to enter into a Severance Agreement and Release of Claims or similar document. Payment is typically made as a lump sum within thirty days of the Employee's execution of the Severance Agreement and Release of Claims, but may also take the form of salary continuation for a specified time.

[5] The Debtors are only seeking relief with respect to the Non-Insider Severance Programs pursuant to the Final Order. The Debtors believe that none of the Employees proposed to be paid on account of the Non-Insider Severance Program are "insiders" of the Debtors for purposes of section 503(c) of the Bankruptcy Code because none of the Employees: (a) participate in the management of the Debtors; (b) have decision-making authority with respect to policies of the Debtors; (c) report directly to the Debtors' board of directors; (d) were appointed by the Debtors' board of directors; (e) qualify as an "insider" under Rule 16a-1(f) of the Securities Exchange Act; (f) undertake budget control over the Debtors' business operations; (g) are compensated in the form of equity of the Debtors; and (h) are relatives of any Insider of the Debtors. To the extent the Debtors propose to make a severance payment to, or implement a severance program for, any Insiders, the Debtors will seek separate approval from the Court with respect to such payments or programs.

30. The Debtors' ability to pay and provide severance amounts and other benefits has been critical to maintaining Employee morale and loyalty. Increased instability in the Debtors' workforce will only undermine the Debtors' ability to maintain business continuity and to continue operations as needed. As of the Petition Date, the Debtors estimate that they owe approximately $30,000 on account of the Non-Insider Severance Program. The Debtors seek authority (a) to pay any prepetition amounts outstanding on account of the Non-Insider Severance Program, and (b) to continue to offer Non-Insider Severance Program and honor all obligations related thereto on a postpetition basis in the ordinary course of business and consistent with past practices.

## IV. Employee Benefits Programs.

31. The Debtors offer their Employees the ability to participate in a number of insurance and benefits programs, including, among other programs, health insurance, medical, vision, and dental plans, life insurance, accidental death and dismemberment insurance, disability benefits, workers' compensation, COBRA benefits, 401(k) plan and 401(k) matching contributions, retirement plans, paid time off, severance, director compensation, travel and relocation reimbursements, auxiliary benefits, and other employee benefit plans (collectively, the "Employee Benefits Programs").

32. As described above, failure to continue the Employee Benefits Programs could cause Employees to experience severe hardship. In light of the substantial benefit the Employees have provided and will continue to provide to the Debtors' estates, the Debtors wish to avoid imposing such a hardship. As of the Petition Date, the Debtors estimate that they owe approximately $1,600,000 on account of the Employee Benefits Programs, that will become due and owing within the first 25 days of these chapter 11 cases. Accordingly, by this motion, the

Debtors seek authority, but not direction, to: (a) pay any unpaid amounts due with respect to the Employee Benefits Programs; and (b) continue to provide Employee Benefits Programs in the ordinary course during the administration of these chapter 11 cases. Each of the Employee Benefits Programs are described in greater detail below.

**A. Health Benefit Plans.**

33. The Debtors offer their Employees the opportunity to participate in a number of health benefit plans, including medical, vision, and dental plans (collectively, the "Health Benefit Plans"), which the Debtors self-fund through employee and Debtor contributions. Specifically, the Debtors provide the following:

- Healthcare Plan: The Debtors' healthcare plan (the "Healthcare Plan") is administered by Blue Cross Blue Shield of Illinois. As of the Petition Date, the Debtors estimate that approximately $1,230,000 will become due and owing within the first 25 days of these chapter 11 cases under the Healthcare Plan.

- Prescription Drug Benefits: The Debtors offer prescription drug benefits (the "Prescription Drug Plan") through Blue Cross Blue Shield of Illinois. As of the Petition Date, the Debtors estimate that approximately $230,000 will become due and owing within the first 25 days of these chapter 11 cases under the Prescription Drug Plan.

- Dental Plan: Additionally, the Debtors offer their Employees the option of participating in a dental plan (the "Dental Plan") administered by Delta Dental of Illinois. As of the Petition Date, the Debtors estimate that approximately $120,000 will become due and owing within the first 25 days of these chapter 11 cases under the Dental Plan.

- Vision Plan: The Debtors also offer their Employees the option of participating in a vision plan (the "Vision Plan") administered by EyeMed Vision Care in the United States. As of the Petition Date, the Debtors estimate that approximately $20,000 will become due and owing within the first 25 days of these chapter 11 cases under the Vision Plan.

34. The Debtors also maintain stop-loss insurance with Blue Cross Blue Shield of Illinois in the event any Employee exceeds the stop-loss deductible. The Debtors pay an approximately $1,300,000 yearly premium to maintain the stop-loss insurance.[6]

**B. COBRA.**

35. The Debtors' Health Benefit Plans also provide former Employees with certain health benefits following their departure from the Debtors. More specifically, pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), former Employees of the Debtors (the "COBRA Employees") may continue insurance coverage under the Healthcare Plan, Dental Plan, and Vision Plan (the "COBRA Benefits"). COBRA Employees are entitled by law to continue to receive COBRA Benefits for up to eighteen months, and in some instances up to thirty-six months, following termination of employment.

36. COBRA Employees are responsible for paying all costs associated with the COBRA Benefits, except with respect to those former Employees whose COBRA benefits are consideration under a Severance Agreement and Release of Claims or similar document. Similarly, COBRA Employees who elect to receive benefits under the Vision Plan pay all costs associated with those benefits. The Debtors provide COBRA benefits as part of their usual expenditure on account of the Health Benefit Plans and accordingly do not believe they owe any prepetition amounts on account of COBRA Benefits. As such, the Debtors seek authority (a) to pay any prepetition amounts outstanding on account of the COBRA Benefits solely out of an

[6] The Debtors are seeking relief with respect to the stop-loss insurance policy pursuant to the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Their Obligations Under Insurance Policies Entered Into Prepetition, (B) Continue to Pay Brokerage Fees, (C) Renew, Supplement, Modify, or Purchase Insurance Coverage, and (D) Maintain the Surety Bonds, and (II) Granting Related Relief*, filed contemporaneously herewith. The Debtors include the description of the stop-loss insurance policy in this motion for illustrative purposes.

abundance of caution, (b) to continue to offer the COBRA Benefits, including to those Employees who may be terminated after the Petition Date, and honor all obligations related thereto on a postpetition basis in the ordinary course of business and consistent with past practices, and (c) to continue to pay fees related to the COBRA Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

**C. Flexible Spending Accounts.**

37. The Debtors also provide Employees who participate in certain of the Health Benefit Plans with access to a flexible spending account (the "FSA") administered by WageWorks. The FSA allows Employees to contribute pre-tax dollars for eligible healthcare expenses. The Debtors do not make any contributions to the FSAs.

38. Because the Debtors do not contribute to Employees' FSAs, the Debtors believe the FSA amounts are generally held in trust by the Debtors and are not property of their estates. However, over the course of each year, Employees may utilize the FSA amounts held by the Debtors to pay for a wide variety of health and dependent care not otherwise covered by the Health Benefit Plans. When an Employee seeks to use his or her elected FSA amounts, the Debtors' remit such amounts to the requested healthcare provider through WageWorks. As of the Petition Date, the Debtors estimate that there is approximately $27,000 in accrued amounts to be remitted on account of the FSA (the "Unremitted FSA Amounts"), all of which will be required to be remitted within 25 days of the Petition Date.

39. Further, the Debtors pay a monthly administration fee of approximately $2,000 to WageWorks on account of the FSA program (the "FSA Fees"). As of the Petition Date, the Debtors believe they are current on account of accrued but unpaid FSA Fees

(the "Unpaid FSA Fees" and together with the Unremitted FSA Amounts, the "FSA Costs"), but include this description out of an abundance of caution and seek authority to pay Unpaid FSA Fees if any become due. As a result, the Debtors seek authority, but not direction, to pay and/or remit the FSA Costs and continue the FSA in the ordinary course of business on a postpetition basis.

**D. Health Saving Accounts.**

40. The Debtors also provide Employees who participate in certain of the Health Benefit Plans with access to a health savings account (the "HSA") administered through Further. Participating Employees can opt to make pre-tax contributions to their individual HSA through payroll deductions to cover reimbursements under the program up to the maximum amount permitted by the IRS. Employees contribute, on average, approximately $22,000 on a monthly basis to the HSAs (the "Unremitted HSA Amounts"). The Debtors also contribute approximately $33,000 to the HSA (the "Company HSA Contributions") on a quarterly basis. On average, the Debtors pay approximately $200 on a monthly basis on account of costs relating to the HSA (the "HSA Costs"). As of the Petition Date, the Debtors believe they owe approximately $6,800 in Unremitted HSA Amounts, and approximately $200 in accrued but unpaid HSA Costs (collectively, the "HSA Amounts"), approximately $7,000 of which will become due within 25 days of the Petition Date. The Debtors do not believe they owe any amounts in accrued but unpaid Company HSA Contributions. As a result, the Debtors seek authority, but not direction, to pay and/or remit the HSA Costs and continue the HSA on a postpetition basis in the ordinary course of business and consistent with past practices.

**E. Other Insurance, Disability Benefits, and Employee Assistance Programs.**

**1. Life and AD&D Insurance Programs.**

41. The Debtors provide life and accidental death and dismemberment insurance (the "Basic Life and AD&D Insurance") to Employees through Unum. The Basic Life and AD&D Insurance is provided to all Employees who work at least thirty (30) hours per week and is equal to two times the Employee's eligible pay up to a maximum of $400,000. As of the Petition Date, the Debtors estimate that they owe approximately $55,000 on account of the Basic Life and AD&D Insurance, all of which will come due within 25 days of the Petition Date. Out of an abundance of caution, the Debtors seek authority (a) to pay any prepetition amounts outstanding on account of the Basic Life and AD&D Insurance, and (b) to continue to offer the Basic Life and AD&D Insurance and honor all obligations related thereto on a postpetition basis in the ordinary course of business and consistent with past practices.

42. Employees may choose to purchase voluntary supplemental life insurance and accidental death and dismemberment insurance (the "Supplemental Life and AD&D Insurance"), which is an optional benefit for Employees that wish to supplement the Basic Life and AD&D Insurance. The Supplemental Life and AD&D Insurance is completely funded by participating Employees but administered by the Debtors. Because Employees pay for all costs of Supplemental Life and AD&D Insurance, the Debtors do not believe that they owe any amounts with respect to the Supplemental Life and AD&D Insurance as of the Petition Date. Nevertheless, out of an abundance of caution, the Debtors seek authority to continue to offer this benefit on a postpetition basis in the ordinary course consistent with past practices.

**2. Disability Benefits.**

43. The Debtors provide full-time Employees with short and long-term disability benefits (the "Disability Benefits") through Unum.

44. The short-term disability benefit is funded by the Debtors. Employees in states that do not maintain tax-supported short-term disability benefits may receive short-term disability benefits under the Debtors' plan. Employees in states that maintain tax-supported short-term disability benefits may receive short-term disability benefits under the Debtors' plan under certain circumstances. For example, in states that maintain tax-supported short-term disability programs, the Debtors' benefit supplements the amount paid by the state to the extent that the applicable state plan pays less than 66.667% of the employee's base salary. The short-term disability benefit replaces a portion of the Employee's income (the lesser of 66⅔% of base salary or $1,523 per week) on the fifth consecutive day after the Employee is unable to work due to injury or sickness. The short-term disability benefit lasts for one hundred eighty days, at which time an Employee may begin receiving long-term disability benefits.

45. The Debtors offer a voluntary long-term disability benefit, and Employees must apply to Unum for this benefit and qualify under the terms and conditions of the insurance contract. The long-term disability benefit replaces a portion of the Employee's income (60% of base salary with a maximum cap of $10,000 per month).

46. As of the Petition Date, the Debtors estimate that they owe approximately $80,000 on account of the Disability Benefits, all of which will come due within 25 days of the Petition Date. By this motion, the Debtors seek authority to pay any prepetition amounts owed as

of the Petition Date on account of the Disability Benefits and to continue the Disability Benefits on a postpetition basis in the ordinary course of business consistent with past practices.

**3. Other Insurance and Company Offered Programs**

47. The Debtors also offer certain auxiliary benefits that can be divided into two categories. The first category is comprised of voluntary insurance programs, including pet insurance through Nationwide and additional FSA programs administered by WageWorks, including a dependent care FSA and a commuter FSA, as well as, for Employees who have not elected to participate in an HSA, group accident insurance, hospital confinement insurance, and group critical illness insurance through Aflac (collectively, the "Voluntary Insurance Programs"). The Voluntary Insurance Programs are funded solely by the Employees, and, as such, the Debtors do not believe they owe any amounts on account of the Voluntary Insurance Programs as of the Petition Date.

48. The second category is comprised of other miscellaneous benefits that the Debtors fund, including an employee assistance program, travel assistance, tuition reimbursement, and adoption assistance (the "Miscellaneous Programs," and, together with the Voluntary Insurance Programs, the "Auxiliary Benefits"). As part of the Miscellaneous Programs, the Debtors pay a quarterly fee to Unum based on the number of active full-time Employees participating in the employee assistance program. The Debtors also reimburse full-time Employees in good standing, with prior management approval, up to a maximum of $5,250 in tuition reimbursement. Full-time Employees who have been employed by the Debtors for two years of continuous service are also eligible to receive up to $2,500 per adopted child in adoption assistance as part of the Miscellaneous Programs. As of the Petition Date, the Debtors do not believe they owe any

prepetition amounts on account of the Miscellaneous Programs. Out of an abundance of caution, the Debtors seek authority (a) to pay any prepetition amounts outstanding on account of the Miscellaneous Programs solely out of an abundance of caution and (b) to continue to offer the Miscellaneous Programs and honor all obligations related thereto on a postpetition basis in the ordinary course of business and consistent with past practices.

49. The Company offers group accident insurance, hospital confinement insurance, and group critical illness insurance policies, all provided by Aflac (the "Company Funded Aflac Policies"). For Employees who enroll in the Company's high-deductible health insurance plan (the "Accountable Care Plan"), the Debtors fund the cost of Aflac's group accident insurance. Employees not enrolled in the Accountable Care Plan may elect to participate in the group accident insurance plan, and all employees may elect to participate in the hospital confinement insurance and group critical illness insurance policies at their own cost. As of the Petition Date, the Debtors estimate that they owe approximately $110,000 on account of the Company Funded Aflac Policies, all of which will come due within 25 days of the Petition Date. Accordingly, by this motion, the Debtors seek authority to pay any prepetition amounts owed as of the Petition Date on account of the Company Funded Aflac Policies and to continue the Company Funded Aflac Policies on a postpetition basis in the ordinary course of business consistent with past practices.

**F. Workers' Compensation Program.**

50. The Debtors maintain workers' compensation insurance for their Employees (or are otherwise self-insured) at the statutorily-required level for each state in which the Debtors have Employees (collectively, the "Workers' Compensation Program") that provides for payments to the Employees if such Employees are injured while at work. The Debtors maintain coverage for

the Workers' Compensation Program through The Hartford. The Debtors pay approximately $1.6 million in premiums and fees annually to maintain the Workers' Compensation Program (the "Workers' Compensation Premiums").

51. The Debtors must continue the claim assessment, determination, adjudication, and payment process pursuant to the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtors comply with applicable workers' compensation laws and requirements. There are approximately thirty-four open claims under the Workers' Compensation Program.

52. Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the restructuring process. By this motion, the Debtors seek authority, but not direction, to (a) continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis,[7] (b) modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program, and (c) pay all Unpaid Workers' Compensation Premiums.

**G. 401(k) Plan.**

53. The Debtors offer eligible Employees the opportunity to participate in a 401(k) plan administered by Fidelity Investments ("Fidelity"), known as *Smart Choice!* (the "401(k) Plan"), which generally provides for automatic pre-tax salary deductions of compensation up to limits set by the Internal Revenue Code.

---

[7] The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder. By this motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any changes to current policy and practices that become necessary, subject to applicable law.

54. Each pay period, the Debtors deduct the Employees' 401(k) Plan contributions from the Employees' paychecks (the "401(k) Deductions") and hold such amounts in trust until they are forwarded to Fidelity. The Debtors deduct approximately $300,000 in the aggregate each month from Employee's paychecks on account of the 401(k) Deductions. As of the Petition Date, the Debtors estimate that they are current on account of the 401(k) Deductions (the "Unremitted 401(k) Deductions"), but include this description out of an abundance of caution and seek authority to remit Unremitted 401(k) Deductions if any become due.[8]

55. The Debtors also provide certain matching contributions for certain of their Employees (the "401(k) Matching Contributions"). More specifically, the Debtors match fifty percent of the contributions of the participating Employees, up to six percent of the Employee's base salary, including any cash payments in addition to base salary. Employees are fifty percent vested in the 401(k) Matching Contributions after two years of credited service and one hundred percent vested after three years of credited service, and the Debtors fund the 401(k) Matching Contributions on a current basis. The Debtors pay on average approximately $300,000 in 401(k) Matching Contributions each month and remit both the Unremitted 401(k) Deductions and 401(k) Matching Contributions to Fidelity each pay period. As of the Petition Date, the Debtors estimate that they owe approximately $120,000 in prepetition 401(k) Matching Contributions, but do not otherwise owe any fees to Fidelity Investments as part of their arrangement.

[8] Given the timing of the last payroll, at the time of filing this motion, there may be 401(k) Deductions held in trust and due to be transmitted to Fidelity. The Debtors believe that the 401(k) Deductions are generally held in trust by the Debtors and are not property of their estates.

56. Many Employees' retirement savings solely consist of the 401(k) Plan, and many Employees choose to participate in the 401(k) Plan because of the 401(k) Matching Contributions. Thus, the Debtors believe that continuing the 401(k) Plan and the 401(k) Matching Contributions is essential to maintaining Employee morale and protecting Employee expectations. In addition, the Debtors believe that the 401(k) Deductions are generally held in trust by the Debtors and are not property of their estates.

57. Accordingly, by this motion, the Debtors seek authority, but not direction, to (a) continue the 401(k) Plan in the ordinary course of business on a postpetition basis, including the 401(k) matching contributions, (b) remit all Unremitted 401(k) Deductions collected in the ordinary course of business, (c) pay any accrued but unpaid amounts on account of the 401(k) Matching Contributions, and (d) pay Fidelity Investments for prepetition services, all of which will come due within 25 days of the Petition Date.

**H. Paid Time Off.**

58. In the ordinary course of business, the Debtors provide paid time off to their Employees (the "Paid Time Off") as a benefit and pursuant to any applicable laws. The Company offers a maximum of two personal days and a competitive paid-time off schedule that provides for a certain number of Paid Time Off hours that accrue each month based on that Employee's seniority with the Debtors. When an Employee elects to take Paid Time Off, that Employee is paid at his or her regular hourly or salaried rate.

59. Accruals of Paid Time Off, however, are not a current cash payment obligation. By this motion, the Debtors seek authority, but not direction, to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off and to continue the Paid

Time Off policy in the ordinary course. For the avoidance of doubt, the Debtors seek authority to pay any "cash out" amounts required under applicable law with respect to earned but unused Paid Time Off in excess of the $13,650 priority wage cap imposed by section 507(a)(4) of the Bankruptcy Code pursuant to the Final Order only.

60. In addition, the Debtors provide certain other forms of paid and unpaid leave, including, for example, (a) eight paid holidays each year, (b) leave under the Family and Medical Leave Act, (c) leave under the Illinois Victims Economic Security and Safety Act, and (d) other paid and unpaid leaves of absence for personal reasons, including those required by law. Importantly, these other forms of paid and unpaid leave do not involve incremental cash outlays beyond standard payroll obligations.

61. The Debtors believe that the continuation of Paid Time Off is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend. The Debtors anticipate that their Employees will utilize any accrued paid leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' regular payroll obligations. By this motion, the Debtors request authorization to pay any amounts owed on account of accrued Paid Time Off and to continue their Paid Time Off policies on a postpetition basis in the ordinary course of business consistent with past practices.

## V. Travel, Moving, and Relocation Program.

62. The Debtors offer a program to facilitate the efficient relocation of Employees, their dependents, and their household (the "Travel, Moving, and Relocation Program"). The Debtors offer a lump sum dollar amount that may be paid to an eligible Employee or an eligible third-party

provider to be used at his or her discretion associated with relocation, including house hunting, reimbursement for temporary living expenses or relocation travel expenses, company-paid movement of household goods and personal effects, and miscellaneous relocation expenses. Eligibility under the Travel, Moving, and Relocation Program is determined in accordance with the business needs of the Debtors. Employees making a lateral or voluntary move may not be eligible to receive benefits under the Travel, Moving, and Relocation Program. Employees being relocated at the Debtors' expenses are required to sign a Relocation Expense Agreement that requires the Employee to reimburse the Debtors if the Employee resigns before completing eighteen consecutive months of employment with the Debtors from the date the payment under the Travel, Moving, and Relocation Program is made. The Employee's reimbursement payment is due and payable on such Employee's termination date if that Employee resigns within eighteen months.

63. As of the Petition Date, the Debtors estimate that they owe approximately $60,000 on account of the Travel, Moving, and Relocation Program that will become due and owing within the first 25 days of these chapter 11 cases. By this motion, the Debtors seek the authority, but not direction, to continue the Travel, Moving, and Relocation Program on a postpetition basis in the ordinary course consistent with past practices, including paying any accrued but unpaid amounts related thereto.

## VI. Postpetition Non-Employee Director Compensation (Final Order Only).

64. Certain of the Debtors maintain boards of directors that include non-employee directors (the "Non-Employee Directors"). The Non-Employee Directors receive an average annual compensation of approximately $380,000 for their services. The Non-Employee Directors

are also entitled to expense reimbursement for reasonable out-of-pocket expenses. As of the Petition Date, the Debtors do not believe they owe any prepetition amounts to Non-Employee Directors. The Debtors believe that they are authorized to pay any postpetition Non-Employee Director compensation in the ordinary course; however, out of an abundance of caution, by this motion, the Debtors seek authority to continue to pay the Non-Employee Director compensation on a postpetition basis in the ordinary course of business (including any prepetition amounts that may be outstanding) and consistent with the Debtors' past practices on a final basis only.

## Basis for Relief

### I. A Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits.

#### A. Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.

65. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle priority treatment to certain of the Employee Compensation and Benefits owed to the Employees. The Debtors are required to pay such priority claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus, to the extent that an Employee receives no more than $13,650 on account of claims entitled to priority, granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

**B. Payment of Certain Employee Compensation and Benefits Is Required by Law.**

66. The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

67. Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all workers' compensation amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

**II. Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.**

68. Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." Therefore, the Debtors believe they are permitted to pay all postpetition amounts due pursuant to the Employee Compensation and Benefits as such actions are in the ordinary course of the Debtors' business. Out of an abundance of caution, however, the Debtors seek entry of an order granting the relief requested herein to avoid any disruptions to their business operations.

69. The relief requested herein may be granted by the Court pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

70. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court may use its equitable power under section 105(a) of the Bankruptcy Code to authorize payment of the Employee Compensation and Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity").

71. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.* 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment").

72. The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized as "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus.*,

*Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a serious threat to the Chapter 11 process").

73. Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. The majority of the Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits. Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of these chapter 11 cases on the Debtors' ongoing business operations.

74. Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that, absent the payment of the Employee Compensation and Benefits, the Debtors may experience turnover and instability at this critical time in these chapter 11 cases. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—efforts that might not be successful given the overhang of these chapter 11 cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the

Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their business in these chapter 11 cases.

75. Indeed, courts in this district have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested here. *See, e.g.*, *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020) (same); *In re Anna Holdings, Inc*., No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Destination Maternity Corp., et al.*, No. 19-12256 (BLS) (Bankr. D. Del. Oct. 22, 2019) (same); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 1, 2019) (same).[9] Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Employee Compensation and Benefits in the ordinary course of business and consistent with past practice.

## III. A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.

76. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

---

[9] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

77. The Debtors seek authorization under section 362(d) of the Bankruptcy Code to permit their Employees to proceed with their claims against the Workers' Compensation Program in the appropriate judicial or administrative forum. The Debtors believe that cause exists to modify the automatic stay because staying the Employee's workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtors' business to the detriment of all stakeholders. In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

78. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Employee Compensation and Benefit obligations, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

79. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable employee expenses and (b) continue employee benefits programs in the ordinary course, including prepetition obligations related thereto, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases smoothly. Failure to receive such authorization and other relief during the first 25 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Reservation of Rights**

80. Nothing contained in the motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

81. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

**Notice**

82. The Debtors will provide notice of this motion to: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Savings Fund Society, FSB, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors (the "Term Loan Agent"); (d) counsel to the Term Loan Agent; (e) counsel to the ad hoc group of the Debtors' Prepetition Lenders (the "Ad Hoc Group"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Food and

Drug Administration; (i) the Drug Enforcement Administration; (j) the Securities Exchange Commission; (k) the state attorneys general for all states in which the Debtors conduct business; and (l) any party that requests service pursuant to Local Rule 9013-1(m)(iii).

**No Prior Request**

83. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A and Exhibit B** respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Wilmington, Delaware
May 21, 2020

*/s/ Paul N. Heath*

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: heath@rlf.com
steele@rlf.com
shapiro@rlf.com
haywood@rlf.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (*pro hac vice* admission pending)
Gregory F. Pesce (*pro hac vice* admission pending)
Christopher M. Hayes (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
gregory.pesce@kirkland.com
christopher.hayes@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Nicole L. Greenblatt, P.C. (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: nicole.greenblatt@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# **Exhibit A**

## **Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AKORN, INC.,[1] | ) | Case No. 20-11177 (___) |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | **Re: Docket No. ______** |

**INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"): (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition employee wages, salaries, other compensation, reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; (b) scheduling a final hearing to consider approval of the Motion on a final basis; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC. The location of the Debtors' service address is: 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

*Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the First Day Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on _________, 2020, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _________, 2020, and shall be served on: (a) the Debtors, Akorn, Inc., 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045 Attn: Joseph Bonaccorsi; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr., P.C., Gregory F. Pesce, and Christopher M. Hayes, and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Nicole L. Greenblatt, P.C.; (c) proposed co-counsel to the Debtors, Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware

19801, Attn: Paul N. Heath; (d) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane Leamy; (e) counsel to any statutory committee appointed in these chapter 11 cases; and (f) counsel to the Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg and Steven A. Domanowski. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

3. The Debtors are authorized, but not directed, to: (a) continue, modify, change, and discontinue the Employee Compensation and Benefits in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law, and (b) pay and honor prepetition amounts outstanding under or related to the Employee Compensation and Benefits Programs in the ordinary course of business in an aggregate amount not to exceed $8,499,000 pursuant to this Interim Order; *provided* that pending entry of the Final Order, the Debtors shall not honor any Employee Compensation and Benefits obligations that exceed the priority amounts set forth in sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

4. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and the Debtors are authorized, but not directed, to continue the Workers' Compensation Program in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

5. The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

6. Nothing herein shall be deemed to authorize the payment of any amounts that violates or implicates section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code under separate motion at a later time.

7. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

8. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

9. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

10. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

11. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits Programs.

12. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: ____________, 2020
Wilmington, Delaware

_______________________________________
UNITED STATES BANKRUPTCY JUDGE

# Exhibit B

## Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AKORN, INC.,[1] | ) | Case No. 20-11177 (___) |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | **Re: Docket No. ______** |

**FINAL ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EMPLOYEE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing, but not directing, the Debtors to (i) pay certain prepetition employee wages, salaries, other compensation, reimbursable employee expenses, and (ii) continue employee benefits programs in the ordinary course, including payment of certain prepetition obligations related thereto; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and that this Court may enter a final order consistent with

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC. The location of the Debtors' service address is: 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and the First Day Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to: (a) continue, modify, change, and discontinue the Employee Compensation and Benefits in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law, and (b) pay and honor prepetition amounts outstanding under or related to the Employee Compensation and Benefits Programs in the ordinary course of business, up to the amounts set forth in paragraph 3 of this Final Order.

3. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and the Debtors are authorized, but not directed, to continue the Workers'

Compensation Program in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

4. The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in accordance with the Debtors' prepetition policies and practices.

5. The Debtors are authorized, but not directed, to pay costs and expenses incidental to payment of the Employee Compensation and Benefits obligations, including all administrative and processing costs and payments to outside professionals.

6. Nothing herein shall be deemed to authorize the payment of any amounts that violates or implicates section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code under separate motion at a later time.

7. Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Employee Compensation and Benefits obligations.

8. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights

under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

9. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

10. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits Programs.

11. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

13. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

14. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: ____________, 2020
Wilmington, Delaware

______________________________________
UNITED STATES BANKRUPTCY JUDGE