## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| AKORN, INC., *et al.*,[1] | ) | Case No. 20-11177 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## DEBTORS' MOTION
## SEEKING ENTRY OF INTERIM AND
## FINAL ORDERS (I) AUTHORIZING THE DEBTORS
## TO MAINTAIN AND ADMINISTER THEIR EXISTING
## CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
## OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state as follows in support of this motion:[2]

### Relief Requested

1.    The Debtors seek entry of interim and final orders, substantially in the forms
attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and
"Final Order"): (a) authorizing the Debtors to (i) maintain and administer their customer-related
programs (collectively and as described herein, the "Customer Programs") and (ii) pay and honor

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Duane Portwood in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 20, 2020 (the "Petition Date").  Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

certain prepetition obligations related thereto; and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the Petition Date to consider entry of the Final Order.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rule 6003, and Local Rule 9013-1(m).

## Background

5.      Akorn, Inc., together with its Debtor and non-Debtor subsidiaries (collectively, "Akorn") is a specialty pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals, branded as well as private-label over-the-counter consumer health products, and animal health pharmaceuticals.  Akorn is an industry leader in the development, manufacturing, and marketing of specialized generic pharmaceutical products in alternative dosage forms.  Headquartered in Lake Forest, Illinois,

Akorn has approximately 2,180 employees worldwide and maintains a global manufacturing presence, with pharmaceutical manufacturing facilities located in Illinois, New Jersey, New York, Switzerland, and India. Akorn's operations generated approximately $682 million in revenue and approximately $124 million of Adjusted EBITDA in 2019. The Debtors commenced these chapter 11 cases to conduct an orderly sale process that will position the Debtors for sustained future success by right-sizing their balance sheet and addressing their litigation overhang.

6.    On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

### Description of Customer Programs[3]

7.    The Debtors' direct customers are primarily wholesale drug distributors. To preserve the Debtors' critical relationships with customers and maximize customer loyalty, the Debtors have historically provided certain chargebacks, coupon redemption, product returns, rebates, and discounts to customers in the ordinary course of business. The Customer Programs are beneficial, cost-effective, and promote the goodwill of the Debtors' business. Accordingly, maintaining the goodwill of customers is critical to the Debtors' ongoing operations in these

---

[3]    Although this motion is intended to be comprehensive, the Debtors may have inadvertently omitted certain Customer Programs. The Debtors request relief with respect to all Customer Programs, regardless of whether such Customer Program is specifically identified herein.

chapter 11 cases and is necessary to maximize value for the benefit of all of the Debtors' stakeholders.

## I.  Chargebacks.

8.      The Debtors enter into contractual agreements with certain third parties or indirect customers, such as retailers, hospitals, group-purchasing organizations ("GPOs"), and managed care organizations, to sell certain products at predetermined prices.  Most of these parties have elected to have these contracts administered through third-party wholesalers that buy products from the Debtors and subsequently sell them to these parties.  When a wholesaler sells products to one of these parties that are subject to a contractual price agreement, the difference between the price paid to the Debtors by the wholesaler and the price under the specific contract is charged back to the Debtors by the wholesaler (the "Chargebacks").  The time it takes for the wholesaler to sell the inventory to a third party and then charge back the difference to the Debtors typically takes four to six weeks, but for some products that time may extend up to twelve weeks.  The Debtors track sales, wholesaler inventory, and submitted chargebacks by product number and contract for each wholesaler.  Utilizing this information, the Debtors estimate a chargeback percentage for each product when the product is sold to the wholesaler and reduce the chargeback allowance when a chargeback request from a wholesaler is processed. As of the Petition Date, the Debtors estimate that they have accrued approximately $53 million in Chargebacks.

9.      Maintaining Chargebacks is critical to maintaining the goodwill of the Debtors' customer base.  Without Chargebacks, current and potential customers may be unwilling to purchase the Debtors' products at all, which could lead to a decline in revenues to the ultimate detriment of the Debtors' estates.  Accordingly, the Debtors seek authorization to continue

honoring their obligations in connection with Chargebacks in a manner consistent with their past practices.

**II.      Rebates and Administrative Fees.**

10.      In the ordinary course of business, the Debtors maintain an allowance for rebates and administrative fees related to contracts and other rebate programs, including government benefit programs (the "Government Benefit Programs"), in place with certain customers. Rebates, administrative fees, and other percentages vary by product and by volume purchased by each eligible customer.  Generally, the Debtors track sales by product number for each eligible customer and then apply the applicable rebate, administrative fees, and other percentages using both historical trends and actual experience to estimate their rebates, administrative fees, and other allowances.  The Debtors increase the rebates, administrative fees, and other allowances by the estimated rebates, administrative fees, and other amounts when the Debtors sell their products to eligible customers.  The Debtors reduce the rebate allowance when they process a customer request for a rebate.  .

11.      The Debtors also sell certain products that can be subject to the statutory and regulatory requirements for Medicaid, Medicare, TRICARE, and other government healthcare programs. These regulations govern access and reimbursement levels, including that all pharmaceutical companies pay rebates to individual states based on a percentage of sales arising from Medicaid-reimbursed products.  The Debtors are also subject to price ceilings for select products sold through the military TRICARE program.  As of the Petition Date, the Debtors estimate that they have accrued approximately $74 million in rebates and administrative fees

12.      The Debtors believe that continuing rebates and administrative fees, including the Government Benefit Programs, is essential to maintaining customer relationships and driving sales.  Accordingly, the Debtors request authorization to continue rebates and administrative fees

and to honor all prepetition and postpetition customer obligations related thereto, in the ordinary course of business.

## III.    Advertising and Promotions.

13.    The Debtors issue coupons from time to time that are redeemable against certain of their Consumer Health products.  In addition, the Debtors authorize various retailers to run in-store promotions and co-pay discounts for their products.  At the point of sale, the Debtors record an estimate of the dollar value of coupons expected to be redeemed, the dollar amount owed back to the retailer for in-store promotions, and the co-pay discount as variable consideration. Additionally, the Debtors provide consumer co-pay discount cards, administered through outside agents, to provide discounted products when redeemed.  As of the Petition Date, the Debtors estimate that they have accrued approximately $2 million in prepetition obligations related to advertising, promotions, and co-pay discount cards.

14.    The Debtors believe that continuing to allow advertising and promotions is essential to maintaining customer relationships and driving sales.  Accordingly, by this motion, the Debtors seek authorization, but not direction, to honor advertising, promotions, in a manner consistent with their past practices and to honor all customer obligations related thereto in the ordinary course of business.

## IV.    Discounts and Allowances.

15.    The Debtors' contracts with wholesalers provide for industry-standard discounts, such as a prompt pay discount (the "Prompt Pay Discount"), which affords a two percent (2%) discount for paying invoices within the payment terms of the contract.  These Prompt Pay Discounts encourage the Debtors' customers to enter and maintain contracts with the Debtors and remit payment in a timely manner.  Additionally, the Debtors issue discounts and coupons from time to time that are redeemable to certain Customers for certain of their consumer health

products. As of the Petition Date, the Debtors estimate that they have accrued approximately $11 million in discounts and allowances.

16.    The Debtors believe that continuing to allow discounts and allowances is essential to maintaining customer relationships and driving sales.  Accordingly, by this motion, the Debtors seek authorization, but not direction, to honor discounts and allowances in a manner consistent with their past practices and to honor all customer obligations related thereto in the ordinary course of business.

**V.    Sales Return Program.**

17.    In the ordinary course of business, the Debtors' customers may be unable to sell the products they purchase from the Debtors because the product is near or past its expiry date, the product is damaged, there is a drop in demand, or for some other reason.  Therefore, certain of the Debtors' products are sold with the customer having the right to return the product within specified periods (the "<u>Sales Return Program</u>").  Historical factors, such as recall events, as well as pending new developments, such as comparable product approvals or significant pricing movements that may impact the expected level of returns, are accounted for when determining the appropriate reserve estimates on account of the Sales Return Program.  As of the Petition Date, the Debtors estimate that they have accrued approximately $36 million on account of potential sale returns of the Debtors' products.

18.    The Debtors believe that continuing to administer the Sales Return Program is essential to maintaining customer relationships and driving sales.  Accordingly, by this motion, the Debtors seek authorization, but not direction, to continue the Sales Return Program in a manner consistent with their past practices and to honor all customer obligations related thereto in the ordinary course of business.

## VI.     Failure to Supply.

19.     For certain contracts and products, in the event that the Debtors are unable to fulfill a customer order in line with an existing sales agreement, the Debtors are obligated to reimburse a customer for the price difference in product such customer purchased from another supplier in order to fulfill the contract terms between the Debtors and their customers (the "Failure to Supply Fees").  These Failure to Supply Fees create goodwill for the Debtors among customers.  The Debtors believe that continuing to allow Failure to Supply Fees are essential to maintaining customer relationships and driving sales.  The average monthly amount for the Failure to Supply Fees is approximately $1.1 million for January through September 2019.

### Basis for Relief

## I.     Continuing to Honor Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code.

20.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims.   *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id*.

21.     The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

22.     The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.* 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

23.     The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396

(Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").  Accordingly, the Court can authorize the Debtors to continue the Customer Programs and pay prepetition claims related thereto pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

24.    Continuing the Customer Programs without interruption during these chapter 11 cases will help preserve the Debtors' valuable customer relationships and goodwill, which will inure to the benefit of all of the Debtors' creditors and stakeholders.  Continuing the Customer Programs will also allow the Debtors to maintain and expand their loyal customer base.  Importantly, the Debtors' competitors maintain similar programs, meaning the Debtors' various customers have a ready audience willing to meet such customers' needs and take their business away from the Debtors.  Thus, if the Debtors are unable to continue their Customer Programs postpetition or to pay amounts or other value due and owing to their customers under the various Customer Programs, the Debtors risk alienating certain customer constituencies, losing at least some customers to the Debtors' competitors, and suffering corresponding losses in customer loyalty and goodwill that will harm the Debtors' prospects for a restructuring that maximizes value.

25.    Where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, courts in this district routinely authorize the continuation of customer

programs.  *See, e.g.*, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020) (authorizing the debtors to continue maintaining customer programs on a final basis); *In re Anna Holdings, Inc.,* No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (authorizing the debtors to continue maintaining customer programs on an interim basis); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (authorizing the debtors to continue maintaining customer programs on a final basis); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same).[4]

26.     Accordingly, the Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs warrants the authority to honor the Customer Programs and any customer obligations relating thereto, whether arising prepetition or postpetition, and respectfully request the authority to continue their Customer Programs and honor prepetition commitments related thereto.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

27.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, the proposed debtor-in-possession financing, and anticipated access to cash collateral.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests relating to the Customer Programs, as applicable.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when

---

[4]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

## **The Requirements of Bankruptcy Rule 6003 Are Satisfied**

28.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. Bankr. P. 6003.   For the reasons discussed above, authorizing the Debtors to continue the Customer Programs and satisfy prepetition obligations related thereto and granting the other relief requested herein is essential to the Debtors' ability to transition their operations into these chapter 11 cases smoothly.   Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.   For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.   Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

29.    Nothing contained in the motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the

Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made (or to be made) pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

30.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

31.    The Debtors will provide notice of this motion to:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Savings Fund Society, FSB, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors (the "Term Loan Agent"); (d) counsel to the Term Loan Agent; (e) counsel to the ad hoc group of the Debtors' Prepetition Lenders (the "Ad Hoc Group"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Food and Drug Administration; (i) the Drug Enforcement Administration; (j) the Securities Exchange

Commission; (k) the state attorneys general for all states in which the Debtors conduct business; and (l) any party that requests service pursuant to Local Rule 9013-1(m)(iii).

### **No Prior Request**

32.     No prior request for the relief sought in this motion has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Wilmington, Delaware
May 21, 2020

*/s/ Paul N. Heath*

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:           heath@rlf.com
                      steele@rlf.com
                      shapiro@rlf.com
                      haywood@rlf.com

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (*pro hac vice* admission pending)
Gregory F. Pesce (*pro hac vice* admission pending)
Christopher M. Hayes (*pro hac vice* admission pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                      gregory.pesce@kirkland.com
                      christopher.hayes@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Nicole L. Greenblatt, P.C. (*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           nicole.greenblatt@kirkland.com

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AKORN, INC.,[1] | ) Case No. 20-11177 (___) |
| | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |
| | ) **Re: Docket No. _____** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO MAINTAIN AND ADMINISTER THEIR EXISTING
CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related thereto, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2]    Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted on an interim basis as set forth herein.

2.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2020, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2020, and shall be served on:  (a) the Debtors, Akorn, Inc., 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045, Attn: Joseph Bonaccorsi; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn:  Patrick J. Nash, Jr., P.C., Gregory F. Pesce, and Christopher M. Hayes, and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Nicole L. Greenblatt, P.C.; (c) proposed co-counsel to the Debtors, Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn:  Paul N. Heath; (d) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy; and (e) counsel to any

statutory committee appointed in these chapter 11 cases, and (f) counsel to the Ad Hoc Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, Attn: Scott J. Greenberg and Steven A. Domanowski.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to continue to maintain and administer the Customer Programs currently in effect, modify such Customer Programs, and pay and honor any undisputed prepetition obligations related to the Customer Programs in the ordinary course of business on an interim basis consistent with prepetition practices.

4.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an

3

admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest rights to subsequently dispute such claim.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Customer Program.

7.      Notwithstanding any other provision of the Motion or this Interim Order, the Debtors are authorized to take any action to terminate, modify, or amend any Customer Program consistent with prepetition practice.

8.      Nothing contained in the Motion or this Interim Order is intended or should be construed to create an administrative priority claim on account of any of the Customer Programs.

9.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated:          ____, 2020                    _____
Wilmington, Delaware                          UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AKORN, INC.,[1] | ) Case No. 20-11177 (___) |
|  | ) |
|  | ) (Joint Administration Requested) |
| Debtors. | ) |
|  | ) **Re: Docket No. _____** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO MAINTAIN AND ADMINISTER THEIR EXISTING
CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2]   Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and the First Day Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Motion is granted on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, to continue to maintain and administer the Customer Programs currently in effect, modify such Customer Programs, and pay and honor any undisputed prepetition obligations related to the Customer Programs in the ordinary course of business on a final basis consistent with prepetition practices.

3.       Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise)

satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  Any payment made (or to be made) pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

4.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Customer Program.

6.      Notwithstanding any other provision of the Motion or this Final Order, the Debtors are authorized to take any action to terminate, modify, or amend any Customer Program consistent with prepetition practice.

7.      Nothing contained in the Motion or this Final Order is intended or should be construed to create an administrative priority claim on account of any of the Customer Programs.

8.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2020
Wilmington, Delaware                          _____
                                                              UNITED STATES BANKRUPTCY JUDGE