**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AKORN, INC., et al.,[1] | ) Case No. 20-11177 (KBO) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**JOINT CHAPTER 11 PLAN OF
AKORN, INC. AND ITS DEBTOR AFFILIATES**

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER,
> ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION
> OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS
> SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY
> CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
Christopher M. Hayes (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
E-mail:        patrick.nash@kirkland.com
                gregory.pesce@kirkland.com
                christopher.hayes@kirkland.com

- and -

Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
E-mail:        nicole.greenblatt@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in
Possession*

Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
**RICHARDS, LAYTON & FINGER, PA**
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        heath@rlf.com
                steele@rlf.com
                shapiro@rlf.com
                haywood@rlf.com

*Proposed Co-Counsel to the Debtors and Debtors in
Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

**<u>TABLE OF CONTENTS</u>**

**<u>CONTENTS</u>**

INTRODUCTION ...........................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ..................................................................................................1
A.      Defined Terms. .................................................................................................................1
B.      Rules of Interpretation. ...................................................................................................12
C.      Computation of Time. .....................................................................................................12
D.      Governing Law. ...............................................................................................................12
E.      Reference to Monetary Figures. ......................................................................................12
F.      Controlling Document. ....................................................................................................13

**ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL  FEE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS** ..................................................................13
A.      Administrative Claims. ....................................................................................................13
B.      Professional Compensation. ............................................................................................13
C.      Priority Tax Claims. ........................................................................................................14
D.      DIP Facility Claims. ........................................................................................................15
E.      U.S. Trustee. ....................................................................................................................15

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**............15
A.      Summary of Classification. .............................................................................................15
B.      Treatment of Claims and Interests. .................................................................................16
C.      Special Provision Governing Unimpaired Claims. .........................................................19
D.      Elimination of Vacant Classes. .......................................................................................19
E.      Voting Classes; Presumed Acceptance by Non-Voting Classes. ....................................19
F.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code................19
G.      Subordinated Claims. ......................................................................................................19

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ........................................19
A.      General Settlement of Claims. .........................................................................................19
B.      Sources of Plan Consideration. .......................................................................................20
C.      Restructuring Transactions. .............................................................................................20
D.      Vesting of Assets. ............................................................................................................21
E.      Plan Administrator. ..........................................................................................................21
F.      Wind-Down. .....................................................................................................................22
G.      Wind-Down Amount. .......................................................................................................22
H.      Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation. ............22
I.      Tax Returns. .....................................................................................................................23
J.      Cancellation of Notes, Instruments, Certificates, and Other Documents. ......................23
K.      Corporate Action. ............................................................................................................23
L.      Dissolution of the Board of the Debtors. .........................................................................23
M.      Release of Liens. ..............................................................................................................24
N.      Effectuating Documents; Further Transactions. ..............................................................24
O.      Exemption from Certain Taxes and Fees. ........................................................................24
P.      Causes of Action. .............................................................................................................24
Q.      Closing the Chapter 11 Cases. .........................................................................................25

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................25
A.      Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................25
B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases. .....................25
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..................26

i

D.      D&O Policies. ........................................................................................................................26
E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. .......................26
F.      Reservation of Rights. ..........................................................................................................27
G.      Nonoccurrence of Effective Date. ........................................................................................27

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ...............................................................**27**
A.      Timing and Calculation of Amounts to Be Distributed........................................................27
B.      Rights and Powers of the Disbursing Agent..........................................................................27
C.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .............................28
D.      Compliance with Tax Requirements/Allocations..................................................................29
E.      Allocation of Plan Distributions Between Principal and Interest. ..........................................30
F.      Setoffs and Recoupment........................................................................................................30
G.      Claims Paid or Payable by Third Parties. ..............................................................................30
H.      Indefeasible Distributions......................................................................................................30

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS** ...........................................................................................................................**31**
A.      Allowance of Claims and Interests........................................................................................31
B.      Claims and Interests Administration Responsibilities. ...........................................................31
C.      Estimation of Claims and Interests........................................................................................31
D.      Adjustment to Claims or Interests without Objection. ..........................................................32
E.      Disallowance of Claims. ........................................................................................................32
F.      Amendments to Claims. ........................................................................................................32
G.      No Distributions Pending Allowance. ....................................................................................32
H.      Distributions After Allowance. .............................................................................................32
I.      Single Satisfaction of Claims. ...............................................................................................32

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ......................**33**
A.      Settlement, Compromise, and Release of Claims and Interests. ............................................33
B.      Discharge of Claims and Termination of Interests. ...............................................................33
C.      Term of Injunctions or Stays. ...............................................................................................33
D.      Release of Liens. ....................................................................................................................33
E.      Releases by the Debtors. ........................................................................................................34
F.      Releases by Holders of Claims and Interests..........................................................................35
G.      Exculpation. ..........................................................................................................................35
H.      Injunction. ............................................................................................................................36
I.      Protection Against Discriminatory Treatment........................................................................36
J.      Recoupment............................................................................................................................36
K.      Subordination Rights..............................................................................................................36
L.      Reimbursement or Contribution. ...........................................................................................37

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**...........**37**
A.      Conditions Precedent to Confirmation..................................................................................37
B.      Conditions Precedent to the Effective Date............................................................................37
C.      Waiver of Conditions. ...........................................................................................................39
D.      Substantial Consummation. ...................................................................................................39
E.      Effect of Non-Occurrence of Conditions to the Effective Date.............................................39

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**...............................**39**
A.      Modification and Amendments. .............................................................................................39
B.      Effect of Confirmation on Modifications. ..............................................................................39
C.      Revocation or Withdrawal of the Plan. ..................................................................................39

**ARTICLE XI RETENTION OF JURISDICTION** ................................................................40

**ARTICLE XII MISCELLANEOUS PROVISIONS** ...........................................................42
A.    Immediate Binding Effect. ...........................................................................42
B.    Additional Documents. ..................................................................................42
C.    Payment of Statutory Fees. ...........................................................................42
D.    Dissolution of Statutory Committees. ..........................................................42
E.    Reservation of Rights. ...................................................................................42
F.    Successors and Assigns. ................................................................................43
G.    Service of Documents. ..................................................................................43
H.    Enforcement of Confirmation Order. ...........................................................44
I.    Term of Injunctions or Stays. .......................................................................44
J.    Compensation and Benefits Programs. .........................................................44
K.    Entire Agreement. .........................................................................................44
L.    Exhibits. .........................................................................................................44
M.    Certain Consent Rights. ................................................................................45
N.    Nonseverability of Plan Provisions. .............................................................45
O.    Votes Solicited in Good Faith. ......................................................................45
P.    Waiver. ...........................................................................................................45

**INTRODUCTION**

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Debtor, as applicable.  The Plan does not contemplate substantive consolidation of any of the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, the Restructuring Transactions, and certain related matters.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    **Defined Terms.**

As used in this Plan, capitalized terms have the meanings and effect as set forth below.

1.    "*Acquired Entities*" means the Debtors acquired by the Purchaser pursuant to the Sale Transaction.

2.    "*Ad Hoc Group Professionals*" means Gibson Dunn & Crutcher LLP, Greenhill & Co., LLC, and Young Conaway Stargatt & Taylor, LLP, in their capacities as advisors to certain Consenting Term Loan Lenders.

3.    "*Administrative Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates; (b) Professional Fee Claims; (c) DIP Facility Claims; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

4.    "*Administrative Claims Bar Date*" means the date that is thirty (30) days after the Effective Date, which is the deadline by which all requests for Administrative Claims (other than Professional Fee Claims) must be Filed and served on the Debtors.

5.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

6.    "*Akorn Interests*" means any Interests in Akorn.

7.    "*Akorn*" means Akorn, Inc.

8.    "*Allowed*" means, with respect to any Claim against any of the Debtors, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or such other date as agreed by the Debtors pursuant to the Bar Date Order) or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, the Bar Date Order, or pursuant to a Final Order); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order; *provided that* with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable

under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "*Allow*" and "*Allowing*" shall have correlative meanings.

9.      "*Assumed Contracts and Leases List*" means the list of those Executory Contracts and Unexpired Leases not assumed by the Purchaser to be assumed by the Debtors or assumed and assigned by the Debtors to the Plan Administrator or any other Entity pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

10.      "*Assumed Liabilities*" has the meaning set forth in the Sale Transaction Documentation, and shall include the Purchaser Assumed Claims.

11.      "*Auction*" has the meaning set forth in the Bidding Procedures Order.

12.      "*Avoidance Actions*" means any and all causes of action to avoid a transfer of property or an obligation incurred by any of the Debtors arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related Law.

13.      "*Ballot*" means the form of ballot approved by the Bankruptcy Court and distributed to Holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

14.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

15.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases, including to the extent of the withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

16.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

17.      "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment under Section 503(B)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim by Governmental Units, (III) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (IV) Approving the Form and Manner for Filing Proofs of Claim, and (V) Approving Notice of the Bar Dates* [Docket No. [●]] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

18.      "*Bidding Procedures Order*" means the *Order (I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. [●]] (as amended, modified or supplemented from time to time in accordance with the terms thereof), which shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, consistent with the consent rights under the Restructuring Support Agreement and the Stalking Horse APA.

19.      "*Bidding Procedures*" means the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order, as such bidding procedures may be amended from time to time in accordance with their terms, which shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, consistent with the consent rights under the Restructuring Support Agreement and the Stalking Horse APA.

20.      "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

21.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

22.    "*Causes of Action*" means any and all actions, claims, causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "*Causes of Action*" includes:  (a) any rights of setoff, counterclaims, or recoupments and any claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all claims or defenses including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any and all state or foreign Law fraudulent transfer or similar claims.

23.    "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court pursuant to the *Order (I) Directing Joint Administration of the Debtors' Related Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 57] (as amended, modified, or supplemented from time to time in accordance with the terms thereof).

24.    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

25.    "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by:  (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan; *provided that* if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

26.    "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice and Claims Agent.

27.    "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

28.    "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance under the Bankruptcy Code.

29.    "*Committee*" means a statutory committee of unsecured creditors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee.

30.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

31.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

32.    "*Confirmation Objection Deadline*" has the meaning set forth in the Disclosure Statement Order.

33.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, with such order being consistent with the Restructuring Support Agreement and otherwise in form and substance acceptable to the Debtors and the Required Consenting Term Loan Lenders.

34.    "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

35.    "*Consenting Term Loan Lenders*" means the Holders of Term Loan Claims that are or become parties to the Restructuring Support Agreement, solely in their capacity as such.

36.    "*Consummation*" means the occurrence of the Effective Date.

37.    "*Cure Costs*" means the amount necessary to cure all monetary defaults under the Assumed Contracts and Leases pursuant to section 365(b) of the Bankruptcy Code.

38.    "*Cure Notice*" has the meaning set forth in the Bidding Procedures Order.

39.    "*D&O Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to any of the Debtors as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

40.    "*Debtors*" means, collectively: (a) Akorn, Inc.; (b) 10 Edison Street LLC; (c) 13 Edison Street LLC; (d) Advanced Vision Research, Inc.; (e) Akorn (New Jersey), Inc.; (f) Akorn Animal Health, Inc.; (g) Akorn Ophthalmics, Inc.; (h) Akorn Sales, Inc.; (i) Clover Pharmaceuticals Corp.; (j) Covenant Pharma, Inc.; (k) Hi-Tech Pharmacal Co., Inc.; (l) Inspire Pharmaceuticals, Inc.; (m) Oak Pharmaceuticals, Inc.; (n) Olta Pharmaceuticals Corp.; (o) VersaPharm Incorporated; (p) VPI Holdings Corp.; and (q) VPI Holdings Sub, LLC.

41.    "*Description of Transaction Steps*" means, if applicable, the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan and as set forth in the Plan Supplement, as determined by the Debtors and the Required Consenting Term Loan Lenders.

42.    "*DIP Agent*" means Wilmington Savings Fund Society, FSB, or any successor thereto, in its capacities as administrative and collateral agent under the DIP Facility.

43.    "*DIP Credit Agreement*" means that certain Superpriority Secured Debtor in Possession Credit Agreement, dated as of May 22, 2020, by and among the Debtors, the DIP Lenders, and the DIP Agent, as may be amended, restated, supplemented, or otherwise modified from time to time, which shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, and in form and substance acceptable to the DIP Lenders, in each case consistent with the consent rights under the Restructuring Support Agreement, the Stalking Horse APA, and the DIP Credit Agreement, as applicable.

44.    "*DIP Facility Claims*" means any Claim against any of the Debtors arising under the DIP Facility or the Final DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations.

45.    "*DIP Facility*" has the meaning set forth in the Final DIP Order.

46.    "*DIP Lenders*" means collectively, the lenders from time to time party to the DIP Credit Agreement.

47.    "DIP Loan Documents" means the DIP Credit Agreement and any other documentation necessary to effectuate the incurrence of the DIP Facility, which shall be in form and substance acceptable to the Debtors, the DIP Lenders, and the Required Consenting Term Loan Lenders

48.    "*Disbursing Agent*" means the Debtors or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

49.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and solicitation procedures with respect to the Plan entered by the Bankruptcy Court on [●], 2020 [Docket No. [●]] (as amended, modified or supplemented from

time to time in accordance with the terms thereof and the Restructuring Support Agreement), with such order being consistent with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, consistent with the consent rights under the Restructuring Support Agreement and the Stalking Horse APA.

50.      "*Disclosure Statement*" means the *Disclosure Statement for Joint Chapter 11 Plan of Akorn, Inc. and Its Debtor Affiliates* [Docket No. [●]], (as amended, modified or supplemented from time to time in accordance with the Restructuring Support Agreement, including all exhibits and schedules thereto and references therein, and all related solicitation materials, that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable Law), which shall be consistent with the Restructuring Support Agreement and otherwise in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, consistent with the consent rights under the Restructuring Support Agreement and the Stalking Horse APA.

51.      "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest, or any portion thereof, (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Proof of Interest or a motion for payment has been timely filed with the Bankruptcy Court, to the extent the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; *provided*, *however*, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

52.      "*Distributable Proceeds*" means all Cash of the Debtors on or after the Effective Date, after giving effect to the funding of the Professional Fee Escrow Account.

53.      "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the Confirmation Date, or such other date as is agreed to by the Debtors and the Required Consenting Term Loan Lenders, or designated in a Final Order.

54.      "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan.

55.      "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

56.      "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

57.      "*Exculpated Party*" means, collectively:  (a) the Debtors; (b) the Consenting Term Loan Lenders; (c) the Term Loan Agent; (d) the DIP Lenders; (e) the DIP Agent; (f) the Committee and each of its members; and (g) with respect to each of the foregoing Entities in clauses (a) through (f), each Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their respective capacities as such.

58.      "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

59.      "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

60.      "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

61.    "*Final DIP Order*" means the [*Final Order (I) Authorizing the Debtors (A) to Obtain Postpetition Financing, and (B) to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*, entered by the Bankruptcy Court on [●], 2020 [Docket No. [●]]] (as amended, modified or supplemented from time to time in accordance with the terms thereof and the Restructuring Support Agreement), which shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Term Loan Lenders, and in form and substance acceptable to the DIP Lenders, in each case consistent with the consent rights under the Restructuring Support Agreement, the Stalking Horse APA, and the DIP Credit Agreement, as applicable.

62.    "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

63.    "*Final Utility Order*" means the *Final Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* [Docket No. [●]] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

64.    "*Fresenius Litigation Claims*" means any Claim arising from or relating to the Fresenius Litigation.

65.    "*Fresenius Litigation*" means that certain litigation captioned *Akorn, Inc. v. Fresenius Kabi AG, Quercus Acquisition, Inc. and Fresenius SE & Co. KGaA*, No. 2018-0300-JTL (Del. Ch. Apr. 23, 2018).

66.    "*General Unsecured Claim*" means any unsecured Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Intercompany Claim; (d) an Other Priority Claim; (e) a Priority Tax Claim; (f) a Professional Fee Claim; (g) a Section 510(b) Claim; or (h) a Purchaser Assumed Claim.

67.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

68.    "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

69.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

70.    "*Initial Distribution Date*" means the date on which the Debtors or the Disbursing Agent, as applicable, make initial distributions to Holders of Allowed Claims pursuant to the Plan.

71.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor or Non-Debtor Subsidiary.

72.    "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor or Non-Debtor Subsidiary.

73.    "*Interest*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

74.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. [●] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

75.    "*Interim Utility Order*" means the *Interim Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* [Docket No. 70] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

76.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

77.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

78.    "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

79.    "*Non-Debtor Subsidiary*" means any direct or indirect subsidiary of Akorn that is not a Debtor in the Chapter 11 Cases.

80.    "*Notice and Claims Agent*" means Kurtzman Carson Consultants LLC, solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

81.    "*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

82.    "*Ordinary Course Professionals Order*" means the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. [●]] (as amended, modified or supplemented from time to time in accordance with the terms thereof).

83.    "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

84.    "*Other Secured Claim*" means any Secured Claim (including Secured Tax Claims) against any of the Debtors, other than a DIP Facility Claim or a Term Loan Claim.

85.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

86.    "*Petition Date*" means May 20, 2020, the date on which the Chapter 11 Cases were commenced.

87.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors, in consultation with the Required Consenting Term Loan Lenders, who will be disclosed at or prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV.E of this Plan.

88.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the Restructuring Support Agreement and the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least five (5) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, including the following, as applicable: (a) the Assumed Contracts and Leases List; (b) the identity of the Plan Administrator and the terms of compensation of the Plan Administrator; (c) Schedule of Retained Causes of Action; (d) any transition services agreement between the Purchaser and the Debtors; (e) the Description of Transactions Steps, if applicable; and (f) any other necessary documentation related to the Restructuring Transactions as contemplated by the Restructuring Support Agreement, each of which shall be consistent with the Restructuring

Support Agreement and acceptable in form and substance to the Debtors and the Required Consenting Term Loan Lenders; *provided that*, through the Effective Date, the Plan Supplement, and the exhibits thereto may be amended or modified in accordance with this Plan and the Restructuring Support Agreement, provided that any such amendment or modification shall be acceptable in form and substance to the Debtors and the Required Consenting Term Loan Lenders.

89.     "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified or supplemented from time to time in accordance with the terms hereof).

90.     "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

91.     "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

92.     "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

93.     "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

94.     "*Professional Fee Escrow Account*" means an account funded by the Debtors with Cash as soon as practicable after Confirmation and not later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

95.     "*Professional Fee Escrow Amount*" means the reasonable estimate of the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors (and the Debtors shall deliver to the Ad Hoc Group Professionals) as set forth in Article II.B of the Plan.

96.     "*Professional*" means an Entity (other than an Ordinary Course Professional):  (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.  For the avoidance of doubt, "Professional" does not include the Ad Hoc Group Professionals.

97.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

98.     "*Purchased Assets*" means all of the assets of the Debtors that are purchased by the Purchaser pursuant to the Sale Order; *provided that*, for the avoidance of doubt, the Distributable Proceeds and the Retained Assets shall not be Purchased Assets.

99.     "*Purchaser Assumed Claims*" means those Claims against the Debtors that were Assumed Liabilities under the Sale Transaction Documentation; *provided that* Purchaser Assumed Claims shall not include any claims resulting from the rejection of an Executory Contract or Unexpired Lease.

100.     "*Purchaser*" means the Entity whose bid for substantially all of the Purchased Assets is selected by the Debtors and approved by the Bankruptcy Court as the highest and otherwise best bid pursuant to the Bidding Procedures.

101.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

102.    "*Released Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Consenting Term Loan Lenders; (c) the Term Loan Agent; (d) the DIP Lenders; (e) the DIP Agent; (f) all Releasing Parties; (g) the Acquired Entities; and (h) with respect to each Entity in clause (a) through (g), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Released Party).

103.    "*Releasing Parties*" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Consenting Term Loan Lenders; (c) the Term Loan Agent; (d) the DIP Lenders; (e) the DIP Agent; (f) the Acquired Entities; (g) all Holders of Claims or Interests that are presumed to accept the Plan *and* who do not opt out of the releases in the Plan; (h) all Holders of Claims or Interests who vote to accept the Plan; (i) all Holders of Claims or Interests that (x) abstain from voting on the Plan *and* who do not opt out of the releases in the Plan, (y) vote to reject the Plan *and* who do not opt out of the releases in the Plan, or (z) are deemed to reject the Plan *and* who do not opt out of the releases in the Plan; (j) with respect to each Entity in clause (a) through (i), each such Entity's current and former  subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Releasing Party).

104.    "*Required Consenting Term Loan Lenders*" means Consenting Term Loan Lenders holding more than 60.00% of the aggregate outstanding principal amount of Term Loans that are held by Consenting Term Loan Lenders.

105.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of May 20, 2020, including the restructuring term sheet attached as <u>Exhibit E</u> thereto, by and among the Debtors and the other parties thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms.

106.    "*Restructuring Transactions*" means the transactions described in Article IV.C.

107.    "*Retained Assets*" means:  (a) any Distributable Proceeds not distributed on the Effective Date; (b) the Wind-Down Amount; (c) the D&O Policies; (d) the Retained Causes of Action; and (e) the Excluded Assets (as defined in the Sale Transaction Documentation).  For the avoidance of doubt, the Retained Assets shall not include: (x) the Transferred Assets; (y) any Causes of Action waived, released or transferred pursuant to the Plan; or (z) the Professional Fee Escrow Account.

108.    "*Retained Causes of Action*" means those Causes of Action that shall vest in the Debtors on the Effective Date and for the avoidance of doubt, Retained Causes of Action shall not include any of the Transferred Causes of Action, or any Causes of Action that are settled, released, or exculpated under the Plan.

109.    "*Sale Order*" means the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief*, entered by the Bankruptcy Court on [●], 2020 [Docket No. [●]].

110.    "*Sale Transaction Documentation*" means definitive documentation for the Sale Transaction

111.    "*Sale Transaction*" means the transfer of the Transferred Assets to the Purchaser and the assumption by the Purchaser of the Assumed Liabilities free and clear of all Liens, Claims, charges, and other encumbrances

(other than the Assumed Liabilities) pursuant to section 363 of the Bankruptcy Code on the terms and conditions set forth in the Restructuring Support Agreement, the Sale Order, and Sale Transaction Documentation.

112.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs to be Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

113.    "*Section 510(b) Claim*" means any Claim against any of the Debtors that is subordinated under section 510(b) of the Bankruptcy Code, including, for the avoidance of doubt, the Fresenius Litigation Claims and any Shareholder Litigation Claims not settled pursuant to the Shareholder Settlement.

114.    "*Secured Tax Claim*" means any Secured Claim against any of the Debtors that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

115.    "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is:  (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

116.    "*Securities Act*" means the U.S. Securities Act of 1933.

117.    "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

118.    "*Shareholder Litigation Claims*" means any Claim relating to the Shareholder Litigation.

119.    "*Shareholder Litigation*" means that certain litigation captioned *In re Akorn, Inc. Data Integrity Securities Litigation*, Civ. A. No. 1:18-cv-01713 (N.D. Ill. Mar. 8, 2018).

120.    "*Shareholder Settlement*" means the full and final settlement and resolution of any and all Shareholder Litigation Claims that did not "opt out" of such settlement pursuant to that certain *Order and Final Judgment Approving Class Action Settlement* [Document No. 190].

121.    "*Standstill Agreement*" means that certain standstill agreement, dated as of May 6, 2019, by and among Akorn, certain Term Loan Lenders under the Term Loan Credit Agreement, and the Term Loan Agent (as may be amended, restated, or otherwise modified from time to time in accordance with its terms).

122.    "*Subsequent Distribution Date*" means a date following the Initial Distribution Date on which the Disbursing Agent in its reasonable discretion, elects to make distributions to Holders of certain Allowed Claims pursuant to the Plan.

123.    "*Term Loan Agent*" means Wilmington Savings Fund Society, FSB,, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors.

124.    "*Term Loan Claim*" means any Claim against any of the Debtors on account of the Term Loan Credit Agreement, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations.

125.    "*Term Loan Credit Agreement*" means that certain Term Loan Credit Agreement, dated as of April 17, 2014, by and among Akorn, as borrower, and certain of the Debtors as guarantors party thereto, the Term Loan Agent, and the other lender parties thereto, as may be amended, restated, or otherwise supplemented from time to time (including by the Standstill Agreement).

126.    "*Term Loan Credit Bid Amount*" means the amount of the Term Loan Claims that comprise the credit bid under the Term Loan Credit Bid Transaction.

127.    "*Term Loan Credit Bid Transaction*" means a Sale Transaction to the Term Loan Agent or its designee on account of a credit bid of some or all of the Term Loan Claims, which credit bid is selected by the Debtors as the highest and best bid for the Purchased Assets as set forth in the Bidding Procedures Order and as approved by the Bankruptcy Court pursuant to the Sale Order.

128.    "*Term Loan Lenders*" means the lenders under the Term Loan Credit Agreement, each in their capacities as such.

129.    "*Term Loan*" or "*Term Loans*" means the loans outstanding under the Term Loan Credit Agreement.

130.    "*Transferred Assets*" means the Purchased Assets, the Transferred Causes of Action, and the Interests of any Debtors that are transferred to Purchaser as part of the Sale Transaction.

131.    "*Transferred Causes of Action*" means any and all Causes of Action held by the Debtors as of the Effective Date that are not expressly released or retained by the Debtors pursuant to the Sale Transaction; *provided that* Transferred Causes of Action did not include (i) Avoidance Actions not related to the Transferred Assets; (ii) certain Causes of Action to be mutually agreed upon by the Debtors and the Purchaser; or (iii) Causes of Action that are settled, released, or exculpated under the Plan.

132.    "*U.S. Person*" has the meaning given to such term in rule 902 promulgated under the Securities Act.

133.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

134.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

135.    "*Undeliverable Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

136.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

137.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

138.    "*Utility Orders*" means the Interim Utility Order and Final Utility Order.

139.    "*Voting Deadline*" has the meaning set forth in the Disclosure Statement Order.

140.    "*Voting Report*" means the report certifying the methodology for the tabulation of votes and results of voting under the Plan, prepared and filed by the Notice and Claims Agent.

141.    "*Waterfall Recovery*" means the priority distribution of Distributable Proceeds, which shall be allocated and paid to the Holders of Claims or Interests, as applicable, until paid in full from time to time in the following priority (in each case on a Pro Rata basis): (a) *first,* on account of Allowed Administrative Priority Claims, DIP Facility Claims, and Priority Tax Claims, (b) *second,* on account of Allowed Other Secured Claims; (c) *third,* on account of Allowed Other Priority Claims; (d) *fourth,* on account of Allowed Term Loan Claims; (v) *fifth,* on account of any Allowed General Unsecured Claims that are not assumed by the Purchaser; and (e) *sixth,* on account of Allowed Section 510(b) Claims and Allowed Akorn Interests.

142.    "*Wind-Down Amount*" means Cash in an amount, to be determined by the Debtors, which amount shall be retained by the Debtors in accordance with the terms of the Sale Transaction Documentation, including the

wind-down budget attached as <u>Exhibit G</u> to the Stalking Horse APA (as defined in the Bidding Procedures) in the event that the Sale Transaction is a Term Loan Credit Bid Transaction, and used by the Plan Administrator to fund the Wind Down.

143.    "*Wind-Down*" means the wind down and dissolution of the Debtors' Estates as set forth in Article IV.F.

## B.    Rules of Interpretation.

For purposes of the Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (viii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (ix) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (x) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xi) any effectuating provisions may be interpreted (subject to the terms of the Restructuring Support Agreement) by the Debtors or the Plan Administrator in such manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; *provided that* no effectuating provision shall be immaterial or deemed immaterial if it has any substantive legal or economic effect on any party; (xii) except as otherwise provided in the Plan, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (xiii) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to the Debtors or the Plan Administrator, as applicable.

## C.    Computation of Time.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## D.    Governing Law.

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with the Laws of the State of New York, without giving effect to conflict of laws principles.

## E.    Reference to Monetary Figures.

All references in the Plan to monetary figures shall refer to the legal tender of the United States, unless otherwise expressly provided.

F.      **Controlling Document.**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II**
**ADMINISTRATIVE CLAIMS, PROFESSIONAL**
**FEE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Facility Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.      **Administrative Claims.**

Except with respect to Professional Fee Claims and DIP Facility Claims, or as otherwise set forth herein, subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, and except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Plan Administrator, agree to less favorable treatment or such Holder has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Plan Administrator shall, in consultation with the Required Consenting Term Loan Lenders, pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash, which payment shall be made (x) in the ordinary course of business, or (y) on the later of (i) the Effective Date and (ii) the date on which such Administrative Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) with a Cash distribution; *provided that* any Allowed Administrative Claim that has been expressly assumed by the Purchaser under the Sale Transaction Documentation shall not be an obligation of the Debtors as of or after the Effective Date.

Except as otherwise provided by Article II.A or by a Final Order entered by the Bankruptcy Court (including the Bar Date Order) on or prior to the Administrative Claims Bar Date, as applicable, unless previously Filed, requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims) must be Filed and served on the Debtors by the Administrative Claims Bar Date.  For the avoidance of doubt, solely to the extent Cure Costs are not paid on the Effective Date, the counterparty to such Executory Contract and Unexpired Lease must File its Administrative Claim on or prior to the Administrative Claims Bar Date, and such Administrative Claim shall be asserted only with respect to and in the amount of such unpaid Cure Costs.  With respect to Professional Fee Claims, the deadline for all requests for payment of such claims shall be forty-five (45) days after the Effective Date.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Purchaser, or the Plan Administrator, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.  For the avoidance of doubt, Holders of DIP Facility Claims shall not be required to File or serve any request for payment of such DIP Facility Claims.

B.      **Professional Compensation.**

1.      **Final Fee Applications and Payment of Professional Fee Claims.**

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than forty-five (45) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court,

including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A of the Plan.

### 2.    Professional Fee Escrow Amount.

As soon as possible after Confirmation and not later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Debtors' Estates. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Plan Administrator.

### 3.    Allocation and Estimation of Professional Fees and Expenses.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred before and as of the Confirmation Date, and shall deliver such estimate to the Debtors (and the Debtors shall deliver to the Ad Hoc Group Professionals) by the earlier of (a) five (5) Business Days after the Confirmation Date and (b) two (2) Business Days prior to the Effective Date; *provided that* such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional.

### 4.    Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors will, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Plan Administrator. Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and the Plan Administrator may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 5.    Substantial Contribution.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, the DIP Agent, and the Term Loan Agent, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

## C.    Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Debtors or the Plan Administrator, agree to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable, in consultation with the Required Consenting Term Loan Lenders, either (i) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim

becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), or (ii) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date; *provided that* any Allowed Priority Tax Claim that has been expressly assumed by the Purchaser under the Sale Transaction Documentation shall not be an obligation of the Debtors.  In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.  On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

**D.      DIP Facility Claims.**

All DIP Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to the full amount due and owing under the DIP Credit Agreement, including, for the avoidance of doubt, (i) the principal amount outstanding under the DIP Facility on such date, (ii) all interest accrued and unpaid thereon through and including the date of payment, and (iii) all accrued and unpaid fees, expenses and noncontingent indemnification obligations payable under the DIP Facility and the Final DIP Order.  On the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, each DIP Facility Claim shall be paid in full in Cash, except to the extent such DIP Facility Claims were credit bid pursuant to the terms of the Sale Transaction Documentation.  All Liens and security interests granted by the Debtors to secure the obligations under the DIP Facility shall be of no further force or effect.  For the avoidance of doubt, the DIP Facility Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

**E.      U.S. Trustee.**

The Debtors or the Plan Administrator, as applicable, shall timely pay all U.S. Trustee Fees for each quarter under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' businesses, until the entry of a Final Order dismissing or closing the Chapter 11 Cases, or converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  Following Confirmation, the Debtors shall file with the Bankruptcy Court quarterly operating reports in a form reasonably acceptable to the U.S. Trustee.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.      Summary of Classification.**

This Plan constitutes a separate chapter 11 plan for each Debtor.  Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, DIP Facility Claims, and Professional Fee Claims as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Section 510(b) Claims | Impaired | Entitled to Vote |
| Class 8 | Akorn Interests | Impaired | Entitled to Vote |

**B.        Treatment of Claims and Interests.**

Except to the extent that the Debtors or the Plan Administrator, as applicable, and a Holder of an Allowed Claim or Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest. Unless otherwise indicated, each Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes allowed.

      **1.    Class 1—Other Priority Claims.**

          (a)    *Classification*: Class 1 consists of all Other Priority Claims.

          (b)    *Treatment*: Except to the extent that a Holder of an Allowed Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired, in each case on the Effective Date.

          (c)    *Voting*: Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 1 Other Priority Claim is not entitled to vote to accept or reject the Plan.

      **2.    Class 2—Other Secured Claims.**

          (a)    *Classification*: Class 2 consists of all Other Secured Claims.

          (b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtors, in consultation with the Required Consenting Term Loan Lenders, and in each case, on the Effective Date:

               (i)    payment in full in Cash of such Allowed Other Secured Claim;

(ii)      the Collateral securing such Allowed Other Secured Claim;

(iii)     Reinstatement of such Allowed Other Secured Claim, notwithstanding any contractual provision or applicable non-bankruptcy Law that entitles the holder of such claim to demand or to receive payment prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of default; or

(iv)     such other treatment rendering such Allowed Other Secured Claim Unimpaired.

(c)    *Voting*: Class 2 is Unimpaired under the Plan. Each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 2 Other Secured Claim is not entitled to vote to accept or reject the Plan.

**3.   Class 3—Term Loan Claims.**

(a)    *Classification*: Class 3 consists of all Term Loan Claims.

(b)    *Treatment*: In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed Term Loan Claim shall receive on the Effective Date either:

(i)      In the event the Sale Transaction is not a Term Loan Credit Bid Transaction, its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery; or

(ii)     In the event the Sale Transaction is a Term Loan Credit Bid Transaction, on account of the Allowed Term Loan Claims *less* the Term Loan Credit Bid Amount, its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

For the avoidance of doubt, in the event the Sale Transaction is a Term Loan Credit Bid Transaction, the Term Loan Lenders shall be entitled to immediate possession of the Purchased Assets as and solely to the extent set forth in the Sale Order, with no further order of the Bankruptcy Court required.

(c)    *Voting*: Class 3 is Impaired under the Plan. Each Holder of a Class 3 Allowed Term Loan Claim is entitled to vote to accept or reject the Plan.

**4.   Class 4—General Unsecured Claims.**

(a)    *Classification*: Class 4 consists of all General Unsecured Claims.

(b)    *Treatment*: In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed General Unsecured Claim that is not assumed by the Purchaser shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

For the avoidance of doubt, all General Unsecured Claims that are assumed by the Purchaser pursuant to the Sale Transaction Documentation shall be satisfied by the Purchaser in full in Cash following the Effective Date in the ordinary course of business; *provided that* any Allowed General Unsecured Claim that has been expressly assumed by the Purchaser under the Sale Transaction shall not be an obligation of the Debtors as of or after the Effective Date.

(c)     *Voting*:  Class 4 is Impaired.  Each Holder of a Class 4 Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

5.    **Class 5—Intercompany Claims.**

(a)     *Classification*:  Class 5 consists of all purported Intercompany Claims.

(b)     *Treatment*:  In full and final satisfaction of each Allowed Intercompany Claim, each Allowed Intercompany Claim, unless otherwise provided for under the Plan and subject to the Description of Transaction Steps, will either be Reinstated, distributed, contributed, set off, settled, cancelled and released or otherwise addressed at the option of the Debtors, in consultation with the Required Consenting Term Loan Lenders; provided, that no distributions shall be made on account of any such Intercompany Claims.

(c)     *Voting*:  Class 5 is either Unimpaired, and the Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired or the Holders of Allowed Class 5 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.    **Class 6—Intercompany Interests.**

(a)     *Classification*:  Class 6 consists of all Intercompany Interests.

(b)     *Treatment*:  In full and final satisfaction of each Allowed Intercompany Interest, subject to the Description of Transaction Steps, each Intercompany Interest shall be Reinstated solely to maintain the Debtors' corporate structure.

(c)     *Voting*:  Class 6 is Unimpaired, and Holders of Intercompany Interests are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.    **Class 7—Section 510(b) Claims.**

(a)     *Classification:*  Class 7 consists of all Section 510(b) Claims.

(b)     *Treatment*:  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed Class 7 Section 510(b) Claim shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery; *provided that* for purposes of receiving the treatment provided herein, each Holder of an Allowed Section 510(b) Claim shall be treated as if such Holder held a number of Allowed Class 8 Akorn Interests equal in value to the amount of its Allowed Section 510(b) Claim.

(c)     *Voting:*  Class 7 is Impaired.  Each Holder of a Class 7 Allowed Section 510(b) Claim is entitled to vote to accept or reject the Plan.

8.    **Class 8—Akorn Interests.**

(a)     *Classification:*  Class 8 consists of all Akorn Interests.

(b)     *Treatment*:  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of its Interest, each Holder of Allowed Class 8 Akorn Interests shall

receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.

(c)     *Voting:*  Class 8 is Impaired.  Each Holder of Class 8 Allowed Akorn Interests is entitled to vote to accept or reject the Plan.

## C.     Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Purchaser, as applicable, with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## D.     Elimination of Vacant Classes.

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.     Voting Classes; Presumed Acceptance by Non-Voting Classes.

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

## F.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims or Interests.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## G.     Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.     General Settlement of Claims.

Except as otherwise expressly provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion, proposed by the Debtors, to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of

such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Distributions made to Holders of Allowed Claims in any Class are intended to be final.

**B.      Sources of Plan Consideration.**

Cash on hand, borrowings under the DIP Facility, the Distributable Proceeds, if any, the Wind-Down Amount, the Debtors' rights under the Sale Transaction Documentation, payments made directly by the Purchaser on account of any Assumed Liabilities under the Sale Transaction Documentation, payments of Cure Costs made by the Purchaser pursuant to sections 365 or 1123 of the Bankruptcy Code, the return of any utility deposits as set forth in the Utility Orders, and all Causes of Action not previously settled, released, or exculpated under the Plan, if any, shall be used to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided herein. Unless otherwise agreed in writing by the Debtors and the Purchaser, distributions required by this Plan on account of Allowed Claims that are Assumed Liabilities shall be the sole responsibility of the Purchaser to the extent such Claim is Allowed against the Debtors.

**C.      Restructuring Transactions.**

Upon the entry of the Confirmation Order, the Debtors, the Plan Administrator, and the Purchaser are authorized, without further order of the Bankruptcy Court, subject to the terms of the Restructuring Support Agreement, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under or in connection with the Plan that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Support Agreement, including: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law; and (e) any transaction described in the Description of Transactions Steps, if applicable.

The Confirmation Order shall and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

**1.      The Purchaser Assumed Claims.**

The Sale Transaction Documentation provides that as part of the Sale Transaction, the Purchaser assumed certain obligations owed by the Debtors to their customers and trade vendors. Following such assumption by the Purchaser, the Purchaser shall satisfy such obligations in Cash, and for the avoidance of doubt, any obligations that were assumed by the Purchaser shall cease to be Claims against the Debtors following such assumption

**2.      Payment of Cure Costs and Other Amounts.**

On the Effective Date, the Debtors shall pay all Cure Costs that are required to be paid (if any) pursuant to and in accordance with sections 365 or 1123 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases that are assumed by the Debtors pursuant to the Plan. For the avoidance of doubt, the Debtors shall have no obligations to pay any Cure Costs for any contract or lease that was assumed by the Purchaser pursuant to the Sale Order.

**D.      Vesting of Assets.**

Except as otherwise provided in the Plan, the Sale Transaction Documentation, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date the Retained Assets shall vest in the Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, and other encumbrances.  For the avoidance of doubt, all Transferred Causes of Action were transferred to the Purchaser in the Sale Transaction, and the Retained Causes of Action shall vest in the Debtors on the Effective Date for prosecution, settlement, or other action as determined by the Plan Administrator.

On and after the Effective Date, except as otherwise provided in the Plan, the Plan Administrator may operate the Debtors' businesses and use, acquire, or dispose of property and, as applicable, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**E.      Plan Administrator**.

The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Debtors and shall succeed to the powers of the Debtors' managers and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors.  For the avoidance of doubt, the foregoing shall not limit the authority of the Debtors or the Plan Administrator, as applicable, to continue the employment any former manager or officer.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtors, including: (i) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Debtors remaining after consummation of the Sale Transaction; (ii) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (iii) making distributions as contemplated under the Plan; (iv) establishing and maintaining bank accounts in the name of the Debtors; (v) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (vi) paying all reasonable fees, expenses, debts, charges, and liabilities of the Debtors; (vii) administering and paying taxes of the Debtors, including filing tax returns; (viii) representing the interests of the Debtors before any taxing authority in all matters, including any action, suit, proceeding or audit; and (ix) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtors shall be terminated.

**1.      Appointment of the Plan Administrator.**

The Plan Administrator shall be appointed by the Debtors, in consultation with the Purchaser.  The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

2.     **Retention of Professionals.**

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Debtors, upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

3.     **Compensation of the Plan Administrator.**

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement.

F.     **Wind-Down.**

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (i) cause the Debtors to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (ii) take any actions necessary to wind down the Debtors' Estates; and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  From and after the Effective Date, except as set forth herein, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, and (y) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The Filing of the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports shall be the responsibility of the Plan Administrator.

G.     **Wind-Down Amount.**

On or prior to the Effective Date, the Debtors shall retain the Wind-Down Amount in accordance with the terms of the Sale Transaction Documentation.  The Wind-Down Amount shall be used by the Plan Administrator solely to satisfy the distributions set forth herein, the expenses of the Debtors and the Plan Administrator as set forth in the Plan; *provided that* all costs and expenses associated with the winding down of the Debtors and the storage of records and documents shall constitute expenses of the Debtors and shall be paid from the Wind-Down Amount.  In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.

H.     **Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation.**

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for actual fraud, willful misconduct, or gross negligence, in all respects by the Debtors.  The Plan Administrator may obtain, at the expense of the Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

I.       **Tax Returns.**

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

J.       **Cancellation of Notes, Instruments, Certificates, and Other Documents.**

On the Effective Date, except as otherwise specifically provided for in the Plan or to the extent otherwise assumed by the Purchaser:  (i) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of giving rise to any Claim shall be cancelled and deemed surrendered as to the Debtors, and the Debtors shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised; *provided*, *however*, that notwithstanding anything to the contrary contained herein, any indenture or agreement that governs the rights of the DIP Agent and the Term Loan Agent shall continue in effect to allow the DIP Agent or the Term Loan Agent, as applicable, to (A) enforce its rights, Claims, and interests (and those of any predecessor or successor thereto) vis-à-vis any parties other than the Debtors, (B) receive distributions under the Plan and to distribute them to Holders of Allowed DIP Facility Claims and Term Loan Claims, as applicable, in accordance with the terms of such agreements, (C) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders of Allowed DIP Facility Claims and Term Loan Claims, as applicable, including any rights to priority of payment and/or to exercise charging liens, and (D) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to the DIP Agent, the Term Loan Agent, or Holders of DIP Facility Claims and Term Loan Claims under the Plan, as applicable.

K.       **Corporate Action.**

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Debtors or the Plan Administrator, as applicable) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Plan Administrator, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions provided for under the Plan, the Debtors shall be deemed to have been dissolved and terminated, except as necessary to satisfy their obligations under the Plan.  The directors, managers, and officers of the Debtors shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate to implement the provisions of this Article IV.K.

The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under applicable nonbankruptcy Law.

L.       **Dissolution of the Board of the Debtors.**

As of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs other than matters substantially related to the transactions described in Article IV.C.1 of the Plan.  Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (i) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable Laws of the applicable state(s) of formation; and (ii) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtors' certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their affiliates.

**M.    Release of Liens.**

Except as otherwise expressly provided herein, on the Effective Date, all Liens on any property of any Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors shall automatically be discharged and released.

**N.    Effectuating Documents; Further Transactions.**

The Debtors and the officers and members thereof are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

**O.    Exemption from Certain Taxes and Fees.**

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, the Sale Transaction, or the Sale Transaction Documentation or pursuant to:  (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**P.    Causes of Action.**

Pursuant to the Sale Transaction Documentation, the Debtors assigned and transferred to the Purchaser all of the Transferred Causes of Action pursuant to the Sale Transaction Documentation in connection with the Sale Transaction.  For the avoidance of doubt, the Debtors or the Plan Administrator, as applicable, will retain the right to enforce the terms of the Sale Transaction Documentation.  Any Retained Causes of Action shall remain with the Debtors and shall vest with the Plan Administrator as of the Effective Date.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any such Cause of Action against them as any indication that the Debtors will not pursue any and all available Causes of Actions against them.  No preclusion doctrine, including the doctrines of *res judicata*, collateral

estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

**Q.      Closing the Chapter 11 Cases**.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Debtors or Plan Administrator, as applicable, shall be permitted to close all of the Chapter 11 Cases of the Debtors except for the Chapter 11 Case of Akorn, and any other Debtor identified in the Description of Transaction Steps, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Akorn, irrespective of whether such Claim(s) were filed against a Debtor whose Chapter 11 Case was closed.

When all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Debtors or Plan Administrator, as applicable, shall seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.**

Except as otherwise provided herein or provided in the Sale Transaction Documentation, each Executory Contract and Unexpired Lease (other than any Executory Contract or Unexpired Lease previously rejected, assumed, or assumed and assigned), any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed and assigned to the Plan Administrator, or other Entity, in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned to the Plan Administrator, or other Entity, pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction following the consummation thereof; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; or (6) is the Sale Transaction Documentation.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption and assignment of the Executory Contracts or Unexpired Leases as provided in the Sale Transaction Documentation and the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Plan Administrator, as applicable, no later than thirty (30) days after the effective date of the rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the

Bankruptcy Court and served on the Debtors or, after the Effective Date, the Plan Administrator, as applicable, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were required to be but were not timely Filed shall not (i) be treated as a creditor with respect to such Claim, (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (iii) participate in any distribution in the Chapter 11 Cases on account of such Claim. Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court.

**C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed by the Debtors as set forth in Article V.A, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of such Cure Costs in Cash on or about the Effective Date, subject to the limitations described below and set forth in Article IV.C herein, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (i) the Cure Costs, (ii) the ability of any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. **All liabilities reflected in the Schedules and any Proof of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court**.

**D.    D&O Policies.**

The D&O Policies shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Policies including the coverage for defense and indemnity under any of the D&O Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Policies.

**E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

**F.        Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Contracts and Leases List, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**G.        Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.        Timing and Calculation of Amounts to Be Distributed.**

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against or Allowed Interest in, as applicable, the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Disbursing Agent on behalf of the Debtors, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

**B.        Rights and Powers of the Disbursing Agent.**

**1.        Powers of the Debtors and the Disbursing Agent.**

Except as otherwise set forth herein, all distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter by the Debtors or the Disbursing Agent (or its designee(s)), the timing of which shall be subject to the reasonable discretion of the Debtors or the Disbursing Agent, as applicable.

On and after the Effective Date, the Disbursing Agent and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any General Unsecured Claim, Priority Claim, or Other Secured Claim, subject to the terms hereof.

The Debtors and the Disbursing Agent, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Disbursing Agent is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.

2. **Fees of Disbursing Agent and Expenses Incurred On or After the Effective Date.**

Except as otherwise ordered by the Bankruptcy Court, the reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Disbursing Agent in connection with such person's duties shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court in Cash from the Wind-Down Amount.

C. **Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

1. **Record Date for Distribution.**

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed and the Debtors and the Disbursing Agent, or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2. **Delivery of Distributions on DIP Facility Claims.**

Notwithstanding any provision of the Plan to the contrary, to the extent the DIP Agent is not the Purchaser, all distributions on account of Allowed DIP Facility Claims shall be governed by the documents governing the DIP Facility and such distribution shall be deemed completed when made to the DIP Agent, which shall be deemed the Holder of their respective portion of the Allowed DIP Facility Claims for purposes of distributions to be made hereunder. The DIP Agent shall hold or direct such distributions for the benefit of their respective Holders of Allowed DIP Facility Claims. As soon as practicable following compliance with the requirements set forth in this Article VI, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of their respective Holders of DIP Facility Claims.

3. **Delivery of Distributions on Term Loan Claims.**

Notwithstanding any provision of the Plan to the contrary, all distributions on account of Allowed Term Loan Claims shall be governed by the Term Loan Credit Agreement and shall be deemed completed when made to the Term Loan Agent, which shall be deemed the Holder of their respective portion of the Allowed Term Loan Claims for purposes of distributions to be made hereunder. The Term Loan Agent shall hold or direct such distributions for the benefit of their respective Holders of Allowed Term Loan Claims. As soon as practicable following compliance with the requirements set forth in this Article VI, the Term Loan Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of their respective Holders of Term Loan Claims.

4. **Delivery of Distributions in General.**

(a) Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims or Disputed Interests that are not Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims, or Allowed Interests, as applicable, shall, in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim agree otherwise.

(b) Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Disputed Interest, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, other than with respect to Professional Fee Claims, until all Disputed

Claims held by the Holder of such Disputed Claim or Disputed Interest have become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

(c)     Distributions.

On and after the Effective Date, the Debtors shall make the distributions required to be made on account of Allowed Claims or Allowed Interests under the Plan. Any distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim or Interest that would have been entitled to receive that distribution is not an Allowed Claim or Allowed Interest on such date, shall be held by the Debtors or the Disbursing Agent in reserve in accordance with the Plan, as applicable, and distributed on the next Subsequent Distribution Date that occurs after such Claim or Interest is Allowed. Subject to Article VI.E, no interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to the Plan.

**5.    Minimum; *De Minimis* Distributions.**

No Cash payment of less than $100, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest, and each Claim or Interest to which this limitation applies shall be discharged pursuant to Article VIII of the Plan, and its Holder shall be forever barred pursuant to Article VIII of the Plan from asserting that Claim against or Interest in the Debtors or their property.

**6.    Undeliverable Distributions and Unclaimed Property.**

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent, as applicable, has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Debtors or the Disbursing Agent, as applicable, automatically and without need for a further order by the Bankruptcy Court and the Claim or Interest of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

**7.    Manner of Payment Pursuant to the Plan.**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, Automated Clearing House, credit card, or wire transfer, or as otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

**D.    Compliance with Tax Requirements/Allocations.**

In connection with the Plan, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. All Persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim or Allowed Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

**E.**     **Allocation of Plan Distributions Between Principal and Interest.**

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

**F.**     **Setoffs and Recoupment.**

Except as otherwise expressly provided herein, the Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.  Notwithstanding anything to the contrary in the Plan, nothing in the Plan or the Plan Supplement shall discharge, release, impair, or otherwise preclude any valid right of setoff or recoupment of the Debtors' customers under applicable Law or an applicable contract that is assigned to the Purchaser, which valid right of setoff or recoupment shall continue against the Purchaser following the Effective Date.

**G.**     **Claims Paid or Payable by Third Parties.**

**1.**     **Claims Paid by Third Parties.**

The Debtors shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Debtors to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

**2.**     **Claims Payable by Insurance, Third Parties.**

No distributions under the Plan shall be made on account of a Claim that is payable pursuant to one of the Debtors' insurance policies, including the D&O Policies, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such insurance policy, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtors' insurers or non-Debtor-payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**3.**     **Applicability of Insurance Policies.**

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies (including the D&O Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

**H.**     **Indefeasible Distributions.**

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

## ARTICLE VII
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

**A.      Allowance of Claims and Interests.**

On and after the Effective Date, the Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date, and, with respect to any Claims or Interests that constitute Assumed Liabilities, the Purchaser shall have and retain any and all rights, defenses, and other Transferred Causes of Action that the Debtors had with respect to such Claims or Interests immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

**B.      Claims and Interests Administration Responsibilities.**

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims and Interests:  (i) to File, withdraw, or litigate to judgment objections to Claims and Interests; (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**C.      Estimation of Claims and Interests.**

As of the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Claim or Interest pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code and/or Bankruptcy Rule 3012, for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim or Interest is estimated.  Each of the foregoing Claims or Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims or Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D.      Adjustment to Claims or Interests without Objection.**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors, without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  The Debtors shall provide any Holder of such a Claim or Interest with fourteen (14) days' notice prior to the Claim or Interest being adjusted or expunged from the Claims Register as the result as the result of a Claim or Interest being paid, satisfied, amended or superseded.

**E.      Disallowance of Claims.**

Other than with respect to Claims Allowed under the Plan, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**F.      Amendments to Claims.**

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided that* a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late filing.

**G.      No Distributions Pending Allowance.**

If an objection to a Claim or Interest or any portion thereof is Filed as set forth in Article VII of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

**H.      Distributions After Allowance.**

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.B of the Plan.

**I.      Single Satisfaction of Claims.**

Holders of Allowed Claims may assert such Claims against the Debtor(s) obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no

case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.      Settlement, Compromise, and Release of Claims and Interests.**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

**B.      Discharge of Claims and Termination of Interests.**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Plan Administrator), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**C.      Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**D.      Release of Liens.**

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and**

discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. In addition, the Term Loan Agent and the DIP Agent shall be authorized to execute and deliver all documents reasonably requested by the Debtors or the Plan Administrator to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

E.      **Releases by the Debtors.**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, their Estates, the Plan Administrator, and the Acquired Entities from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, or their Estates, or the Plan Administrator, or the Acquired Entities would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in a Debtor, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Standstill Agreement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the DIP Loan Documents, the Disclosure Statement, the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Loan Documents, the Sale Transaction Documentation, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between and Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence. Notwithstanding the inclusion of any Released Parties as a potential party to any Transferred Causes of Action or Retained Causes of Action, such parties shall remain Released Parties.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, *and further*, shall constitute the Bankruptcy Court's finding that the releases herein are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors asserting any claim released by the releases herein against any of the Released Parties.

**F.      Releases by Holders of Claims and Interests.**

        As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have released and discharged each Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Standstill Agreement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the DIP Loan Documents, the Disclosure Statement, or the Plan, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan, the Chapter 11 Cases, the DIP Loan Documents, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

        Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

        Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the Releasing Parties; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after notice and opportunity for hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

**G.      Exculpation.**

        Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the DIP Loan Documents, the Sale Transaction, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the DIP Loan Documents, the Disclosure Statement or the Plan, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that constitutes actual fraud, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely

upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    **Injunction.**

Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan shall be discharged pursuant to the Plan, or are subject to Exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties (to the extent of the Exculpation provided pursuant to the Plan with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors until the closing of these Chapter 11 Cases.

I.    **Protection Against Discriminatory Treatment.**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or Acquired Entities or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, the Acquired Entities, or another Entity with whom the Debtors or Acquired Entities have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

J.    **Recoupment.**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.    **Subordination Rights.**

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting

to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

**L.      Reimbursement or Contribution.**

        If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**A.      Conditions Precedent to Confirmation.**

        It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan: (i) the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and (ii) the Sale Transaction Documentation shall not have been terminated in accordance with its terms.

**B.      Conditions Precedent to the Effective Date.**

        It shall be a condition to Consummation that the following conditions shall have been satisfied or waived pursuant to the provisions of the Plan:

        1.      the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

        2.      the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors and the Required Consenting Term Loan Lenders, and which shall have become a Final Order that has not been stayed or modified or vacated and shall:

                (a)      authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, and other agreements or documents created in connection with the Plan;

                (b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

                (c)      authorize the implementation of the Plan in accordance with its terms; and

                (d)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

        3.      the Bankruptcy Court shall have entered the Sale Order;

        4.      the occurrence of the Closing (as such term is defined and described in the Sale Transaction Documentation);

5.      there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other governmental unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan;

6.      all governmental and material third party approvals and consents, including Bankruptcy Court approval, that are necessary to implement the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods (including all applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended) shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

7.      the Final DIP Order shall have been entered by the Bankruptcy Court, and shall have become a Final Order;

8.      the Debtors shall not be in default under the Final DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the Final DIP Order) and the DIP Facility shall remain in full force and effect and shall not have been terminated, and the parties thereto shall otherwise be in compliance therewith;

9.      the Restructuring Support Agreement shall not have terminated as to all parties thereto and shall remain in full force and effect and the Debtors and other parties then party thereto shall be in compliance therewith;

10.      the Debtors shall have implemented the Restructuring Transactions, and all transactions contemplated by the Restructuring Support Agreement, in a manner consistent in all respects with the Restructuring Support Agreement and the Plan;

11.      each document or agreement constituting the Definitive Documents (as defined in the Restructuring Support Agreement) shall have been execute and/or effectuated and shall be in form and substance consistent with the Restructuring Support Agreement, including, without limitation, any consent rights included therein;

12.      the Debtors shall have paid or reimbursed all fees and out-of-pocket expenses of the Consenting Term Loan Lenders (as applicable), including the fees and expenses of the Ad Hoc Group Professionals;

13.      with respect to all actions, documents and agreements necessary to implement the Plan: (a) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (b) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (c) such documents and agreements shall have been effected or executed, and in each case all such actions, documents and agreements shall be consistent with the Restructuring Support Agreement, including, without limitation, any consent rights included therein;

14.      all material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained;

15.      the establishment of a Professional Fee Escrow Account funded in the amount of estimated accrued but unpaid Professional fees incurred by the legal counsel and other advisors to the Debtors and any statutory committees during the Chapter 11 Cases; and

16.      the Wind-Down Amount has been funded in accordance with, and as limited by, the terms of the Sale Transaction Documentation and the Restructuring Support Agreement.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**C.     Waiver of Conditions.**

The conditions to Consummation set forth in Article IX.B may be waived by the Debtors with the consent of the Required Consenting Term Loan Lenders and, as applicable, the DIP Lenders, at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

**D.     Substantial Consummation.**

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**E.     Effect of Non-Occurrence of Conditions to the Effective Date.**

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

**ARTICLE X**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.     Modification and Amendments.**

Subject to the Restructuring Support Agreement and the limitations contained in the Plan, the Debtors, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to the Restructuring Support Agreement and certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.  Notwithstanding anything to the contrary herein, the Debtors shall not amend or modify the Plan in a manner inconsistent with the Restructuring Support Agreement or the consent rights (if any) set forth in the DIP Loan Documents.

**B.     Effect of Confirmation on Modifications.**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.     Revocation or Withdrawal of the Plan.**

Subject to the terms of the Sale Transaction Documentation, the Debtors, with the consent of the Required Consenting Term Loan Lenders, reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then:  (i) the Plan with respect to such Debtor shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with

39

respect to such Debtor, shall be deemed null and void; and (iii) nothing contained in the Plan with respect to such Debtor shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, their Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.  For the avoidance of doubt, except as provided in the Restructuring Support Agreement, nothing in the Plan shall be construed as requiring termination or avoidance of the Restructuring Support Agreement upon non-occurrence of the Effective Date (subject, in all respects, to any consent, termination, or other rights of the Consenting Term Loan Lenders under the Restructuring Support Agreement) or as otherwise preventing the Restructuring Support Agreement from being effective in accordance with its terms.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Assumed Contracts and Leases List or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7. Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.G;

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     Adjudicate any and all matters related to the enforcement of the Restructuring Support Agreement;

18.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

23.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

24.     Enforce all orders previously entered by the Bankruptcy Court;

25.     Hear any other matter not inconsistent with the Bankruptcy Code; and

26.     Enter an order concluding or closing the Chapter 11 Cases.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**A.    Immediate Binding Effect.**

Subject to Article VIII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**B.    Additional Documents.**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement.  The Debtors, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.    Payment of Statutory Fees.**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**D.    Dissolution of Statutory Committees.**

On the Effective Date, any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

Following the Effective Date, the Committee shall remain in place with respect to the Debtors solely for the limited purpose of addressing (i) all final fee applications for all Professionals, and (ii) the resolution of any appeals of the Confirmation Order.  Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

**E.    Reservation of Rights.**

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**F.**     **Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**G.**     **Service of Documents.**

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

>    **If to the Debtors:**
>
>    Akorn, Inc.
>    1925 W. Field Court, Suite 300
>    Lake Forest, Illinois 60045
>    Attention:  Joseph Bonaccorsi
>    Email address:  joe.bonaccorsi@akorn.com
>
>
>    with copies to:
>
>    Kirkland & Ellis LLP
>    300 North LaSalle Street
>    Chicago, Illinois 60654
>    Attention:  Patrick J. Nash, Jr., P.C., Gregory F. Pesce, and Christopher M. Hayes
>    Email addresses:  patrick.nash@kirkland.com
>                      gregory.pesce@kirkland.com
>                      christopher.hayes@kirkland.com
>
>    and
>
>    Kirkland & Ellis LLP
>    601 Lexington Avenue
>    New York, New York 10022
>    Attention:  Nicole L. Greenblatt, P.C.
>    Email addresses: nicole.greenblatt@kirkland.com
>
>    **[If to the Committee:]**
>
>    [●]
>
>    **If to the Consenting Term Loan Lenders:**
>
>    To each Consenting Term Loan Lender at the addresses or e-mail addresses set forth in the Consenting Term Loan Lender's signature page to the Restructuring Support Agreement (or to the signature page to a joinder or transfer agreement in the case of any Consenting Term Loan Lender that becomes a party thereto after the Restructuring Support Agreement effective date).
>
>    With copies to:
>
>    Gibson, Dunn & Crutcher LLP
>    200 Park Avenue
>    New York, New York 10166
>    Attention: Scott J. Greenberg and Steven A. Domanowski

Email addresses:  sgreenberg@gibsondunn.com
                  sdomanowski@gibsondunn.com

and

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Attention:  Robert S. Brady
Email addresses:  rbrady@ycst.com

After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.     Enforcement of Confirmation Order.**

On and after the Effective Date, the Debtors and the Plan Administrator, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

**I.     Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order (including the injunction set forth in Article VIII.H shall remain in full force and effect in accordance with their terms).

**J.     Compensation and Benefits Programs.**

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall pay all compensation and benefit obligations under any present compensation, benefit, or incentive programs, including any programs approved pursuant to an Order of the Bankruptcy Court, other than any compensation, benefit, and incentive obligations assumed by the Purchaser pursuant to the Sale Transaction Documentation.

**K.     Entire Agreement.**

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**L.     Exhibits.**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website www.kccllc.net/akorn or the Bankruptcy Court's website at www.deb.uscourts.gov.

**M.      Certain Consent Rights.**

Notwithstanding anything in the Plan to the contrary, any and all consent rights of (x) the Required Consenting Term Loan Lenders and the DIP Lenders set forth in the Restructuring Support Agreement, (y) the DIP Agent and the DIP Lenders set forth in the DIP Loan Documents (if any), and (z) the Debtors with respect to the form and substance of the Plan and the Plan Supplement are fully enforceable as if stated in full herein until such time as the Restructuring Support Agreement is terminated in accordance with its terms.  In case of a conflict between the consent rights of the Required Consenting Term Loan Lenders, the DIP Agent, the DIP Lenders, or the Debtors that are set forth in the Restructuring Support Agreement or the DIP Loan Documents (if any) with those parties' consent rights that are set forth in the Plan or the Plan Supplement, the consent rights in the Restructuring Support Agreement or the DIP Loan Documents (if any) (as applicable) shall control.

**N.      Nonseverability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided that* at the request of the Debtors, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Debtors.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors, the Required Consenting Term Loan Lenders, the DIP Lenders, and the DIP Agent (to the extent of its consent right set forth in the DIP Loan Documents (if any)); and (iii) nonseverable and mutually dependent.

**O.      Votes Solicited in Good Faith.**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

**P.      Waiver.**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully submitted,

Dated:  May 26, 2020                        Akorn, Inc.
                                                            on behalf of itself and all other Debtors

                                                            /s/ *Joseph Bonaccorsi*
                                                            Name:        Joseph Bonaccorsi
                                                            Title:          Executive Vice President and General Counsel
                                                            Company:   Akorn, Inc.