## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AKORN, INC., *et al.*,[1] | ) Case No. 20-11177 (KBO) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: June 24, 2020 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: July 1, 2020 at 2:30 p.m. (ET)** |
| | ) |

**DEBTORS' MOTION
FOR ENTRY OF AN ORDER
(I) APPROVING THE ADEQUACY OF
THE DISCLOSURE STATEMENT, (II) APPROVING
THE SOLICITATION AND NOTICE PROCEDURES WITH
RESPECT TO CONFIRMATION OF THE JOINT CHAPTER 11 PLAN
OF AKORN, INC. AND ITS DEBTOR AFFILIATES, (III) APPROVING
THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH,
AND (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion:

### Relief Requested

1.     The Debtors seek entry of an order (the "Order"), substantially in the form attached

hereto as **Exhibit A**, granting the following relief and such other relief as is just and proper:

   a.     ***Disclosure Statement***.  Approving the *Disclosure Statement for Joint Chapter 11 Plan of Akorn, Inc. and Its Debtor Affiliates*, substantially in the form attached to the Order as **Schedule 1**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

(the "<u>Disclosure Statement</u>"),[2] as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.    ***Solicitation and Voting Procedures***.    Approving procedures for: (i) soliciting, receiving, and tabulating votes to accept or reject the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "<u>Solicitation and Voting Procedures</u>"), substantially in the form attached to the Order as **Schedule 2**;

c.    ***Ballots***.    Approving the Term Loan Claims ballots, General Unsecured Claims ballots, Section 510(b) Claims ballots, Akorn Interests ballots, Beneficial Holder ballots, and Master ballots (collectively, the "<u>Ballots</u>"), substantially in the forms attached to the Order as **Schedules 3A**, **3B**, **3C**, **3D**, **3E** and **3F**, respectively;

d.    ***Nonvoting Status Notices***.    Approving:  (i) the form of notice applicable to Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; and (ii) the form of notice applicable to Holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (each, a "<u>Nonvoting Status Notice</u>"), substantially in the forms attached to the Order as **Schedules 4**, **4A**, **5**, and **5A** respectively;

e.    ***Solicitation Packages***.    Approving the solicitation materials and documents included in the solicitation packages (the "<u>Solicitation Packages</u>") that will be sent to, among others, Holders of Claims and Interests entitled to vote to accept or reject the Plan;

f.    ***Cover Letter***.  Approving the form of letter (the "<u>Cover Letter</u>") that the Debtors will send to Holders of Claims and Interests entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form attached to the Order as **Schedule 6**;

g.    ***Confirmation Hearing Notice***.  Approving the form and manner of notice of the hearing to be held by the Court to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>," and the notice thereof, the "<u>Confirmation Hearing Notice</u>") pursuant to section 1129 of the Bankruptcy Code, substantially in the form attached to the Order as **Schedule 7**;

---

[2]    Capitalized terms used, but not otherwise defined herein have the meanings ascribed to them in the *Joint Chapter 11 Plan of Akorn, Inc. and Its Debtor Affiliates* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "<u>Plan</u>"), a copy of which is attached as <u>Exhibit A</u> to the Disclosure Statement.

h.  ***Plan Supplement Notice***.  Approving the notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as **Schedule 8** (the "Plan Supplement Notice");

i.  ***Rejection Notice***.[3]  Approving the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be rejected pursuant to the Plan (the "Rejection Notice"), substantially in the form attached to the Order as **Schedule 9**; and

j.  ***Confirmation Timeline***.  Establishing certain dates and deadlines with respect to confirmation of the Plan, subject to modification as necessary.

2.  On May 21, 2020, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (A) Authorizing and Approving Bidding Procedures, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Establishing Notice and Procedures for the Assumption and Assignment of Certain Executory Contracts and Leases, and (E) Granting Related Relief* [Docket No. 18] (the "Bidding Procedures Motion"), which seeks entry of an order (the "Bidding Procedures Order") establishing certain dates and deadlines in connection with the Auction and Sale as follows:[4]

| Event or Deadline | Date and Time |
|---|---|
| Bid Deadline | August 3, 2020 |
| Auction (If Necessary) | August 10, 2020 |
| Contract Objection Deadline | August 15, 2020 |
| Sale Objection Deadline | August 15, 2020 |
| Sale Hearing | August 20, 2020 |

---

[3]  A process for serving notice to all counterparties to Executory Contracts and Unexpired Leases that will be assumed or assumed and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) in connection with the Sale was included in the Assumption Procedures (the "Assumption Procedures") submitted as part of the Bidding Procedures Motion.  Accordingly, such counterparties shall receive notice in accordance with the Assumption Procedures as set forth in the Bidding Procedures Order.

[4]  Capitalized terms in the below chart shall have the meanings ascribed to them in the Bidding Procedures Motion or proposed Bidding Procedures Order, as applicable.

3.      By this motion, the Debtors seek to establish the following additional dates and deadlines in connection with the approval of the Disclosure Statement and Plan Confirmation:

| Event | Date and Time | Description |
|---|---|---|
| **Voting Record Date** | **July 1, 2020.** | Date for determining (i) which Holders of Claims and Interests in the Voting Classes (as defined herein) are entitled to vote to accept or reject the Plan and receive Solicitation Packages in connection therewith and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the holder of a respective Claim (the "Voting Record Date"). |
| **Solicitation Deadline** | **As soon as practicable after entry of the Disclosure Statement Order, but in no event later than five (5) business days thereafter.** | The deadline for distributing Solicitation Packages, including Ballots, to Holders of Claims and Interests entitled to vote to accept or reject the Plan (the "Solicitation Deadline"). |
| **Publication Deadline** | **Within five (5) business days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter.** | The date by which the Debtors will submit the Confirmation Hearing Notice in a format modified for publication (the "Publication Notice"). |
| **3018 Motion Deadline** | **Ten (10) days from the later of the (a) mailing of the Confirmation Hearing Notice and (b) filing of a claim objection.** | The deadline by which creditors seeking to have a claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) must file a motion (a "3018 Motion"). |
| **3018 Motion Objection Deadline** | **Ten (10) days prior to the Voting Deadline.** | The deadline by which the Debtors or other parties in interest must file objections to any 3018 Motions. |
| **Voting Deadline** | **August 15, 2020, at 5:00 p.m., prevailing Eastern Time.** | The date by which *all* Ballots must be properly executed, completed, and delivered (the "Voting Deadline"), so that they are ***actually received*** by Kurtzman Carson Consultants LLC (the "Notice and Claims Agent"). |
| **Confirmation Objection Deadline** | **August 15, 2020, at 4:00 p.m., prevailing Eastern Time.** | The deadline by which objections to the Plan must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "Confirmation Objection Deadline"). |
| **Deadline to File Voting Report** | **Two (2) business days prior to the Confirmation Hearing, at 12:00 p.m., prevailing Eastern Time.** | Date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court. |

| Event | Date and Time | Description |
|---|---|---|
| **Deadline to File Confirmation Brief and Confirmation Objection Reply / Statement(s) in Support of Confirmation** | **Two (2) business days prior to the Confirmation Hearing, at 12:00 p.m., prevailing Eastern Time.** | Date by which the Debtors shall file their brief in support of Confirmation of the Plan (the "Confirmation Brief Deadline") and deadline by which replies to objections to the Plan or other statements in support must be filed with the Court (the "Confirmation Objection Reply Deadline"). |
| **Confirmation Hearing** | **August 20, 2020, at [●] p.m., prevailing Eastern Time.** | Date and time for hearing at which the Court will consider Confirmation of the Plan. |

## Jurisdiction and Venue

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, rules 2002, 3016, 3017, 3018, and 3020 of the Bankruptcy Rules, and Local Rules 2002-1 and 3017-1.

## Background

7.      Akorn, Inc., together with its Debtor and non-Debtor subsidiaries (collectively, "Akorn") is a specialty pharmaceutical company that develops, manufactures, and

markets generic and branded prescription pharmaceuticals, branded as well as private-label over-the-counter consumer health products, and animal health pharmaceuticals.  Akorn is an industry leader in the development, manufacturing, and marketing of specialized generic pharmaceutical products in alternative dosage forms.  Headquartered in Lake Forest, Illinois, Akorn has approximately 2,180 employees worldwide and maintains a global manufacturing presence, with pharmaceutical manufacturing facilities located in Illinois, New Jersey, New York, Switzerland, and India.  Akorn's operations generated approximately $682 million in revenue and approximately $124 million of Adjusted EBITDA in 2019.  The Debtors commenced these chapter 11 cases to conduct an orderly sale process that will position the Debtors for sustained future success by right-sizing their balance sheet and addressing their litigation overhangs.

8.      On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 57].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated as of the date hereof.

## Plan Summary

9.      The Debtors commenced these chapter 11 cases to take the next step in marketing a going-concern sale of their businesses—specifically, a value-maximizing, in-court sale process that will publicly "market test" the value of their business—to address the Debtors' capital structure needs and litigation liabilities in a single forum.  To that end, prior to the Petition Date, the Debtors and approximately 80% in principal amount of the Term Loan Lenders entered into a restructuring support agreement (the "RSA") that solidifies their support for a sale transaction

(whether to their existing term loan lenders or a third party) and provides for the orderly wind-down of the Debtors' estates and sufficient capital to fund the Debtors' operations until consummation of a transaction. To execute the value-maximizing restructuring contemplated by the RSA, certain of the RSA parties have also agreed to provide $30 million of debtor-in-possession ("DIP") financing to fund the chapter 11 cases and sale process.

10.    To facilitate the swift resolution of these chapter 11 cases, the Debtors are pursuing confirmation of a wind-down plan on substantially the same timeline as the process for market testing the Stalking Horse Bid. To that end, contemporaneously herewith, the Debtors have filed the Plan and Disclosure Statement. The Plan and Disclosure Statement contemplate the distribution of proceeds (if any) from the Sale to Holders of Allowed Claims and Interests in each case, generally in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that the Plan will maximize value for all stakeholders and is in the best interests of the Debtors' Estates and their stakeholders, and therefore the Debtors seek to confirm the Plan.

11.    The Plan classifies Holders of Claims or Interests into the following Classes of Claims and Interests for all purposes including with respect to voting on the Plan, pursuant to section 1126 of the Bankruptcy Code. The following chart represents the Classes of Claims and Interests under the Plan:[5]

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |

---

[5]    The Plan constitutes a separate chapter 11 plan for each Debtor. The classifications set forth in Classes 1–8 shall be deemed to apply to each Debtor, as applicable. The Debtors reserve the right to modify the Plan in accordance with the terms thereof, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Section 510(b) Claims | Impaired | Entitled to Vote |
| Class 8 | Akorn Interests | Impaired | Entitled to Vote |

12.     The Plan provides for the following distributions to be made to the Debtors'

creditors and equity holders:

| Class | Claim/Interest | Treatment of Claims and Interests |
|-------|----------------|-----------------------------------|
| Class 1 | Other Priority Claims | Except to the extent that a Holder of an Allowed Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired, in each case on the Effective Date. |
| Class 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the election of the Debtors, in consultation with the Required Consenting Term Loan Lenders and in each case, on the Effective Date:<br><br>(i)     payment in full in Cash of such Allowed Other Secured Claim;<br><br>(ii)    the Collateral securing such Allowed Other Secured Claim;<br><br>(iii)   Reinstatement of such Allowed Other Secured Claim, notwithstanding any contractual provision or applicable non-bankruptcy Law that entitles the holder of such claim to demand or to receive payment prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of default; or<br><br>(iv)    such other treatment rendering such Allowed Other Secured Claim Unimpaired. |

| Class | Claim/Interest | Treatment of Claims and Interests |
|---|---|---|
| Class 3 | Term Loan Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of Allowed Term Loan Claim shall receive on the Effective Date either:<br><br>(i)　In the event the Sale Transaction is not a Term Loan Credit Bid Transaction, its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery; or<br><br>(ii)　In the event the Sale Transaction is a Term Loan Credit Bid Transaction, on account of the Allowed Term Loan Claims *less* the Term Loan Credit Bid Amount, its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.<br><br>For the avoidance of doubt, in the event the Sale Transaction is a Term Loan Credit Bid Transaction, the Term Loan Lenders shall be entitled to immediate possession of the Purchased Assets as and solely to the extent set forth in the Sale Order, with no further order of the Bankruptcy Court required. |
| Class 4 | General Unsecured Claims | In full and final satisfaction, compromise, settlement, release, and discharge of its Claim (unless the applicable Holder agrees to a less favorable treatment), each Holder of an Allowed General Unsecured Claim that is not assumed by the Purchaser shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery.<br><br>For the avoidance of doubt, all General Unsecured Claims that are assumed by the Purchaser pursuant to the Sale Transaction Documentation shall be satisfied by the Purchaser in full in Cash following the Effective Date in the ordinary course of business; *provided that* any Allowed General Unsecured Claim that has been expressly assumed by the Purchaser under the Sale Transaction shall not be an obligation of the Debtors as of or after the Effective Date. |
| Class 5 | Intercompany Claims | In full and final satisfaction of each Allowed Intercompany Claim, each Allowed Intercompany Claim, unless otherwise provided for under the Plan and subject to the Description of Transaction Steps, will either be Reinstated, distributed, contributed, set off, settled, cancelled and released or otherwise addressed at the option of the Debtors, in consultation with the Required Consenting Term Loan Lenders; provided, that no distributions shall be made on account of any such Intercompany Claims. |
| Class 6 | Intercompany Interests | In full and final satisfaction of each Allowed Intercompany Interest, subject to the Description of Transaction Steps, each Intercompany Interest shall be Reinstated solely to maintain the Debtors' corporate structure. |

| Class | Claim/Interest | Treatment of Claims and Interests |
|-------|----------------|-----------------------------------|
| Class 7 | Section 510(b) Claims | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed Class 7 Section 510(b) Claim shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery; *provided that* for purposes of receiving the treatment provided herein, each Holder of an Allowed Section 510(b) Claim shall be treated as if such Holder held a number of Allowed Class 8 Akorn Interests equal in value to the amount of its Allowed Section 510(b) Claim. |
| Class 8 | Akorn Interests | On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of Allowed Class 8 Akorn Interests shall receive its Pro Rata share of the Distributable Proceeds, if any, pursuant to the Waterfall Recovery. |

13.    Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims and Interests in Classes 3, 4, 7, and 8 (each, a "Voting Class," and collectively, the "Voting Classes"). The Debtors are not proposing to solicit votes from Holders of Claims or Interests in Classes 1, 2, 5, or 6 (each, a "Non-Voting Class," and collectively, the "Non-Voting Classes").

## Basis for Relief

### I.    The Court Should Approve the Disclosure Statement.

#### A.    The Standard for Approval of the Disclosure Statement.

14.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan. Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical

investor of the relevant class to make an informed judgment about
the plan.

11 U.S.C. § 1125(a)(1).

15.     The primary purpose of a disclosure statement is to provide all material information
that creditors and interest holders affected by a proposed plan need to make an informed decision
regarding whether or not to vote for the plan.  *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of
N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of
information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342
(8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the
information they need to decide whether to accept the plan."); *In re Phoenix Petrol., Co.*, 278 B.R.
385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide
'adequate information' to enable 'impaired' classes of creditors and interest holders to make an
informed judgment about the proposed plan and determine whether to vote in favor of or against
that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose
of a disclosure statement is to provide all material information which creditors and equity security
holders affected by the plan need in order to make an intelligent decision whether to vote for or
against the plan.").  Congress intended that such informed judgments would be needed to both
negotiate the terms of, and vote on, a plan of reorganization.  *See Century Glove, Inc.*, 860 F.2d
at 100.

16.     "Adequate information" is a flexible standard, based on the facts and circumstances
of each case.  11 U.S.C. § 1125(a)(1) ("'adequate information' means information of a kind, and
in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor
and the condition of the debtor's books and records"); *see also Oneida Motor Freight, Inc. v.
United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we

discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("the information required will necessarily be governed by the circumstances of the case").

17.    Courts in the Third Circuit acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court. *See, e.g.*, *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petroleum Co.*, 278 B.R. at 393 (same). Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix Petroleum Co.*, 278 B.R. at 393; *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court.") (internal citations omitted); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D. N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case.").

18.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a.    the events that led to the filing of a bankruptcy petition;

b.    the relationship of the debtor with its affiliates;

c.  a description of the available assets and their value;

d.  the debtor's anticipated future performance;

e.  the source of information stated in the disclosure statement;

f.  the debtor's condition while in chapter 11;

g.  claims asserted against the debtor;

h.  the estimated return to creditors under a chapter 7 liquidation of the debtor;

i.  the future management of the debtor;

j.  the chapter 11 plan or a summary thereof;

k.  financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.  information relevant to the risks posed to creditors under the plan;

m.  the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.  litigation likely to arise in a nonbankruptcy context; and

o.  tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case. *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also In re Phoenix Petroleum*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.    The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

19.    The Disclosure Statement provides "adequate information" to allow Holders of Claims and Interests in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including:

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Business Description and Background to the Chapter 11 Cases | An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure. | Article III |
| Events Leading Up to the Chapter 11 Cases | An overview of the Debtors' out-of-court restructuring efforts in response to liquidity constraints. | Article IV |
| Administration of the Chapter 11 Cases | A summary of the course of events in the chapter 11 cases. | Article V |
| Voting and Confirmation | Confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | Article VII |
| Solicitation and Voting Procedures | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article VII |
| Certain Risk Factors to be Considered Before Voting | Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article VIII |
| Material United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article IX |
| Recommendation of the Debtors | A recommendation by the Debtors that Holders of Claims and Interests in the Voting Classes should vote to accept the Plan. | Article X |

20.    Based on the foregoing, the Debtors respectfully submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims and Interests entitled to vote to accept or reject the Plan.  Accordingly, the

Debtors submit that the Disclosure Statement contains "adequate information" and, therefore, should be approved.

### C. The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.

21.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

22.     Article VIII.H of the Plan and Article VI.R of the Disclosure Statement describe in detail the entities subject to the Plan injunction and the acts that such entities are enjoined from pursuing after the Effective Date.  Moreover, Articles VIII.D, VIII.E and VIII.F of the Plan, as well as Articles VI.R.1., VI.R.2, and VI.R.3 of the Disclosure Statement each describe in detail the entities subject to the release provisions under the Plan and the Claims and Causes of Action so released.  Article VIII.G of the Plan and Article VI.R.4 of the Disclosure Statement also describe in detail the entities entitled to exculpation under the Plan.  Each of the foregoing sections is set forth conspicuously in bold font, making such sections clear to Holders of Claims and Interests. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan.

### II. The Court Should Approve the Solicitation and Voting Procedures, Including the Voting and Tabulation Procedures, the Materials, and the Timeline for Soliciting Votes on the Plan.

### A. The Standard for Approval of Voting and Tabulation Procedures.

23.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under section (e) of

this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c). Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures, which procedures include specific voting and tabulation requirements and processes (the "Voting and Tabulation Procedures"), as follows:

        *1.*     *Completion of Ballots.*

24.     To facilitate the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Voting and Tabulation Procedures provide that the Debtors not count a Ballot if it is, among other things, illegible, submitted by a holder of a Claim that is not entitled to vote on the Plan, unsigned, or not clearly marked. Further, the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

        *2.*     *General Ballot Tabulation and Voting Procedures.*

25.     The proposed Voting and Tabulation Procedures set forth specific criteria with respect to the general tabulation of Ballots, and voting procedures applicable to Holders of Claims and Interests. The Debtors believe that the proposed Voting and Tabulation Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of Holders of Claims and Interests entitled to vote to accept or reject the Plan and will create a

straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Voting and Tabulation Procedures are in the best interests of their estates, Holders of Claims and Interests, and other parties in interest, and that good cause supports the relief requested herein.

> **B.     The Court Should Approve the Forms of the Ballots.**

26.     In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared customized Ballots.  Although based on Official Form No. 314, the Ballots have been modified to (a) address the particular circumstances of these chapter 11 cases, and (b) include certain additional information that is relevant and appropriate for Claims in certain of the Voting Classes.  The proposed Ballots for each Voting Class are annexed as **Schedules 3A**, **3B**, **3C**, **3D**, **3E**, and **3F** to the Order, respectively.  The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

> **C.     The Court Should Approve the Form and Distribution of the Solicitation Packages and Cover Letter to Parties Entitled to Vote on the Plan.**

27.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and/or equity interests upon approval of a disclosure statement, including the plan or a court-approved summary of the plan, the disclosure statement approved by the court, and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

28.     In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims and Interests in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Deadline, the Debtors will cause the Solicitation

Packages to be distributed by first-class U.S. mail to those Holders of Claims and Interests in the

Voting Classes.  Each Solicitation Package will include the following materials:

     a.     a copy of the Solicitation and Voting Procedures;

     b.     a Ballot, together with detailed voting instructions and a pre-addressed, postage prepaid return envelope;

     c.     the Cover Letter;

     d.     the Disclosure Statement (and the exhibits attached thereto, including the Plan);

     e.     the Confirmation Hearing Notice;

     f.     the Order (without exhibits except as set forth above); and

     g.     any other materials as the Court may direct.

29.     The Debtors request that they be authorized to distribute the Plan, the Disclosure

Statement, and the Order (without exhibits, except for the Solicitation and Voting Procedures) to

Holders of Claims and Interests entitled to vote on the Plan in electronic format (i.e., on a CD-ROM

or flash drive).  Only the Ballots, the Cover Letter, and the Confirmation Hearing Notice will be

provided in paper format.  Distribution in this manner will translate into significant monetary

savings for the Debtors' estates (the Plan, the Disclosure Statement, and the Order, collectively,

total hundreds of pages) by reducing printing and postage costs.  Bankruptcy courts in this and

other districts have permitted debtors to transmit solicitation documents in electronic format in

other large chapter 11 cases in the interest of saving printing and mailing costs.

*See, e.g.*, *PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Dec. 11, 2019) (authorizing the

debtors to transmit solicitation documents in electronic format); *In re RMBR Liquidation, Inc.*,

No. 19-10234 (KG) (Bankr. D. Del. May 7, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488

(LSS) (Bankr. D. Del. May 2, 2019) (same); *In re ATD Corporation*, No. 18-12221 (KJC)

(Bankr. D. Del. Nov. 14, 2018) (same); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. June 4, 2018) (same).

30.    In certain instances, brokerage firms and banks or their agents (collectively, the "Nominees") hold Class 8 (Akorn Interests) rather than the individual holders themselves (collectively, the "Beneficial Holders").    To ensure proper tabulation of votes for all Akorn Interests in Class 8, the Notice and Claims Agent will deliver Solicitation Packages to holders of record as of the Voting Record Date, including Nominees.    Additionally, the Notice and Claims Agent will distribute Master Ballots and Beneficial Holder Ballots to Nominees under separate cover from the Solicitation Packages delivered to all other holders of record.    The Beneficial Holder Ballot will instruct each Beneficial Holder voting on the Plan through a Nominee to return the Beneficial Holder Ballot to the appropriate Nominee with sufficient time for such Nominee to timely cast votes to accept or reject the Plan on behalf of the Beneficial Holders or otherwise follow the directions of the Nominee.    The Notice and Claims Agent will then tabulate each of the Master Ballots and Beneficial Holder Ballots received.

31.    Additionally, the Debtors will provide (a) complete Solicitation Packages (excluding the Ballots) to the United States Trustee for the District of Delaware (the "U.S. Trustee") and (b) the Order (in electronic format) and the Confirmation Hearing Notice to all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Local Rules (the "2002 List") as of the Voting Record Date.    Any party that receives the materials in electronic format, but would prefer paper format, may contact the Notice and Claims Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense) by (a) visiting the Debtors' restructuring website at https://www.kccllc.net/akorn, (b) writing to:    Akorn Ballot Processing Center, c/o KCC, 222 N. Pacific   Coast   Highway,   Suite   300,   El   Segundo,   California   90245;   (c) emailing

AkornInfo@kccllc.com, and/or (d) calling the Debtors' Notice and Claims Agent at (877) 725-7539, (U.S. and Canada) or (424) 236-7247, (International).  Parties in interest may also obtain these documents and any other pleadings filed in the chapter 11 cases (for a fee) via PACER at https://ecf.deb.uscourts.gov.  The Debtors will not mail Solicitation Packages or other solicitation materials to Holders of Claims and Interests that have already been paid in full during the chapter 11 cases or that are expected to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court in the chapter 11 cases.

32.    The Debtors respectfully request that the Notice and Claims Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Packages, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims and Interests against the Debtors, (c) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

33.    In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website. Parties entitled to vote may cast an electronic Ballot and electronically sign and submit a Ballot instantly by utilizing the online balloting portal (which allows a holder to submit an electronic signature).  Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner, and the creditor's electronic

signature will be deemed to be immediately legally valid and effective. For the avoidance of doubt, Ballots submitted via the customized online balloting portal shall be deemed to contain an original signature.

34.    All votes to accept or reject the Plan must be cast by using the appropriate Ballot. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by:   (a) first class mail (using the reply envelope provided in the Solicitation Package or otherwise); (b) overnight courier; or (c) personal delivery, so that the Ballots are *actually received* by the Notice and Claims Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot.  Alternatively, Ballots may be submitted via an electronic Ballot through the Notice and Claims Agent's online electronic Ballot submission portal at www.kccllc.net/akorn by no later than the Voting Deadline.  For the avoidance of doubt, Beneficial Holders must properly execute, complete, and deliver Beneficial Holder Ballots to their respective Nominee in sufficient time so that the Nominees may verify, tabulate, and include such Beneficial Holder's voting instructions in a Master Ballot and return the Master Ballots, so that they are *actually received* by the Notice and Claims Agent no later than the Voting Deadline. Further, Nominees only are permitted to return Master Ballots to the Notice and Claims Agent via electronic mail.

### D.    The Court Should Approve the Notice of Confirmation Hearing.

35.    The Debtors will serve the Confirmation Hearing Notice on all known Holders of Claims and Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) by no later than July 16, 2020, which will provide all parties in interest with at least 28 days' notice of the Confirmation Objection Deadline and at least 35 days' notice of the Confirmation Hearing.   The Confirmation Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan

and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice and Claims Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Confirmation Objection Deadline; and (e) notice of the Confirmation Hearing and information related thereto.

36.     Bankruptcy Rule 2002(l) permits the court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(1).    Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Publication Notice within five business days following entry of the Order on one occasion in *The New York Times* (National Edition) and *PM360*.  The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Confirmation Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail. Additionally, service and publication of the Confirmation Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**E.        The Court Should Approve the Plan Supplement Notice.**

37.     The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan and in accordance with the Bankruptcy Code and Bankruptcy Rules) that the Debtors will file at least five (5) days prior to the Voting Deadline, (or such later date as may be approved by the Bankruptcy Court). *See* Plan at Art. I.A.88.  The Plan Supplement will include, among other materials, the following materials, as applicable:  (a) the Assumed Contracts and Leases List; (b) the identity of the Plan Administrator and the terms of compensation of the Plan Administrator; (c) Schedule of Retained

22

Causes of Action; (d) any transition services agreement between the Purchaser and the Debtors; (e) the Description of the Transaction Steps, if applicable; and (f) any other necessary documentation related to the Restructuring Transactions as contemplated by the Restructuring Support Agreement, each of which shall be consistent with the Restructuring Support Agreement and acceptable in form and substance to the Debtors and the Required Consenting Term Loan Lenders; *provided that*, through the Effective Date, the Plan Supplement, and the exhibits thereto may be amended or modified in accordance with this Plan and the Restructuring Support Agreement, provided that any such amendment or modification shall be reasonably acceptable in form and substance to the Debtors and the Required Consenting Term Loan Lenders.

38.     To ensure that all Holders of Claims and Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the Debtors file the Plan Supplement or as soon as practicable thereafter.  The Debtors respectfully submit that the Plan Supplement Notice should be approved.

**F.     The Court Should Approve the Form of Notices to Non-Voting Classes.**

39.     As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages and, instead, the Debtors propose that such parties receive a Nonvoting Status Notice.  Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims and Interests in Non-Voting Classes:

| Class | Status | Treatment |
|---|---|---|
| Classes 1 and 2 | Unimpaired—Conclusively Presumed to Accept | Will receive a Nonvoting Status Notice, substantially in the form attached to the Order as **Schedule 4** and **4A** in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims and Interests that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim.  As such, Holders of such Claims will receive a notice, substantially in the forms attached to the Order as **Schedules 5** and **5A** (which notice shall be served together with such objection). |

40.    Additionally, the Debtors will not provide the Holders of Class 5 (Intercompany Claims) or Class 6 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with solicitation.  Intercompany Claims, unless otherwise provided for under the Plan and subject to the Description of Transaction Steps, will either be Reinstated, distributed, contributed, set off, settled, cancelled, and released, or otherwise addressed at the option of the Debtors; *provided*, that no distributions shall be made on account of any such Intercompany Claims.  Intercompany Interests, subject to the Description of Transaction Steps, shall be Reinstated solely to maintain the Debtors' corporate structure.  Thus, Holders of Intercompany Claims and Intercompany Interests will not be entitled to vote to accept or reject the Plan.  Moreover, in light of the fact that the Debtors or affiliates of the Debtors hold the Intercompany Claims and Intercompany Interests and such Debtors and affiliates are presumed to accept the Plan, the Debtors request a waiver from any requirement to serve such Holders of Intercompany Claims and Intercompany Interests.

41.    Each of the Nonvoting Status Notices will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Notice and Claims Agent free of charge or the Court's website via

PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (c) notice of the Confirmation Objection Deadline; (d) notice of the Confirmation Hearing; and (e) information related thereto.

42.     The Debtors believe that the mailing of Nonvoting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims in the Non-Voting Classes.

43.     The Debtors further request that they not be required to mail Solicitation Packages or other solicitation materials to the following:  (a) Holders of Claims or Interests that have already been paid in full during these chapter 11 cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court; or (b) any party to whom a notice of the hearing regarding the Court's approval of the Disclosure Statement was sent, but was subsequently returned as undeliverable.

## G.     The Court Should Approve the Rejection Notice.

44.     Article V.A of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases will be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Plan Effective Date, unless such Executory Contract or Unexpired Lease:  (a) is specifically described in the Plan as to be assumed and assigned to the Plan Administrator, or other Entity, in connection with Confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned to the Plan Administrator, or other Entity, pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction following the consummation thereof; (d) is a

contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (e) is a D&O Policy; or (f) is the Sale Transaction Documentation.  *See* Plan at Art. V.A.

45.     To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Cure Costs) pursuant to the Plan, the Debtors will mail a Contract Assumption Notice or Rejection Notice,[6] as appropriate, within the time periods specified in the Plan.  If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

III.    **The Court Should Approve the Materials and Timeline for Soliciting Votes on the Plan.**

    A.    **The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting Deadline.**

46.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after

---

[6]    Counterparties to Executory Contracts and Unexpired Leases that will be assumed or assumed and assigned will receive notice pursuant to the relevant procedures set forth in the Bidding Procedures Order.

notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a).

47.    The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish the date of the hearing on approval of the Disclosure Statement as the Voting Record Date.  Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date, or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the holder of such Claim as of the Voting Record Date.

48.    The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims and Interests entitled to vote on the Plan by the Solicitation Deadline, the Court require that all Holders of Claims and Interests entitled to vote on the Plan complete, execute, and return their customized Ballots (in accordance with the instructions on the Ballots) so that they are actually received by the Notice and Claims Agent on or before the Voting Deadline.

49.    The foregoing timing and materials will afford Holders of Claims and Interests entitled to vote on the Plan at least 28 days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules and

Local Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the Court may direct to certain holders of claims); *see also* Del. Bankr. L.R. 3017-1(a) (following the filing of a disclosure statement, the plan proponent must provide notice of hearing and objection dates in accordance with Bankruptcy Rule 3017).  Accordingly, the Debtors request that the Court approve the form of and the Debtors' proposed procedures for distributing the Solicitation Packages to the Holders of Claims and Interests in the Voting Classes.

<u>**Non-Substantive Modifications**</u>

50.     The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Confirmation Hearing Notice, Solicitation Packages, Nonvoting Status Notices, Ballots, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Rejection Notice, Voting and Tabulation Procedures, and related documents after the Order is entered without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

<u>**Notice**</u>

51.     The Debtors will provide notice of this motion to:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Savings Fund Society, FSB, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors (the "<u>Term Loan Agent</u>"); (d) counsel to the Term Loan Agent; (e) counsel to the ad hoc group of the Debtors' Prepetition Lenders (the "<u>Ad Hoc Group</u>"); (f) the United States

Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Food and Drug Administration; (i) the Drug Enforcement Administration; (j) the Securities Exchange Commission; (k) the state attorneys general for all states in which the Debtors conduct business; and (l) any party that requests service pursuant to Bankruptcy Rule 2002.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the

form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such

other relief as is just and proper.

Wilmington, Delaware
May 26, 2020

/s/ *Paul N. Heath*

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.** | **KIRKLAND & ELLIS LLP** |
| Paul N. Heath (No. 3704) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Amanda R. Steele (No. 5530) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Zachary I. Shapiro (No. 5103) | Gregory F. Pesce (admitted *pro hac vice*) |
| Brett M. Haywood (No. 6166) | Christopher M. Hayes (admitted *pro hac vice*) |
| One Rodney Square | 300 North LaSalle Street |
| 920 N. King Street | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone:    (312) 862-2000 |
| Telephone:    (302) 651-7700 | Facsimile:    (312) 862-2200 |
| Facsimile:    (302) 651-7701 | Email:        patrick.nash@kirkland.com |
| Email:        heath@rlf.com | gregory.pesce@kirkland.com |
| steele@rlf.com | christopher.hayes@kirkland.com |
| shapiro@rlf.com | |
| haywood@rlf.com | -and- |

*Proposed Co-Counsel for the*            **KIRKLAND & ELLIS LLP**
*Debtors and Debtors in Possession*      **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                         Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
                                         601 Lexington Avenue
                                         New York, New York 10022
                                         Telephone:    (212) 446-4800
                                         Facsimile:    (212) 446-4900
                                         Email:        nicole.greenblatt@kirkland.com

                                         *Proposed Co-Counsel for the*
                                         *Debtors and Debtors in Possession*