## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AKORN, INC., *et al.*,[1] | ) | Case No. 20-11177 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: June 17, 2020 at 4:00 p.m. (ET)** |
| | ) | **Hearing Date:  June 24, 2020 at 1:00 p.m. (ET)** |
| | ) | |

## DEBTORS' APPLICATION FOR ENTRY OF
## AN ORDER AUTHORIZING THE EMPLOYMENT
## AND RETENTION OF ALIXPARTNERS, LLP AS FINANCIAL
## ADVISOR FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this application (the "Application"):[2]

### Relief Requested

1.      Debtors seek entry of an order (the "Order"), substantially in the form attached

hereto as **Exhibit A**, authorizing the employment and retention of AlixPartners as restructuring

advisor for the Debtors effective as of the Petition Date in connection with these chapter 11 cases,

in accordance with the terms of the Proposed Order and the *Agreement for Financial Advisory and*

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2]      A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Duane Portwood, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 20, 2020 (the "Petition Date").

*Consulting Services* dated May 6, 2020 (such letter, together with all attachments and amendments thereto, the "Engagement Letter"),[3] attached hereto as **Exhibit B**, and granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a), 328, 330, and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1.

### Background

5.      Akorn, Inc., together with its Debtor and non-Debtor subsidiaries (collectively, "Akorn") is a specialty pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals, branded as well as private-label over-the-counter consumer health products, and animal health pharmaceuticals.  Akorn is an

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the applicable Engagement Letter.

industry leader in the development, manufacturing, and marketing of specialized generic pharmaceutical products in alternative dosage forms.  Headquartered in Lake Forest, Illinois, Akorn has approximately 2,180 employees worldwide and maintains a global manufacturing presence, with pharmaceutical manufacturing facilities located in Illinois, New Jersey, New York, Switzerland, and India.  Akorn's operations generated approximately $682 million in revenue and approximately $124 million of Adjusted EBITDA in 2019.  The Debtors commenced these chapter 11 cases to conduct an orderly sale process that will position the Debtors for sustained future success by right-sizing their balance sheet and addressing their litigation overhangs.

6.      On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Application, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  On June 3, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 125].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases..

## AlixPartners' Qualifications

7.      In light of the size and complexity of these chapter 11 cases, the Debtors require a qualified and experienced restructuring advisor with the resources, capabilities, and experience of AlixPartners to assist them in pursuing the transactions that are crucial to the success of the Debtors' Chapter 11 Cases.  AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

8.     The Debtors are familiar with the professional standing and reputation of AlixPartners and understand that AlixPartners has a wealth of experience in providing restructuring advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

9.     AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to these chapter 11 cases.  AlixPartners professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. *See, e.g., In re Celadon Grp., Inc.*, Case No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020); *In re Bumble Bee Parent, Inc.*, Case No. 19-12505 (LSS) (Bankr. D. Del. Dec. 26, 2019); *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019); *In re David's Bridal*, Case No. 18-12635 (LSS) (Bankr, D. Del. Dec. 18, 2018); *In re Mattress Firm, Inc.*, Case No. 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018); *In re Am. Tire Dist.*, Case No. 18-12221 (KJC) (Bankr. D. Del. Nov. 1, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW) (Bankr. D. Del. Mar. 6, 2018); *In re Charming Charlie Holdings, Inc.*, Case No. 17-12906 (CSS) (Bankr. D. Del. Jan. 20, 2018); *In re Prospector Offshore Drilling S.à r.l.*, Case No. 17-11572 (CSS) (Bankr. D. Del. Oct. 2, 2017); *In re Tidewater Inc.*, Case No. 17-11132 (BLS) (Bankr. D. Del. June 13, 2017); and *In re Sungevity Inc.*, Case No. 17-10561 (KG) (Bankr. D. Del. Apr. 11, 2017).

10.     The Debtors have selected AlixPartners as their financial advisor because of AlixPartners' experience and reputation for providing restructuring advisory services in large, complex chapter 11 cases.  Furthermore, AlixPartners has performed significant prepetition work for the Debtors and, as a result, has acquired significant knowledge of the Debtors and their businesses and familiarity with the Debtors' financial affairs, debt structure, operations, and related

matters.  Likewise, in providing prepetition services to the Debtors, AlixPartners' professionals have worked closely with the Debtors' management and other advisors.  Accordingly, AlixPartners has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  The Debtors submit that the retention of AlixPartners on the terms and conditions set forth herein are necessary and appropriate, in the best of the Debtors' estates, their creditors, and all other parties in interest, and should be granted in all respects.

### Services to be Provided

11.    Prior to the Petition Date, the Debtors and AlixPartners entered into the Engagement Letter, which governs the relationship between them.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, AlixPartners has provided the services set forth in the Engagement Letter, and has agreed to provide, subject to further order of the Court, the services set forth below:

- Assist the Debtors and its management in developing and maintaining a short-term cash flow forecast.

- Assist the Debtors with actual-to-forecast variance reporting, including written explanations of key differences.

- Work with the Debtors and its team to further identify and implement both short-term and long-term liquidity generating initiatives.

- Provide assistance to management in connection with the Debtors' revised business plan, and such other related forecasts as may be required by the bank lenders or potential acquirers of the Debtors assets in connection with negotiations or by the Debtors for other corporate purposes.

- In conjunction with management and the Debtors' other advisors, assist in communication and/or negotiation with outside constituents, including the bank lenders and their advisors (subject to the confidentiality obligations described herein).

- In conjunction with management and the Debtors' other advisors, assist in formulating the Debtors' communication strategy with other key stakeholders (e.g., shareholders, customers, suppliers, regulators).

- Assist in supporting negotiations with potential acquirers of the Debtors assets.

- Assist in supporting due diligence activities from potential acquirers of the Debtors assets, bank lenders and their advisors, as well as other key stakeholders.

- Assist in supporting the execution of the sale of the Debtors' assets.

- Assist in preparing for and filing a Bankruptcy Petition, coordinating and providing administrative support for the proceeding and developing the Debtors' Plan of Reorganization or other appropriate case resolution, if necessary.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise, if necessary.

- Manage the claims and claims reconciliation processes, if necessary.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

12.    When necessary, the individuals working on this matter (the "<u>AlixPartners Personnel</u>") will be assisted by or replaced by various professionals at various levels.

**<u>Professional Compensation and Expense Reimbursement</u>**

13.    AlixPartners' decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in connection with its customary billing practices, as set forth in <u>Schedule 1</u> of the Engagement Letter (the "<u>Fee and Expense Structure</u>").

14.    AlixPartners commits to a flat weekly rate of $43,500 per full time equivalent in professional fees for the engagement.  AlixPartners will prorate the flat weekly rate in the event a full-time professional incurs less than 40 hours (including travel at 50%) in any given week.  All

professional fees are subject to the scope, assumptions, and personnel requirements herein remaining unchanged.  In the event that changes occur with respect to such scope, assumptions and/or personnel requirements, including those due to unforeseen events, AlixPartners and the Debtors will meet in good faith and agree to a revised fee arrangement.

15.     In addition to compensation for professional services rendered by the AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including, but not limited to, transportation costs, lodging, and meals.

16.     The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances.

17.     To the extent that AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

18.     To the extent AlixPartners uses the services of independent contractors (the "Contractors") in these chapter 11 cases, AlixPartners shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs incurred; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

19.     AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to this Court's approval and in compliance with applicable provisions of the Bankruptcy Code, including

sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court and consistent with the proposed terms of compensation set forth in the Engagement Letter to which the Debtors respectfully refer this Court for a full recitation.

20.    AlixPartners will maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases.  Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors.

21.    AlixPartners often works for compensation that includes hourly-based fees and performance-based, contingent-incentive compensation earned upon achieving meaningful results. AlixPartners does not currently request a success fee in these chapter 11 cases but reserves the right to negotiate a success fee with Debtors if the scope of services changes, and then present it to this Court for approval.

22.    Currently, AlixPartners holds an advance payment retainer in the amount of $150,000.00 (the "Retainer").  In accordance with standard billing practices, in the ninety days prior to the Petition Date, the Debtors paid AlixPartners a total of approximately $2,466,660.75 for professional services performed and expenses incurred, not including the Retainer.

23.    Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the Petition Date, AlixPartners may have incurred, but not billed, fees and reimbursable expenses that relate to the prepetition period. Approval is sought from this Court for AlixPartners to apply the Retainer to these amounts.  Upon the entry of an Order approving the relief requested herein, the Debtors will not owe AlixPartners any sums for prepetition services.

24.     The Debtors and AlixPartners propose that the remainder of the Retainer paid to AlixPartners and not expended for prepetition services and disbursements be treated as an evergreen retainer to be held by AlixPartners as security throughout these chapter 11 cases until AlixPartners' fees and expenses are awarded by final order of this Court and payable to AlixPartners.

### The Fee and Expense Structure is Appropriate, Reasonable, and Should be Approved Under Sections 327 and 328 of the Bankruptcy Code

25.     The Debtors seek authority to retain and employ AlixPartners as their financial advisor and consultant under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

26.     The Debtors seek approval of the Fee and Expense Structure and the Engagement Letter (including the indemnification provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including consultants, on

flexible terms that reflect the nature of their services and market conditions.  Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals.  Indeed, as the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee) (internal citations omitted).  *Id*. at 862 (citations omitted), cited in *Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC),* 383 B.R. 869, 874 (S.D.N.Y. 2008).

27.    Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code.  *See, e.g., In re Chaparral Energy,* Case No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re Energy & Exp. Partners, Inc.,* Case No. 15-44931 (RFN) (Bankr. N.D. Tex. Feb. 8, 2016); and *In re J.L. French Auto. Castings, Inc.,* Case No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

28.    Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. 11 U.S.C. § 328(a) (amendment emphasized). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee

basis, such as the Fee and Expense Structure, with bankruptcy court approval.

29.     The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by AlixPartners, (ii) AlixPartners' substantial experience with respect to investment banking services, and (iii) the fee and expense structures typically utilized by AlixPartners and other leading financial advisory firms when such firms do not bill their clients on an hourly basis, but rather on a flat fee basis.

30.     Accordingly, the Debtors believe that AlixPartners' retention on the terms and conditions proposed herein is appropriate.

## No Duplication of Services

31.     The services provided by AlixPartners will complement, and not duplicate, the services to be rendered by any other professionals retained by the Debtors in these chapter 11 cases.

## AlixPartners' Disinterestedness

32.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Orlofsky Declaration: (a) AlixPartners is a "disinterested person" (within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code) and does not hold or represent an interest materially adverse to the Debtors' or their estates; (b) AlixPartners has no connection to the Debtors, their creditors, or other parties-in-interest in these chapter 11 cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Debtors' estates.

33.     As set forth in further detail in the Orlofsky Declaration, AlixPartners has certain connections with creditors, equity security holders, and other parties-in-interest in these chapter 11

cases. All of these matters, however, are unrelated to these chapter 11 cases. AlixPartners does not believe that any of these matters represent an interest materially adverse to the Debtors' or their estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

34.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

### Indemnification

35.     The Engagement Letter contains standard indemnification language with respect to AlixPartners' services including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "AlixPartners Party" and collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter, except to the extent caused by gross negligence, willful misconduct, or fraud of any AlixPartners Party.

36.     The Debtors and AlixPartners believe that the indemnification provisions contained in the Engagement Letter, as may be amended in the Proposed Order, (the "Indemnification Provisions") are customary and reasonable for AlixPartners and comparable firms providing financial advisory services.

37.     Moreover, the terms and conditions of the Indemnification Provisions were negotiated by the Debtors and AlixPartners at arm's-length and in good faith. The Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require AlixPartners' services to

successfully reorganize. Accordingly, as part of this Application, the Debtors request that this Court approve the Indemnification Provisions as set forth in the Engagement Letter, as may be amended by the Proposed Order (setting forth the foregoing limitations).

### Basis for Relief

38.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

39.     Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

40.     The Debtors respectfully submit that section 327 of the Bankruptcy Code permits them to hire a professional firm like AlixPartners to undertake an advisory role in these chapter 11 cases. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application. The retention of AlixPartners as restructuring advisor in these chapter 11 cases is in the best interests of the Debtors' estates, creditors, and the parties in interest.

### Relief Effective as of the Petition Date is Appropriate

41.     Pursuant to the Debtors' request, AlixPartners has acted as the restructuring advisor since the Petition Date. AlixPartners performed services prepetition with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date.

13

The Debtors believe that no party in interest will be prejudiced by granting the relief effective as of the Petition Date for employment of AlixPartners because AlixPartners has provided, and continues to provide, valuable services to the Debtors' estates.

## Notice

42.　　The Debtors will provide notice of this Application to:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Savings Fund Society, FSB, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors (the "Term Loan Agent"); (d) counsel to the Term Loan Agent; (e) counsel to the ad hoc group of the Debtors' Prepetition Lenders (the "Ad Hoc Group"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Food and Drug Administration; (i) the Drug Enforcement Administration; (j) the Securities Exchange Commission; (k) the state attorneys general for all states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## No Previous Request

43.　　No prior request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 3, 2020

AKORN, INC., et al.

(for itself and on behalf of its affiliated
debtors as Debtors and Debtors in
Possession)

 */s/ Joseph Bonaccorsi*_____
Joseph Bonaccorsi
Executive Vice President and General Counsel
Akorn, Inc. and its Debtor affiliates