## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AKORN, INC., *et al.*,[1] | ) Case No. 20-11177 (KBO) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN
### PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion:[2]

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing the Debtors to retain and compensate certain law firms,

attorneys, accountants, consultants, and other non-attorney professionals utilized in the ordinary

course of business (each, an "OCP" and, collectively, the "OCPs") on a postpetition basis, pursuant

to the compensation procedures set forth in the Order (the "OCP Procedures"), without the need

for each OCP to file formal applications for retention and compensation pursuant to sections

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Duane Portwood, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 20, 2020 (the "Petition Date").

105(a), 327, 328, or 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 327, 328, or 330 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

5.      Akorn, Inc., together with its Debtor and non-Debtor subsidiaries (collectively, "Akorn") is a specialty pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals, branded as well as private-label over-the-counter consumer health products, and animal health pharmaceuticals.  Akorn is an industry leader in the development, manufacturing, and marketing of specialized generic pharmaceutical products in alternative dosage forms.  Headquartered in Lake Forest, Illinois,

Akorn has approximately 2,180 employees worldwide and maintains a global manufacturing presence, with pharmaceutical manufacturing facilities located in Illinois, New Jersey, New York, Switzerland, and India. Akorn's operations generated approximately $682 million in revenue and approximately $124 million of Adjusted EBITDA in 2019. The Debtors commenced these chapter 11 cases to conduct an orderly sale process that will position the Debtors for sustained future success by right-sizing their balance sheet and addressing their litigation overhangs.

6.      On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 57]. On June 3, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 125]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

### The Ordinary Course Professionals

7.      The Debtors employ approximately 45 OCPs,[3] consisting of various attorneys, accountants, auditors, consultants, tax professionals and other professionals used in the ordinary course of the Debtors' businesses. The OCPs provide services to the Debtors in a variety of matters

---

[3]  The Debtors have prepared **Exhibit 1** and **Exhibit 2** to the Order (the "OCP List") based on a review of professionals whose services the Debtors anticipate will be required during these chapter 11 cases. However, the OCP List is not intended to constitute a representation that each party listed thereon will be retained, employed, and paid by the Debtors during the course of these chapter 11 cases. Likewise, there may be additional professionals that will provide services as OCPs but have not yet been identified by the Debtors and thus are not included on the attached OCP List. Accordingly, the Debtors reserve the right to supplement or otherwise amend the OCP List from time to time by filing a supplemental or amended OCP List with the Court in accordance with the procedures set forth herein.

unrelated to these chapter 11 cases, including specialized legal advice, litigation services, financial advisory services, and communications services relating to, among other things, corporate, litigation, financial, tax, regulatory, human resources, and environmental matters.

8.      The OCPs have a great deal of knowledge, expertise, and familiarity with the Debtors and their operations.  Although the Debtors anticipate that the OCPs will want to continue to represent the Debtors on an ongoing basis, some may not do so if the Debtors cannot meet their payment obligations on a regular basis.  And, without such knowledge, expertise, and familiarity that the OCPs have, the Debtors undoubtedly would incur additional and unnecessary expenses in educating and retaining replacement professionals.  Accordingly, the Debtors' estates and their creditors are best served by avoiding any disruption in the professional services that are required for the day-to-day operations of the Debtors' businesses.  Moreover, in light of the number of OCPs, and the significant costs associated with the preparation of employment applications for professionals who will receive relatively modest fees, the Debtors submit that it would be impractical, inefficient, and costly for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP.

9.      The Debtors are not requesting authority to pay prepetition amounts owed to OCPs.  Although some of the OCPs may hold unsecured claims against the Debtors in connection with services rendered to the Debtors prepetition, the Debtors do not believe that any OCP has an interest materially adverse to the Debtors, their creditors, or other parties in interest.  The Debtors submit that the continued employment and compensation of the OCPs is in the best interests of their estates, creditors, and other parties in interest.

## The OCP Procedures

10.     The Debtors request that the Court approve the following OCP Procedures for the retention and payment of the OCPs:

4

(a) Each OCP on the OCP List (as may be amended or supplemented from time to time) shall file with the Court a declaration of disinterestedness (each a "<u>Declaration of Disinterestedness</u>"), substantially in the form attached as **<u>Exhibit 3</u>** to this Order, within 30 days after the later of (i) the date of entry of the Order, (ii) the date on which such OCP commences services for the Debtors, and (iii) the date on which such OCP is added to the OCP List.  Each OCP shall serve the Declaration of Disinterestedness upon:  (a) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Patrick J. Nash, Jr., P.C., Gregory F. Pesce, Christopher M. Hayes, and Dan Latona, and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Nicole L. Greenblatt, P.C.; (b) proposed co-counsel to the Debtors, Richards, Layton & Finger P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn:  Paul N. Heath, Amanda R. Steele, Zachary I. Shapiro, and Brett M. Haywood; (c) counsel to the Term Loan Agent, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, Attn: Andrew Goldman; (d) counsel to the Ad Hoc Group, Gibson Dunn & Crutcher, 200 Park Avenue, New York, New York 10166, Attn: Scott J. Greenberg and Michael J. Cohen, and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady; (e) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy; and (f) counsel to any statutory committee appointed in these chapter 11 cases (each a "<u>Notice Party</u>," and collectively, the "<u>Notice Parties</u>").

(b) The Notice Parties shall have 14 days after the date of filing of each OCP's Declaration of Disinterestedness (the "<u>Objection Deadline</u>") to object to the retention of such OCP.  The objecting party shall file any such objection and serve such objection upon the Notice Parties and the respective OCP on or before the Objection Deadline.  If any such objection cannot be resolved within 14 days of its receipt, the matter shall be scheduled for hearing before the Court at the next regularly scheduled omnibus hearing date that is no less than 14 days from that date or on a date otherwise agreeable to the parties.  The Debtors shall not be authorized to retain and compensate such OCP until all outstanding objections have been withdrawn, resolved, or overruled by order of the Court.

(c) If no objection is received from any of the Notice Parties by the Objection Deadline with respect to any particular OCP, the Debtors shall be authorized to:  (i) retain such OCP as of the date

such OCP commenced providing services to the Debtors; and (ii) compensate such OCP as set forth below.

(d) The Debtors reserve the right to retain additional OCPs from time to time during these chapter 11 cases by: (i) including such OCPs on an amended version of the OCP List that is filed with the Court and served on the Notice Parties; and (ii) having such OCPs comply with the OCP Procedures. Each additional OCP listed in the OCP List shall file with this Court and serve a Declaration of Disinterestedness, substantially in the form attached hereto as **Exhibit 3**, on the Notice Parties as provided in the OCP Procedures. If no objections are timely filed to any such additional OCP's Declaration of Disinterestedness, then retention of such OCPs shall be deemed approved by this Court pursuant to the Order without a hearing or further order.

(e) The Debtors shall be authorized to pay, without formal application to the Court by any OCP, 100 percent of fees and disbursements to each of the OCPs retained by the Debtors pursuant to the OCP Procedures upon submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and expenses incurred after the Petition Date; *provided* that the fees paid to any OCP set forth on **Exhibit 1** attached hereto, excluding costs and disbursements, may not exceed $150,000.00 per month on average over a rolling three-month period while these chapter 11 cases are pending (the "Tier 1 OCP Monthly Cap"), and that the fees of any OCP set forth on **Exhibit 2** attached hereto, excluding costs and disbursements, may not exceed $75,000.00 per month on average over a rolling three-month period while these chapter 11 cases are pending (the "Tier 2 OCP Monthly Cap" and, together with the Tier 1 OCP Monthly Cap, the "OCP Monthly Caps") (it being understood and agreed that there shall be no application of a rolling three-month average for the first month); *provided*, *further*, that the total amount disbursed per three-month period, for each OCP does not exceed $450,000.00 per OCP (the "OCP Quarterly Cap" together with the OCP Monthly Caps, collectively, the "OCP Caps"). The OCP Caps may be increased by mutual agreement between the Debtors and the U.S. Trustee.

(f) To the extent that fees payable to any OCP exceed the applicable OCP Cap, the applicable OCP shall file a fee application (a "Fee Application") with the Court for the amount in excess of the applicable OCP Cap in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines promulgated by the Office of the United States

Trustee, and any applicable orders of the Court, unless the U.S. Trustee agrees otherwise.

(g) Beginning on the three-month period ending July 31, 2020, and for each three-month period thereafter during which these chapter 11 cases are pending, the Debtors shall within thirty (30) days thereof file with the Court and serve on the Notice Parties a statement with respect to each OCP paid during the immediately preceding quarterly period (the "Quarterly Statement"). Each Quarterly Statement shall include: (i) the name of the OCP; (ii) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by that OCP during the reported quarter; and (iii) a general description of the services rendered by that OCP.

## Basis for Relief

11.    Section 327(a) of the Bankruptcy Code requires court approval for the employment of "professional persons," retained to represent or perform services of the estate.  11 U.S.C. § 327(a).  In determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code and therefore must be retained by express approval of the court, courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations.  *See*, *e.g.*, *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) ("[T]he phrase 'professional persons,' as used in § 327(a), is a term of art reserved for those persons who play an intimate role in the reorganization of a debtors' estate.").  In making this determination, courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

(a) whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

(b) whether the entity is involved in negotiating the terms of a plan of reorganization;

7

      (c) whether the entity' employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

      (d) whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

      (e) the extent of the entity's involvement in the administration of the debtor's estate; and

      (f) whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See, e.g.*, *In re First Merchs. Acceptance Corp.*, No. 97-1500 (JJF), 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (listing factors); *see also In re Am. Tissue, Inc.*, 331 B.R. 169, 174 (Bankr. D. Del. 2005) (applying the *First Merchants* factors and holding that litigation consulting firm was not a "professional" for section 327 purposes); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (not requiring section 327 of the Bankruptcy Code approval of the fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case"); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327 of the Bankruptcy Code). The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code. None of the factors alone is dispositive. *See First Merchs.*, 1997 WL 873551 at *3 ("In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in [total].").

      12.    Additionally, section 327(e) of the Bankruptcy Code provides that "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the

trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtors or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

13.     Upon consideration of the above-listed factors, and because the OCPs will not be involved in the administration of these chapter 11 cases, the Debtors do not believe that the OCPs are "professionals" requiring formal retention proceedings under section 327(a) of the Bankruptcy Code.   Instead, the OCPs will provide services in connection with the Debtors' ongoing business operations, which services are ordinarily provided by non-bankruptcy professionals.  Nevertheless, to provide clarity and an opportunity for oversight, the Debtors seek the relief requested herein to establish definitive mechanisms for retention and payment of the OCPs pursuant to the OCP Procedures and thereby avoid any subsequent controversy with respect thereto.

14.     The Debtors respectfully submit that: (a) the retention of the OCPs as provided herein is reasonably necessary for the day-to-day operations of the Debtors' business; (b) expenses for the OCPs will be monitored closely by the Debtors; and (c) the OCPs will not perform substantial bankruptcy-related services without filing an application with the Court for separate retention as a non-ordinary course professional.

15.     The Debtors and their estates would be well served by continued retention of the OCPs because of their established relationships with the Debtors and understanding of the Debtors and their operations and legal issues.  Moreover, in light of the large number of OCPs and the significant costs associated with the preparation of retention applications under sections 327, 328, and 330 of the Bankruptcy Code for OCPs who will receive relatively modest fees, the Debtors submit that it would be impractical, inefficient, and extremely costly for the Debtors and their legal

advisors to prepare and submit individual applications and proposed retention orders for each OCP. Therefore, the Debtors submit that it is in the best interests of all creditors and parties in interest to retain and compensate the OCPs in accordance with the OCP Procedures and, thereby, avoid any disruption in the professional services that are required for the day-to-day operation of the Debtors' businesses.

16.     Although some of the OCPs may hold unsecured claims against the Debtors in connection with services rendered to the Debtors prepetition, the Debtors do not believe that any OCP holds interests materially adverse to the Debtors, their creditors, or other parties in interest. In any event, the OCP Procedures include a requirement that each OCP file a Declaration of Disinterestedness and be subject to a reasonable objection period before an OCP can be compensated.

17.     Courts in this district have approved relief similar to the relief requested in this motion. *See, e.g.*, *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 7, 2020) (approving comparable OCP procedures); *In re Dura Auto. Sys., LLC*, No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Destination Maternity Corp*. No. 19-12256 (BLS) (Bankr. D. Del. Nov. 15, 2019) (same); *In re PES Holdings, LLC*, Case No. 19-11626 (KG) (Bankr. D. Del. Aug. 21, 2019) (same); *In re Z Gallerie, LLC*, Case No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same).[4]

18.     For the reasons set forth herein, the Debtors respectfully submit that the relief requested is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore should be granted.

---

[4]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

## **Notice**

19.     The Debtors will provide notice of this motion to:  (a)  the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Savings Fund Society, FSB, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors (the "Term Loan Agent"); (d) counsel to the Term Loan Agent; (e) counsel to the ad hoc group of the Debtors' Prepetition Lenders (the "Ad Hoc Group"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Food and Drug Administration; (i) the Drug Enforcement Administration; (j) the Securities Exchange Commission; (k) the state attorneys general for all states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Wilmington, Delaware
June 3, 2020

/s/  *Paul N. Heath*

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          heath@rlf.com
                steele@rlf.com
                shapiro@rlf.com
                haywood@rlf.com

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
Christopher M. Hayes (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
                patrick.nash@kirkland.com
                gregory.pesce@kirkland.com
                christopher.hayes@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          nicole.greenblatt@kirkland.com

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*