# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| AKORN, INC., *et al.*,[1] | ) ) | Case No. 20-11177 (KBO) |
| Debtors. | ) ) ) | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN
## ORDER ESTABLISHING PROCEDURES FOR INTERIM
## COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PROFESSIONALS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

### Relief Requested

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, approving the Compensation Procedures (as defined herein) for an orderly, regular process for the allowance and payment of compensation and reimbursement of expenses incurred by attorneys and other professionals proposed to be retained and approved by the Court pursuant to sections 327, 328, or 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC. The location of the Debtors' service address is: 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Duane Portwood, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 15] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 20, 2020 (the "Petition Date"). Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

(the "Bankruptcy Code") and who will be required to file applications for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code on terms that satisfy the requirements of rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are sections 105(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 2016-2.

## Background

5.    Akorn, Inc., together with its Debtor and non-Debtor subsidiaries (collectively, "Akorn") is a specialty pharmaceutical company that develops, manufactures, and markets generic and branded prescription pharmaceuticals, branded as well as private-label over-the-counter consumer health products, and animal health pharmaceuticals.  Akorn is an industry leader in the development, manufacturing, and marketing of specialized generic

pharmaceutical products in alternative dosage forms. Headquartered in Lake Forest, Illinois, Akorn has approximately 2,180 employees worldwide and maintains a global manufacturing presence, with pharmaceutical manufacturing facilities located in Illinois, New Jersey, New York, Switzerland, and India. Akorn's operations generated approximately $682 million in revenue and approximately $124 million of Adjusted EBITDA in 2019. The Debtors commenced these chapter 11 cases to conduct an orderly sale process that will position the Debtors for sustained future success by right-sizing their balance sheet and addressing their litigation overhangs.

6. On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 57]. On June 3, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 125]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

**Retention of Professionals**

7. The Debtors have filed or will file applications to retain certain professionals (collectively, the "Debtors' Professionals"), including: (a) Kirkland & Ellis LLP, as primary restructuring counsel to the Debtors; (b) Richards, Layton & Finger, P.A., as co-counsel and conflicts counsel; (c) AlixPartners LLP, as restructuring advisor to the Debtors; (d) PJT Partners LP, as investment banker to the Debtors; and (e) Kurtzman Carson Consultants LLC, as notice, claims, and solicitation agent; and (f) Grant Thornton LLP as tax and audit

consultant to the Debtors. The Debtors may retain other professionals pursuant to section 327 or 328 of the Bankruptcy Code during the course of these chapter 11 cases as the need arises. Moreover, any statutory committee appointed in these chapter 11 cases, including the Committee, may seek to retain additional advisors to represent it in connection with these chapter 11 cases (together with the Debtors' Professionals, the "Professionals").[3]

## The Proposed Compensation Procedures

8. The Debtors propose that the monthly payment of compensation and reimbursement of expenses of the Professionals (the "Compensation Procedures") be structured as follows:

   a. On or after the 21st day of each month following the month for which compensation is sought, each Professional seeking compensation may file an application (each, a "Monthly Fee Statement") for interim allowance of compensation for services rendered and reimbursement of expenses incurred during the preceding month, and serve such Monthly Fee Statement by hand or first class mail, on: (i) the Debtors, Akorn, Inc., 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045, Attn: Joseph Bonaccorsi; (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr., P.C., Gregory F. Pesce, Christopher M. Hayes, and Dan Latona, and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Nicole L. Greenblatt, P.C.; (iii) proposed co-counsel to the Debtors, Richards, Layton & Finger P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn: Paul N. Heath, Amanda R. Steele, Zachary I. Shapiro, and Brett M. Haywood; (iv) counsel to the Term Loan Agent, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, Attn: Andrew Goldman; (v) counsel to the Ad Hoc Group, Gibson Dunn & Crutcher, 200 Park Avenue, New York, New York 10166, Attn: Scott J. Greenberg and Michael J. Cohen, and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S.

---

[3] Contemporaneously herewith, the Debtors have filed the *Debtors' Motion for Entry of an Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* (the "OCP Motion"). The OCP Motion seeks authority for the Debtors to continue to retain certain professionals in the ordinary course of business (the "OCPs") on terms substantially similar to those in effect before the Petition Date. If the OCP Motion is granted, the OCPs would not be required to file individual retention applications and would be paid in full, subject to their respective prepetition arrangements, without the need for submission of fee applications, but subject to the applicable fee caps.

    Brady; (vi) the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Jane M. Leamy; and (vii) counsel to any statutory committee appointed in these chapter 11 cases (each an "Application Recipient," and, collectively, the "Application Recipients"). Any Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a Monthly Fee Statement that includes a request for compensation earned or expenses incurred during the previous months.

b. Any party in interest will have until 4:00 p.m. (prevailing Eastern Time) 20 days after service of a Monthly Fee Statement to review the request. Upon the expiration of such 20-day period, a Professional may file a certificate of no objection with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Fee Statement (each, a "CNO"). After a CNO is filed with the Court, the Debtors are authorized and directed to pay the Professional an amount equal to 80 percent of the fees and 100 percent of the expenses requested in the applicable Monthly Fee Statement (the "Maximum Monthly Payment") that are not subject to an objection pursuant to subparagraph (c) below (the "Actual Monthly Payment").

c. If any party in interest objects to a Monthly Fee Statement, the objecting party shall, within 20 days of service of the Monthly Fee Statement, serve a written notice upon the respective Professional (email shall suffice) and each of the Application Recipients (the "Notice of Objection to Monthly Fee Statement") setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting party and the Professional shall attempt to resolve the objection on a consensual basis. If the parties reach an agreement, the Debtors shall promptly pay 80 percent of the agreed-upon fees and 100 percent of the agreed-upon expenses. If, however, the parties are unable to reach a resolution of the objection within 14 days (or such longer period as mutually agreed to by the Professional and the objecting party) after service of the objection, the objecting party shall file its objection (the "Objection") with the Court within three (3) business days and serve such Objection on the respective Professional and each of the Application Recipients. Thereafter, such Professional may either (i) file with the Court a response to the Objection, together with a request for payment of the difference, if any, between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "Disputed Amount") or (ii) forego payment of the Disputed Amount until the next hearing on an Interim Fee Application or Final Fee Application (each as defined herein), at which time the Court will consider the Objection, if requested by the parties.

d. Each Professional may submit its first Monthly Fee Statement no earlier than July 21, 2020. This initial Monthly Fee Statement will cover the period

5

        from the Petition Date through June 30, 2020.  Thereafter, the Professionals may file Monthly Fee Statements in the manner described above.

e.     Beginning with the period ending on July 31, 2020 and at three-month intervals thereafter (each, an "<u>Interim Fee Period</u>"), each of the Professionals may file with the Court and serve on the Application Recipients an interim fee application (each an "<u>Interim Fee Application</u>") for compensation and reimbursement of expenses sought in the Monthly Fee Statements served during such period.  Each Professional shall serve notice of its Interim Fee Application (which identifies the Professional seeking compensation, discloses the period for which the payment of compensation and reimbursement of expenses is being sought, and sets forth the amount of compensation and expenses sought as well as the amount of compensation and expenses paid to date, sets forth the amount of compensation and expenses that are subject to any objection, and sets forth the deadline for parties to file objections) on all parties that have entered their appearance pursuant to Bankruptcy Rule 2002.  Application Recipients and all other parties in interest will have 20 days after service of an Interim Fee Application to object thereto.  The first Interim Fee Application should cover the Interim Fee Period from the Petition Date through and including July 31, 2020.

f.     The Debtors will request that the Court schedule a hearing on Interim Fee Applications at least once every three (3) months or at such other intervals as the Court deems appropriate.  The Court, in its discretion, may approve an uncontested Interim Fee Application without the need for a hearing upon the filing of an order approving such Interim Fee Applications under a certification of counsel.  Upon allowance by the Court of a Professional's Interim Fee Application, the Debtors shall be authorized to promptly pay such Professional all allowed fees (including the 20 percent holdback) and all allowed expenses not previously paid.

g.     The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify a Professional from the future payment of compensation or reimbursement of expenses under the Compensation Procedures.

9.     The Debtors also request that each member of any official committee formed by the office of the U.S. Trustee be permitted to submit statements of expenses (excluding third-party counsel expenses of individual committee members) and supporting vouchers to the applicable official committee's counsel, which counsel will collect and file the committee members' requests for reimbursement with the Court in accordance with the Compensation Procedures.

10.     The Debtors further request that the Court limit service of Interim Fee Applications and final fee applications (each, a "Final Fee Application," and together with Interim Fee Applications, collectively, the "Applications") to the Application Recipients.  The Debtors further request that all other parties that have filed a notice of appearance with the Clerk of this Court and requested notice of pleadings in these chapter 11 cases shall be entitled to receive only notice of hearings on the Applications (the "Hearing Notice").  Serving the Applications and the Hearing Notices in this manner will permit the parties most active in these chapter 11 cases to review and object to the Professionals' fees and will save unnecessary duplication and mailing expenses.

**Basis for Relief**

11.     Pursuant to section 331 of the Bankruptcy Code, all Professionals are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days, or more often if the bankruptcy court permits.  In addition, section 105(a) of the Bankruptcy Code authorizes the Court to issue any order "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," thereby codifying the Court's inherent equitable powers.

12.     Factors to consider in deciding whether to establish interim compensation procedures include "the size of [the] reorganization cases, the complexity of the issues involved, and the time required on the part of the attorneys for the debtors in providing services necessary to achieve a successful reorganization of the debtors . . . ."  *See, e.g., In re Int'l Horizons, Inc.*, 10 B.R. 895, 897 (Bankr. N.D. Ga. 1981) (establishing procedures for monthly interim compensation).

13.     The significant size of these chapter 11 cases and the amount of time and effort that will be required from the Professionals for the Debtors to successfully sell their assets and/or

7

reorganize justifies the Compensation Procedures requested herein. Indeed, such Compensation Procedures are necessary to ensure that the Professionals are fairly and timely compensated for their services in these cases and are not forced to bear undue financial burden or risk caused by delays in payment.

14. Courts in this jurisdiction have approved relief similar to the relief requested in this motion and as set forth in the Order. *See*, *e.g.*, *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 7, 2020) (granting order establishing procedures for interim compensation and reimbursement of expenses for retained professionals); *In re Dura Auto. Sys., LLC*, No. 19-12378 (KBO) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 15, 2019) (same); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (granting order establishing procedures for interim compensation of retained professionals); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 20, 2019) (establishing procedures for interim compensation and reimbursement of expenses for retained professionals).[4]

15. The proposed Compensation Procedures will enable the Debtors to closely monitor costs of administration, maintain level cash flow availability, and implement efficient cash management procedures. Moreover, these procedures will allow the Court and key parties in interest to ensure the reasonableness and necessity of the compensation and reimbursement sought pursuant to such procedures.

16. The Debtors submit that establishing the foregoing interim compensation and expense reimbursement procedures will significantly aid the efficient administration of these

---

[4] Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

chapter 11 cases.  Accordingly, the relief requested is in the best interests of the Debtors' estates, creditors, and parties in interest.

## Notice

17. The Debtors will provide notice of this motion to: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Savings Fund Society, FSB, in its capacity as successor administrative agent under the Term Loan Credit Agreement, or any of its predecessors or successors (the "Term Loan Agent"); (d) counsel to the Term Loan Agent; (e) counsel to the ad hoc group of the Debtors' Prepetition Lenders (the "Ad Hoc Group"); (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the Food and Drug Administration; (i) the Drug Enforcement Administration; (j) the Securities Exchange Commission; (k) the state attorneys general for all states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## No Prior Request

18. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Wilmington, Delaware
June 3, 2020

*/s/ Paul N. Heath*

| **RICHARDS, LAYTON & FINGER, P.A.** | **KIRKLAND & ELLIS LLP** |
|---|---|
| Paul N. Heath (No. 3704) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Amanda R. Steele (No. 5530) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| Zachary I. Shapiro (No. 5103) | Gregory F. Pesce (admitted *pro hac vice*) |
| Brett M. Haywood (No. 6166) | Christopher M. Hayes (admitted *pro hac vice*) |
| One Rodney Square | 300 North LaSalle Street |
| 920 N. King Street | Chicago, Illinois 60654 |
| Wilmington, Delaware 19801 | Telephone: (312) 862-2000 |
| Telephone: (302) 651-7700 | Facsimile: (312) 862-2200 |
| Facsimile: (302) 651-7701 | patrick.nash@kirkland.com |
| Email: heath@rlf.com | gregory.pesce@kirkland.com |
| steele@rlf.com | christopher.hayes@kirkland.com |
| shapiro@rlf.com | |
| haywood@rlf.com | -and- |

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:          nicole.greenblatt@kirkland.com

*Proposed Co-Counsel for the*
*Debtors and Debtors in Possession*