## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AKORN, INC., *et al.*,[1] | Case No. 20-11177 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 1, 2020 at 2:30 p.m. (ET)**<br>**Objection Deadline: June 24, 2020 at 4:00 p.m. (ET)** |
| | **Re: Docket Nos. 101, 102 & 103** |

## OPT-OUT PLAINTIFFS' LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF AKORN, INC. AND ITS DEBTOR AFFILIATES, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, AND (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO

AQR Funds – AQR Multi-Strategy Alternative Fund, AQR Absolute Return Master Account L.P., AQR DELTA Sapphire Fund, L.P., AQR DELTA XN Master Account, L.P., AQR Funds – AQR Diversified Arbitrage Fund, CNH Master Account, L.P., LUMYNA – AQR Global Relative Value UCITS Fund, AQR DELTA Master Account, L.P., AQR Global Alternative Premia Master Account, L.P., Magnetar Constellation Fund II-PRA LP, Magnetar Systematic Multi-Strategy Master Fund Ltd, Magnetar PRA Master Fund Ltd, Magnetar MSW Master Fund Ltd, MProved Systematic Merger Arbitrage Fund, MProved Systematic Multi-Strategy Fund, AMX Master – Magnetar – Passive Risk Arbitrage, Blackstone Alternative Multi-Strategy Sub Fund IV LLC, Blackstone Diversified Multi-Strategy Fund, Manikay Master Fund, LP, Manikay

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC. The location of the Debtors' service address is: 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

Merger Fund, LP, Twin Master Fund, Ltd., Twin Opportunities Fund, LP, and Twin Securities, Inc. (collectively, the "Opt-Out Plaintiffs"), by and through their undersigned counsel, hereby submit this limited objection (the "Objection") to the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Joint Chapter 11 Plan of Akorn, Inc. and its Debtor Affiliates, (III) Approving the Forms of Ballots and Notices in Connection Therewith, and (IV) Scheduling Certain Dates with Respect Thereto* [Docket No. 103] (the "Motion").[2]  In support of this Objection, the Opt-Out Plaintiffs respectfully state as follows:

**PRELIMINARY STATEMENT[3]**

1.      The foremost purpose of a disclosure statement is to provide creditors and other parties in interest with the information necessary to decide whether to support a proposed plan.

2.      Here, the Disclosure Statement does not contain adequate information because it fails to discuss the basis for the Plan's disparate classification of the Settlement Class Claims (as defined below) as General Unsecured Claims and not as Section 510(b) Claims, like the Opt-Out Plaintiffs' Claims.  In addition, although the formula in Article III.B.7 of the Plan appears intended to provide for pro rata allocation of distributions between Class 8 Akorn Interests, which are denominated in shares, and Class 7 Section 510(b) Claims, which are denominated in dollars, neither the Plan nor the Disclosure Statement explains what value will be ascribed to Akorn Interests in making that calculation. Without this information, the Disclosure Statement fails to provide adequate information for holders of Section 510(b) Claims to fully evaluate the impact of the Plan on their claims.

3.      Finally, the proposed Solicitation and Voting Procedures do not provide sufficient time for a creditor whose claim is objected to on or prior to seven (7) days before the proposed Voting Deadline of August 15, 2020 at 5:00 p.m. (ET) to file a motion and obtain entry of an order

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[3] Capitalized terms used but not defined in this Preliminary Statement or the Motion are defined subsequently in this Objection.

temporarily allowing its claim for voting purposes as the proposed deadline for obtaining such a "Resolution Event" is August 13, 2020.  The proposed procedure could leave a creditor with a *mere five (5) days* to file a motion and obtain such an order.  Accordingly, the deadline for the Debtors to file an objection to a claim that will trigger the necessity of a creditor obtaining a Resolution Event in order to vote on the Plan should be twenty-five (25) days prior to the proposed Voting Deadline, or July 21, 2020.

4.      Based on the foregoing, and for the additional reasons set forth below, the approval of the Disclosure Statement should be denied unless the issues raised herein are appropriately addressed and remedied.

**RELEVANT BACKGROUND**

**A.      The Securities Litigation and Shareholder Settlement**

5.      On or about March 8, 2018, a securities class action was commenced against Akorn, Inc. ("Akorn") and certain then current officers of Akorn in the United States District Court for the Northern District of Illinois (the "Illinois District Court") alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 resulting from alleged false statements and omissions concerning Akorn's data integrity compliance.  Disclosure Statement, p. 24.

6.      On May 31, 2018, the Illinois District Court issued an order in the class action appointing lead plaintiffs (the "Lead Plaintiffs"), approving their selection of lead counsel and liaison counsel, and amending the case caption to *In re Akorn, Inc. Data Integrity Securities Litigation*, Civ. A. No. 1:18-cv-01713 (the "Shareholder Litigation").  Several later-filed securities lawsuits were consolidated into the Shareholder Litigation.  *Id.*

7.      The Opt-Out Plaintiffs filed their own complaints (the "Opt-Out Complaints")[4] asserting various securities and common law fraud claims and causes of action (the "Opt-Out Plaintiffs' Claims") against Akorn and certain of its former directors and officers (collectively, the

---

[4] The Opt-Out Complaints are: Twin Master Fund, Ltd., *et al.* v. Akorn, Inc., *et al.*, C.A. No. 19-cv-3648 (N.D. Ill.), Manikay Master Fund, LP, *et al.* v. Akorn, Inc., *et al.*, C.A. No. 19-cv-4651 (N.D. Ill.), Magnetar Constellation Fund II-PRA LP, *et al.* v. Akorn, Inc., *et al.*, C.A. No. 19-cv-8418 (N.D. Ill.), and AQR Funds – AQR Multi-Strategy Alternative Fund, *et al.* v. Akorn, Inc., *et al.*, C.A. No. 20-cv-0434 (N.D. Ill.).

"Defendants") in the Illinois District Court.  On February 5, 2020, the District Court denied motions by the Defendants to dismiss the Opt-Out Complaints.

8.    Following mediation in 2019, Akorn and the Lead Plaintiffs agreed to settle the Shareholder Litigation and executed a definitive Stipulation and Agreement of Settlement dated as of August 9, 2019 (the "Shareholder Settlement"), which was granted final approval by the Illinois District Court pursuant to that certain *Order and Final Judgment Approving Class Action Settlement* [Shareholder Litigation Document No. 190] entered on March 13, 2020.  Disclosure Statement, p. 24; Plan, Article I.A.120.  The Opt-Out Plaintiffs timely exercised their right to exclude themselves from the Shareholder Settlement.

9.    Pursuant to the Shareholder Settlement, all class members that did not timely submit notices of exclusion from the Shareholder Settlement (the "Settlement Class"), released all claims arising from or relating to the facts and circumstances alleged in the Shareholder Litigation in exchange for a combination of (a) up to $30 million in insurance proceeds from Akorn's directors and officers liability insurance policies ("D&O Policies"), (b) the issuance by Akorn of approximately 6.5 million shares of Akorn's common stock and any additional shares of Akorn common stock that are released as a result of expiration of out of the money options through December 31, 2024, and (c) the issuance by Akorn of contingent value rights ("CVRs") with a five-year term, subject to an extension of up to two years under certain circumstances.  *Id.*, p. 24-25.  Under the terms of the Shareholder Settlement, holders of the CVRs were entitled to receive an annual cash payment from Akorn of 33.3% of "Excess EBITDA," capped at an aggregate of $12 million per year and $60 million during the term of the CVRs.  *Id.*, p. 25.

10.    The Shareholder Settlement also provided that in the event of a voluntary or involuntary bankruptcy filing of Akorn during the term of the CVRs, the holders of the CVRs would receive in the aggregate a $30 million unsecured claim (which unsecured claim would be contractually subordinated to any deficiency claim of the Term Loan Lenders and holders of Akorn's other secured debt in any such bankruptcy case) (the "CVR Bankruptcy Claim").  *Id.*

11.    In accordance with the Shareholder Settlement, between April 1, 2020 and April 7,

2020 a total of $27.5 million in insurance proceeds from the D&O Policies was deposited into a cash escrow account, and a total of 6,713,905 shares of Akorn common stock and a total of 6,713,905 CVRs were issued into separate securities escrow accounts, all for the benefit of the Settlement Class. *See Id.*, p 26.

**B.      The Plan, Disclosure Statement and Proposed Treatment of the Opt-Out Plaintiffs' Claims**

12.      On May 20, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.

13.      On May 26, 2020, the Debtors filed their proposed *Joint Chapter 11 Plan of Akorn, Inc. and Its Debtor Affiliates* [Docket No. 101] (the "Plan") and accompanying *Disclosure Statement for Joint Chapter 11 Plan of Akorn, Inc. and Its Debtors Affiliates* [Docket No. 102] (the "Disclosure Statement").

14.      The Plan includes the following classification of Claims against and Interests in the Debtors.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | Section 510(b) Claims | Impaired | Entitled to Vote |
| Class 8 | Akorn Interests | Impaired | Entitled to Vote |

15.      A "Section 510(b) Claim" is defined in the Plan as: "any Claim against any of the Debtors that is subordinated under section 510(b) of the Bankruptcy Code, including, for the avoidance of doubt, the Fresenius Litigation Claims and any Shareholder Litigation Claims[5] not settled pursuant to the Shareholder Settlement."   Thus, by definition, because the Opt-Out Plaintiffs' Claims constitute Shareholder Litigation Claims that were not settled pursuant to the Shareholder Settlement, they are classified as Section 510(b) Claims in Class 7 under the Plan.

16.      By contrast, the Plan proposes to exclude from Class 7 claims any remaining claims of the Settlement Class arising from the Shareholder Litigation, including, without limitation, the CVR Bankruptcy Claim (collectively, the "Settlement Class Claims"), and instead treats them as General Unsecured Claims[6] in Class 4.   Pursuant to the Plan, the holders of Class 4 General Unsecured Claims are entitled to receive distributions under the Plan prior to any distributions being made to the holders of Section 510(b) Claims.

17.      The Disclosure Statement does not discuss the classification of the Settlement Class Claims or contain any explanation of why the Settlement Class Claims are not classified as Section 510(b) Claims under the Plan.

18.      The Plan provides the following proposed treatment of Section 510(b) Claims for distribution purposes:

> On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed Class 7 Section 510(b) Claim shall receive its Pro Rata[7] share of the Distributable Proceeds,[8] if any, pursuant to the Waterfall

---

[5] "Shareholder Litigation Claims" is defined in the Plan as: "any Claim relating to the Shareholder Litigation." "Shareholder Litigation" is defined in the Plan as: "that certain litigation captioned *In re Akorn, Inc. Data Integrity Securities Litigation*, Civ. A. No. 1:18-cv-01713 (N.D. Ill. Mar. 8, 2018)."

[6] "General Unsecured Claim" is defined in the Plan as: "any unsecured Claim against any of the Debtors that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Intercompany Claim; (d) an Other Priority Claim; (e) a Priority Tax Claim; (f) a Professional Fee Claim; (g) a Section 510(b) Claim; or (h) a Purchaser Assumed Claim."

[7] "Pro Rata" is defined in the Plan as: "the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class."

[8] "Distributable Proceeds" is defined in the Plan as: "all Cash of the Debtors on or after the Effective Date, after giving effect to the funding of the Professional Fee Escrow Account."

> Recovery;[9] *provided that* for purposes of receiving the treatment
> provided herein, each Holder of an Allowed Section 510(b) Claim
> shall be treated as if such Holder held a number of Allowed Class 8
> Akorn Interests equal in value to the amount of its Allowed Section
> 510(b) Claim.

Plan, Article III.B.7.

19.     The formula embodied in Article III.B.7 of the Plan appears intended to provide for pro rata allocation of distributions between Class 8 Akorn Interests, which are denominated in shares, and Class 7 Section 510(b) Claims, which are denominated in dollars. However, neither the Plan nor the Disclosure Statement explains what value will be ascribed to Akorn Interests in making that calculation.

## **OBJECTION**

## I.     **The Disclosure Statement Fails to Provide Adequate Information Regarding the Plan's Treatment of Section 510(b) Claims**

20.     The Disclosure Statement should not be approved because it does not provide holders of Section 510(b) Claims with "adequate information" necessary to make an informed judgment about the Plan as required by section 1125(b) of the Bankruptcy Code.

21.     The purpose of a disclosure statement is "to inform equity holders and claimants, as fully as possible, about the probable financial results of acceptance or rejection of a particular plan…" *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) (Congress intended the disclosure statement "to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization."); *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (A proposed disclosure statement "must clearly and succinctly inform the average unsecured creditor what i it, and what contingencies there are to getting its distribution.").

---

[9] "Waterfall Recovery" is defined in the Plan as: "the priority distribution of Distributable Proceeds, which shall be allocated and paid to the Holders of Claims or Interests, as applicable, until paid in full from time to time in the following priority (in each case on a Pro Rata basis): (a) first, on account of Allowed Administrative Priority Claims, DIP Facility Claims, and Priority Tax Claims, (b) second, on account of Allowed Other Secured Claims; (c) third, on account of Allowed Other Priority Claims; (d) fourth, on account of Allowed Term Loan Claims; (v) fifth, on account of any Allowed General Unsecured Claims that are not assumed by the Purchaser; and (e) sixth, on account of Allowed Section 510(b) Claims and Allowed Akorn Interests."

22.     Indeed, the Third Circuit has emphasized the importance of adequate disclosure, given the reliance creditors and bankruptcy courts place on disclosure statements. *See, e.g.*, *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 417 (3d Cir. 1988) ("[W]e cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information.'"). "Adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Whether a disclosure statement provides "adequate information will be determined by the facts and circumstances of each case." *In re Oneida Motor Freight, Inc*., 848 F.2d at 417.

23.     As noted above, it appears that the Plan proposes to treat any Settlement Class Claims as General Unsecured Claims rather than as Section 510(b) Claims. The Disclosure Statement does not discuss the classification of the Settlement Class Claims or contain any explanation of why the Settlement Class Claims are not classified as Section 510(b) Claims under the Plan, notwithstanding the fact that the Settlement Class Claims, like the Opt-Out Plaintiffs' Claims, are for damages arising from the purchase or sale of a security of the Debtors.

24.     In addition, the Disclosure Statement and Plan must be clarified in order to explain what value will be ascribed to Akorn Interests in making the calculation contemplated by the formula embodied in Article III.B.7 of the Plan in order to provide for a pro rata allocation of distributions between Class 8 Akorn Interests, which are denominated in shares, and Class 7 Section 510(b) Claims, which are denominated in dollars.  Without this information, the Disclosure Statement fails to provide adequate information for holders of Section 510(b) Claims to fully evaluate the impact of the Plan on their claims.

25.     Because the Plan provides for the liquidation of the Debtors' assets, the appropriate value of equity is simply whatever Distributable Proceeds remain in the estates after payment of all classes senior to Classes 7 and 8 - *i.e.*, the residual value of the Debtors' estates.  That value,

divided by the number of shares of stock issued and outstanding, represents an appropriate per-share price for use in converting the amount of a Class 7 Section 510(b) Claim to a hypothetical number of shares for purposes of the pro rata allocation of distributions among Classes 7 and 8. However, the Disclosure Statement and Plan are silent on this issue.[10]

26.    Accordingly, the Disclosure Statement lacks adequate information and fails to comply with section 1125(b) of the Bankruptcy Code.

## II.    The Proposed Solicitation and Voting Procedures Should be Adjusted to Protect Creditor Rights

27.    The proposed Solicitation and Voting Procedures do not provide a reasonable amount of time for a creditor whose claim is objected to on or prior to seven (7) days before the proposed Voting Deadline (August 15, 2020 at 5:00 p.m. (ET)) to file a motion and obtain entry of an order temporarily allowing its claim for voting purposes as the proposed deadline for obtaining such a "Resolution Event" is August 13, 2020.  *See* Section 3.C. of the Solicitation and Voting Procedures, attached as Schedule 2 to the proposed Disclosure Statement Order.  This could leave a creditor with a *mere five (5) days* to file a motion and obtain such an order.  Accordingly, the deadline for the Debtors to file an objection to a claim that will trigger the necessity of a creditor obtaining a Resolution Event in order to vote on the Plan should be twenty-five (25) days prior to the proposed Voting Deadline, or July 21, 2020.

## RESERVATION OF RIGHTS

28.    The Opt-Out Plaintiffs reserve all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise further and other objections, to introduce evidence at any hearing regarding the Disclosure Statement in the event this Objection

---

[10] By way of example, if $1,000 remains for distribution after payment of all claims senior to equity, and there are 1,000 shares of Class 8 Akorn Interests issued and outstanding, the residual value per share is $1.  If there are $500 of allowed Class 7 Section 510(b) Claims, those claims convert to 500 hypothetical common shares ($500 / $1 per share), for a total of 1,500 (1,000 + 500) shares for purposes of the pro rata allocation of distributions under the formula in Article III.B.7 of the Plan.  The $1,000 of Distributable Proceeds would be allocated 2/3 (1,000 shares / 1,500 total shares) to Class 8 and 1/3 (500 hypothetical shares / 1,500 total shares) to Class 7, each for further pro rata distribution to individual holders in those classes.

is not resolved prior to such hearing, and to seek to introduce documents or other relevant information in support of the positions set forth in this Objection.

29.     The Opt-Out Plaintiffs further reserve the right to object to confirmation of the Plan on any and all appropriate grounds, including, without limitation, that the Plan's classification scheme is improper under section 1122 of the Bankruptcy Code, violates section 510(b) and 1129(a)(1) of the Bankruptcy Code with respect to the Settlement Class Claims, and unfairly discriminates between the Opt-Out Plaintiffs' Claims and the Settlement Class Claims under the cram down provisions of section 1129(b) of the Bankruptcy Code.


Dated: June 24, 2020
      Wilmington, Delaware

Respectfully Submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, DE 19801
T: (302) 777-111
rosner@teamrosner.com
gibson@teamrosner.com

- and -

**LOWENSTEIN SANDLER LLP**
Lawrence M. Rolnick, Esq.
Michael J. Hampson, Esq.
Wojciech F. Jung, Esq.
Michael Savetsky, Esq.
1251 Avenue of the Americas
New York, New York 10020
T: 212-262-6700
F: 212-262-7402
lrolnick@lowenstein.com
mhampson@lowenstein.com
wjung@lowenstein.com
msavetsky@lowenstein.com

*Counsel to the Opt-Out Plaintiffs*