IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AKORN, INC., *et al.*,[1] | ) |
| | ) Case No. 20-11177 (KBO) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |

## AD HOC GROUP'S STATEMENT IN SUPPORT OF PLAN

The Ad Hoc Group and DIP Lenders (collectively, the "Ad Hoc Group") hereby submit this statement in support of the *Modified Joint Chapter 11 Plan of Akorn, Inc. and its Debtor Affiliates* [Docket No. 547] (the "Plan"):[2]

## STATEMENT

1. The Plan should be confirmed and the Debtors should be authorized to wind down their operations in an orderly fashion through the appointment of the Plan Administrator and the funding of the Wind-Down Budget by the Stalking Horse Purchaser. As a general matter, the Ad Hoc Group is supportive of all aspects of the Debtors' case in support of confirmation. The Plan meets all of the requirements of Section 1129 of the Bankruptcy Code (including the requirement of the Debtors' to obtain at least one consenting impaired class) and was proposed in good-faith. More importantly, while not connected to the Sale Transaction as the issues have now been

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC. The location of the Debtors' service address is: 1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

26971892.1

bifurcated by the Court, confirmation of the Plan furthers the Sale Transaction's purpose in that it will grant the Debtors' (and other parties in interest) closure in these proceedings.

2.  The various objections filed in opposition to the Plan cover a variety of arguments, none of which are sufficient to delay or otherwise impede confirmation. In an effort not to repeat the arguments made in the *Debtors' Memorandum of Law in Support of an Order Confirming the Joint Chapter 11 Plan of Akorn, Inc. and Its Debtor Affiliates* (the "Confirmation Brief"), the Ad Hoc Group files this Statement to specifically address certain of the objections and to otherwise correct the record to the extent inaccurate allegations have been made.

**A. The Plan Has Been Accepted By at Least One Impaired Class**

3.  The MDL Plaintiffs wrongly assert that the Plan cannot be confirmed because it lacks an impaired accepting class. *See* 11 U.S.C § 1129(a)(10). In support of this argument, the MDL Plaintiffs argue that the Term Loan Lenders are somehow unimpaired as a result of acquiring substantially all of the Debtors' assets through a credit bid. This argument is simply wrong. It is true that the Term Loan Lenders have utilized 100% of their prepetition Claim in connection with the credit bid, but this only entitles the Term Loan Lenders to take "immediate possession of the Purchased Assets as and solely to the extent set forth in the Sale Order, with no further order of the Bankruptcy Court required." Plan Art. III.B.3. This is not, as the MDL Plaintiffs have alleged, a "minor impairment," but is instead a significant alteration of the Term Loan Lenders' rights under the Prepetition Credit Agreement.

4.  Impairment is an extremely broad concept under the Bankruptcy Code. As explained by the Third Circuit:

> "Impairment" is a term of art crafted by Congress to determine a creditor's standing in the confirmation phase of bankruptcy plans. Each creditor has a set of legal, equitable, and contractual rights that may or may not be affected by bankruptcy. If the debtor's Chapter

26971892.1

2

> 11 does not leave the creditor's rights *entirely "unaltered,"* the creditor's claim will be labeled as impaired under § 1124(1) of the Bankruptcy Code.  If the creditor's claim is impaired, the Code provides the creditor with a vote that, depending on the value of the creditor's claim, may be sufficient to defeat confirmation of the bankruptcy plan.  *See In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 202 (3d Cir. 2003) (emphasis added) (citing *In re L & J Anaheim Assoc.*, 995 F.2d 940, 942–43 (9th Cir. 1993)).

Indeed, courts have gone so far as to hold that the Bankruptcy Code creates a presumption of impairment.  *Id.* at 203 ("The Bankruptcy Code creates a presumption of impairment 'so as to enable a creditor to vote on acceptance of the plan.'") (citing *In re Monclova Care Ctr., Inc.*, 254 B.R. 167, 178–79 (Bankr. N.D. Ohio 2000); *In re Seasons Apartments, L.P.*, 215 B.R. 953, 958 (Bankr. W.D. La. 1997)).

5. The Term Loan Lenders are impaired under the Plan because it alters their legal, equitable, and contractual rights under the Prepetition Credit Agreement.  Specifically, outside of these Cases, the Term Loan Lenders would have been entitled to realize on their collateral upon the occurrence of the various events of default that led to the filing of these Cases.  Instead, the Term Loan Lenders agreed not to exercise these rights and have the sale process run by the Debtors, while at the same time subjecting themselves to the jurisdiction of this Court, as well as the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the applicable Local Rules.  Courts have specifically analyzed this same scenario and determined that it constitutes impairment.  *See, e.g. In re L & J Anaheim Assocs.*, 995 F.2d 940, 943 (9th Cir. 1993) (holding that a secured creditors rights were impaired under a plan that required collateral to be sold at public auction instead of allowing the secured creditor to exercise the other remedies to which it was entitled under the applicable loan documents).  This Court should do the same.

6. In addition, the Term Loan Lenders (through the Stalking Horse Purchaser) are not simply taking possession of the Debtors' assets, but are also agreeing to:  (a) fund (including with

their cash collateral) the $35 million Wind-Down Budget; (b) assume in excess of $150 million of liabilities that they are not required to; and (c) provide value to additional unsecured creditors by virtue of the recent settlement with the official committee of unsecured creditors. This provision of additional value in addition to the credit bid – particularly the use of cash collateral – has also been found to constitute impairment. *See In re Dwellco I Ltd. P'ship*, 219 B.R. 5, 13 (Bankr. D. Conn. 1998).

### B. The Plan Was Negotiated in Good Faith

7. At all times the Plan was negotiated for in good faith by the Debtors and the Term Loan Lenders. Indeed, even though the Plan is in no way connected to the Sale Transaction, both parties saw the merit in ensuring that the remainder of the Debtors' estate have a viable Wind-Down Budget and exit strategy from these Cases. There was no collusion between the parties to mistreat certain subsets of creditors. The Stalking Horse Purchaser is assuming liabilities that it has deemed are necessary to the going concern of this business, as is its right. Any remaining liabilities will stay at the Debtors' estates. The Wind-Down Budget was sized to ensure administrative solvency in these Cases. There is, unfortunately, no value available for unsecured creditors (or Claims subordinated under Section 510(b) of the Bankruptcy Code) because no viable topping bids materialized that would have generated cash proceeds sufficient to provide such a recovery.

8. The Term Loan Lenders have at all times acted in good faith and in a reasonable manner to further the interests of the Debtors and the Debtors' estates – actions reflected in the fact that none of the Debtors' major stakeholders and the other fiduciaries in these Cases have objected to the Plan. What remains are the last ditch effort of a small group of disputed litigation

26971892.1

claims that appear to want nothing more than to force the Debtors into a liquidation after the close of the Sale Transaction. Such a result serves nobody's interest.

## CONCLUSION

For the foregoing reasons, the Ad Hoc Group respectfully requests that this Court confirm the Plan.

Dated: Wilmington, Delaware
August 28, 2020

*/s/ Robert F. Poppiti, Jr.*
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
rpoppiti@ycst.com

-and-

**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (admitted *pro hac vice*)
Steven A. Domanowski (admitted *pro hac vice*)
Jeremy D. Evans (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email: sgreenberg@gibsondunn.com
sdomanowski@gibsondunn.com
jevans@gibsondunn.com

*Counsel to the Ad Hoc Term Lender Group*

26971892.1