# Exhibit C





HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**Policy Number:** **US00075683DO19A**

**Renewal of Number:** US00075683DO18A

☐ **Greenwich Insurance Company**

☒ **XL Specialty Insurance Company**

Members of the XL America Companies

**MANAGEMENT LIABILITY AND
COMPANY REIMBURSEMENT
INSURANCE POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

| | | |
|---|---|---|
| **Item 1.** | **Name and Mailing Address of Parent Company:** | |

Akorn, Inc.
1925 West Field Court, Suite 300
Lake Forest, IL  60045

| | | |
|---|---|---|
| **Item 2.** | **Policy Period:** | **From:** September 01, 2019 **To:** Septemnber 01, 2021 |

**At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

| | |
|---|---|
| **Item 3.** | **Limit of Liability:** |

$5,000,000.  Aggregate, each **Policy Period** (including Defense **Expenses**)

| | |
|---|---|
| **Item 4.** | **Retentions:** |

| | |
|---|---|
| $0 | each **Insured Person** under INSURING AGREEMENT I (A) |
| $3,500,000 | each **Claim** under INSURING AGREEMENT I (B) |
| $3,500,000 | each **Claim** under INSURING AGREEMENT I (C) |

| | |
|---|---|
| **Item 5.** | **Optional Extension Period:** |

Length of Optional Extension Period:

(Either one year or two years after the end of the **Policy Period**, at the election of the **Parent Company**)

Premium for Optional Extension Period:

| | |
|---|---|
| One Year: | $2,187,500.00 |
| Two Years: | N/A |
| Three Years: | N/A |

| | | |
|---|---|---|
| **Item 6.** | **Pending and Prior Litigation Date:** | April 24, 2002 |

| | |
|---|---|
| **Item 7.** | **Notices required to be given to the Insurer must be addressed to:** |

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

## MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT POLICY DECLARATIONS

**Item 8.**   **Premium:**

Taxes, Surcharges or Fees:                    $0.00
Total Policy Premium:                    $2,325,000.00

**Item 9.**   **Policy Forms and Endorsements Attached at Issuance:**

DO 71 00 09 99   XL 82 01 07 07   XL 80 24 03 03   DO 72 06 02 00   DO 83 27 07 01   DO 83 125 08 06
DO 83 126 08 06   DO 83 133 12 06   DO 80 395 01 07   DO 80 213 02 03   XL 83 07 01 00
DO 80 562 06 10   DO 83 130 08 06   DO 80 17 05 00   DO 83 09 06 00   DO 80 284 08 04   DO 80 02 02 10
DO 80 342 10 05   DO 80 376 11 06   XL 80 02 03 00   DO 80 436 08 07   DO 83 12 08 00
DO 80 503 11 08   DO 80 142 10 01   DO 80 123 06 01   DO 80 46 07 00   DO 80 129 07 01
DO 80 357 05 06   DO 80 504 12 08   DO 80 286 08 04   DO 80 559 06 10   Manuscript 194 07 01
Manuscript 7260 07 07   DO 80 289 09 04   DO 80 717 10 15   DO 80 627 05 12   DO 80 241 11 03
DO 80 05 03 00   DO 80 567 07 10   DO 80 578 11 10   DO 80 480 06 08   XL 80 72 06 13   XL 80 74 07 13
DO 80 12 04 00

Countersigned: _____   By: _____

                         Date                                    Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL
CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.                    Theresa M. Morgan
President                                        Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.                    Theresa M. Morgan
President                                        Secretary

**XL Specialty Insurance Company**

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____
Joseph Tocco
President

_____
Toni Ann Perkins
Secretary

LAD 400 0915 XLS

© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

# POLICYHOLDER DISCLOSURE

## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived. Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **US00075683DO17A**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions embargoes or export controls applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions, embargoes or export controls law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC or the applicable regulator.  Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the AXA XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;
- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

PN CW 02 0119

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;

PN CW 02 0119

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

<u>Violation of the Privacy Policy</u>

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Alabama** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
|---|---|
| New York | **General:  All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. |
| | **All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| | **Fire:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. |
| | The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING**:  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| | **WARNING**: All Workers Compensation Insurance: Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of: <br> 1.  obtaining any benefit or payment, <br> 2.  increasing any claim for benefit or payment, or <br> 3.  obtaining workers' compensation coverage under this act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |
| Pennsylvania | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| | **Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

PN CW 01 0719

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

PN CW 01 0719

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**ILLINOIS**

This notice is to advise you if you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL:

1-800-622-7311
AXA XL
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040

You may also contact the Public Service Division of the Department of Insurance at the following address:

Illinois Department of Insurance
Consumer Division or Public Services Section
320 W. Washington Street
Springfield, IL 62767

Toll-free: 1-866-445-5364
TDD 217/524-4872 / Fax: 217/558-2083

http://mc.insurance.illinois.gov/messagecenter.nsf

PN IL 02 0119

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**XL 82 01 07 07**

**Endorsement No.: 1**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

**Endorsement No.: 2**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.



DO 72 06 02 00

**Endorsement No.: 3**  
**Named Insured: Akorn, Inc.**  
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**  
**12:01 A.M. Standard Time**  
**Insurer: XL Specialty Insurance Company**

# ILLINOIS AMENDATORY ENDORSEMENT

1.    Section VI. GENERAL CONDITIONS (C) OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES (1) is deleted and replaced by the following:

   (1)    Except as provided in Section (C)(2) below, if the Insureds have insurance provided by other companies against a Loss covered by this Policy, the Insurer shall not be liable under this Policy for a greater proportion of such Loss than the Limit of Liability stated in the Declarations bears to the total applicable Limit of Liability for all valid and collectible insurance against such Loss.

2.    Section VI.   GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (2) is amended by the addition of the following:

   The Insurer will also mail a copy of notice of cancellation to the Parent Company's broker and any mortgagee or lienholder, if known.

3.    Section VI.   GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (3) is amended by the addition of the following:

   The notice of non-renewal will state the reason for such non-renewal.  The Insurer will also mail a copy of the notice to the Parent Company's agent of record or broker and any mortgagee or lienholder, if known.

All other terms, conditions and limitations of this Policy remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

DO 83 27 07 01

**Endorsement No.: 4**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURED vs. INSURED EXCLUSION

In consideration of the premium charged, Section III Exclusions (G) of the Policy is amended to read in its entirety as follows:

"(G)    by, on behalf of, or in the name or right of, the Company or any Insured Person, except and to the extent such Claim:

(1)    is brought derivatively by a security holder of the Company who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person or the Company;

(2)    is brought by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company;

(3)    any Claim in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(4)    is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 125 08 06

**Endorsement No.: 5**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought and maintained by an Insured Person:

    (a)    who has not served as a director, officer, member of the Board of Managers, or employee of the Company for at least two (2) years prior to the date such Claim is first made; and

    (b)    who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**DO 83 126 08 06**

**Endorsement No.: 6**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought and maintained in a non-common law jurisdiction outside the United States of America, including its territories and possessions.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**DO 83 133 12 06**

**Endorsement No.: 7**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought by a creditors committee of the Company in the event such Company files for relief under Title 11 of the United States Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

DO 80 395 01 07

**Endorsement No.: 8**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definitions (M) of the Policy is amended to read in its entirety as follows:

"(M)    'Loss' means damages, judgments, settlements or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay. Loss will not include

(1)    fines, penalties or taxes imposed by law;

(2)    taxes or wages; or

(3)    matters which are uninsurable under the law pursuant to which this Policy is construed.

NOTE:  With respect to judgments in which punitive, exemplary or multiplied damage are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of the counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 213 02 03

**Endorsement No.: 9**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF SECURITIES CLAIM ENDORSEMENT

In consideration of the premium charged, Section II Definitions (Q) of the Policy is amended to read in its entirety as follows:

"(Q)    'Securities Claim' means a Claim, other than an administrative or regulatory proceeding against or investigation of a Company, made against any Insured:

(1)      for a violation of any federal, state, local regulation, statute or rule (whether statutory or common law) regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is:

(a)      brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the purchase or sale of, or offer to purchase or sell, securities of the Company; or

(b)      brought by a security holder of a Company with respect to such security holder's interest in securities of such Company; or

(2)      brought derivatively on behalf of the Company by a security holder of such Company.

Notwithstanding the foregoing, the term 'Securities Claim' shall include an administrative or regulatory proceeding against a Company, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person."

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 83 07 01 00

**Endorsement No.: 10**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SPECIFIED CLAIMS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein:

Those legal proceedings described in Item 3. Of the Form 10K annual report pursuant to Section 13r 15(d) of e Securities Exchange Act of 1934 for year ended December 31, 2001.

All other terms, conditions and limitations of this Policy shall remain unchanged.



**Endorsement No.: 11**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SECTION 11, 12 & 15 ENDORSEMENT

In consideration of the premium charged:

(1)    Notwithstanding Endorsement No. 8. to this Policy, Section II Definition (M)(3) of the Policy is amended to read in its entirety as follows:

"(3)    matters which are uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement in a Claim arising from an initial or subsequent public offering of the Company's securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933)."

(2)    Section III Exclusion (F)(2) of the Policy will not apply to allegations in a Claim asserted against an Insured under Section 11 and/or 12 of the Securities Act of 1933 as amended arising out of an initial or subsequent public offering of the Company's securities (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 83 130 08 06

**Endorsement No.: 12**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought by an employee or an Insured Person of the Company pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 17 05 00

**Endorsement No.: 13**          **Effective: September 01, 2019**
**Named Insured: Akorn, Inc.**      **12:01 A.M. Standard Time**
**Policy No.: US00075683DO19A**    **Insurer: XL Specialty Insurance Company**

# ADD COVERAGE FOR COSTS INCURRED IN INVESTIGATING AND EVALUATING SHAREHOLDER DERIVATIVE DEMANDS

(1)   In addition to the coverage otherwise provided under this Policy, but still subject to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, the Insurer shall pay on behalf of the Company all Investigation Costs resulting solely from any Shareholder Derivative Demand first made during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act committed or attempted, or allegedly committed or attempted, by any Insured Person.

(2)   "Investigation Costs" mean reasonable fees and expenses of attorneys and experts retained by the Company, or by its board of directors or any committee thereof, that are incurred by the Company in the Company's investigation or evaluation of a Shareholder Derivative Demand.  Investigation Costs will not include the Company's overhead expenses or any salaries, wages, fees or benefits of its directors, officers or employees.

(3)   "Shareholder Derivative Demand" means a written demand, made by one or more of the shareholders of the Company upon the Company's board of directors, for the Company to bring a civil proceeding in a court of law against an Insured Person.

(4)   The Insurer's maximum aggregate limit of liability under this Policy for Investigation Costs shall be $250,000, which amount shall be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability under this Policy as set forth in ITEM 3 of the Declarations.  Payment by the Insurer of Investigation Costs shall reduce the Limit of Liability.

(5)   The coverage provided under paragraph (1) above will be subject to the exclusions set forth in Section III of this Policy and to any exclusions that may be set forth in other endorsements to this Policy, and any references in those exclusions to Loss and Claims shall be deemed to refer instead to Investigative Costs and Shareholder Derivative Demands, respectively.

(6)   No retention will apply to Investigation Costs payable under paragraph (1) above.

(7)   It shall be the duty of the Company to investigate and evaluate any Shareholder Derivative Demand.

(8)   For purposes of the coverage provided under paragraph (1) above, all references in Sections V.C and VI to Loss and Defense Expenses shall be deemed to refer instead to Investigative Costs, and all references in Sections V.C and VI to Claims shall be deemed to refer instead to Shareholder Derivative Demands.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 09 06 00

**Endorsement No.: 14**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ERISA EXCLUSION

In consideration of the premium charged, Section III Exclusions (C) is deleted and replaced by the following:

(C)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulation promulgated thereunder or any similar, federal, state or local law or regulation;

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 09 06 00

Page 1 of 1

**Endorsement No.: 15**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND GENERAL CONDITIONS (C)(1) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

"(1)  All Loss payable under this Policy will be specifically excess of and will not contribute with any other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy.  This Policy will not be subject to the terms of any other insurance policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 02 02 10

**Endorsement No.: 16**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person," as defined in Section II Definition (J)(1) of the Policy, shall include those individuals holding the following positions for the Company:

General Counsel

All other terms, conditions and limitations of this policy shall remain unchanged.

DO 80 342 10 05

**Endorsement No.: 17**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF APPLICATION ENDORSEMENT

In consideration of the premium charged, the term "Application" shall include all reports, statements, prospectuses and other materials filed by the Company with the Securities and Exchange Commission on or after that date which is one (1) year before the date of the Application but before the Inception Date set forth in ITEM 2 of the Declarations, and Section II DEFINITIONS (A) of the Policy will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.



**DO 80 376 11 06**

| | |
|---|---|
| **Endorsement No.: 18** | **Effective: September 01, 2019** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO19A** | **Insurer: XL Specialty Insurance Company** |

# PRIORITY OF PAYMENTS

In consideration of the premium charged:

(1)     It is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

(a)     first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

(b)     second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

(c)     third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

(2)     The bankruptcy or insolvency of any entity or organization entitled to coverage under this Policy or of any Insured Person will not relieve the Insurer of any of its obligations hereunder.  It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the Insured Persons.  Further, if a liquidation or reorganization proceeding is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code, as amended, or any similar state, local or foreign law ("Bankruptcy Law") by or against the Parent Company and/or any other entity or organization entitled to coverage under this Policy, then with respect to any covered Claim, the Insureds hereby:

(a)     waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Bankruptcy Law; and

(b)     agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

(3)     Nothing in this endorsement is intended, nor shall it be construed, to increase the Insurer's maximum aggregate Limit or Limits of Liability under this Policy as set forth in ITEM 3 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 02 03 00

**Endorsement No.: 19**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# WORLDWIDE ENDORSEMENT

In consideration of the premium charged:

(1)  Notwithstanding differences in the substantive and procedural laws of any foreign jurisdiction as compared to the United States federal and state laws, the Insurer agrees to provide coverage in foreign jurisdictions worldwide and agrees that it shall interpret the coverage provided by this Policy at least as broadly, and with the same intent of coverage, as if Loss had been sustained in the United States.

(2)  In the event that a jurisdiction in which any Insured(s) is doing business requires by law or regulation that the Insurer uses approved, filed or otherwise accepted local policy forms, the Insurer shall take such steps as are necessary to ensure that the coverage provided under this Policy is effective in such jurisdiction on the same or better terms and for the same term as hereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

DO 80 436 08 07

**Endorsement No.: 20**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

# AMEND NOTICE OF CLAIM ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(1) of the Policy is amended to read in its entirety as follows:

"(1)     As a condition precedent to any right to payment under this Policy with respect to any Claim, the Insured shall give written notice to the Insurer of any Claim as soon as practicable after it is first made and the Chief Executive Officer, Chief Financial Officer and/or General Counsel of the Parent Company first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period."

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**DO 83 12 08 00**

**Endorsement No.: 21**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DISHONESTY EXCLUSION

In consideration of the premium charged, Section III Exclusion (F) is deleted and replaced by the following:

(F)        brought about or contributed to in fact by any:

(1)        intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2)        profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action;

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 503 11 08

**Endorsement No.: 22**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged:

(1)   The term "Claim," as defined in Section II Definitions of the Policy, will include any official written request for Extradition of any Insured Person or the execution of a warrant for the arrest of any Insured Person where such execution is an element of Extradition.

(2)   Solely for the purposes of this Endorsement, the term "Extradition" means any formal process by which an Insured Person located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 142 10 01

**Endorsement No.: 23**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND SECTION IV ENDORSEMENT

In consideration of the premium charged, Section IV Limit of Liability, Indemnification and Retentions (F) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.



DO 80 142 10 01

DO 80 123 06 01

**Endorsement No.: 24**
**Named Insured:** Akorn, Inc.
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, Section II Definitions (J)(3) and (J)(4) are amended to read in their entirety as follows:

(3)     an individual identified in (J)(1) above who, at the request of the Company, is serving as a director, officer, trustee, regent or governor of a Non-Profit Entity;

(4)     any individual identified in (J)(1) above who, at the request of the Company is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated, of a Joint Venture; or

All other terms, conditions and limitations, of this Policy shall remain unchanged.

DO 80 46 07 00

**Endorsement No.: 25**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include any employee of the Company, but only if and to the extent that such employee is included as a co-defendant in a Claim contemporaneously with or subsequent to the naming of one or more directors or officers of the Company as a defendant or defendants in such Claim for one or more Wrongful Acts; provided that:

(1)    subject to of the terms, conditions, limitations and endorsements of this Policy, the Insurer shall be liable in respect of Claims against such Insured Persons only to pay Loss under Section I. Insuring Agreement (B), which Loss the Company shall pay to or on behalf of such Insured Persons as indemnification, and

(2)    the Insurer shall not be liable to pay Loss under Section I. Insuring Agreement (A) in respect of Claims against such Insured Persons.

All other terms, conditions and limitations of this policy shall remain unchanged.

DO 80 129 07 01

Endorsement No.: 26                          Effective: September 01, 2019
Named Insured: Akorn, Inc.                   12:01 A.M. Standard Time
Policy No.: US00075683DO19A                  Insurer: XL Specialty Insurance Company

# EMERGENCY LOSS ENDORSEMENT

In consideration of the premium charged:

(1)     In addition to the coverage afforded pursuant to Insuring Agreements (A), (B) and (C), but subject to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations and the provisions below, the Insurer shall pay on behalf of the Company Emergency Loss resulting from an Emergency occurring during the Policy Period, or, if applicable, the Optional Extension Period and reported to the Insurer pursuant to paragraph (7) below.

(2)     It is understood and agreed that the payment of any Emergency Loss pursuant to this Policy shall not waive any rights of the Insurer available under this Policy or at law.

(3)     Solely with respect to this endorsement, the following terms shall have the meanings set forth below:

(a)     "Effect of the Common Stock Price" means that the price per share of the Company's common stock shall decrease by the greater of $5 per share or 10% net of the change in the Standard & Poor's Composite Index within a 24 hour period.

(b)     "Emergency" means the public announcement of any of the following events which, in the good faith opinion of the chief financial officer of the Company, is reasonably likely to cause or did cause an Effect on the Common Stock Price:

(i)     the Company's past or future earnings or sales, which is substantially less favorable than any of the following: (A) the Company's prior years earning or sales for the same period; (B) the Company's prior public statements or projections regarding earnings or sales for such period; or (C) an outside securities analyst's published estimate of the Company's earnings or sales;

(ii)    an unforeseen loss of: (A) the Company's intellectual property rights for a patent, trademark or copyright, other than by expiration; (B) a major customer or client of the Company; or (C) a major contract with the Company;

(iii)   the recall of a major product of the Company or the unforeseen delay in the production of a major product of the Company;

(iv)    the Company has caused the bodily injury, sickness, mental anguish, emotional distress, disease or death of a group of persons, or damage or destruction of any tangible property including loss of use thereof;

(v)     layoffs by the Company of its employees, or the death or resignation of one or more key directors or officers of the Parent Company;

(vi)    a restatement of the previously filed financial statements of the Company;

(vii)   the elimination or suspension of regularly scheduled dividends previously paid by the Company;

(viii)  the Company intends to write-off a material amount of its assets;

(ix)  the Company has defaulted or intends to default on its debt or intends to engage in a debt restructuring;

(x)  the Company intends to file for bankruptcy protection, a third party is seeking to file for involuntary bankruptcy on behalf of the Company, or bankruptcy proceedings are imminent, whether voluntary or involuntary;

(xi)  the commencement or threat of commencement of litigation or governmental or regulatory proceedings against the Company; or

(xii)  an unsolicited written offer or bid, whether publicly announced or privately made, by any person or entity, other than an Insured or any affiliate of an Insured, to a director or officer of the Company to effect a Change in Control;

provided that Emergency shall not include any event relating to:

(1)  any fact, circumstance, situation, transaction, event, or wrongful act which was the subject of any notice given under any other policy;

(2)  any fact, circumstance, situation, transaction, event or wrongful act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to April 24, 2001; or

(3)  any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste.

An Emergency shall first occur when any Company or any of its directors or officers first becomes aware of such Emergency. An Emergency shall conclude immediately when the Emergency Firm advises the Company that such Emergency no longer exists or when the applicable limit of liability has been exhausted.

(c)  "Emergency Firm" means any public relations firm, crisis management firm or law firm hired by the Company, with the prior written approval of the Insurer, to perform Emergency Services.

(d)  "Emergency Loss" means:

(i)  reasonable and necessary fees and expenses incurred by an Emergency Firm in the performance of Emergency Services for the Company;

(ii)  reasonable and necessary fees and expenses incurred in the printing, advertising, mailing of materials; and

(iii)  travel costs incurred by any director, officer, member of the Board of Managers, employee or agent of the Company or the Emergency Firm,

in connection with an Emergency and incurred during the pendency of, of within 90 days immediately prior to and in anticipation of, an Emergency for which the Company is legally liable.

(e)  "Emergency Services" means those services performed by an Emergency Firm in advising the Company or a director, officer or employee of the Company on minimizing potential harm to the Company from an Emergency, including but not limited to maintaining and restoring investor confidence in the Company.

(4)     The term "Loss," as defined in Section II Definitions (M) of the Policy, shall include Emergency Loss.

(5)     The maximum aggregate limit of liability for all Emergency Loss resulting from all Emergencies occurring during the Policy Period shall be $100,000 ("Emergency Sublimit"), which amount is part of and not in addition to the maximum aggregate Limit of Liability of the Insurer under this Policy as set forth in Item 3 of the Declarations.

(6)     As a condition precedent to any right to payment under this Policy with respect to any Emergency, the Insured shall give written notice to the Insurer of an Emergency as soon as practicable after the Emergency commences but in no event later than thirty (30) days after the Company first incurs Emergency Loss.  All notices must be sent by certified mail or the equivalent to the address set forth in Item 7 of the Declarations; Attention: Claim Department.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

DO 80 357 05 06

Endorsement No.: 27
Named Insured: Akorn, Inc.
Policy No.: US00075683DO19A

Effective: **September 01, 2019**
**12:01 A.M. Standard Time**
Insurer: **XL Specialty Insurance Company**

# EMPLOYED LAWYERS ENDORSEMENT (WITH SUBLIMIT)

In consideration of the premium charged:

(1)     The coverage afforded under this Policy will, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to Loss resulting from a Claim made against any Employed Lawyer of the Company (an "Employed Lawyer Claim").

(2)     The term "Employed Lawyer" means any employee of the Company if and to the extent such employee is or, during the course of such person's employment was,"

   (a)     admitted to the practice of law; and

   (b)     employed within the Company's office of general counsel or its functional equivalent for the purpose of providing legal services to or for the benefit of the Company.

(3)     The term "Insured Person" also includes any Employed Lawyer.

(4)     The term "Wrongful Act" also includes any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Employed Lawyer, but only in connection with an Employed Lawyer's performance of, or actual or alleged failure to perform, legal services to or for the benefit of the Company within the scope of his or her employment.

(5)     No coverage will be available under this endorsement for Loss, including Defense Expenses, from any Claim against an Employed Lawyer based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

   (a)     the service by any such person in any capacity, whether or not with the Company, other than those explicitly set forth in this endorsement; or

   (b)     an Employed Lawyer's performance of, or actual or alleged failure to perform, any legal services other than legal services to or for the benefit of the Company within the scope of the Employed Lawyer's employment.

(6)     The Insurer's maximum aggregate limit of liability for all Loss from all Employed Lawyer Claims shall be $5,000,000, which amount shall be part of, and not in addition to, the maximum aggregate Limit of Liability for this Policy as set forth in Item 3 of the Declarations, which is applicable to all Loss from all Claims for which this Policy provides coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 28**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND CANCELLATION ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (E)(1) of the Policy is amended to read in its entirety as follows:

"(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall return to the Parent Company the gross pro rata unearned premium (minus brokerage commission).  Return or tender of the unearned premium is not a condition of cancellation."



© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 286 08 04

**Endorsement No.: 29**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(5) of the Policy shall include the domestic partner of any person set forth in Section II Definition (J)(1) – (J)(4), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 559 06 10

**Endorsement No.: 30**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURER'S RIGHTS OF SUBROGATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that, in the event of payment under the Policy, the Insurer will not be subrogated to any Insured's potential or actual rights of recovery in connection therewith against any Insured Person unless it shall have been determined by final adjudication in the underlying Claim that such Insured Person committed any act or omission or gained any profit or remuneration so that Section III. EXCLUSION (F) of this Policy, as amended, would be applicable to such Insured Person, and Section VI. GENERAL CONDITIONS (G)(2) of this Policy will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 31**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# BANKRUPTCY ENDORSEMENT

In consideration of the premium charged:

(1)    Section II Definitions (B)(3) of the Policy is deleted in its entirety.

(2)    The term "Company," as defined in Section II Definitions (D) of the Policy, shall include the Parent Company and any covered Subsidiary as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

(3)    The bankruptcy or insolvency of any Insured shall not relieve the Insurer of any of its obligations under this Policy.  It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the Insured Persons.  If a liquidation or reorganization proceeding is commenced by the Company, whether voluntary or involuntary, under Title 11 of the United States Code, or any similar state, local or foreign law (collectively, "Bankruptcy Law"), then, with respect to a Claim under this Policy, the Insureds hereby:

    (a)    waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Bankruptcy Law; and

    (b)    agree not to oppose or object to any efforts by the Insurer or any Insured Person to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 32**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND REPRESENTATION CLAUSE ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (I) of the Policy is amended to read in its entirety as follows:

"(I)    REPRESENTATION CLAUSE

The Insured represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy.  No knowledge or information possessed by any Insured will be imputed to any other Insured. The Insurer may not void and/or rescind this Policy, other than for non-payment of premium."

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 33**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# OUTSIDE DIRECTORSHIP ENDORSEMENT

In consideration of the premium charged:

(1)   The term "Non Profit Entity", as defined in Section II Definitions of the Policy, is amended to include the following entity (the "For-Profit Entity"):

Aciex Therapeutics

(2)   The term "Insured Person", as defined in Section II Definitions of the Policy, is amended to include service by the following Insured Person(s) as a director or officer of the For-Profit Entity, but only during such time that such service is at the specific written request of the Company:

Rajat Rai

With respect to the For-Profit Entity, the term "Insured Person" shall not include service as a director or officer by any Insured Person other than the Insured Person(s) specifically identified in paragraph (2).

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 717 10 15**

**Endorsement No.: 34**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DELETE EXCLUSION (B) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (B) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.



© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 627 05 12

**Endorsement No.: 35**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND NOTICE OF CLAIM

In consideration of the premium charged: it is understood and agreed that the Insureds' failure to provide written notice of any Claim to the Insurer within the time prescribed in Section VI. GENERAL CONDITIONS (A)(1) will not invalidate coverage under this Policy unless the failure to provide such timely notice has actually prejudiced the Insurer; provided, however, that there will be an irrebuttable presumption of prejudice to the Insurer if, before written notice of a Claim is given to the Insurer, an Insured's liability in connection with such Claim is determined by a court of competent jurisdiction or by binding arbitration or an Insured enters into any settlement or other compromise of such Claim.

All other terms, conditions and limitations of this Policy shall remain unchanged.



© 2012 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 241 11 03

**Endorsement No.: 36**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged:

(1)     Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

    (a)     "Co-Defendant Insured Person" means any natural person employee of the Company, but solely in connection with services performed for the Company; and

    (b)     "Original Insured Person" means any Insured Person, other than a Co-Defendant Insured Person.

(2)     The term "Insured Person," as defined in Section II Definitions (J) of the Policy, is amended to include any Co-Defendant Insured Person, but only with respect to, to the extent that, and during such time that a Claim:

    (a)     made against a Co-Defendant Insured Person is also made and continuously maintained against an Original Insured Person; and

    (b)     is for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such Co-Defendant Insured Person committed or allegedly committed in connection with services performed for the Company.

(3)     No coverage will be available under this Policy for any Claim made: (a) solely against a Co-Defendant Insured Person, or (b) against a Co-Defendant Insured Person and person or entity, other than an Original Insured Person.

(4)     No coverage will be available under this Policy for any Claim made against a Co-Defendant Insured Person based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a Co-Defendant Insured Person in connection with any services performed for any entity other than the Company, or acting in their capacity as a consultant to any entity other than the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 05 03 00**

**Endorsement No.: 37**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF "CLAIM"

In consideration of the premium charged, the term "Claim" will be deemed to include any proceeding or investigation which is comparable to a proceeding or investigation described in Section II.(C)(2), (3) or (4) of the Policy, and which is brought or commenced in a jurisdiction other than the United States, its territories and possessions before any court, tribunal, agency, organization or other official body having the authority under the laws of such jurisdiction to enter judgment or otherwise make a binding determination of liability or responsibility.

All other terms, conditions and limitations of this Policy shall remain unchanged.



DO 80 567 07 10

**Endorsement No.: 38**

**Named Insured: Akorn, Inc.**

**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**

**12:01 A.M. Standard Time**

**Insurer: XL Specialty Insurance Company**

# ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Company," as defined in Section II Definitions (D) of the Policy, is amended to include the following entities scheduled below, (each an "Additional Company"):

| Additional Company | Pending and Prior Litigation Date |
|---|---|
| Hi-Tech Pharmacal Co., Inc. | April 17, 2014 |

(2)     No coverage will be available under this Policy for Claims made against any Additional Company, or any Insured Person thereof, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth opposite such Additional Company in paragraph (1) above of this endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 578 11 10

**Endorsement No.: 39**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND GENERAL CONDITIONS (G)(1) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (G)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.  The failure of any Insured Person to give the Insurer cooperation and information as required in this paragraph shall not impair the rights of any other Insured Person under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 480 06 08

**Endorsement No.: 40**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EMAIL NOTICES ENDORSEMENT

In consideration of the premium charged, Section VI General Condition (A)(3) of the Policy is amended to read in its entirety as follows:

"(3)  All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by:

(a)    certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations:  Attention Claim Department; or

(b)    electronic mail (email) to:  proclaimnewnotices@xlcatlin.com."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 480 06 08

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 72 06 13

**Endorsement No.: 41**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# LINKED LIMIT ENDORSEMENT

In consideration of the premium charged, the Insured agrees with the Insurer that the total of all limits of liability under this Policy and any and all other insurance policies issued or reinsured by the Insurer or its affiliates scheduled hereunder to the Insured or any of the Insured's worldwide affiliates, officers, directors, or employees, (this Policy together with all such other policies being referred to herein as "Program Policies") shall not exceed the amount of the Program Aggregate Limit indicated below:

**Program Aggregate Limit**:  $5,000,000

**Schedule of Program Policies:** (list all policies below):

|  | Named Insured | Issuing XL Group Insurer | Policy Number | Policy Period |
|---|---|---|---|---|
| Policy 1 | Akorn, Inc. | XL Insurance Company SE | CH00009864DO19A | September 01, 2019 – September 01, 2020 |

In the event that any payment is made under this Policy or any other Program Policy with the effect that the Program Aggregate Limit is exceeded, the Insured under this Policy shall immediately upon the request of the Insurer pay to the Insurer the sum of such excess.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 74 07 13

**Endorsement No.: 42**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SIMULTANEOUS TERMINATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that if this Policy is canceled pursuant to Section VI General Conditions (E)(1) or (E)(2) of the Policy, any and all other insurance policies issued or reinsured by the Insurer or its affiliates scheduled below to the Insured or any of the Insured's worldwide affiliates, officers, directors, or employees, (this Policy together with all such other policies being referred to herein as "Program Policies"), shall be deemed terminated and cancelled automatically and simultaneously with this Policy.

**Schedule of Program Policies:**

|  | Named Insured | Issuing XL Group Insurer | Policy Number | Policy Period |
|---|---|---|---|---|
| Policy 1 | Akorn, Inc. | XL Insurance Company SE | CH00009864DO19A | September 01, 2019 – September 01, 2020 |

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 12 04 00

**Endorsement No.: 43**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO19A**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# FULLY-EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in ITEM 8 of the Declarations, shall be deemed to be fully earned as of the Policy Inception Date set forth in ITEM 2 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.



### MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.**
**PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:

### I.    INSURING AGREEMENTS

(A)    The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act,** except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)    The Insurer shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act.**

(C)    The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Company Wrongful Act.**

### II.    DEFINITIONS

(A)    "**Application**" means:

(1)    the application attached to and forming part of this Policy; and

(2)    any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)    "**Change In Control**" means:

(1)    the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

(2)    the acquisition by any person, entity or affiliated group of persons or entities of the right to vote, select or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

(3)    the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company**.

(C)    "**Claim**" means:

(1)    a written demand for monetary or non-monetary relief;

(2)    any civil proceeding in a court of law or equity, or arbitration;

(3)    any criminal proceeding which is commenced by the return of an indictment; and

(4)    a formal civil, criminal, administrative regulatory proceeding or formal investigation of an **Insured Person** or the **Company** (but with respect to the **Company** only for a **Company Wrongful Act**) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such **Insured Person** or the **Company** as a person or entity against whom a proceeding as described in (C)(2) or (3) above may be commenced, including any

proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body having jurisdiction over any **Employment Practices Wrongful Act**.

(D)  "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the Policy Period, subject to GENERAL CONDITIONS VI (D).

(E)  "**Company Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Company in connection with a **Securities Claim**.

(F)  "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

(G)  "**Employment Practices Wrongful Act**" means any actual or alleged:

(1)  wrongful termination of employment whether actual or constructive;

(2)  employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

(3)  sexual or other harassment in the workplace; or

(4)  wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)  "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Ac**t.

(I)  "**Insured**" means the **Insured Persons** and the **Company**.

(J)  "**Insured Person**" means:

(1)  any past, present or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

(2)  any past, present or future employee of the **Company** to the extent any **Claim** is a **Securities Claim**;

(3)  an individual identified in (J)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

(4)  any individual identified in (J)(1) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

(5)  the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (J)(1), (2), (3), (4) or (5) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** or **Employment Practices Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

(K) "**Interrelated Wrongful Acts**" means any **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(L) "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the Parent Company, either directly or through one or more **Subsidiary(s)**;

  (1) owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

  (2) has the right, by contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty three percent (33%) of those persons described in (L)(1) above.

(M) "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

  (1) the multiplied portion of any damage award;

  (2) fines, penalties or taxes imposed by law; or

  (3) matters which are uninsurable under the law pursuant to which this Policy is construed.

  **NOTE**: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured**, punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the Insured.

(N) "**Non-Profit Entity**" means a corporation or organization other than the **Company**, which is exempt from taxation under Section 501 (c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(O) "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(P) "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(Q) "**Securities Claim**" means a **Claim** made against an Insured for:

  (1) any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

  (2) any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(R) "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(s)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(S) "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

  (1) **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

(2)   **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

(3)   **Insured Person** of the **Company**, who at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

## III.   EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**, or with respect to INSURING AGREEMENT (C), the **Company**:

(A)   for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (A) will not apply to any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**;

(B)   for any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a Claim made under INSURING AGREEMENT (A) only, this EXCLUSION (B) will not apply to a **Claim** unless a court of competent jurisdiction specifically determines the **Company** is not permitted to indemnify the **Insured Person**;

**NOTE**: EXCLUSIONS (A) and (B) above will not apply with respect to a **Securities Claim** brought by a security holder of the **Company**, or a derivative action brought by or on behalf of, or in the name or right of, the **Company**, and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an **Insured**.

(C)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations;

(E)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

(F)   brought about or contributed to in fact by any:

(1)   intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2)   profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)   by, on behalf of, or at the direction of the **Company**, except and to the extent such **Claim**:

(1)   is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

intervention of an **Insured Person** or the **Company**; or

(2)     is brought by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

(H)     by, on behalf of, at the direction of or in the name or right of any Non-Profit Entity or Joint Venture against an Insured Person for a Wrongful Act or Employment Practices Wrongful Act while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated; or

(I)     based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as a **Insured Person** of any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**.

No conduct of any **Insured Person** will be imputed to any other Insured to determine the application of any of the above EXCLUSIONS.

## IV.     LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)     The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3 of the Declarations.

(B)     The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)     With respect to the Company's indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(D)     The Retention applicable to INSURING AGREEMENT (B) shall apply to any **Loss** as to which indemnification by the **Company**, **Non-Profit Entity** or **Joint Venture** is legally permissible, whether or not actual indemnification is made unless such indemnification is not made by the **Company**, **Non-Profit Entity** or **Joint Venture** solely by reason of its financial insolvency. In the event of financial insolvency, the Retention(s) applicable to INSURING AGREEMENT (A) shall apply.

(E)     If different retentions are applicable to different parts of any **Loss**, the applicable Retention(s) will be applied separately to each part of such Loss, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(F)     Notwithstanding the foregoing, solely with respect to a **Securities Claim**, no **Retention** shall apply to such **Claim** and the **Insurer** will reimburse those **Defense Expenses** incurred by the **Insured** if:

(1)     the **Securities Claim** is dismissed, or there is a stipulation to dismiss the **Securities Claim**, with or without prejudice and without the payment of any monetary consideration by the **Insured**;

(2)     there is a final judgment of no liability obtained prior to or during trial, in favor of the **Insured**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or

(3)     there is a final judgment of no liability obtained after trial, in favor of the Insured, after the exhaustion of all appeals.

Any reimbursement in the case of (F)(1), (2), or (3) above will only occur if ninety (90) days after the date of dismissal, stipulation, final judgment of no liability is obtained and only if:

(a)     the same **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is not brought again within that time; and

(b)     the **Insured** provides the Insurer with an Undertaking in a form acceptable to the Insurer that

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

such reimbursement of the applicable Retention(s) will be paid back to the Insurer in the event the **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is brought after the ninety (90) day period.

## V.    DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)    It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)    No **Insured** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)    Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the Insured if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)    If both **Loss** covered by this Policy and Loss not covered by this Policy are incurred, either because a **Claim** made against the Insured contains both covered and uncovered matters, or because a **Claim** is made against both the Insured and others (including the **Company** for **Claims** other than **Securities Claims**) not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of Loss that is covered under this Policy and that portion of Loss that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the Insured and others.

(E)    In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI.    GENERAL CONDITIONS

(A)    **NOTICE**

(1)    As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any Claim as soon as practicable after it is first made.

(2)    If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** and if, during the **Policy Period**, the Insured:

(a)    provides the Insurer with written notice of the specific **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**; and

(b)    requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** will be treated as if it had been first made during the **Policy Period.**

(3)    All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

(B) **INTERRELATED CLAIMS**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

(C) **OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES**

(1) All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(2) All coverage under this Policy for **Loss** from **Claims** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the **Company**, regardless of the name or title by which such position is designated, of a J**oint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or J**oint Venture** by reason of their service as such.

(D) **MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1) If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** occurring after the consummation of the transaction.

(2) If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, **Subsidiary** or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

(a) the Insurer receives written notice containing full details of the transaction(s); and

(b) the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3) With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, **Subsidiary** or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for **Claims** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed any time during which such entity, asset, liability or **Subsidiary** is not an **Insured**.

(4) If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(5) If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

(a) coverage will cease with respect to any **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed subsequent to the **Change In Control**; and

(b)     the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control.**

**(E)     CANCELLATION AND RENEWAL OF COVERAGE**

(1)     Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)     The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured,** if applicable.

(3)     The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**(F)     OPTIONAL EXTENSION PERIOD**

(1)     If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Ac**t, **Company Wrongful Act**, or **Employment Practices Wrongful Act**, occurring prior to the Policy Expiration Date.

(2)     As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)     If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)     The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period.**

**(G)     ASSISTANCE, COOPERATION AND SUBROGATION**

(1)     The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)     In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The I**nsured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

**(H)     EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind

whatsoever under this Policy.

**(I)    REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any Insured will be imputed to any other Insured except for material facts or information known to the person(s) who signed the Application. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

**(J)    ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

(a)    there has been full compliance with all of the terms and conditions of this Policy; and

(b)    the amount of the obligation of the **Insured** has been finally determined either by judgment against the Insured after actual trial, or by written agreement of the **Insured**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the Insurer to determine their liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

**(K)    AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)    the payment of the premiums;

(2)    the receiving of any return premiums that may become due under this Policy;

(3)    the giving of all notices to the Insurer as provided herein; and

(4)    the receiving of all notices from the Insurer.

**(L) ENTIRE AGREEMENT**

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.


Berkshire Hathaway
Specialty Insurance

Date:  **September 09, 2019**

To:  **Rebecca Dauparas**
**Arthur J. Gallagher**
**300 South Riverside Plaza**
**Chicago, IL 60606**

Re:  **Akorn, Inc.**
**47-EPC-308703-01**
**September 01, 2019 – September 01, 2021**
**Excess Follow Form Policy (D&O)**

Dear Rebecca:

Attached please find the Excess Follow Form Policy for **Akorn, Inc.** This policy has been placed with Berkshire Hathaway Specialty Insurance Company. Please review this contract at your earliest convenience and let me know if you have any questions or concerns.

For your added convenience, a claims reporting information sheet is attached detailing the various ways to contact us in the event of a claim.

Thank you for placing your business with us. We value our relationship with you and Arthur J. Gallagher and look forward to working with you on future accounts.

If we can be of any additional assistance, please do not hesitate to call.

Sincerely,

James Houlihan
415-659-5565
James.Houlihan@bhspecialty.com

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**Berkshire Hathaway Specialty Insurance**

**United States**

# CLAIMS REPORTING

**All claims under policies underwritten by Berkshire Hathaway Specialty Insurance should be reported to our centralized Loss Processing Center. Claims will be assigned to our technical staff or to one of our preferred service providers.**

Our 24-hour toll free number: **855.453.9675**

Claims may be reported via email to: **claimsnotice@bhspecialty.com**

To report claims via mail or overnight mail refer to our website:
**www.bhspecialty.com/claims**

## EXPECT A PERSONAL APPROACH

While technology adds speed and efficiencies, it is top-quality people that drive top-quality claims handling. That's why we continue to grow our industry-leading claims team with the most experienced claims professionals in the business.

Moreover, at Berkshire Hathaway Specialty Insurance, our claims team makes communicating proactively with you throughout the claims process a priority. Should you face a claim, you will quickly see our response is not about drafting letters, it's about having a dialogue-- and responding to your particular needs and concerns.

Whether you face a D&O claim, a property loss or a large scale casualty crisis, you will have the experts you need at your service. Putting your policy to work for you.



## Berkshire Hathaway Specialty Insurance Company

(a Stock Insurance Company)

1314 Douglas Street, Suite 1400

Omaha, NE 68102-1944

## Excess Policy

### Common Policy Declarations

**THE PAYMENT OF DEFENSE COSTS WILL REDUCE THE LIMIT OF LIABILITY UNDER THIS POLICY.**

This Declarations Page is attached to and forms part of the Policy

| **Policy No.:** 47-EPC-308703-01 | **Renewal of:** New |
|---|---|

| | | | |
|---|---|---|---|
| **Item 1.** | **Named Insured:** | Akorn, Inc. | |
| | **Mailing Address:** | 1925 West Field Court, Suite 300<br>Lake Forest, IL 60045 | |
| **Item 2.** | **Policy Period Effective:** | From: September 01, 2019  To: September 01, 2021<br><br>Both days at 12:01 a.m. local standard time at Mailing Address listed in Item 1, above. | |
| **Item 3.** | **Limits of Insurance (including Defense Costs)** | Per Claim Limit: | $5,000,000 |
| | | Aggregate Policy Limit: | $5,000,000 |
| | | Total Underlying Limit of Liability: | $5,000,000 |
| **Item 4.** | **Premiums:** | Policy Premium: | $2,000,000 |
| | | Terrorism Coverage Premium: | $0 |
| | | Total Premium: | $2,000,000 |
| **Item 5.** | **Schedule of Underlying Insurance:** | (A) Followed Policy:<br> *Carrier* XL Specialty IGR<br> *Policy Number* US00075683DO19A<br> *Limit of Liability* $5,000,000<br><br>(B) See attached Schedule of Underlying Excess Policies | |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

| **Item 6.** | **Notices to Insurer:** | For claims, loss or potential claims | All other notices |
|---|---|---|---|
| | | **By 24-hour toll free number:** 855-453-9675 **By Email:** claimsnotice@bhspecialty.com **By Fax:** 617-507-8259 **By Mail:** Log on to www.bhspecialty.com/claims-reporting.html for mailing address | **By Email:** execandprofnotices@bhspecialty.com **By Fax:** 617-248-1618 **By Mail:** Log on to www.bhspecialty.com/claims-reporting.html for mailing address |

| **Item 7.** | **Forms and Endorsements:** | See attached Schedule |
|---|---|---|

This policy is comprised of this Declarations page, the policy form and the schedules and endorsements, if any, attached at the inception or issued during the Policy Period.

**Signatures:**

_____
**Ralph Tortorella, Secretary**

September 09, 2019
*Dated*

_____
**Peter Eastwood, President**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**Policy No.: 47-EPC-308703-01**

**Issued to:   Akorn, Inc.**

## FORMS SCHEDULE

The contents of the Policy is comprised of the following forms:

| Form Number | Endorsement Title |
| --- | --- |
| EP-LX-DEC-05/2017 | Excess Policy Common Policy Declarations |
| EP-FORMS-SCH-02/2015 | Forms Schedule |
| EP-AX-NLF-001-02/2014 | Excess Insurance Policy |
| EP-XS-SCH-01/2015 | Schedule Of Underlying |
| EP-XS-005-10/2013 | OFAC/Economic Sanctions |
| EP-XS-013-01/2015 | Cap On Losses From Certified Acts Of Terrorism |
| EP-XS-014-11/2013 | Premium Fully Earned At Inception |
| EP-XS-074-10/2016 | Pending And Prior Litigation Exclusion |
| EP-XS-088-10/2016 | Specific Event Exclusion |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

# Berkshire Hathaway Specialty Insurance Company

1314 Douglas Street,Suite 1400,
Omaha, NE 68102-1944
(Hereinafter referred to as the **Insurer**)

## EXCESS INSURANCE POLICY

**UNLESS OTHERWISE PROVIDED BY THE UNDERLYING INSURANCE, THIS POLICY APPLIES TO CLAIMS FIRST MADE AND REPORTED DURING THE POLICY PERIOD SET FORTH IN ITEM 2. OF THE DECLARATIONS.**

In consideration of the premium payment and in reliance on any provision(s) in the **Followed Policy**, the **Insurer** has also issued this policy in reliance upon all materials and written statements, which shall be deemed attached hereto and made a part hereof, submitted by or on behalf of the **Insured(s)** or **Named Insured** to the **Insurer** or any insurer of **Underlying Insurance** in connection with the underwriting of this policy.

**I.    INSURING AGREEMENT**

This policy shall provide coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, or any more restrictive provisions of the **Underlying Excess Policies**, except as otherwise set forth in this policy.  The coverage obligations under this policy shall attach to the **Insurer** only after all **Underlying Insurance** has in fact been exhausted by payment, in legal currency, of loss by or on behalf of the insurers of the **Underlying Insurance**, or by or on behalf of the **Insured(s)**. The risk of uncollectability of any **Underlying Insurance** (in whole or in part) for any reason is expressly retained by the **Insured(s)**, and is not insured under this policy or assumed by the **Insurer**.

**II.    DEFINITIONS**

   **a.  Insurer** means Berkshire Hathaway Specialty Insurance Company.

   **b.  Insured(s)** has the meaning set forth in the **Followed Policy**.

   **c.  Named Insured** has the meaning set forth in Item 1. of the Declarations.

   **d.  Followed Policy** means the policy identified in Item 5. (A) of the Declarations.

   **e.  Underlying Excess Policies** means all policies scheduled in Item 5. (B) of the Declarations.

   **f.  Underlying Insurance** means the **Followed Policy** and all of the **Underlying Excess Policies**.

   **g.  Underlying Limits** means an amount equal to the total of all of the aggregate Limits of Liability, as set forth in Item 5 of the Declarations, for all **Underlying Insurance**.

**III.    LIMITS OF LIABILITY**

The amount set forth in Item 3. of the Declarations shall be the maximum aggregate Limit of

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

Liability of the **Insurer** for all loss under this policy for any reason. If the aggregate Limit of Liability under this policy is exhausted by payment of loss, the **Insurer's** obligations under this policy shall be deemed completely fulfilled and extinguished. If any **Underlying Insurance** grants coverage subject to a liability sublimit, this policy shall not afford such coverage. The policy, however, shall recognize any reduction or exhaustion of the **Underlying Limits** by any payment under such coverage.

### IV.    UNDERLYING INSURANCE CHANGE

If, during the Policy Period as stated in Item 2. of the Declarations, there is a change to any **Underlying Insurance** which expands coverage, then this policy shall become subject to such change only if the **Insurer** agrees thereto by written agreement or by written endorsement to this policy and any additional premium is paid.

### V.    SEVERABILITY OF INTERESTS

In addition to any other clauses set forth herein, this policy shall follow any provisions in the **Followed Policy** regarding the severability and non-imputation of the statements, representations, or warranties of any **Insured(s)** and the limitations and restrictions in rescission or voidance of the **Followed Policy**.

### VI.    INSURER RIGHTS

The **Insurer** has the same rights, privileges and protections afforded to the insurer of the **Followed Policy**. The **Insurer** has the right, but not the obligation, at its sole discretion, to effectively associate with the **Insured(s)** in the defense and settlement of any claim which may attach to and be covered under this policy or any **Underlying Insurance**.

### VII.    NOTICE

Any notice provided to the **Underlying Insurance** shall also be provided to the **Insurer** under this policy, except that such notice shall be provided to the **Insurer** at either the physical or email address, both identified in Item 6. of the Declarations.

### VIII.    CANCELLATION AND NONRENEWAL

This policy shall follow, and specifically incorporates herein by reference, the conditions in the **Followed Policy** with respect to cancellation and nonrenewal, and shall comply with all of the requirements of any applicable state laws and regulations regarding cancellation and nonrenewal.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**Policy No.: 47-EPC-308703-01**

**Issued to: Akorn, Inc.**

## SCHEDULE OF UNDERLYING

**Followed Policy(ies)**

| Insurer | Policy Number | Limits | Attachment |
|---|---|---|---|
| XL Specialty IGR | US00075683DO19A | $5,000,000 | Primary |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

## ENDORSEMENT 1

**This endorsement, effective 12:01 AM:** September 01, 2019

| | |
|---|---|
| **Forms a part of Policy No.:** | 47-EPC-308703-01 |
| **Issued to:** | Akorn, Inc. |
| **By:** | Berkshire Hathaway Specialty Insurance Company |

### OFAC/ECONOMIC SANCTIONS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS POLICY FORM

In consideration of the payment of the premium for this policy it is hereby understood and agreed that this policy does not provide coverage that would be in violation of the laws or regulations of the United States of America concerning trade or economic sanctions, including, but not limited to, those administered and enforced by the U.S. Treasury's Office of Foreign Asset Control (OFAC).

Payment of loss under this policy shall only be made in full and complete compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by OFAC.

All other terms and conditions of this policy remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

EP-XS-005-10/2013

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**ENDORSEMENT 2**

**This endorsement, effective 12:01 AM:** September 01, 2019

**Forms a part of Policy No.:**          47-EPC-308703-01

**Issued to:**                                        Akorn, Inc.

**By:**                                                   Berkshire Hathaway Specialty Insurance Company

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS POLICY FORM**

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of this policy remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**ENDORSEMENT 3**

**This endorsement, effective 12:01 AM:** September 01, 2019

**Forms a part of Policy No.:**          47-EPC-308703-01

**Issued to:**                          Akorn, Inc.

**By:**                                 Berkshire Hathaway Specialty Insurance Company

**PREMIUM FULLY EARNED AT INCEPTION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS POLICY FORM**

In consideration of the payment of the premium for this policy it is hereby understood and agreed that the premium set forth in Item 4 of the Declarations shall be deemed fully earned as of the earliest date of the Policy Period Effective dates set forth in Item 2 of the Declarations.

All other terms and conditions of this policy remain unchanged.



## ENDORSEMENT 4

This endorsement, effective 12:01AM: **September 01, 2019**
Forms a part of Policy No.: **47-EPC-308703-01**
Issued to: **Akorn, Inc.**
By: **Berkshire Hathaway Specialty Insurance Company**

## PENDING AND PRIOR LITIGATION EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS INSURANCE POLICY

In consideration of the payment of the premium for this policy, it is hereby understood and agreed that, notwithstanding anything to the contrary contained within this policy or the **Followed Policy**, the **Insurer** shall not be liable to make any payment for **Loss** (as that term is defined in the **Followed Policy**) in connection with any **Claim** (as that term is defined in the **Followed Policy**) based upon, arising out of or attributable to essentially the same facts, circumstances, situations, transactions or events underlying or alleged in any litigation, any administrative or regulatory proceeding, any investigation or any alternative dispute resolution proceeding that was pending on or prior to June 01, 2018.

All other terms and conditions of this policy remain unchanged.


Berkshire Hathaway
Specific Insurance

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**ENDORSEMENT 5**

This endorsement, effective 12:01AM:    **September 01, 2019**
Forms a part of Policy No.:    **47-EPC-308703-01**
Issued to:    **Akorn, Inc.**
By:    **Berkshire Hathaway Specialty Insurance Company**

## SPECIFIC EVENT EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXCESS INSURANCE POLICY**

In consideration of the payment of the premium for this policy, it is hereby understood and agreed that, notwithstanding anything to the contrary contained within this policy or the **Followed Policy**, the **Insurer** shall not be liable to make any payment for **Loss** (as that term is defined in the **Followed Policy**) in connection with any **Claim** (as that term is defined in the **Followed Policy**) made against any **Insured** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, the **EVENT(S)** described below, or **Wrongful Acts** (as that term is defined in the **Followed Policy**) that are logically or causally connected by any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes as alleged or contained the **EVENT(S)** described below:

**EVENTS**

Matters involving the Fresenius Acquisition of Akorn

All other terms and conditions of this policy remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:28

**SOMPO INTERNATIONAL**

**Endurance American Insurance Company**
Wilmington, Delaware

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE DECLARATIONS

NOTICE: PLEASE READ CAREFULLY. This Policy shall follow all the terms and conditions of the **Followed Form** except as stated herein. Terms defined in the **Followed Form** are used herein with the meaning assigned to them in the **Followed Form** unless otherwise indicated.

| | |
|---|---|
| **POLICY NUMBER:** | DOX10007587103 |
| **PRIOR POLICY NUMBER:** | DOX10007587102 |

Item 1. **Named Insured**: Akorn, Inc.
Address: 1925 West Field Court
Suite 300
Lake Forest, IL 60045

Item 2. **Policy Period**: From: September 01, 2019    To: September 01, 2021
(12:01 AM Standard Time at the address of the **Named Insured**.)

Item 3. **Limit of Liability**: $5,000,000 excess of $10,000,000
(including defense costs)

Item 4. Pending & Prior Litigation
Date: June 1, 2018
This policy follows the pending & prior litigation exclusion in the **Followed Form**, except that the applicable date in such exclusion shall be the date indicated in this Item 4.

Item 5. Premium: $1,800,000

Item 6. Producer: Arthur J. Gallagher Risk Management Services, Inc.
Address: 300 South Riverside Plaza
Suite 1500
Chicago, IL 60606

Item 7. **A. Underlying Policy(ies)**:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO19A | $5,000,000 | Primary |
| Berkshire Hathaway Specialty Insurance Company | 47-EPC-308703-01 | $5,000,000 | $5,000,000 |

**B. Followed Form**:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO19A | $5,000,000 | Primary |

| | | |
|---|---|---|
| Policy Issuance Date: | October 14, 2019 | Endurance American Insurance Company |
| Policy Issuance Office: | Chicago, IL | EML 0001 0712 |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Item 8.   Forms and Endorsements Effective at Inception:
          See attached Forms and Endorsements Schedule, IL 0101.

Item 9.   Notice:

A.   Claims or Potential Claims:          Commercial Management Liability
                                          Attn:  Claims Department
                                          1221 Avenue of The Americas
                                          New York,NY 10020
                                          Insuranceclaims@sompo-intl.com
                                          1-877-676-7575

B. All Other:                             Commercial Management Liability
                                          Attn: Professional Lines Underwriting Department
                                          1221 Avenue of The Americas
                                          New York,NY 10020

This Policy shall constitute the contract between the Insureds and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_____          _____
Authorized Representative                          Date

                                          October 14, 2019

Policy Issuance Date:      October 14, 2019          Endurance American Insurance Company
Policy Issuance Office:    Chicago, IL                          EML 0001 0712

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

**THIS POLICY CONTAINS CLAIMS MADE COVERAGES. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.**

In consideration of premium paid or payable and in reliance on all statements made and information furnished by the **Insureds** in the Application or the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, Endurance American Insurance Company (herein referred to as the "Insurer") agrees as follows:

**I.   INSURING CLAUSE**

Subject to the terms and conditions of this Policy, the Insurer shall provide to the **Insureds** insurance coverage for Claims first made during the **Policy Period**, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after (i) the insurers of the **Underlying Policy(ies),** the **Insureds**, and/or any other party shall have paid in legal currency the full amount of the **Underlying Limit** pursuant to Section II.B.1 below, and (ii) the **Insureds** shall have paid the retention or deductible, if any, applicable under the **Primary Policy**. The Insurer shall then be liable to pay only covered Loss in excess of such **Underlying Limit** up to its **Limit of Liability** as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each **Policy Period**, including the Discovery Period if exercised, against all **Insureds** irrespective of the time of payment by the Insurer.

**II.   TERMS AND CONDITIONS**

A.   FOLLOWING FORM

This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the **Followed Form** as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other **Underlying Policy(ies)**.  In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Policy(ies)**. In the event of any conflict between the terms, conditions, and limitations of this Policy and any **Underlying Policy,** the terms, conditions and limitations of this Policy shall control.

B.   UNDERLYING POLICIES

1.   In the event and only in the event of the erosion or exhaustion of the **Underlying Limit** by reason of:

a.   the insurer(s) of the **Underlying Policy(ies),** the **Insureds**, and/or any other party paying in legal currency Loss covered under the respective **Underlying Policy(ies)**; and/or

b.   the insurer(s) of the **Underlying Policy(ies)** paying loss under another policy(ies) issued by such underlying insurer to the **Named Insured** or any of its affiliates;  but only to the extent such **Underlying Policy(ies)**  explicitly requires that such loss payment erodes the limit of liability of such **Underlying Policy(ies)***.*

This Policy shall:  (i) in the event of erosion, pay excess of the eroded **Underlying Limit,** and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention or deductible, if any, applicable under the **Primary Policy**, which retention or deductible shall be applied to any subsequent Loss in the same manner as specified in the **Primary Policy**.

2. Notwithstanding any of the terms of this Policy which might be construed otherwise, this Policy shall drop down only in the event of erosion or exhaustion of the **Underlying Limit** as described above, and shall not drop down for any other reason including, but not limited to, uncollectability (in whole or in part) of any **Underlying Policy(ies)**. The risk of uncollectability of the **Underlying Policy(ies)** (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the Insurer.

3. If any **Underlying Policy(ies)** contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any Claim which is otherwise subject to such grant of coverage. However, any Loss paid under the **Underlying Policies** on account of such Claim shall erode or exhaust the **Underlying Limit**, as provided in Section II.B.1 above, for purposes of this Policy.

4. If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Underlying Policy(ies)**. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

C. NOTICE

All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address as shown in Item 1. of the Declarations. Notice to the Insurer of any Claim or potential Claim under this Policy shall be given to the Insurer at the address as shown in Item 9.A. of the Declarations. All other notices to the Insurer under this Policy shall be given to the Insurer at the address as shown in Item 9.B. of the Declarations.

Any notice to the insurer of an **Underlying Policy(ies)** shall not constitute notice to the Insurer unless also given to the Insurer as provided in this Section II.C.

D. CLAIMS PROVISIONS

1. The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or potential Claim reported to the Insurer under this Policy even if the **Underlying Limit** has not been exhausted.

2. No action by any other insurer shall bind the Insurer under this Policy. The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

E. DISCOVERY PERIOD

The **Insureds** shall have the right to elect a Discovery Period under this Policy as described in, and subject to the terms of, the **Followed Form**. The additional premium for the Discovery Period shall be the same percentage of this Policy's annual premium as the percentage stated in the **Followed Form** for calculating the Discovery Period premium thereunder. The Discovery

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Period shall not be available unless the **Insured** has elected the Discovery Period in all unexhausted **Underlying Policies** and has provided proof thereof to the Insurer.

**F.** **DEFINITIONS**

1. Terms defined in the **Followed Form** are used herein with the meaning assigned to them in the **Followed Form** unless otherwise stated herein. Other words and phrases that appear in bold have special meaning and can be found below or in any endorsement or the specific Policy provision where they appear.

2. **Followed Form**, **Underlying Policy(ies)** and **Limit of Liability** have the meanings attributed to them in the Declarations.

3. **Insured(s)** means all natural persons and entities insured by the **Followed Form**.

4. **Named Insured** means the entity named in Item 1 of the Declarations.

5. **Primary Policy** means the first listed policy in Item 7.A of the Declarations.

6. **Policy Period** means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the **Followed Form**.

7. **Underlying Limit** means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all **Underlying Policies**, plus the retention or deductible, if any, applicable under the **Primary Policy**.

# FORMS AND ENDORSEMENT SCHEDULE

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY

| End. No. | Title | Number |
|----------|-------|--------|
|  | Follow Form Excess Management Liability Insurance Declarations | EML 0001 0712 |
|  | Follow Form Excess Management Liability Insurance Policy | EML 0201 0712 |
|  | Forms and Endorsement Schedule | IL 0101 0712 |
| 1 | Specific Event Exclusion | IL 1002 0712 |
| 2 | Premium Fully Earned Endorsement | IL 1002 0712 |
| 3 | Deletion of Most Restrictive Underlying Terms (ABC Coverage) | EML 0902 0712 |
| 4 | DIC Erosion of Underlying Limit | EML 0903 0712 |
| 5 | Illinois Changes - Cancellation and Nonrenewal | EML 1000 1112 IL |
| 6 | Illinois Changes | EML 1113 1112 IL |
| 7 | Amendatory Inconsistency | EML 1324 0513 |
| 8 | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| 9 | Disclosure Pursuant to Terrorism Risk Insurance Act | IL 1214 0115 |
|  | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0712 |
|  | Signature Page | IL 1007 0114 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

# E N D O R S E M E N T

**Named Insured:**      Akorn, Inc.                Policy Number:     DOX10007587103

Endorsement                                          Endorsement
**Effective Date:**      September 01, 2019               Number:           1

12:01 AM Standard Time at the address of the **Named
Insured** as shown in the Declarations.

## GENERAL CHANGE
## (SPECIFIC EVENT EXCLUSION)

It is agreed that:

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of any other EXLCUSIONS within this policy, the Insurer shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions listed under EVENTS below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

EVENTS

1. *Solomon Yeung, etc. v. Akorn, Inc. et al.*, docket no. 1:15-cv-01944 filed in the Norther District of Illinois on or about March 4, 2015;

2. *Mikolaj Sarzynski, Individually and on Behalf of All Others Similarly Situated, v. Akorn, Inc., Rajat Rai, and Timothy A. Dick,* docket no. 1:15-cv-03921 filed in the Northern District of Illinois on or about May 4, 2015;

3. the Company's intent to restate its consolidated financial statements for the fiscal year ended December 31, 2014, and the fiscal quarters ended June 30, 2014, and September 30, 2014 (collectively, the "Restated Financial Statements").

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance,
act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**.

_Joe Kelly III_
_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | | |
|---|---|---|
| **Named Insured:** | Akorn, Inc. | Policy Number: DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: 2 |

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## GENERAL CHANGE
## (PREMIUM FULLY EARNED ENDORSEMENT)

It is agreed that:

Subsection G. CANCELLATION is added to the policy:

G.    CANCELLATION

1.    This **Policy** may be canceled only by the Insurer and only for non-payment of the premium. In such event, the Insurer shall mail written notice of cancellation to the **Named Insured**.  Such notice shall state the effective date of cancellation, which shall be not less than fifteen (15) days after mailing such notice.  In the event of cancellation by the Insurer, the Insurer shall refund the unearned premium, if any, pro rata.

2.    No other party may cancel this **Policy** for any reason.

_Joe Kelly III_

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# E N D O R S E M E N T

**Named Insured:** Akorn, Inc.

Policy Number: DOX10007587103

Endorsement
Effective Date: September 01, 2019

Endorsement
Number: 3

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## DELETION OF MOST RESTRICTIVE UNDERLYING TERMS
## (ABC COVERAGE)

It is agreed that:

1.  Section II.A. is deleted in its entirety and is replaced with the following:

    This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the **Followed Form**. In no event shall this Policy grant broader coverage than would be provided by the **Followed Form**. In the event of any conflict between the terms, conditions, and limitations of this Policy and the **Followed Form,** the terms, conditions and limitations of this Policy shall control.

    If Loss covered under the **Followed Form** is not covered under another **Underlying Policy** because coverage under such **Underlying Policy** is narrower than the coverage under the **Followed Form**, then for purposes of liability attaching to this Policy the **Underlying Limit** for such **Underlying Policy** shall be eroded or exhausted with respect to such Loss paid by the **Insureds**, an insurer of any DIC policy excess of this Policy and/or any other party paying such Loss.

2.  Section II.B.4. is deleted in its entirety and is replaced with the following:

    If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of the **Followed Form** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Followed Form**. To the extent the terms, conditions or limitations of the **Followed Form** are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Date of Issuance: October 14, 2019
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: EML 0902 0712

# ENDORSEMENT

_Joe Kelly III_
_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Date of Issuance: October 14, 2019                                     Policy Form: EML 0201 0712
Endurance American Insurance Company                                   Endorsement Form: EML 0902 0712

# ENDORSEMENT

**Named Insured:**  Akorn, Inc.

Policy Number:  DOX10007587103

Endorsement
Effective Date:    September 01, 2019

Endorsement
Number:    4

(12:01 AM Standard Time at the address of the
**Named Insured** as shown in the Declarations)

## DIC EROSION OF UNDERLYING LIMIT

It is agreed that:

Section I, Insuring Clause, is deleted in its entirety and is replaced with the following:

Subject to the terms and conditions of this Policy, the Insurer shall provide to the **Insureds** insurance coverage for Claims first made during the **Policy Period**, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after the insurers of the **Underlying Policy(ies)**, the **Insureds**, the insurer of any DIC policy, and/or any other party shall have paid in legal currency the full amount of the **Underlying Limit** (including the applicable retention or deductible under the **Primary Policy**) pursuant to Section II.B.1 below.  The Insurer shall then be liable to pay only covered Loss in excess of such **Underlying Limit** up to its **Limit of Liability** as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each **Policy Period**, including the Discovery Period if exercised, against all **Insureds** irrespective of the time of payment by the Insurer.

_Joe Kelly III_
_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Date of Issuance: October 14, 2019
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: EML 0903 0712

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured:** | Akorn, Inc. | Policy Number: | DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 5 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

## ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

A.   A Cancellation Condition is added as follows:

CANCELLATION

1.   The **Named Insured** shown in the Declarations may cancel this Policy by mailing advance written notice of cancellation to the Insurer.

2.   The Insurer may cancel this Policy by mailing to the **Named Insured** written notice stating the reason for cancellation. If the Insurer cancels for nonpayment of premium, the Insurer will mail the notice at least 10 days prior to the effective date of cancellation.

3.   If this Policy has been in effect for more than 60 days or is a renewal or continuation Policy, the Insurer may cancel only for one or more of the following reasons:

   a.   Nonpayment of premium;

   b.   Certification of the Director of Insurance of the loss of reinsurance by the Insurer that provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   c.   A determination by the Director of Insurance that the continuation of the Policy could place the Insurer in violation of the insurance laws of this State.

4.   Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

5.   If this Policy is cancelled, the Insurer will send the **Named Insured** any premium refund due. If the Insurer cancels, the refund will be pro rata. If the **Named Insured** cancels, then the return premium will be computed at .90 of the pro rata unearned premium. The cancellation will be effective even if the Insurer has not offered a refund.

B.   When The Insurer Does Not Renew Condition is added as follows:

If the Insurer decides not to renew or continue this Policy, the Insurer will mail the **Named Insured** and the **Named Insured's** agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the **Policy Period**. If the Insurer offers to renew or continue and the **Named Insured** does not accept, this Policy will terminate at the end of the current **Policy Period**. Failure to pay the required renewal or continuation premium when due shall mean that the **Named Insured** has not accepted the Insurer's offer.

If the Insurer fails to mail proper written notice of nonrenewal and the **Named Insured** obtains other insurance, this Policy will end on the effective date of that insurance.

# ENDORSEMENT

C.   Mailing Of Notices is added as follows:

The Insurer will mail cancellation and nonrenewal notices to the **Named Insured**, and the agent or broker, at the last addresses known to the Insurer. The Insurer shall maintain proof of mailing of a cancellation or nonrenewal notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

_Joe Kelly III_

_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Date of Issuance: October 14, 2019                                                      Policy Form: EML 0201 0712
Endurance American Insurance Company                                          Endorsement Form: EML 1000 1112 IL

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured:** | Akorn, Inc. | Policy Number: | DOX10007587103 |
| Endorsement Effective Date: | September 01, 2019 | Endorsement Number: | 6 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

## ILLINOIS CHANGES

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

A.  Paragraph 4. of Item B., Underlying Policies, of Section II, Terms and Conditions, is replaced by the following:

4.  If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes  in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

B.  Paragraph E., Discovery Period, of Section II, Terms and Conditions, is replaced by the following:

The **Insureds** shall have the right to elect a Discovery Period under this Policy as described in, and subject to the terms of, the **Followed Form** including when this Policy is terminated for any reason. This right to purchase an optional discovery period shall lapse unless payment of the additional premium due is given by the **Insureds** to the Insurer within thirty (30) days following the effective date of termination or nonrenewal.

Premium for the Discovery Period will be priced as a factor of one of the following:

1)  the last twelve (12) months' premium;
2)  the premium in effect at Policy issuance; or
3)  the expiring annual premium.

The Insurer will inform the **Named Insured**:

a)  of the Discovery Period premium at the time the last Policy is purchased; and
b)  of factor(s) that may be used to figure the Discovery Period premium, as well as any credits or discounts, that will be added or removed when determining the final Discovery Period premium.

Date of Issuance: October 14, 2019
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: EML 1113 1112 IL

# ENDORSEMENT

Joe Kelly III
_____

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Date of Issuance: October 14, 2019
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: EML 1113 1112 IL

# ENDORSEMENT

| | |
|---|---|
| **Named Insured:** Akorn, Inc. | Policy Number: DOX10007587103 |
| Endorsement Effective Date: September 01, 2019 | Endorsement Number: 7 |
| (12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations) | |

## AMENDATORY INCONSISTENCY

It is agreed that:

To the extent there is an inconsistency between an endorsement to this Policy which is labeled as a state amendatory endorsement and any other term or condition of this Policy, then to the extent permitted by law, regulation or State Insurance Department Bulletin or Directive, the Insurer shall apply such terms and conditions of either the state amendatory endorsement or the Policy which are more favorable to the Insured.

*Joe Kelly III*

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Date of Issuance: October 14, 2019
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: EML 1324 0513

# ENDORSEMENT

| | |
|---|---|
| **Named Insured:** Akorn, Inc. | Policy Number:   DOX10007587103 |
| Endorsement Effective Date:   September 01, 2019 | Endorsement Number:   8 |

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

_Joe Kelly III_

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

| | |
|---|---|
| Date of Issuance: October 14, 2019 | Policy Form: EML 0201 0712 |
| Endurance American Insurance Company | Endorsement Form: IL 1204 0115 |

# ENDORSEMENT

| | |
|---|---|
| **Named Insured:**  Akorn, Inc. | Policy Number:  DOX10007587103 |
| Endorsement Effective Date:  September 01, 2019 | Endorsement Number:  9 |
| 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | |

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

It is agreed that:

**SCHEDULE:   Terrorism Premium (Certified Acts): $ 0**

**A.   Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

**B.   Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% in 2015 and decreases its share 1% each calendar year to a total of 80% in 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.   Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# E N D O R S E M E N T

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

*Joe Kelly III*

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Date of Issuance: October 14, 2019
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: IL 1214 0115

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
## NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

Endurance American Insurance Company                                             PN 0001 0712



SOMPO
INTERNATIONAL

**Endurance American Insurance Company**
**1221 Avenue Of the Americas**
**New York, NY  10020**

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

_____          _____
**Senior Vice President**                                                    **President**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# PARALLEL

## Read Your Policy Carefully

This policy is a legal contract between you and us.  The information on this page is not the insurance contract and only the actual policy provisions will control.  The policy sets forth in detail the rights and obligations of both you and us.  **It is therefore important that you read your policy carefully.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of the policy.

This policy is signed by the President and Secretary of the insurance company and, if required by State law, this policy shall not be valid unless countersigned on the Declaration page by its authorized representative.

President                                        Secretary

CPPSIGDEC 0112

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**Wesco Insurance Company**
P.O. Box 318004, Cleveland, OH 44131 -0880
877-528-7878

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## Declarations

NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS GENERALLY LIMITED TO LIABILITY FOR **CLAIMS** FIRST MADE AGAINST INSUREDS DURING THE **POLICY PERIOD** OR, IF APPLICABLE, ANY PROVISION FOR AN EXTENSION OF THE REPORTING PROVISIONS. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED BY THIS POLICY. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

POLICY NUMBER:            EUW1806280 00

1.      NAMED INSURED:      Akorn Pharmaceuticals
Named Insured Address:      1925 West Field Court, Suite 300
                            Lake Forest , IL  60045

2.      **POLICY PERIOD**:      Inception:      September 1, 2019
                              Expiration:      September 1, 2021
The **Policy Period** incepts and expires as of 12:01 A.M. at the Named Insured Address.

3.      PREMIUM:            $1,600,000

4.      LIMIT OF LIABILITY:      $5,000,000

5.      **INSURER**:            Wesco Insurance Company
        (a) **Insurer** Address:      P.O. Box 318004
                                      Cleveland, Ohio  44131-880
                                      877-528-7878

        (b) Notice of **Claim** or circumstances:
                By E-Mail:      anaclaimsreporting@amtrustgroup.com
                By Mail:        AmTrust North America
                                233 N Michigan Ave.
                                Suite 1200
                                Chicago, IL 60601

        (c) All other notices:      Euclid Executive Liability Managers, LLC
                                    234 Spring Lake Drive
                                    Itasca IL 60143

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

6.    Schedule of **Underlying Insurance**

| Insurer | Policy Number | Limit of Liability |
|---|---|---|
| XL Specialty Insurance Company (primary) | US00075683DO19A | $5,000,000 |
| Berkshire Hathaway Specialty Insurance Company | 47-EPC-308703-01 | $5,000,000 |
| Endurance American Insurance Company | DOX10007587103 | $5,000,000 |

_____
AUTHORIZED REPRESENTATIVE

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# Excess Insurance Policy

## I. Insuring Agreement

The **Insurer** in consideration of the premium charged and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, and conditions of the **Underlying Insurance** and this policy, including any endorsements, agrees with the **Insured** that the **Insurer** shall pay **Loss** arising from a **Claim** for a **Wrongful Act** first made during the **Policy Period** shown in Item 2 of the Declarations.

## II. Definitions

The following terms whenever set forth in boldface type in this policy, whether singular or in the plural, shall have the meaning indicated.

A. **Insured** means any natural person or entity designated as insured in the **Underlying Insurance**.

B. **Insurer** means the insurance company set forth in Item 5 of the Declarations

C. **Policy Period** means the period of time from the inception date set forth in Item 2 of the Declarations to the earlier of the expiration date set forth in Item 2 of the Declarations or the effective date of cancellation of this policy. In the event of cancellation of this policy, the effective date of cancellation shall replace the expiration date in Item 2 of the Declarations.

D. **Underlying Insurance** shall mean the policies and their respective limits of liability listed in the Schedule of **Underlying Insurance**.

E. The terms **Wrongful Act**, **Loss** and **Claim** shall each have the same meaning as defined in the **Underlying Insurance**.

## III. Limits of Liability

A. The **Insurer** shall be liable to pay **Loss** not exceeding the Limit of Liability shown in Item 4 of the Declarations, only after the limits of liability shown in the Schedule of **Underlying Insurance** have been exhausted by any combination of payments for **Loss** by:

1. the insurer(s) constituting the **Underlying Insurance**,

2. any **Insured** for any **Claims** not otherwise excluded by any of the **Underlying Insurance**, or

3. any insurer not listed in the Schedule of **Underlying Insurance**, provided that such payments are for **Claim** not otherwise excluded by any of the **Underlying Insurance** and solely as a result of the financial insolvency of an insurer shown in the Schedule of **Underlying Insurance**.

B. In the event of the reduction or exhaustion of the aggregate limits of liability of the **Underlying Insurance** by reason of **Loss** paid thereunder this policy shall, in the event of reduction, continue in force in excess of the remaining amount of **Underlying Insurance**. In the event of total exhaustion of the limits of liability shown in the Schedule of **Underlying Insurance**, this

policy shall continue in force as primary insurance, excess of the retention or deductible amount set forth in the policy shown as primary in the Schedule of **Underlying Insurance** or as otherwise endorsed herein, which shall be applied to any subsequent **Loss**.

# IV. Maintenance of Underlying Insurance

A. Except as otherwise provided herein, including any endorsement attached to and made part of this policy, this policy is subject to the same terms, conditions, definitions, other provisions and endorsements set forth in the **Underlying Insurance** as each such policy has been represented to the **Insurer** as or to be issued, or as may be amended at a later time to restrict coverage. In the event of any conflicting terms or conditions contained in any of the **Underlying Insurance** this policy shall provide coverage in accordance with the terms and conditions of the latter of the policies listed in the Schedule of **Underlying Insurance** which contain such conflict. Any changes made to the **Underlying Insurance** to expand or broaden the scope of coverage shall only be effective as part of this policy upon written confirmation of acceptance by the **Insurer**.

B. The **Underlying Insurance** shall be maintained in full effect while this policy is in force, except for any reduction of the limits of liability contained therein as provided for in Section III.B. above. Such maintenance shall be a condition precedent to the attachment of any liability of the **Insurer** under this policy. To the extent that any **Underlying Insurance** is not maintained in full effect while this policy is in force, the **Insured** shall be deemed to be self-insured for the amount of the limit of liability of the **Underlying Insurance,** which is not so maintained.

# V. Notice

A. The **Insured** shall provide notice to the **Insurer** at the address shown in item 5 (b) of the Declarations of any matter noticed to or required to be noticed pursuant to the insurer(s) constituting the **Underlying Insurance** and in accordance with the provisions of the **Underlying Insurance**.

B. In addition to any matter that requires notice in accordance with the provisions of any **Underlying Insurance**, the **Insured** shall provide notice to the **Insurer** of the cancellation of or any changes to any **Underlying Insurance** subsequent to the inception date shown in Item 2 of the Declarations.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 1 |
| **NAMED INSURED** | Akorn Pharmaceuticals |
| **POLICY NUMBER** | EUW1806280 00 |
| **EFFECTIVE DATE** | September 1, 2019 |

# FULLY EARNED PREMIUM ENDORSEMENT

It is agreed that in the event of cancellation of this policy by the **Insured**, the premium shall be fully earned and there shall be no return premium due the **Insured**

PBJX0058

ED 0714

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 2 |
| **NAMED INSURED** | Akorn Pharmaceuticals |
| **POLICY NUMBER** | EUW1806280 00 |
| **EFFECTIVE DATE** | September 1, 2019 |

# SPECIFIC EVENT EXCLUSION

The **Insurer** shall not be liable to pay any **Loss,** in whole or in part of, from any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable the following:

1. any matter set forth in Part II, Item 8, Note 19 - "Legal Proceedings" of the Company's 10-K Filing on 3/1/19 and Form 8-K filed on 5/7/19

2. any matters related to Claims Number(s) US00072119DO17, US00079702DO17, US00066396DO16, ELU028513 and ELU024968 in the AXA XL Loss Runs dated 8.27.19

3. any matters related to any FDA warnings, investigations or actions prior to the inception of this policy

4. any demand, suit, litigation or other proceeding pending at, or any order, decree or judgment entered against any **Insured**, pending on or prior to 9/1/19, or any act, error, omission, fact, circumstance or situation underlying or alleged therein; or

including but not limited to any **Wrongful Act** or Interrelated **Wrongful Acts**, facts, or circumstances, which have as a common nexus any **Wrongful Act** or **Interrelated Wrongful Acts**, facts, or circumstances related to matters set forth above.

Section II. Definitions E. is deleted in its entirety and replaced with the following

E. The terms **Wrongful Act**, **Interrelated Wrongful Acts**, **Loss** and **Claim** shall each have the same meaning as defined in the **Underlying Insurance**.





HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

| **Policy Number:** | **ELU163568-19** |
| **Renewal of Number:** | N/A |

**XL Specialty Insurance Company**

**Members of the XL America Companies**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

**CORNERSTONE A-SIDE MANAGEMENT
LIABILITY INSURANCE POLICY
DECLARATIONS**

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

---

**Item 1.**     **Name and Mailing Address of Parent Corporation:**

Akorn, Inc.
1925 W. Field Court, Suite 300
Lake Forest, IL 60045

---

**Item 2.**     **Policy Period:**     **From:**    September 01, 2019    **To:**    September 01, 2021

                      **At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**     **Limit of Liability:**

$5,000,000. Aggregate, each **Policy Period** (including **Defense Expenses**)

---

**Item 4.**     **Optional Extension Period and Premium:**

Length of Optional Extension Period:     One Year

Optional Extension Premium:     $325,000.00

---

**Item 5.**     **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

---

**Item 6.**     **Premium:**

| Premium: | $325,000.00 |
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $325,000.00 |

---

**Item 7.**     **Policy Forms and Endorsements Attached at Issuance:**

CS 71 00 09 06   XL 80 24 03 03   CS 72 04 05 06   CL 83 14 10 03

---

Countersigned: _____    By: _____
               Date                            Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## CORNERSTONE A-SIDE MANAGEMENT LIABILITY POLICY

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

John R. Glancy
President

Kenneth P. Meagher
Secretary

**XL Specialty Insurance Company**

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____    Joseph Tocco
President

_____    Toni Ann Perkins
Secretary

LAD 400 0915 XLS

© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived. Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **ELU163568-19**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions embargoes or export controls applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions, embargoes or export controls law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC or the applicable regulator.  Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the AXA XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

PN CW 02 0119

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

## Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

PN CW 02 0119

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Alabama** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
|---|---|
| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**WARNING: All Workers Compensation Insurance:**
Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:
1. obtaining any benefit or payment,
2. increasing any claim for benefit or payment, or
3. obtaining workers' compensation coverage under this act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |
| Pennsylvania | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Puerto Rico** | Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years. |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# NOTICE TO POLICYHOLDERS

**ILLINOIS**

This notice is to advise you if you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL:

1-800-622-7311
AXA XL
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, you may also take your matter up with the Illinois Department of Insurance at the following addresses:

Illinois Department of Insurance
Consumer Division
122 S. Michigan Ave., 19th Floor
Chicago, Illinois 60603

Illinois Department of Insurance
Consumer Division
320 West Washington Street
Springfield, Illinois 62767

*http://insurance.illinois.gov/*  *312-814-2420 or 217-782-4515*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

XL 80 24 03 03

**Endorsement No.: 1**
**Named Insured: Akorn, Inc.**
**Policy No.: ELU163568-19**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.



XL 80 24 03 03

CS 72 04 05 06

**Endorsement No.: 2**
**Named Insured: Akorn, Inc.**
**Policy No.: ELU163568-19**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

1.  Section II. DEFINITIONS (E) is amended by the addition of the words "Insurer or" before the word "Company's".

2.  Section II. DEFINITIONS (K) is amended by deleting the words "(including pre- & post- judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law)" and by the addition of the following:

In applying the foregoing, only punitive damages awarded for vicarious liability of the Insured Persons is insurable under Illinois law.

3.  Section IV. CONDITIONS (I) Cancellation and Renewal of Coverage (2) is amended by the addition of the following:

Notice of cancellation will also be sent to the Insured Person's broker, if known, and to the mortgagee or lienholder, if any, at their last known address. The Insurer shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

4.  Section IV. CONDITIONS (I) Cancellation and Renewal of Coverage (3) is amended by deleting the words "deliver or" and by the addition of the following:

A copy of such notice will be sent to the Parent Company's broker, if known, or agent of record for the Insured Persons, if applicable, and to the mortgagee or lienholder, if applicable, at the last mailing address known by the Insurer.  The notice of non-renewal will state the reason for non-renewal.

5.  Section IV. CONDITIONS (J) Optional Extension Period (1) is deleted and replaced by the following:

If either the Insured Persons or the Insurer cancels or does not renew this Policy, the Insured Persons shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any Claim first made during the period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a Wrongful Act occurring prior to the Policy Expiration Date.  The Optional Extension Period offered by the Insurer shall be at least one year in length.

6.  The first sentence of Section IV. CONDITIONS (J) Optional Extension Period (2) is deleted in its entirety.

7.  The third sentence of Section IV. CONDITIONS (K) Representation Clause is deleted and replaced by the following:

In the event that any statements and particulars contained in the Application are untrue, inaccurate or incomplete, no coverage shall be afforded under this insurance to any Insured Person who had actual knowledge as of the Inception Date of facts or information that were not accurately or completely disclosed as required in the Application.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

8.    Section IV. CONDITIONS (P) Bankruptcy is amended by the addition of the following:

Provided, however, the bankruptcy or insolvency of the Insured Persons shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

All other terms and conditions remain unchanged.

CS 72 04 05 06 (12/10 ed.)

CL 83 14 10 03

**Endorsement No.: 3**
**Named Insured: Akorn, Inc.**
**Policy No.: ELU163568-19**

**Effective: September 01, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to April 24, 2011.

All other terms, conditions and limitations of this Policy shall remain unchanged.



# CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

## I.    INSURING AGREEMENT

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification or advancement from any source. In the event that **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions (including, but not limited to, CONDITION (B)) and limitations and without prejudice to the Insurer's excess position.

## II.  DEFINITIONS

(A)    "**Application**" means:

    (1)    the **Application** attached to and forming part of this Policy; and

    (2)    any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)    "**Change In Control**" means:

    (1)    the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets, by another entity such that the **Parent Company** is not the surviving entity;

    (2)    the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)    the court appointment of any person or entity with authority comparable to that of the **Insured Persons**, as defined in DEFINITION (I)(1), to liquidate or reorganize the **Parent Company**.

(C)    "**Claim**" means:

    (1)    a written demand for monetary or non-monetary relief;

    (2)    any civil or criminal judicial proceeding in a court of law or equity, arbitration or other alternative dispute resolution; or

    (3)    a formal civil, criminal, administrative, or regulatory proceeding or formal investigation.

(D)    "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITION (C).

(E)    "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense or investigation of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F)    "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

    (1)    wrongful termination of employment whether actual or constructive;

    (2)    employment discrimination of any kind;

    (3)    sexual or other harassment in the workplace; or

    (4)    wrongful deprivation of career opportunity, employment-related misrepresentation, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Insurance Program**" means

    (1)    any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance; and

    (2)    any other existing insurance under which coverage may be owed.

(I)    "**Insured Person**" means:

    (1)    any past, present, or future director or officer, general counsel, or member of the Board of Managers of the **Company** and any person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States; and

    (2)    the lawful spouse of any person set forth in DEFINITION (I)(1), but only to the extent the spouse is a party to any **Claim** solely in his or her capacity as a spouse of such person and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and his or her spouse, or property transferred from any such person to his or her spouse.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

(J)    "**Interrelated Wrongful Acts**" means **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events.

(K)    "**Loss**" means damages, judgments, settlements or other amounts (including pre- & post-judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay.  **Loss** will not include:

    (1)    matters which are uninsurable under the law pursuant to which this Policy is construed; or

    (2)    fines, penalties or taxes imposed by law; provided, that this DEFINITION (K)(2) will not apply to fines, penalties or taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with respect to an entity included within the definition of **Company** that is financially insolvent.

Note:  With respect to coverage for punitive, exemplary or multiplied damages or fines, penalties or taxes, the law of the applicable jurisdiction most favorable to the insurability of such amounts shall control.

(L)    "**Outside Capacity Wrongful Act**" means any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, trustee, regent, or governor of any **Outside Entity**, if serving in such capacity at the specific request of the **Company**.

(M)    "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person**, as defined in DEFINITION (I)(1), serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific request of the **Company**.

(N)    "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(O)    "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(P)    "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(Q)    "**Wrongful Act**" means:

    (1)    any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, general counsel, or member of the Board of Managers of the **Company** or a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    (2)    any matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer, general counsel, or member of the Board of Managers of the **Company**;

    (3)    any **Employment Practices Wrongful Act**; and

    (4)    any **Outside Capacity Wrongful Act**.

## III.    EXCLUSIONS

(A)    Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

    (1)    brought by or on behalf of, or at the direction of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity**, except and to the extent such **Claim**:

        (a)    is brought and maintained by a security holder of the **Company** or such **Outside Entity**, but only if such security holder is acting independently of, and without the solicitation, assistance, participation or intervention of, the **Company**, any **Insured Person**, or any **Outside Entity**;

        (b)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or such **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or such **Outside Entity**;

        (c)    is brought and maintained in a non-common law jurisdiction outside the United States of America or its territories or possessions; or

        (d)    is made after the **Parent Company** has undergone a **Change of Control**; or

    (2)    brought about or contributed to in fact by any:

        (a)    intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

        (b)    profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

as determined by a final adjudication in the underlying action.

(B)    The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**:

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

(1)    for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof; provided, that this EXCLUSION (B)(1) shall not apply to any **Claim**:

(a)    brought by a security holder of the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

(b)    in the form of a derivative action, but only if such **Claim** is brought by or on behalf of, or in the name or right of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** and is brought and maintained independently of, and without the solicitation, assistance, participation or intervention of the **Company**, any **Insured Person**, or any **Outside Entity**; or

(2)    based upon, arising out of, directly or indirectly resulting from, in  consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or other similar insurance.

Note:  EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**.

No **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.    CONDITIONS

(A)    **Limit of Liability**

The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy.  Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(B)    **Indemnification and Other Insurance**

(1)    The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

(a)    all indemnification and advancement to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

(b)    any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position.

(2)    This Policy shall not be subject to the terms or conditions of any other insurance.  The Insurer does not waive, compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification or advancement, including the **Company** and any **Outside Entity**.

(C)    **Mergers and Acquisitions**

(1)    If, during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2)     With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in CONDITION (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against any **Insured Person** for any **Wrongful Act** in connection with the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary** or liability committed at any time during which such entity, asset, **Subsidiary** or liability is not included within the definition of "**Company**."

(3)     If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4)     If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**, and

(a)     coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

(b)     the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D)     **Notice**

(1)     As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2)     If, during the **Policy Period**, the **Insured Persons** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

(a)     provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

(b)     request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations;   Attention:  Claim Department.

(E)     **Defense and Settlement of Claims**

(1)     It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**.  No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2)     Upon written request, the Insurer will pay on a current basis any covered **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage.  In the event of such advancement, the **Insured Persons** agree that they shall repay the Insurer, severally according to

their interests, any **Loss**, including **Defense Expenses**, paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

(3)   Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**.

(F)   **Assistance, Cooperation and Subrogation**

(1)   The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)   In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons**, including any such rights of recovery against the **Company** or any **Outside Entity**. The **Insured Persons** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)   **Interrelated Claims**

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) or (2) above, if applicable.

(H)   **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)   **Cancellation and Renewal of Coverage**

(1)   The Chairman of the Board of Directors and the Chief Executive Officer of the **Parent Company** shall have the exclusive right to cancel this Policy on behalf of the **Insured Persons**. Such cancellation may be effected by mailing to the Insurer written notice stating when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)   The Insurer may cancel this Policy only for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Persons**, if applicable.

(3)   The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

(4)   The Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

(J)   **Optional Extension Period**

(1)   If either the **Insured Persons** or the Insurer does not renew this Policy, the **Insured Persons** shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the

period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full.  The right of the **Insured Persons** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Insured Persons** advising they wish to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Insured Persons** elect to purchase the Optional Extension Period as set forth in CONDITIONS (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)    **Representation Clause**

The **Application** for coverage shall be construed as a separate **Application** for coverage for each **Insured Person**.  Each **Insured Person** represents that, to the best of his or her knowledge, the statements and particulars contained in the **Application** are true, accurate and complete, and each **Insured Person** agrees that this Policy is issued in reliance on the truth of that representation and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  In the event that any statements and particulars contained in the **Application** are untrue, inaccurate or incomplete, this Policy will be void with respect to any **Insured Person** who had actual knowledge as of the Inception Date of facts or information that were not accurately or completely disclosed as required in the **Application**.  No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against such other **Insured Person**.

(L)    **Action Against the Insurer, Assignment, and Changes to Policy**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

    (a)    there has been full compliance with all of the terms and conditions of this Policy; and

    (b)    the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Persons** to determine their liability, nor may the **Insured Persons** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy.  The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)    **Authorization and Notices**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

It is understood and agreed that, except as provided elsewhere in this Policy, the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)  the payment of the premiums,

(2)  the receiving of any return premiums that may become due under this Policy,

(3)  the giving of all notices to the Insurer as provided herein, and

(4)  the receiving of all notices from the Insurer.

(N)  **Entire Agreement**

The **Insured Persons** agree that the Declarations, the Policy, including any endorsements and attachments, and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** in relation to the insurance.

(O)  **Worldwide Coverage**

In consideration of the premium charged, coverage under this Policy shall extend anywhere in the world.

(P)  **Bankruptcy**

In the event that a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insured Persons** and the **Company** hereby (1) waive and release any automatic stay or injunction which may apply in such proceeding in connection with this Policy or its proceeds under such Bankruptcy Code or law; and (2) agree not to oppose or object to any efforts by the Insurer or any **Insured Person** or the **Company** to obtain relief from any such stay or injunction.

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation  or by calling 1-800-706-3102.

91222 (9/16)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29



## *Illinois National Insurance Company*
**A capital stock company**

Policy Number:    01-803-28-61                    Replacement of:    N/A

## EXCESS EDGE®

**NOTICES:**  *Depending on the terms, conditions and limitations of the **Followed Policy**, this policy may (1) only provide coverage for loss from claims first made or first made and reported during its **Policy Period**; (2) have its limit of liability reduced by the payment of defense costs and/or claim expenses, and (3) not impose a duty to defend on the **Insurer**. Please read the **Followed Policy** and this policy carefully and discuss the coverage provided thereunder and hereunder with your insurance agent or broker.*

## DECLARATIONS

| | | | |
|---|---|---|---|
| **Policyholder:** | AKORN, INC. | | |
| **Policyholder Address:** | 1925 W FIELD CT STE 300 LAKE FOREST, IL 60045-4862 | **Limit of Liability:** | $ 5,000,000 |
| | | **Total Underlying Limits:** | $ 25,000,000 |
| **Policyholder Domicile:** | Illinois | **Policy Period:** From: | September 1, 2019 |
| **Insurer Address:** | 175 Water Street New York, NY 10038 | To: | September 1, 2020 |
| | | **Premium:** | $ 200,000 |
| **Claims Address:** e-mail: | c-claim@AIG.com | **TRIA Premium** | $ 0 |
| Mail: | AIG, Financial Lines Claims P.O. Box 25947 Shawnee Mission, KS 66225 | | |

### SCHEDULE OF UNDERLYING COVERAGE

| Underlying Insurer | Underlying Policy | Underlying Limit | Underlying Policy Period |
|---|---|---|---|
| PLEASE SEE ATTACHED SCHEDULE OF UNDERLYING COVERAGE AND FOLLOWED POLICY ADDENDUM | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The **Policy Period** incepts and expires as of 12:01 A.M. at the **Policyholder Address**. Terms with **"Bold"** typeface are used in this policy with the meanings and values ascribed to them above; however, subject to the Changes clause, the **"Followed Policy"** means the policy in the Schedule with an **"*"** at the beginning of its row, but only with respect to the following **Followed Coverage Section(s):** PLEASE SEE ATTACHED SCHEDULE OF UNDERLYING COVERAGE AND FOLLOWED POLICY ADDENDUM.**'TRIA Premium'** means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act, as amended. Amount indicated above is included in **Premium**. A copy of the TRIA disclosure sent with the original quote is attached hereto.

*1729116*
103224 (02/10)

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

In consideration of the payment of the premium, Illinois National Insurance Company (the **"Insurer"**) and insureds agree as follows:

*INSURING AGREEMENT*

This policy shall provide coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, as modified by and subject to the terms, conditions and limitations of this policy.

The **Insurer's** coverage obligations under this policy attach to the **Insurer** only after the **Total Underlying Limits** have been exhausted through payments by, on behalf of or in the place of the **Underlying Insurers** of amounts covered under the **Underlying Policies**. This policy shall continue in force as primary insurance only upon the exhaustion of the **Total Underlying Limits** by reason of such payments and satisfaction of any applicable retention. This policy shall recognize erosion of an **Underlying Limit** of an **Underlying Policy** through payments by others of covered amounts under that **Underlying Policy**. The risk of uncollectability of any part of the **Total Underlying Limits**, for any reason, is expressly retained by the **Policyholder** and any insureds, and is not insured under this policy or assumed by the **Insurer**.

*LIMIT OF LIABILITY*

The **Limit of Liability** is the aggregate limit of the **Insurer's** liability for all coverage under this policy.

*NOTICES*

Where the **Followed Policy** requires or permits notice to its insurer, the **Policyholder** or the insureds have the same obligations and rights to notify the **Insurer** under this policy, except that with respect to this policy, any notice to the **Insurer** must be directed as follows: (i) for claims-related matters, by mail or e-mail to the **Claims Address**; and (ii) for all other notices, by mail to the **Insurer Address**.

*RIGHTS*

The **Insurer** shall have the same rights, privileges and protections afforded to the **Underlying Insurer** of the **Followed Policy** in accordance with the terms, conditions and limitations of the **Followed Policy**. The **Insurer** shall also have the right, in its sole discretion, but not the obligation, to effectively associate with the insureds in the defense and settlement of any claim that appears to be reasonably likely to involve the **Insurer**. The **Policyholder**, its subsidiaries and any insureds shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request and shall not do anything that prejudices the **Insurer's** position or potential rights of recovery.

*RELIANCE*

The **Insurer** has issued this policy in reliance upon the completeness and accuracy of the applications, warranties, statements, the binders for the **Underlying Policies**, any attachments thereto and any other materials submitted for this policy, which shall be deemed attached hereto and made a part hereof.

*CHANGES*

If, subsequent to the issuance of the **Followed Policy**, the terms, conditions or limitations of an **Underlying Policy** are modified, the insureds must notify the **Insurer** in writing, as soon as practicable, of such modification. If any changes to the **Followed Policy**: (i) expand coverage, (ii) change the policyholder name or address, or (iii) modify premium, this policy shall not follow those changes unless the **Insurer** reflects its agreement to do so in a written endorsement to this policy.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____    _____    _____
PRESIDENT                    AUTHORIZED REPRESENTATIVE    SECRETARY


_____    _____    _____
COUNTERSIGNATURE             DATE          COUNTERSIGNATURE LOCATION
(WHERE REQUIRED BY LAW)

ARTHUR J GALLAGHER RISK MNGT SERV INC
2850 W GOLF RD
ROLLING MEADOWS, IL 60008

*1729116*
103224 (02/10)

- 2 -

© All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

## COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *AKORN, INC.*

Policy Number: *01-803-28-61*

Policy Period Effective Date From: *September 1, 2019*    To: *September 1, 2020*

Ⓒ 2015 National Association of Insurance Commissioner

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## SCHEDULE OF UNDERLYING COVERAGE AND FOLLOWED POLICY ADDENDUM

In consideration of the premium charged, it is hereby understood and agreed that the Declarations are amended as follows:

1. To delete the stated **SCHEDULE OF UNDERLYING COVERAGE** in its entirety and replace it with the following:

### SCHEDULE OF UNDERLYING COVERAGE

| | Underlying Insurer | Underlying Policy | Underlying Limit | Underlying Policy Period |
|---|---|---|---|---|
| | XL Specialty IGR | US00075683DO19A | $5,000,000 Primary | 09/01/2019 to 09/01/2021 |
| | Berkshire Hathaway Specialty Insurance Company | 47-EPC-308703-01 | $5,000,000 xs $5,000,000 | 09/01/2019 to 09/01/2021 |
| | Endurance American Insurance Company | DOX10007587103 | $5,000,000 xs $10,000,000 | 09/01/2019 to 09/01/2021 |
| | Wesco Insurance Company | EUW1806280 00 | $5,000,000 xs $15,000,000 | 09/01/2019 to 09/01/2020 |
| * | XL Specialty Insurance Company | ELU163568-19 | $5,000,000 xs $20,000,000 | 09/01/2019 to 09/01/2021 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

103496 (11/09)

© All rights reserved.

2.    To delete the Definition of **"Followed Policy"** and replace it with the following:

**"Followed Policy"** means the policy in the Schedule with an "*" at the beginning of its row, but only with respect to the following **Followed Coverage Section(s)**: CS 71 00 09 06

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



*1729116*

103496 (11/09)    2    ⬦ All rights reserved.

## ENDORSEMENT# *1*

This endorsement, effective *12:01AM    October 28, 2019*    forms part of
policy no.: *01-803-28-61*
issued to *AKORN, INC.*

by: *Illinois National Insurance Company*

### ILLINOIS AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy;  and 2) "you", "your", "Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### CANCELLATION AND NONRENEWAL

A.  The cancellation provision of this policy is replaced by the following:

CANCELLATION

1.  The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.  If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

a.  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

b.  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

A copy of the notice will also be sent to the mortgagee or lien holder at the last mailing address known to the Insurer.

3.  If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

a.  Nonpayment of premium;

b.  The policy was obtained through a material misrepresentation;

c.  The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

d.  The risk originally accepted has measurably increased;

e.  Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

f.  A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

© All rights reserved.

*END 001*
Page 1 of 2

52142(7/13)

HIGHLY CONFIDENTIAL
Turner Falk
Aug 05, 2020 14:29

<u>**ENDORSEMENT#**</u> *1*    (continued)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020

HIGHLY CONFIDENTIAL
obermayer.com
Aug 05, 2020 14:29

If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.  The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.  Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.  If this policy is cancelled, the Insurer will send the Named Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.

7.  Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.

B.  The nonrenewal provision of this policy is replaced by the following:

**NONRENEWAL**

1.  If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy.  A copy of the notice will also be sent to:

a.  The broker, if known to the Insurer, or the agent of record; and

b.  The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other terms, conditions and exclusions shall remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

© All rights reserved.

*END 001*
Page 2 of 2

52142(7/13)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Aug 05, 2020 14:29

ENDORSEMENT# *2*

This endorsement, effective at *12:01AM*    *October 28, 2019*    forms a part of
Policy number *01-803-28-61*
Issued to: *AKORN, INC.*

By: *Illinois National Insurance Company*

Product Name: *Excess Edge*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

Ⓒ All rights reserved.

*END 002*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

ENDORSEMENT# *3*

This endorsement, effective at *12:01AM    October 28, 2019*  forms a part of
Policy number *01-803-28-61*
Issued to: *AKORN, INC.*

By: *Illinois National Insurance Company*
Product Name:    *Excess Edge*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMENDATORY ENDORSEMENT

### ILLINOIS

This endorsement modifies insurance provided under the following:

**EXCESS EDGE**<sup>SM</sup>

The policy is amended as follows:

1.    The *RELIANCE* Clause is deleted in its entirety and replaced with the following:

The **Insurer** has issued this policy in reliance upon the completeness and accuracy
of the statements and representations in the application for this policy.

2.    The *RIGHTS* Clause is amended to include the following at the end thereof:

Bankruptcy or insolvency of any insured not release the **Insurer** from its duties to
pay under the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc.  All rights reserved.

ENDORSEMENT# *4*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

This endorsement, effective at *12:01AM*    *October 28, 2019*    forms a part of
Policy number *01-803-28-61*
Issued to: *AKORN, INC.*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

By: *Illinois National Insurance Company*

Product Name:   *Excess Edge*

## FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.    However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.   Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 004*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

<u>ENDORSEMENT#</u> *5*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

This endorsement, effective at *12:01AM*    *October 28, 2019*    forms a part of
Policy number *01-803-28-61*
Issued to: *AKORN, INC.*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

By: *Illinois National Insurance Company*
Product Name: *Excess Edge*

### PENDING AND PRIOR LITIGATION EXCLUSION AMENDED (EXCESS LIMITS)

In consideration of the premium charged, it is understood and agreed that with respect to the *$5,000,000* **Limit of Liability** of this policy excess of the *$25,000,000* **Total Underlying Limits**, the **Insurer** shall not be liable for any loss in connection with any claim made against any insured alleging, arising out of, based upon or attributable to, as of *September 1, 2019*, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an insured had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 005*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT#** *6*

This endorsement, effective *12:01AM*     *October 28, 2019*     forms a part of

policy number *01-803-28-61*

issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

## FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 103224 | 02/10 | EXCESS DEC AND POLICY - ADMITTED |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 103496 | 11/09 | SCHEDULE OF UNDERLYING COVERAGE AND FOLLOWED POLICY ADDENDUM |
| 52142 | 07/13 | ILLINOIS AMENDATORY- CANCELLATION/NONRENEWAL |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 106173 | 12/15 | ILLINOIS AMENDATORY ENDORSEMENT |
| 125595 | 03/17 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| 120222 | 08/15 | PENDING AND PRIOR LITIGATION EXCLUSION AMENDED (EXCESS LIMITS) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 96453 | 06/19 | ILLINOIS CONSUMER COMPLAINT NOTIFICATION |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 006*

78859 (10/01)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ILLINOIS CONSUMER COMPLAINT NOTIFICATION**

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

AIG
Consumer Complaints Division
80 Pine Street, 13th Floor
New York, NY 10005
Phone: 1-877-541-9748
Fax: 844-637-6862
consumer@aig.com

or

Illinois Department of Insurance/Consumer Division
122 S. Michigan Ave, 19th Floor
Chicago, Illinois 60603
312-814-2420 (main)

or

Illinois Department of Insurance
Consumer Division
320 W. Washington Street
Springfield, IL 62767

(866) 445-5364 (toll free)
(217) 782-4515 (main)
(217) 782-5020 (fax)

http://www.insurance.illinois.gov
email: DOI.InfoDesk@illinois.gov

Complaints may be submitted electronically to the Illinois Department of Insurance at:
https://mc.insurance.illinois.gov/messagecenter.nsf

You can also access complaint forms to print at:
https://insurance.illinois.gov/Complaints/PropertyCasualtyComplaintForm.pdf

© American International Group, Inc.  All rights reserved.

96453   (06/19)



# CLAIM REPORTING FORM

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number: <u>01-803-28-61</u>        Date: _____

Type of Coverage: D&O _____    E&O _____    Fidelity _____  (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

<u>AKORN, INC.</u>

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext ____

eMail: _____@_____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: <u>ARTHUR J GALLAGHER RISK MNGT SERV INC</u>

Address: <u>2850 W GOLF RD, ROLLING MEADOWS, IL 60008</u>

Address: _____

Contact: <u>DEREK VAN DER VOORT</u>        Phone: _____

eMail: <u>derek_vandervoort@ajg.com</u>

Send Notice of Claims to:        AIG                        Phone:  (888) 602-5246
                                Financial Lines Claims        Fax:    (866) 227-1750
                                P.O. Box 25947                Email:  c-Claim@AIG.com
                                Shawnee Mission, KS 66225



# CLAIM REPORTING FORM
# FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  *01-803-28-61*

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:   Employee Dishonesty  _____      Computer Fraud  _____

Funds Transfer  _____      Robbery/Burglary  _____

ID Theft  _____      Forgery  _____

Client Property  _____      In Transit  _____

ERISA  _____      Credit Card Forgery  _____

Other  _____  if Other, describe: _____

Send Notice Of Claims To:   AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone: (888) 602-5246
Fax:   (866) 227-1750
Email:  c-Claim@AIG.com

*centralized Customer Link and Information Management*



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

September 6, 2019

Derek Van der Voort
ARTHUR  J. GALLAGHER  RISK MANAGEMENT  SERVICES INC.
300 S. RIVERSIDE  #1900
CHICAGO, IL 60606-0000


RE:    AKORN INC

Insuring  Company: Federal Insurance Company

Dear Derek:

Enclosed is our Executive Protection Portfolio Policy for the above referenced Insured.

I want to thank you for the opportunity to underwrite this account.

Please let me know if I can be of further assistance.

Sincerely,

Melea J Hargis

CHUBB


r b

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Chubb  Group  of Insurance Companies

525 W Monroe Street
Suite 700
Chicago, IL 60661

312.775.3100
Fax 312.454.4401

**Executive Protection Portfolio**

HIGHLY CONFIDENTIAL
Turner Falk
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

PREMIUM BILL

Insured:   AKORN INC                                      Date:   09/06/2019

Producer:   ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES
INC.
300 S. RIVERSIDE #1900
CHICAGO, IL 60606-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Product:        Executive Protection Portfolio

Policy Number: 8153-1429

Policy Period:   September 1, 2019 to September 1, 2020

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL
WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| Product | Effective Date | Commission Rate | Premium |
|---------|----------------|-----------------|---------|
| FIDUCIARY LIABILITY | 09/01/19 | 0.00 % | $10,901.00 |
| CRIME | 09/01/19 | 0.00 % | $54,567.00 |
| | | | |
| | | | |

\* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $65,468.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $65,468.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Form 14-02-1324 (Rev. 1/99)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company: Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

10-02-1295 (ed. 6/2007)

**IMPORTANT POLICYHOLDER NOTICE**

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

**Notice to Purchasers of Employment Practices Liability Coverage or Fiduciary Liability Coverage**

Insuring Company: Federal Insurance Company

As a purchaser of an Employment Practices Liability Coverage Section and/or a Fiduciary Liability Coverage Section, please note that the Company has the right and duty to defend any Claim (as such term is defined in the Definitions section of each applicable Coverage Section) covered by each applicable Coverage Section, unless such Coverage Section has been amended by written endorsement. Defense counsel for any such Claim shall be selected by the Company from the Company's list of approved defense firms.   Please also note that, as a condition precedent to any right to coverage under each applicable Coverage Section, all Claims must be reported to the Company in writing in the manner and within the time provided in the Reporting and Notice provisions of such Coverage Section.

For a list of approved defense firms, please contact your insurance agent or broker, or access such list by using the following internet address:

http://csi.chubb.com/panel_counsel.asp

Please note that the Company reserves the right to modify such list at any time without notice.

99-10-0769 (Ed. 9/2004)

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

## Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

## Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary Liability Insurance #14-01-1019

## Crime Loss Prevention Services

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

## Cyber Security Loss Prevention Services

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more about Chubb's Cyber Services for our policyholders.

## Health Care Directors and Officers (D&O) Liability Loss Prevention Services

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online resource containing health care specific loss prevention information for employment practices liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

--------------------

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**CHUBB®**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* SM
*General Terms and Conditions Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana, herein called the
Company

Policy Number: 8153-1429

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, OUTSIDE DIRECTORSHIP LIABILITY AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN. "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.

Item 1. **Parent Organization:**    AKORN INC

Principal Address:    1925 W FIELD CT SUITE 300
LAKE FOREST, IL 60045

Item 2. **Policy Period:**    From   12:01 A.M. on    September 1, 2019
To      12:01 A.M. on    September 1, 2020
Local time at the address shown in Item 1.

Item 3.   Coverage Summary
Description:
GENERAL TERMS AND CONDITIONS
FIDUCIARY LIABILITY
CRIME

Item 4.   Termination of
Prior Bonds or Policies: 8153-1429  (Jun 1, 2018 to Sept 1, 2019)

**CHUBB**

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* ℠
*General Terms and Conditions Section*

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

### FEDERAL INSURANCE COMPANY

_____
Secretary

_____
President

_____
09/06/19
Date

_____
Authorized Representative

**CHUBB**

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

### Territory

1.   Coverage shall extend anywhere in the world.

### Terms and Conditions

2.   Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

### Definitions

3.   When used in this policy:

**Claim** shall have the meaning set forth in the applicable coverage section.

**Insured** shall have the meaning set forth in the applicable coverage section.

**Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

**Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

### Limits of Liability and Retentions

4.   Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

### Notice

**CHUBB®**

**Executive Protection Portfolio**<sup>SM</sup>
*General Terms and Conditions Section*

Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

> Attn: Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

All other notices to the Company shall be given in writing addressed to:

> Attn: Underwriting
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

Any such notice shall be effective on the date of receipt by the Company at such address.

---

*Valuation and Foreign Currency*

6.    All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

---

*Subrogation*

7.    In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured**'s rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

*Action Against the Company*

8.  No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

### Parent Organization Rights and Obligations

9.  By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

### Alteration and Assignment

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb, a division of Federal Insurance Company.

### Termination of Policy or Coverage Section

11. This policy or any coverage section shall terminate at the earliest of the following times:

    (a) sixty days after receipt by the **Parent Organization** of written notice of termination from the Company for any reason other than non-payment of premium;

    (b) twenty days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

    (c) upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this policy may not be terminated by the **Parent Organization** after the effective date of any acquisition of the **Parent Organization** as described in the Changes in Exposure subsection of the applicable coverage section of this policy;

    (d) upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions; or

    (e) at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if this policy or any coverage section is terminated by the **Parent Organization**. Under any other

CHUBB°

**Executive Protection Portfolio**<sup>SM</sup>
*General Terms and Conditions Section*

circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of a notice of termination, but such payment shall be made as soon as practicable thereafter.

### Termination of Prior Bonds or Policies

12.  Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

### Bankruptcy

13.  Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### Headings

14.  The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Schedule of Forms

To be attached to and form part of
Policy No.   8153-1429

Company:   Federal Insurance Company

Issued to:   AKORN INC


Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

14-02-22814 (12/17 ed.)

14-02-7461 (11/02 ed.)

14-02-9228 (2/10 ed.)

Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

14-02-12019 (5/06 ed.)

14-02-12174 (1/14 ed.)

14-02-14100 (4/08 ed.)

14-02-19855XIL (11/14 ed.)

14-02-7465 (1/07 ed.)

14-02-8780 (10/05 ed.)

14-02-9392 (5/04 ed.)

Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

14-02-10647 (12/04 ed.)

14-02-10894 (5/05 ed.)

14-02-12030 (5/06 ed.)

14-02-13300 (7/07 ed.)

14-02-16840 (4/10 ed.)

14-02-19671 (8/14 ed.)

14-02-19844 (3/13 ed.)

14-02-21135 (6/16 ed.)

14-02-7466 (11/02 ed.)

14-02-8754 (8/03 ed.)

14-02-8820 (9/03 ed.)

14-02-8891 (10/03 ed.)

14-02-8907 (10/04 ed.)

Form 14-02-0854 (Ed. 04-01)

# Schedule of Forms

To be attached to and form part of
Policy No.   8153-1429

Company:   Federal Insurance Company

Issued to:   AKORN INC

14-02-8923A (4/07 ed.)

14-02-8925 (11/03 ed.)

14-02-8926 (11/03 ed.)

14-02-8927 (11/03 ed.)

14-02-8928 (11/03 ed.)

14-02-8931 (4/08 ed.)

14-02-8932 (11/03 ed.)

14-02-8933 (11/03 ed.)

14-02-9088 (12/03 ed.)

14-02-9146 (2/04 ed.)

14-02-9178 (3/04 ed.)

14-02-9261 (4/04 ed.)

FL-261182 (7/18 ed.)

PF-262504 (1/19 ed.)

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.   If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

### ILLINOIS AMENDATORY ENDORSEMENT
### TO THE GENERAL TERMS AND CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.    Subsection 11. Termination of Policy or Coverage Section (a) of the General Terms and Conditions Section is amended by adding the following at the end of such paragraph (a):

"provided that, if any Executive Liability and Entity Securities Liability Coverage Section, Outside Directorship Liability Coverage Section, Fiduciary Liability Coverage Section or Employment Practices Liability Coverage Section is issued as part of this policy and is in effect for more than sixty (60) days, the Company may cancel any such coverage section, other than for non-payment of premium, only for one or more of the following reasons:

(1)    such coverage section was obtained through a material misrepresentation;

(2)    any Insured violated any of the terms and conditions of such coverage section;

(3)    the risk originally accepted has measurably increased;

(4)    the Company certifies to the Director of Insurance the loss of reinsurance by the Company which provided coverage to the Company for all or a substantial part of the underlying risk insured; or

(5)    the Director of Insurance determines that the continuation of such coverage section could place the Company in violation of the insurance laws of the state of Illinois;"

2.    With respect to each coverage section of this policy, other than the Crime Coverage Section and the Kidnap/Ransom and Extortion Coverage Section, Section 11. Termination of Policy or Coverage Section (d) of the General Terms and Conditions Section is amended to add the following to such paragraph (d):

"provided that non-renewal by the Company is effective only if the Company mails sixty (60) days advance written notice of non-renewal to the Parent Organization at its last known address, stating the reason(s) for such non-renewal.   A copy of such notice will be sent to the agent or broker of record, if any, and any mortgagee or lienholder, if known; or"

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

3.  Subsection 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section is amended further by adding the following paragraphs at the end of such Subsection:

"Any notice of cancellation by the Company will state the specific reason for cancellation.

The Company may condition renewal of the Executive Liability and Entity Securities Liability Coverage Section, the Outside Directorship Liability Coverage Section, the Fiduciary Liability Coverage Section or the Employment Practices Liability Coverage Section upon an increase in premium of 30% or more, or a change in deductible or coverage, by mailing to the Parent Organization at the last mailing address known to the Company, with a copy to the agent or broker of record, if any, at least sixty (60) days advance written notice of such renewal change(s). If the Company provides such notice between thirty-one and sixty (60) days before the expiration of the Policy Period, the Company will offer the Parent Organization a sixty (60)-day extension of the applicable coverage section at a pro-rated premium based upon the expiring policy premium. If the Company provides less than thirty-one (31) days' notice of non-renewal, the Company will offer the Parent Organization a one (1)-year extension of the applicable coverage section at a premium not to exceed 29.9% of the premium for the expiring policy."

4.  Nothing in this Amendatory Endorsement amends the provisions of Section 11. Termination of Policy or Coverage Section of the General Terms and Conditions Section as such Section applies to the Crime Coverage Section or the Kidnap/Ransom and Extortion Coverage Section.

5.  References in this Amendatory Endorsement to a particular coverage section are applicable only to the extent that such coverage section has been issued to the Parent Organization.  The coverage sections issued to the Parent Organization are those set forth in the applicable Declarations and nothing herein is intended to, nor does it, establish coverage under any coverage section that has not been issued to the Parent Organization as part of the policy.

The policy is amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio General Terms and Conditions Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-9228 (2/2010)                                        Page 1

**CHUBB**

Chubb Group of Insurance
Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*Executive Protection Portfolio* SM
*Fiduciary Liability Coverage Section*

## DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana, herein called the
Company

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", UNLESS OTHERWISE SPECIFIED HEREIN, AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**

AKORN INC
1925 W FIELD CT SUITE 300
LAKE FOREST, IL 60045

Item 2. Optional Defense Outside the Limits of Liability Coverage purchased  ☐ Yes  ☒ No

Item 3. Limits of Liability:

    (A)  Each **Claim**:                                         $5,000,000.00

    (B)  Each **Policy Period**:                           $5,000,000.00

   Note: Unless Defense Outside the Limits of Liability Coverage is purchased pursuant to Item 2 above, the Limits of Liability will be reduced and may be exhausted by **Defense Costs**.

Item 4. Retention:

    (A)  Insuring Clause 1 - Fiduciary Liability Coverage:          $10,000.00

    (B) Insuring Clause 2 - Voluntary Settlement Program Coverage:      $0.00

Item 5. **Organization:**

    Akorn, Inc. and its Subsidiaries

Item 6. Extended Reporting Period:

    (A) Additional Period:         365 day

14-02-7306DFED (Ed. 11/2002)          Page 1 of 17

C H U B B

*Executive Protection Portfolio* <sup>SM</sup>

*Fiduciary Liability Coverage Section*

(B)   Additional Premium:        150 % of Annualized Premium for the Expiring **Policy Period**

Item 7.   Pending or Prior Date:

(A)   Insuring Clause 1:              1/29/1998

(B)   Insuring Clause 2:              1/29/1998



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

**In consideration** of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

---

### Insuring Clauses

*Fiduciary Liability Coverage Insuring Clause 1*

1. The Company shall pay, on behalf of the **Insureds**, **Loss** on account of any **Fiduciary Claim** first made against the **Insureds** during the **Policy Period**, or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted or allegedly committed or attempted before or during the **Policy Period** by such **Insureds**, or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 11 of this coverage section.

---

*Voluntary Settlement Program Coverage Insuring Clause 2*

2. The Company shall pay, on behalf of the **Insureds**, **Settlement Fees** and **Defense Costs** with respect to a **Settlement Program Notice** first given to the Company during the **Policy Period**, or, if exercised, during the Extended Reporting Period, provided (i) the **Settlement Fees** and **Defense Costs** are incurred after such **Settlement Program Notice** is first given to the Company, and (ii) the Company's maximum liability for all **Settlement Fees** and **Defense Costs** with respect to all **Settlement Program Notices** first given to the Company during the **Policy Period** (including the Extended Reporting Period, if applicable) shall be $100,000. Such amount shall be part of, and not in addition to, the Limit of Liability otherwise applicable to this coverage section.

---

### Definitions

3. When used in this coverage section:

   **Administration** means:

   (1) advising, counseling or giving notice to **Employees**, participants or beneficiaries with respect to any **Plan**;

   (2) providing interpretations with respect to any **Plan**; or

   (3) handling of records or effecting enrollment, termination or cancellation of **Employees**, participants or beneficiaries under any **Plan**.

   **Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this coverage section or for any coverage section or policy of which this coverage section is a direct or indirect renewal or replacement. All such applications, attachments and materials are deemed attached to, incorporated into and made a part of this coverage section.

**CHUBB®**

*Executive Protection Portfolio℠*
*Fiduciary Liability Coverage Section*

**Claim** means for the purposes of coverage under:

(1)  Insuring Clause 1: any **Fiduciary Claim**; or

(2)  Insuring Clause 2: any **Settlement Program Notice**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees or benefits of the directors, officers or **Employees** of the **Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Organization**.

**Employee** means any natural person whose labor or service is engaged by and directed by the **Organization** or any **Plan**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

**ERISA** means the Employee Retirement Income Security Act of 1974, the English Pension Scheme Act 1993, the English Pensions Act 1995, all as amended, any similar common or statutory law anywhere in the world, and any rules or regulations promulgated under any such Acts or law.

**Executive** means any natural person who was, now is or shall become:

(a)  a duly elected or appointed director, officer, **Manager**, or in-house general counsel of any **Plan** or any **Organization** incorporated in the United States of America; or

(b)  a holder of a position equivalent to any position described in (a) above in an **Organization** that is chartered in any jurisdiction other than the United States of America.

**Fiduciary Claim** means:

(a)  a written demand for monetary damages or non-monetary relief;

(b)  a civil proceeding commenced by the service of a complaint or similar pleading;

(c)  a criminal proceeding commenced by a return of an indictment or information;

(d)  a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal investigative order or similar document; or

(e)  a written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including but not limited to, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Social Services, the United Kingdom Occupational Pensions Regulatory Authority,

against any **Insured** for a **Wrongful Act**, including any appeal therefrom.



Except as may otherwise be provided in Subsection 9, Subsection 10(e), or Subsection 11(b) of this coverage section, a **Fiduciary Claim** will be deemed to have first been made when such **Fiduciary Claim** is commenced as set forth in this definition (or, in the case of a written demand or notice, when such demand or notice is first received by an **Insured**).

**Financial Impairment** means the status of an **Organization** resulting from:

(a)     the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(b)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Insured** means the **Organization**, any **Plan** and any **Insured Person**.

**Insured Person** means:

(a)     any past, present or future **Executive, Employee** or natural person trustee of the **Organization** or of the **Sponsored Plan**; and

(b)     any past, present or future natural person trustee or fiduciary of a multi-employer plan, if such person in such capacity is added as an **Insured Person** by specific written endorsement to this coverage section.

**Loss** means the amount that any **Insured** becomes legally obligated to pay on account of any covered **Claim**, including but not limited to damages (including punitive or exemplary damages, or the multiple portion of any multiplied damage award, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest, **Defense Costs** and, solely with respect to Insuring Clause 2, **Settlement Fees**.

**Loss** does not include:

(a)     any amount not indemnified by the **Organization** for which the **Insured** is absolved from payment by reason of any covenant, agreement or court order;

(b)     any costs incurred by an **Organization** or **Plan** to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)     any amount incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that is not then a **Claim** even if (i) such amount also benefits the defense of a covered **Claim**, or (ii) such action, proceeding, investigation or demand subsequently gives rise to a **Claim**;

(d)     taxes, fines or penalties, except as provided above with respect to punitive or exemplary damages or the multiple portion of any multiplied damages, and except:



(i) the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

(ii) any civil penalties imposed by the Pension Ombudsman appointed by the United Kingdom Secretary of State for Social Services or by the United Kingdom Occupational Pensions Regulatory Authority, pursuant to the English Pension Scheme Act 1993, the English Pensions Act 1995, or rules or regulations thereunder; provided any coverage for such civil penalties applies only if the funds or assets of the subject **Plan** are not used to fund, pay or reimburse the premium for this coverage section; or

(iii) solely with respect to Insuring Clause (2), **Settlement Fees**;

(e) any amount allocated to non-covered loss pursuant to Subsection 13 of this coverage section; or

(f) any amount not insurable under the law pursuant to which this coverage section is construed, except as provided above with respect to punitive or exemplary damages or the multiple portion of any multiplied damages.

**Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Organization** means, collectively, those organizations designated in Item 5 of the Declarations for this coverage section, including any such organization in its capacity as a debtor in possession under the United States bankruptcy law or in an equivalent status under the law of any other country.

**Plan** means:

(a) any **Sponsored Plan**; and

(b) any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for **Employees**.

**Pollutants** means (a) any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof, including, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, or (b) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products or any noise.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Settlement Fees** means any fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to a **Settlement Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation; provided **Settlement Fees** shall not include (a) any costs to correct the non-compliance, or any other



charges, expenses, taxes or damages; or (b) any fees, fines, penalties or sanctions relating to a **Plan** which, as of the earlier of the inception of this coverage section or the inception of the first policy in an uninterrupted series of policies issued by the Company of which this coverage section is a direct or indirect renewal or replacement, any **Insured Person** knew to be actually or allegedly non-compliant.

**Settlement Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or the U.S. Department of Labor, including but not limited to, the Employee Plans Compliance Resolution System, the Audit Closing Agreement Program, the Voluntary Compliance Resolution Program, the Walk-in Closing Agreement Program, the Administrative Policy Regarding Self-Correction, the Tax Sheltered Annuity Voluntary Correction Program, the Delinquent Filer Voluntary Compliance Program, and the Voluntary Fiduciary Correction Program, or any similar program administered by a governmental authority located outside the United States.

**Settlement Program Notice** means prior written notice to the Company by the **Insured** of the **Insured's** intent to enter into a **Settlement Program**.

**Sponsored Plan** means:

(a) any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each are defined in **ERISA**, which is operated solely by the **Organization** or jointly by the **Organization** and a labor organization solely for the benefit of the **Employees** or **Executives** of the **Organization** located anywhere in the world and which existed on or before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions or which is created or acquired after such inception date; provided (i) any coverage with respect to any such Plan created or acquired during the **Policy Period** shall apply only for **Wrongful Acts** committed, attempted, or allegedly committed or attempted after the effective date of such creation or acquisition and shall be subject to Subsection 15 of this coverage section, and (ii) any coverage with respect to an employee stock ownership plan created or acquired during the **Policy Period** shall be further subject to Subsection 19 of this coverage section;

(b) any other employee benefit plan or program not subject to **ERISA** which is sponsored solely by the **Organization** for the benefit of the **Employees** or **Executives**, including any fringe benefit or excess benefit plan;

(c) any other plan or program otherwise described in paragraphs (a) or (b) above while such plan or program is being actively developed, formed or proposed by the **Organization** prior to the formal creation of such plan or program; provided, however, no coverage is afforded under this coverage section for any **Claim** against an **Insured** in a settlor or similar uninsured capacity with respect to any plan or program; and

(d) any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this coverage section.

**Sponsored Plan** shall not include any employee stock ownership plan created or acquired by the **Organization** during the **Policy Period** (except as otherwise provided in Subsection 19 of this coverage section), or any multi-employer plan created before or during the **Policy Period.**



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors or **Managers** of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Act** means with respect to any **Plan**:

(a) any breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** in their capacity as such fiduciaries;

(b) any negligent act, error or omission in the **Administration** of any **Plan** committed, attempted, or allegedly committed or attempted by an **Insured** in the **Insured's** capacity as such; or

(c) any other matter claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**.

## Exclusions

4. The Company shall not be liable for **Loss** on account of any **Claim** against an **Insured**:

(a) based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice given under any policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b) based upon, arising from or in consequence of any demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(c) based upon, arising from or in consequence of:

(i) any actual, alleged, or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of any **Pollutants**; or

(ii) any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request,

including but not limited to any **Claim** for financial loss to any **Organization** or **Plan** or creditors based upon, arising from or in consequence of any matter described in clause (i) or clause (ii) of this Exclusion 4(c); provided that this Exclusion 4(c) shall not apply to (A) any **Claim** by or on behalf of a beneficiary of or participant in any **Sponsored Plan** based upon, arising from or in consequence of the diminution in value of any securities owned by the **Sponsored Plan** in any organization other than the **Organization**, if such diminution in value is allegedly as a result of the matters

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29



described above in this Exclusion 4(c), or (B) **Loss** (other than fees and expenses incurred in testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing **Pollutants**) incurred by an **Insured Person** for which the **Organization** is not permitted by common or statutory law to indemnify or for which the **Organization** is not able to indemnify by reason of **Financial Impairment**;

(d) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(e) based upon, arising from or in consequence of the liability of others assumed by any **Insured** under any written or oral contract or agreement; provided that this Exclusion 4(e) shall not apply to the extent that:

   (i) an **Insured** would have been liable in the absence of the contract or agreement; or

   (ii) the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Plan** was established;

(f) for the failure of the **Insured** to comply with any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world, except (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (ii) the Health Insurance Portability and Accountability Act of 1996, or (iii) any amendments to or any rules or regulations promulgated under such Acts;

(g) made against a **Subsidiary** or an **Insured Person** of such **Subsidiary** for any **Wrongful Act** committed, attempted, or allegedly committed or attempted during any time when such entity was not a **Subsidiary**; or

(h) based upon, arising from or in consequence of:

   (i) the committing in fact of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**; or

   (ii) such **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled,

   as evidenced by (A) any written statement or written document by any **Insured** or (B) any judgment or ruling in any judicial, administrative or alternative dispute resolution proceeding.

---

5. The Company shall not be liable for **Loss**, other than **Defense Costs**:

   (a) which constitutes the return or reversion to an employer of any contribution or asset of a **Plan**;

   (b) which constitutes (i) benefits due or to become due under any **Plan**, or (ii) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, except to the extent that:



(A)   an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation; and

(B)   recovery for the benefits is based upon a covered **Wrongful Act**; or

(c)   which is based upon, arising from or in consequence of the failure to collect an employer's contributions owed to a **Plan** unless the failure is because of the negligence of any **Insured**.

**Severability of Exclusions**

6.   (a)   No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of applying Exclusion 4(h) of this coverage section.

(b)   Only facts pertaining to and knowledge possessed by any **Executive** of an **Organization** or **Plan** shall be imputed to such **Organization** or **Plan** for the purpose of applying Exclusion 4(h) of this coverage section.

*Spouses, Estates and Legal Representatives*

7.   Subject otherwise to the General Terms and Conditions and the limitations, conditions, provisions and other terms of this coverage section, coverage shall extend to **Claims** for the **Wrongful Acts** of an **Insured Person** made against:

(a)   the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or assigns of such **Insured Persons** if such **Insured Person** is incompetent, insolvent or bankrupt; or

(b)   the lawful spouse or **Domestic Partner** of such **Insured Person** solely by reason of such spouse or **Domestic Partner's** status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

All terms and conditions of this coverage section, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Person**s, shall also apply to loss incurred by the estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of such **Insured Persons**. The coverage provided by this Subsection 7 shall not apply with respect to any loss arising from an act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner**.

*Coordination with Employment Practices Liability Coverage Section*

8.   Any **Loss** otherwise covered by both (i) this coverage section and (ii) any employment practices liability coverage section or policy issued by the Company or by any affiliate of the Company (an "Employment Practices Liability Coverage"), first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to the Employment Practices Liability Coverage. Any remaining **Loss** otherwise covered by this coverage section which is not paid under the Employment Practices Liability

CHUBB®

**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

Coverage shall be covered as provided in, and shall be subject to the Limit of Liability and Retention applicable to this coverage section; provided the Retention applicable to such **Loss** under this coverage section shall be reduced by the amount of **Loss** otherwise covered by this coverage section which is paid by the **Insureds** as the retention under such Employment Practices Liability Coverage.

*Extended Reporting Period*

9.    If the Company or the **Parent Organization** terminates or does not renew this coverage section, other than termination by the Company for nonpayment of premium, the **Parent Organization** and the **Insureds** shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for **Claims** that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or nonrenewal, and (ii) reported to the Company in writing within the time provided in Subsection 11(a) of this coverage section, but only to the extent such **Claims** are for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal or the date of the first merger, consolidation or acquisition event described in Subsection 16 below.  The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.  The right to purchase an extension of coverage as described in this subsection shall lapse unless written notice of election to purchase the extension, together with payment of the additional premium due, is received by the Company within thirty (30) days after the effective date of termination or nonrenewal.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**.  The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

*Limit of Liability and Retention*

10.    (a)    The Company's maximum liability for all **Loss** on account of each **Claim** covered under Insuring Clause 1 shall be the Limit of Liability set forth in Item 3(A) of the Declarations for this coverage section.  The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the **Policy Period**, whether covered under one or both Insuring Clauses, shall be the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.  The Company's maximum liability for all **Defense Costs** and **Settlement Fees** with respect to each **Settlement Program Notice** for which coverage is provided under Insuring Clause 2, and the Company's maximum aggregate liability for all **Defense Costs** and **Settlement Fees** with respect to all such **Settlement Program Notices** first given to the Company during the **Policy Period**, shall be $100,000, which amount is part of and not in addition to the Limit of Liability for each **Policy Period** set forth in Item 3(B) of the Declarations for this coverage section.

(b)    Solely in the event that Defense Outside the Limits of Liability Coverage is purchased, as set forth in Item 2 of the Declarations for this coverage section, **Defense Costs** shall be in addition to, and not part of, the applicable Limit of Liability; provided that, when such Limit of Liability is exhausted by payment of **Loss**, other than **Defense Costs**, any obligation of the Company to pay **Defense Costs** or to defend or continue to defend any **Claim** shall cease.  If Defense Outside the Limits of Liability Coverage is not purchased, **Defense Costs** shall be part of, and not in



addition to, the Limits of Liability set forth in Item 3 of the Declarations for this coverage section, and the payment by the Company of **Defense Costs** shall reduce and may exhaust such applicable Limits of Liability.

(c)     No Retention shall apply to any **Loss** under this coverage section incurred by an **Insured Person** if such **Loss** can not be indemnified by an **Organization** or **Plan** because such **Organization** or **Plan** is either not legally permitted or required to indemnify, or is unable to indemnify, such **Insured Person** by reason of **Financial Impairment**.  The Company's liability for all other covered **Loss** (as determined by Subsection 13 of this coverage section, if applicable) shall apply only to that part of **Loss** on account of each **Claim** which is excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section.  Such Retention shall be reduced only by **Loss** otherwise covered under this coverage section and shall be borne by the **Insureds** uninsured and at their own risk.

(d)     If different parts of a single **Claim** are subject to different Retentions, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(e)     All **Related Claims** shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made, or on the date the earliest of such **Related Claims** is treated as having been made in accordance with Subsection 11(b) of this coverage section, regardless of whether such date is before or during the **Policy Period**.

(f)     The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** on account of all **Claims** first made during the immediately preceding **Policy Period**.

### Reporting and Notice

11.     (a)     The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Fiduciary Claim** as soon as practicable, but in no event  more than the earliest of the following dates:

(i)     sixty (60) days after the date on which any **Organization**'s chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson first becomes aware that the **Fiduciary Claim** has been made;

(ii)     if this coverage section expires (or is otherwise terminated) without being renewed and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)     the expiration date of the Extended Reporting Period, if purchased;

provided that if the Company sends written notice to the **Parent Organization**, at any time before the date set forth in (i) above  with respect to any **Claim**, stating that this coverage section is being terminated for non-payment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

(b)     If during the **Policy Period** an **Insured**:

(i)     becomes aware of circumstances which could give rise to a **Fiduciary Claim** and gives written notice of such circumstances to the Company;

(ii)    receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company; or

(iii)   gives written notice to the Company of a **Settlement Program Notice**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, or from the **Settlement Program Notice** referred to in (iii) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii) or (iii) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the **Company** as set forth in Subsection 11(a) above.  With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(c)     The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company such information and cooperation as the Company may reasonably require, and shall include in any notice under Subsection 11(a) or (b) a description of the **Claim** or circumstances, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim** or circumstances.

---

*Defense and Settlement*

12.    (a)    The Company shall have the right and duty to defend any **Claim** covered by this coverage section, even if any of the allegations in such **Claim** are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(b)    The Company may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient.  If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

(i)     the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement of such **Claim**; plus

(ii)    seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above, incurred in connection with such **Claim**; subject in all events to the applicable Retention and the available Limit



of Liability for such **Claim**. The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (i) above will be borne by the **Insured** uninsured and at its own risk.

(c)    The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld. The Company shall not be liable for any **Defense Costs**, for any other element of **Loss** incurred, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent.

(d)    The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably require and agree that in the event of a **Claim** the **Insureds** will do nothing that could prejudice the Company's position or its potential or actual rights of recovery.

---

*Allocation*

13.   (a)    If in any **Claim** the **Insureds** incur both **Loss** that is covered under this coverage section and loss that is not covered under this coverage section, either because such **Claim** includes both covered and non-covered matters or because such **Claim** is made against both **Insureds** and others, the **Insureds** and the Company shall allocate such amount between covered **Loss** and non-covered loss based on the relative legal and financial exposures of the parties to covered and non-covered matters and, in the event of a settlement in such **Claim**, based also on the relative benefits to the parties from such settlement. The Company shall not be liable under this coverage section for the portion of such amount allocated to non-covered loss.

(b)    If the **Insureds** and the Company cannot agree on an allocation of **Loss**:

(i)    no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

(ii)    the Company, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators.

---

*Other Insurance*

14.    If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall deplete, by the amount of such payment which would otherwise be covered under this coverage section, the applicable Retention under this coverage section.



**Executive Protection Portfolio**<sup>SM</sup>
*Fiduciary Liability Coverage Section*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

*Changes in Exposure*

*Acquisition/Creation of Another Organization*

15.   If before or during the **Policy Period** any **Organization:**

   (a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

   (b)   acquires another organization by merger into or consolidation with an **Organization**, such that the **Organization** is the surviving entity,

   such other organization and its **Insureds** shall be **Insureds** under this coverage section, but only with respect to **Wrongful Acts** committed, attempted, or allegedly committed or attempted after such acquisition or creation unless the Company agrees, after presentation of a complete application and all other appropriate information, to provide coverage by endorsement for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before such acquisition or creation.

   If the total assets of any such acquired organization or new **Subsidiary** exceed fifteen percent (15%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insureds** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation. Coverage for any acquired or created organization described in this paragraph, and for the **Insureds** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

*Acquisition by Another Organization*

16.   If:

   (a)   the **Parent Organization** merges into or consolidates with another organization and the **Parent Organization** is not the surviving entity; or

   (b)   another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of or to appoint directors or **Managers** of the **Parent Organization,**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29



**Executive Protection Portfolio**<sup>SM</sup>

*Fiduciary Liability Coverage Section*

coverage under this coverage section shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted before such merger, consolidation or acquisition. Upon the occurrence of any event described in (a) or (b) of this Subsection 16, the entire premium for this coverage section shall be deemed fully earned.

The **Parent Organization** shall give written notice of such merger, consolidation or acquisition to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such merger, consolidation, or acquisition, together with such other information as the Company may require.  Upon receipt of such notice and information and at the request of the **Parent Organization**, the Company shall provide to the **Parent Organization** a quotation for an extension of coverage (for such period as may be negotiated between the Company and the **Parent Organization**) with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted by **Insureds** before such merger, consolidation or acquisition.  Any coverage extension pursuant to such quotation shall be subject to such additional or different terms, conditions and limitations of coverage and payment of such additional premium, as the Company in its sole discretion may require.

---

### Cessation of Subsidiary

17.    In the event an organization ceases to be a **Subsidiary** before or during the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insureds** shall continue until termination of this coverage section, but only with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted while such organization was a **Subsidiary**.

---

### Termination of Plan

18.    If an **Organization** terminates a **Plan** before or after the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, coverage under this coverage section with respect to such terminated **Plan** and its **Insureds** shall continue until termination of this coverage section for those who were **Insureds** prior to or at the time of such **Plan** termination or who would have been **Insureds** at the time of such termination if this coverage section had then been in effect.  Such continuation of coverage shall apply with respect to **Claims** for **Wrongful Acts** committed, attempted, or allegedly committed or attempted prior to or after the date the **Plan** was terminated.

---

### Creation or Acquisition of an ESOP

19.    Notwithstanding anything in this coverage section to the contrary, if during the **Policy Period** the **Organization** creates or directly or indirectly acquires an employee stock ownership plan ("ESOP"), the **Organization** shall promptly give to the Company written notice thereof together with such other information requested by the Company. The Company shall, at the request of the **Organization**, provide to the **Organization** a quotation for coverage for **Claims** based upon, arising from, or in consequence of such ESOP, subject to such terms, conditions, limitations of coverage and such additional premium as the Company, in its sole discretion, may require.  Unless the **Insureds** accept such quotation and pay such additional premium within thirty (30) days after receipt of the

quotation, no coverage will be available under this coverage section for **Claims** based upon, arising from or in consequence of such ESOP.

*Representations and Severability*

20.   In issuing this coverage section the Company has relied upon the statements, representations and information in the **Application**.  All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this coverage section, and (iii) are material to the Company's acceptance of the risk to which this coverage section applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed, and (ii) the **Organization** to the extent it indemnifies an **Insured Person** who had such actual or imputed knowledge.  For purposes of the preceding sentence:

(a)   the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of any **Organization** shall be imputed to such **Organization** and its **Subsidiaries** and their respective **Plans**;

(b)   the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all of the **Insureds**; and

(c)   except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

PRIORITY OF PAYMENTS

In consideration of the premium charged, it is agreed that with respect to any **Fiduciary Claim** first made against the **Insureds** during the **Policy Period**, regardless of whether such **Fiduciary Claim** is first made before or after the effective date of this endorsement:

1.     If a liquidation or reorganization proceeding is commenced by or against the **Organization** pursuant to the United States Bankruptcy Code or any similar state or local law and in the event payment of **Loss** is due under this coverage section but, in the sole discretion of the Company, the amount of such **Loss** in the aggregate potentially exceeds the remaining available Limit of Liability for this coverage section, the Company shall:

(a)     first pay such covered **Loss** incurred by the **Insured Persons** and the **Plans**; then

(b)     to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such covered **Loss** incurred by the **Organization**.

Except as otherwise provided in this endorsement, the Company may pay covered **Loss** as it becomes due under this coverage section without regard to the potential for other future payment obligations under this coverage section.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

| | |
|---|---|
| Effective date of<br>this endorsement/rider: September 1, 2019 | Federal Insurance Company<br><br>Endorsement/Rider No. 2<br><br>To be attached to and<br>form a part of Policy No. 8153-1429 |

Issued to:  AKORN INC

---

AMEND SUBSECTION 20 REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 20. Representations and Severability of this coverage section is amended to read in its entirety as follows:

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured Person** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured Person** knew of such untruthful disclosure in the **Application**), (ii) any **Organization** or **Plan** to which knowledge of such facts is imputed, and (iii) any **Organization** to the extent it indemnifies an **Insured Person** who had knowledge of such facts, whether or not knowledge of such facts is also imputed to that **Organization**.  For purposes of the preceding sentence:

(a)     the knowledge of any **Insured Person** who is a past, present or future chief financial officer or chief executive officer of **Parent Organization** shall be imputed to all **Organizations**, **Subsidiaries** and **Plans**;

(b)     the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all **Organizations**, **Subsidiaries**, and **Plans**; and

(c)     except as provided in (a) and (b) above, the knowledge of an **Insured Person** shall not be imputed to any other **Insured**.

Notwithstanding the foregoing, solely with respect to **Non-Indemnifiable Loss** (as defined below), this coverage section shall not be rescinded with respect to any **Insured Person** who, as of the inception date of this coverage section, did not know the facts that were not truthfully and accurately disclosed in the **Application**, provided that the coverage afforded pursuant to this paragraph shall be subject to all terms, conditions, exclusions and limitations of this policy.

For purposes of this endorsement, the term "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization**, **Subsidiary** or **Plan** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to statutory or common law, contract or the charter, bylaws, operating agreement or similar documents of an **Organization, Subsidiary** or **Plan**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND CONDUCT EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Subsection 4., Exclusions, of this coverage section is amended by deleting Exclusion (h) and replacing it with the following:

   (h)    based upon, arising from or in consequence of:

      (i)   any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final judgment or final adjudication in any proceeding establishes such a deliberately fraudulent act or omission or willful violation; or

      (ii)  such **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final judgment or final adjudication in any proceeding establishes the gaining of such a profit, remuneration or advantage.

(2)    Subsection 6. Severability of Exclusions is deleted and replaced with the following:

   6. (a)   No fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to another **Insured Person** or to the **Plan** for the purpose of applying Exclusion 4(h), as amended by this endorsement.

   (b)   Only deliberately fraudulent acts or omissions, knowing and purposeful violations of any statute or regulation or gaining of any unlawful profit, remuneration or advantage by any chief executive officer, chief financial officer, in-house general counsel, president, chairperson, or head of benefits of the Human Resources Department, or any equivalent position thereof, of an **Organization** shall be imputed to such **Organization** for the purpose of applying Exclusion 4(h), as amended by this endorsement.

(3)    With respect to Exclusion 4(h), as amended above, the term "proceeding," as used therein, shall not include any declaratory proceeding brought by or against the Company.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

FIDUCIARY LIABILITY COVERAGE ENHANCEMENTS ENDORSEMENT
(EP PORTFOLIO)

In consideration of the premium charged, it is agreed that solely with respect to this Fiduciary Liability Coverage Section, the following shall apply:

(1)   **AMEND DECLARATIONS**

Item 3. Limits of Liability, of the Declarations for this coverage section, is amended to add the following:

(C)   Sublimits of Liability:

HIPAA Penalties:          $1,500,000

PPACA Penalties:          $250,000

Section 4975 Tax Penalty:  $250,000

Section 502(c) Penalties:  $250,000

PPA Penalties:            $250,000

(D)   Voluntary Settlement Program Coverage Insuring Clause 2:   $250,000

NOTE: The Sublimits of Liability shown in (C) and (D) above, are part of, and not in addition to, the Limits of Liability shown in Item 3(B) of the Declarations for this coverage section.

(2)   **AMEND INSURING CLAUSES**

Insuring Clause 1. Fiduciary Liability Coverage and Insuring Clause 2. Voluntary Settlement Program Coverage, of this coverage section are deleted and replaced with the following:

*Fiduciary Liability Coverage Insuring Clause 1*

1.     The Company shall pay, on behalf of the **Insureds**, **Loss** on account of any **Fiduciary Claim** first made against the **Insureds**:

(i)   during the **Policy Period**, or, if exercised, during the Extended Reporting Period for a **Wrongful Act** committed, attempted or allegedly committed or attempted before or during the **Policy Period** by such **Insureds**, or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 11 of this coverage section; or

(ii)   that is a **Pre-Claim Investigation** or **Benefit Claim Denial**, if, at the **Insured's** option, it is reported to the Company in writing during the **Policy Period**.

*Voluntary Settlement Program Coverage Insuring Clause 2*

2.   The Company shall pay, on behalf of the **Insureds**, **Settlement Fees** and **Defense Costs** with respect to a **Settlement Program Notice** first given to the Company during the **Policy Period**, or, if exercised, during the Extended Reporting Period, provided (i) the **Settlement Fees** and **Defense Costs** are incurred after such **Settlement Program Notice** is first given to the Company, and (ii) the Company's maximum liability for all **Settlement Fees** and **Defense Costs** with respect to all **Settlement Program Notices** first given to the Company during the **Policy Period** (including the Extended Reporting Period, if applicable) shall be the amount set forth in Item 3.(D) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement. Such amount shall be part of, and not in addition to, the Limit of Liability otherwise applicable to this coverage section.

(3)  **INTERVIEW COVERAGE**

Interview Coverage

(A)   The Company shall pay, on behalf of an **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** on account of an **Interview** first made during the **Policy Period**, except to the extent that such **Defense Costs** have been paid or indemnified.

(B)   The Company shall pay, on behalf of an **Organization** or a **Plan**, **Defense Costs** incurred solely by an **Insured Person** on account of an **Interview** first made during the **Policy Period**, to the extent the **Organization** or a **Plan** pays or indemnifies such **Defense Costs**; provided that the coverage afforded pursuant to this paragraph (3)(B) shall be subject to the Retention set forth in Item 4(A) of the Declarations for this coverage section.

(4)  **AMEND DEFINITIONS**

Subsection 3. Definitions, of this coverage section, is amended as follows:

(A)   <u>Amend Definition of Administration</u>

The definition of **Administration** is deleted and replaced with the following:

**Administration** means:

(1)   advising, counseling, or failing to provide proper or timely notice to **Employees**, **Executives**, participants or beneficiaries with respect to any **Plan**;

(2)   providing interpretations with respect to any **Plan**; or

(3)   handling of records or effecting enrollment, termination or cancellation of **Employees**, **Executives**, participants or beneficiaries under any **Plan**.

(B)   <u>Amend Definition of Defense Costs</u>

The definition of **Defense Costs** is deleted and replaced with the following:

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees, experts' fees, and the cost of **E-Discovery Specialist Services**) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons** or remuneration, salaries, wages, fees, expenses, overhead, or benefit expenses or other fees or charges of the Company) incurred with the Company's prior written consent: (1) in investigating, defending, opposing or appealing any **Fiduciary Claim** or any **Voluntary Program Notice**, and the premium for appeal, attachment or similar bonds; or (2) as a result of an **Interview**.

(C)  Amend Definition of Employee

The definition of **Employee** is deleted and replaced with the following:

**Employee** means any natural person whose labor or service was, is or will be engaged by and directed by the **Organization** or any **Plan**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

(D)  Amend Definition of ERISA

The definition of **ERISA** is deleted and replaced with the following:

**ERISA** means:

(a)  the Employee Retirement Income Security Act of 1974, as amended and any rules or regulations promulgated thereunder (including, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"));

(b)  the English Pension Scheme Act 1993, and the English Pensions Act 1995, as such Acts are amended and any rules or regulations promulgated under such Acts, and

any similar statutory or common law anywhere in the world, and any rules or regulations promulgated thereunder; and

(c)  the privacy provisions under HIPAA.

(E)  Amend Definition of Fiduciary Claim

The definition of **Fiduciary Claim** is deleted and replaced with the following:

**Fiduciary Claim** means any:

(a)  written demand for:

(i)  monetary or non-monetary (including injunctive) relief; or

(ii)  arbitration or mediation,

against an **Insured** for a **Wrongful Act**, commenced by the first receipt of such demand by an **Insured**;

(b)  proceeding, including any appeal therefrom, against an **Insured** for a **Wrongful Act**, commenced by:

(i)  the service of a civil complaint or similar pleading;

(ii)  the filing of a notice of charges or the entry of a formal order of investigation in connection with a formal civil administrative or formal civil regulatory proceeding;

(iii)    solely with respect to a criminal proceeding: (1) an arrest; (2) the return of an indictment, information or similar document; or (3) the receipt of an official request for **Extradition**;

(c)    written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto, against any **Insured** for a **Wrongful Act**;

(d)    investigation of an **Insured Person**, solely in his or her fiduciary capacity with respect to any **Sponsored Plan**, for a **Wrongful Act**, commenced by the **Insured Person's** receipt of a written document from an **Enforcement Unit** identifying such **Insured Person** as the target of an investigation, including a Wells Notice, target letter or search warrant;

(e)    written request upon an **Insured Person** for witness testimony or document production, commenced by the service of a subpoena or other similar document compelling such testimony or production of documents in connection with any matter described in Subsections (a) through (d) above; provided that in such event the Company shall pay, on behalf of such **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** in responding to such request; or

(f)    written notice of commencement of a **Pre-Claim Investigation** or **Benefit Claim Denial**, if, at the **Insured's** option, it is reported to the Company in writing during the **Policy Period**.

Notwithstanding the foregoing, **Fiduciary Claim** shall not include an **Interview**.

(F)    <u>Amend Definition of Insured</u>

The definition of **Insured** is amended to include any **Committee**.

(G)    <u>Amend Definition of Insured Person</u>

The definition of **Insured Person** is amended to add the following:

**Insured Person** shall also include any past **Employees** or **Executives** retained as a fiduciary or plan consultant to the **Sponsored Plan**; provided that for the purposes of determining an **Organization's** indemnification obligation to any such consultants, each consultant shall be deemed a director or officer of the **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each consultant to the **Sponsored Plan** to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

**Insured Person** shall not include any individual in his or her capacity as an employee of any third party, including a service provider.

(H)    <u>Amend Definition of Loss</u>

The definition of **Loss** is deleted and replaced with the following:

**Loss** means:

(1)    solely for purposes of Insuring Clause 1., Fiduciary Liability Coverage, the amount which any **Insured** becomes legally obligated to pay as a result of any **Fiduciary Claim**, including:

(a)    compensatory damages,

(b)    claimant's attorney's fees awarded by a court pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974, as amended, against an **Insured**;

(c)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or the **Fiduciary Claim** giving rise to such damages;

(d)    judgments;

(e)    settlements;

(f)    reasonable fees and expenses of an independent fiduciary retained to review a proposed settlement of a covered **Fiduciary Claim** (including reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate that review of such proposed settlement of a covered **Fiduciary Claim**); and

(g)    **Defense Costs**; and

(2)    solely for purposes of Insuring Clause 2., Voluntary Settlement Program Coverage, **Settlement Fees** and **Defense Costs**; and

(3)    for purposes of the Interview Coverage, **Defense Costs**,

provided that, **Loss** does not include any portion of such amount that constitutes any:

(a)    cost incurred by the **Organization** or the **Plan** to comply with any order for non-monetary relief, including injunctive relief, or to comply with an agreement to provide such relief;

(b)    amount uninsurable under the law pursuant to which this coverage section is construed;

(c)    tax;

(d)    fine or penalty, except:

(i)    as provided in subparagraph (1)(c) above with respect to punitive, exemplary or multiplied damages;

(ii)    solely with respect to Insuring Clause 2., Voluntary Settlement Program Coverage, **Settlement Fees**;

(iii)    **Civil Penalties**;

(e)    amounts incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that was not then a **Claim**, even if (a) such amount also benefits the defense of a covered **Claim**, or (b) such action, proceeding, investigation or demand subsequently gives rise to a **Claim**;

(f)    (1) benefits due, or to become due, or that portion of any settlement or award in an amount equal to such benefits, under any **Plan**, or (2) benefits which would be due, or that portion of any settlement or award in an amount equal to such benefits, under any **Plan** if such **Plan** complied with all applicable law, including loss resulting from the payment of plaintiff attorneys' fees based upon a percentage of such benefits or payable from a common fund established to pay such benefits, except to the extent that:

(i)    an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

(ii)    a **Claim** made against an **Insured**:

(a)  alleges a loss to the **Plan** and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as "benefits" or held by a court as "benefits"; or

(b)  seeks amounts that would have been due, but for the failure to enroll in the **Plan**, as set forth in subparagraph (3) of the definition of **Administration**, unless and to the extent the **Plan** is self-funded; or

(g)  costs incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**; or

(h)  amount constituting any contribution or that portion of any settlement or award in an amount equal to such amount constituting any contribution that is owed to or to fund any **Plan**, except to the extent that an **Insured** is a natural person and the contribution is payable by such **Insured** as a personal obligation, and recovery for the contribution is based upon a covered **Wrongful Act**.

(I)  <u>Amend Definition of Sponsored Plan</u>

Paragraph (c) of the definition of **Sponsored Plan** is deleted and replaced with the following:

(c)  any other plan or program otherwise described in paragraphs (a) or (b) above while such plan or program is being actively developed, formed or proposed by the **Organization** prior to the formal creation of such plan or program; and

(J)  <u>Amend Definition of Wrongful Act</u>

The definition of **Wrongful Act** is deleted and replaced with the following:

**Wrongful Act** means any actual or alleged:

(a)  breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** committed, attempted or allegedly committed or attempted by an **Insured** while acting in the **Insured's** capacity as a fiduciary;

(b)  negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by an **Insured**;

(c)  matter, other than as set forth in (a) or (b) above, claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**; or

(d)  act, error or omission committed, attempted or allegedly committed or attempted by an **Insured**, solely in such **Insured's** settlor capacity with respect to establishing, amending, terminating or funding a **Sponsored Plan**.

(K)  <u>Add Definitions</u>

The following definitions are added:

**Benefit Claim Denial** means an appeal of an adverse benefits determination by an **Insured** pursuant to the U.S. Department of Labor's claim procedure regulation 29 C.F.R. Section 2560.503-1(h) or any similar claim procedures pursuant to applicable law.

**Civil Penalties** means:

(1)  the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

(2)   civil penalties imposed by:

(i)   the Pension Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or any successor thereto, by the United Kingdom Occupational Pensions Regulatory Authority, or the Pensions Regulator or any successor thereto, pursuant to the Pension Scheme Act 1993, the Pensions Act 1995, the Pensions Act 2004, or rules or regulations thereunder; or

(ii)   Ireland's Pensions Board or Pensions Ombudsman,

provided any coverage for such civil penalties applies only if the funds or assets of the pension scheme are not used to fund, pay or reimburse the premium for this coverage section;

(3)   civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA Penalties"); provided the Company's maximum limit of liability for all such HIPAA Penalties on account of all **Claims** shall be the HIPAA Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section;

(4)   civil money penalties imposed upon an **Insured** for inadvertent violation of the Patient Protection and Affordable Care Act, as amended, and any rules or regulations promulgated thereunder ("PPACA Penalties"); provided the Company's maximum limit of liability for all such PPACA Penalties on account of all **Claims** shall be the PPACA Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section;

(5)   with respect to covered judgments, the fifteen percent (15%) or less tax penalty imposed upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986 ("Section 4975 Tax Penalty"); provided the Company's maximum limit of liability for such Section 4975 Tax Penalty on account of all **Claims** shall be the Section 4975 Tax Penalty amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section;

(6)   civil money penalties imposed upon an **Insured** for violation of the Pension Protection Act of 2006 ("PPA Penalties"); provided the Company's maximum aggregate liability for all such civil money penalties on account of all **Claims** shall be the PPA Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section; or

(7)   civil penalties, other than penalties imposed upon an **Insured** for violation of the Pension Protection Act of 2006, imposed upon an **Insured** as a fiduciary under Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended ("Section 502(c) Penalties"); provided the Company's maximum limit of liability for all such Section 502(c) Penalties on account of all **Claims** shall be the Section 502(c) Penalties amount set forth in Item 3(C) of the Declarations for this coverage section, as amended in paragraph (1) of this endorsement, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.

**Committee** means any committee established by an **Organization** with respect to a **Sponsored Plan**, which consists only of natural person members who are **Executives** or **Employees**.

**E-Discovery** means the review, development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

**E-Discovery Specialist Services** means solely the following services performed by an **E-Specialist Firm**:

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;

(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the Company in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Specialist Firm** that the **Insured**, Company, and **E-Specialist Firm** agree are reasonable and necessary given the circumstances of the **Claim**.

**E-Specialist Firm** means the e-discovery consultant firms approved by the Company.

**Enforcement Unit** means any federal, state, local or foreign law enforcement or governmental authority (including, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body; however, **Enforcement Unit** shall not include the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

**Interview** means a request for an interview or meeting with, or a sworn statement from, an **Insured Person** by:

(1) an **Enforcement Unit** in connection with:

   (a) such **Insured Person** acting solely in his or her capacity as a fiduciary of a **Sponsored Plan**; or
   (b) a **Sponsored Plan's** business activities; or

(2) an **Organization** in connection with an inquiry or investigation of the **Sponsored Plan** by an **Enforcement Unit**,

provided that **Interview** does not include: (i) any request for document production or discovery; (ii) any request by an **Enforcement Unit** that is part of any routine or regularly scheduled **Enforcement Unit** oversight, compliance, audit, inspection or examination; or (iii) any request that is part of an employment-related investigation or claim.

**Pre-Claim Investigation** means a fact-finding investigation which does not contain any allegation of a **Wrongful Act** in writing, commenced by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto.

(5)    **AMEND EXCLUSIONS**

Subsections 4. and 5. Exclusions, of this coverage section are amended as follows:

(A)    Amend Prior Notice Exclusion and Pending or Prior Exclusion

Exclusions 4(a) and 4(b) are deleted and replaced with the following.

(a)    based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage section of which this coverage section is a direct or indirect renewal or replacement;

(b)    based upon, arising from or in consequence of any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(B)    <u>Delete Exclusions</u>

Exclusions 4(c), 5(a), 5(b) (including Endorsement 14-02-8459 "Amend Benefits Due Endorsement" 14-02-8459)and 5(c) are deleted.

(C)    <u>Add Exclusions</u>

With respect to the Interview Coverage, as set forth in paragraph (3) of this endorsement, the following exclusions shall apply:

The Company shall not be liable for **Defense Costs** on account of any **Interview**:

(1)    based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2 of the Declarations of the General Terms and Conditions, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage section of which this coverage section is a direct or indirect renewal or replacement; or

(2)    based upon, arising from or in consequence of any written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(D)    <u>Other</u>

Endorsement 14-02-8906 "HIPAA Civil Money Penalties Endorsement" is hereby deleted.

(6)    **AMEND LIMIT OF LIABILITY RETENTION**

Subsection 10. Limit of Liability and Retention, of this coverage section, is amended as follows:

(A)    Paragraph (a) is deleted and replaced with the following:

(a)    The Company's maximum liability for all **Loss** on account of each **Claim** covered under Insuring Clause 1 shall be the Limit of Liability set forth in Item 3(A) of the Declarations for this coverage section. The Company's maximum aggregate liability for all **Loss** on account of (i) all **Claims** first made during the **Policy Period**, whether covered under one or both Insuring Clauses, and (ii) all **Interviews**, shall be the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section. The Company's maximum liability for all **Defense Costs** and **Settlement Fees** with respect to each **Settlement Program Notice** for which coverage is provided under Insuring Clause 2, and the Company's maximum aggregate liability for all **Defense Costs** and **Settlement Fees** with respect to all such **Settlement Program Notices** first given to the Company during the **Policy Period**, shall be the amount set forth in Item 3.(D) of the Declarations for this coverage section, as

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

amended in paragraph (1) of this endorsement. Such amount shall be part of, and not in addition to, the Limit of Liability set forth in Item 3(B) of the Declarations for this coverage section.

(B)    Paragraph (f) is deleted and replaced with the following:

(f)    The limit of liability available during the Extended Reporting Period (if exercised) shall be part of, and not in addition to, the Company's maximum aggregate limit of liability for all **Loss** set forth in Item 3(B) of the Declarations for this coverage section.

(C)    The following paragraphs are added:

No Retention shall apply to:

(i)    any **Loss** constituting **Civil Penalties** imposed by law pursuant to subparagraphs (3), (4), (5), (6) and (7) of the definition of **Civil Penalties**, as defined in paragraph (4)(K) of this endorsement; or

(ii)    the first $50,000 in **Defense Costs** incurred for **E-Discovery Specialist Services** on account of a **Claim**.

Any payment by an **Organization** of a Retention on account of an **Interview** shall reduce any Retention due from the **Organization** on account of a **Fiduciary Claim** subsequently afforded coverage under Insuring Clause 1., that is based upon, arising from or in consequence of any fact or circumstances that was the subject of such **Interview**.

(7)    **AMEND REPORTING AND NOTICE**

Subsection 11, Reporting and Notice, of this coverage section is amended as follows:

(A)    Paragraph (a) is deleted and replaced with the following:

(a)    The **Insureds** shall, as a condition precedent to exercising any right to coverage under this coverage section, give to the Company written notice of any **Fiduciary Claim**, other than a **Pre-Claim Investigation** or **Benefit Claim Denial**, no later than:

(i)    if this coverage section expires and is renewed with the Company, one hundred and eighty (180) days after such expiration; provided that, if the **Parent Organization** can prove to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period;

(ii)    if this coverage section expires (or is otherwise terminated) without being renewed with the Company and if no Extended Reporting Period is purchased, sixty (60) days after the effective date of such expiration or termination; or

(iii)    the expiration date of the Extended Reporting Period, if purchased;

provided that, if the Company sends written notice to the **Parent Organization** stating that this coverage section is being terminated for nonpayment of premium, the **Insureds** shall give to the Company written notice of such **Claim** prior to the effective date of the termination.

(B)    Paragraph (b) is deleted and replaced with the following:

(b)    If during the **Policy Period** an **Insured**:

(i)    becomes aware of circumstances which could give rise to a **Fiduciary Claim** and gives written notice of such circumstances to the Company;

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Turner Falk
obermayer.com
Aug 05, 2020 14:29

(ii)   receives a written request to toll or waive a statute of limitations applicable to **Wrongful Acts** committed, attempted, or allegedly committed or attempted before or during the **Policy Period** and gives written notice of such request and of such alleged **Wrongful Acts** to the Company;

(iii)   gives written notice to the Company of a **Settlement Program Notice**; or

(iv)   gives written notice to the Company of an **Interview**,

then any **Claim** subsequently arising from the circumstances referred to in (i) above, from the **Wrongful Acts** referred to in (ii) above, from the **Settlement Program Notice** referred to in (iii) above, or from an **Interview** referred to in (iv) above, shall be deemed to have been first made during the **Policy Period** in which the written notice described in (i), (ii), (iii) or (iv) above was first given by an **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel, or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**. With respect to any such subsequent **Claim**, no coverage under this coverage section shall apply to loss incurred prior to the date such subsequent **Claim** is actually made.

(8)   **AMEND DEFENSE AND SETTLEMENT**

Subsection 12, Defense and Settlement, of this coverage section is amended as follows:

(A)   Paragraph (b) is deleted and replaced with the following:

(b)   The Company may make any investigation it deems necessary and may, with the consent of the **Insured,** make any settlement of any **Claim** it deems expedient.

(B)   Paragraph (c) is amended to include the following:

However, the Company may, in its sole discretion, waive the foregoing requirement with respect to **Defense Costs** incurred within ninety (90) days prior to the reporting of a **Claim** pursuant to Subsection 11, Reporting and Notice, of this coverage section.

(C)   Paragraph (d) is amended to include the following:

The failure of any **Insured Person** to give the Company the information, assistance or cooperation as it may reasonably require shall not impair the rights of any other **Insured Person** under this coverage section.

(D)   The following paragraphs are added:

Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this coverage section. However, the Company will not seek repayment from an **Insured Person** of advanced **Defense Costs** that are uninsured pursuant to Exclusion 4(h) of this coverage section unless the applicable determination standard set forth in such Exclusion (i.e., in-fact, final adjudication, alternative dispute resolution or other) or any applicable endorsement thereto has been met with respect to such **Insured Person.**

If an **Organization** refuses in writing, or fails within sixty (60) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Loss** on account of a **Claim**, then, upon the **Insured Person** reporting the **Claim** pursuant to Subsection 11, Reporting and Notice, of this coverage section, the Company shall advance **Defense Costs** until such time that the **Organization** accepts the **Insured Person's** request for indemnification or the applicable Retention has been satisfied.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 3 of the Declarations for this coverage section. If the Company recovers any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the applicable Limit of Liability set forth in Item 3 of the Declarations for this coverage section.

Notwithstanding paragraph (c) above, with respect to any **Claim** reported pursuant to Subsection 11, Reporting and Notice, of this coverage section, the **Insureds** may settle a **Claim** (inclusive of **Defense Costs**) without the Company's prior consent if the amount of such settlement does not exceed the amount of the applicable Retention. However, the Company shall not be liable for any settlement or **Defense Costs** in excess of the amount of the applicable Retention to which it has not consented to in writing. The **Insureds** shall submit to the Company all requested information with respect to any **Claim** settled pursuant to this paragraph upon either the underwriting of a renewal of this coverage section or upon expiration of this coverage section, whichever first occurs.

(9)  **AMEND OTHER INSURANCE**

Subsection 14. Other Insurance, of this coverage section is amended as follows:

(A)  The reference to "valid insurance" in the first sentence of this Subsection 14 is replaced with "valid and collectible insurance".

(B)  The following sentence is added at the end of this Subsection 14 as a separate paragraph:

In addition to, and not in limitation of, the above paragraph, if any **Loss** under this coverage section is insured under any other valid and collectible pollution liability or environmental liability, including any general liability, insurance policy(ies) subject to the same terms, conditions and provisions as the insurance provided by this coverage section, then this coverage section shall cover its share of such **Loss**, subject to its limitations, conditions, provisions and other terms, in an amount equal to the proportions that the then-available limit of liability under this coverage section bears to the aggregate of all limits of liability of all insurance covering such **Loss**, whether such other policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy(ies) is written only as specific excess insurance over the Limits of Liability provided in this coverage section.

(10)  **INDEMNIFICATION AND SUBROGATION**

Solely with respect to this coverage section, Subsection 7. Subrogation, of the General Terms and Conditions Section of this policy is deemed deleted and replaced with the following:

Indemnification And Subrogation

This policy has been issued to the **Parent Organization** with the understanding and agreement that each **Organization** agrees to fulfill its indemnification obligations to the fullest extent permitted by: (i) any statutory or common law, or (ii) any contract or agreement providing an indemnification obligation exceeding any such statutory or common law, to any **Insured Person**. If the Company pays as **Loss** any indemnification owed to any **Insured Person** by any **Organization**, the Company does not waive or compromise any of its rights to recover such **Loss** from such **Organization**.

In the event of any payment of **Loss** under this policy, the Company shall be subrogated to the extent of such payment of **Loss** to all of the **Insureds'** rights of recovery, including any such right to indemnification from any **Organization**, other insurance carrier or other source. As a condition precedent to the Company's payment of any **Loss** under this policy, the **Insureds'** agree to execute all papers reasonably required and take all reasonable actions to secure and preserve the Company's rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**, including any action against any **Organization** for indemnification.

(11)  **CANCELLATION/EXTENDED REPORTING TIME PERIOD LIBERALIZATION**

In the event that any time period relating to notice of cancellation or extended reporting period election provided under this coverage section is less than any such time period required by applicable state law, the Company shall apply the applicable state law.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

## ILLINOIS AMENDATORY ENDORSEMENT
## TO THE FIDUCIARY LIABILITY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.     The definition of "Defense Costs" set forth in Subsection 3. Definitions of the Fiduciary Liability Coverage Section is amended to add the following at the end of such definition:

"Defense Costs do not include remuneration, salaries, wages, fees, expenses, overhead, or benefit expenses or other fees or charges of the Company".

2.     The definition of "Loss" set forth in Subsection 3. Definitions of the Fiduciary Liability Coverage Section is amended so that the parenthetical phrase in the first paragraph of such definition reads as follows:

"(including punitive or exemplary damages, or the multiple portion of any multiplied damage award, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to the damages; provided further, however, that under Illinois law punitive damages are insurable only if such damages are based on vicarious liability for another's acts or omissions)".

3.     The definition of "Loss" in Subsection 3. Definitions of the Fiduciary Liability Coverage Section is further amended by deleting the reference to pre-judgment or post-judgment interest.

4.     Subsection 9. Extended Reporting Period of the Fiduciary Liability Coverage Section is amended by deleting the first sentence thereof and replacing it with the following:

"If the Company or the Parent Organization terminate or do not renew this coverage section, the Parent Organization and the Insureds shall have the right, upon payment of the additional premium set forth in Item 6(B) of the Declarations for this coverage section, to an extension of the coverage granted by this coverage section for Claims that are (i) first made during the period set forth in Item 6(A) of the Declarations for this coverage section (the "Extended Reporting Period") following the effective date of termination or non-renewal, and (ii) reported to the Company in writing within the time provided in Subsection 11(a) of this coverage section, but only to the extent such Claims are for Wrongful Acts committed, attempted, or allegedly committed or attempted before the earlier of the effective date of termination or non-renewal or the date of the first merger, consolidation or acquisition event described in Subsection 16 below.  Such Extended Reporting Period shall be for a period of

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

one (1) year or such other time period as agreed upon by the Company and the Parent Organization and the Insureds."

5.   Subsection 9. Extended Reporting Period of the Fiduciary Liability Coverage Section is further amended by adding the following at the end of such Subsection:

"An Extended Reporting Period will not take effect until the premium for the Extended Reporting Period coverage is paid promptly when due.  For the purposes of this Subsection 9, the policy shall not be deemed issued until the initial premium for the policy is paid.  In the event that such premium is not paid, the Parent Organization and the Insured shall have no right to purchase such extension of coverage."

6.   Subsection 14. Other Insurance of the Fiduciary Liability Coverage Section is amended to read as follows:

"If any Loss under this coverage section is insured under any other valid insurance policy (ies) subject to the same terms, conditions and provisions as the insurance provided by this coverage section, prior or current, then this coverage section shall cover its share of such Loss, subject to its limitations, conditions, provisions and other terms, in an amount equal to the proportion that the then-available Limit(s) of Liability provided in this coverage section bears to the aggregate of all limits of liability of all insurance covering such Loss, whether such other policy(ies) is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy(ies) is written only as specific excess insurance over the Limit(s) of Liability provided in this coverage section.  If any Loss under this coverage section is insured under any valid insurance policy(ies) other than as described above, then this coverage section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such Loss is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit(s) of Liability provided in this coverage section."

The policy is deemed to be amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable insurance laws of the state of Illinois.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company: Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

AMEND SUBSECTION 20 ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 20. Representations and Severability of this coverage section is amended to read in its entirety as follows:

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this coverage section shall be void with respect to (i) any **Insured Person** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured Person** knew of such untruthful disclosure in the **Application**), (ii) any **Organization** or **Plan** to which knowledge of such facts is imputed, and (iii) any **Organization** to the extent it indemnifies an **Insured Person** who had knowledge of such facts, whether or not knowledge of such facts is also imputed to that **Organization**. For purposes of the preceding sentence:

(a)     the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of any **Organization** shall be imputed to such **Organization** and its **Subsidiaries** and their respective **Plans**;

(b)     the knowledge of the person(s) who signed the **Application** for this coverage section shall be imputed to all **Organizations**, **Subsidiaries**, and **Plans**; and

(c)     except as provided in (a) above, the knowledge of an **Insured Person** shall not be imputed to any other **Insured**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Fiduciary Liability Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

_____

AMEND CHANGES IN EXPOSURE ACQUISITION/CREATION OF ANOTHER ORGANIZATION ENDORSEMENT

In consideration of the premium charged, it is agreed that the second full paragraph of Subsection 15 Changes in Exposure, Acquisition/Creation of Another Organization, of this coverage section is amended to read in its entirety as follows:

If the total assets of any such acquired organization or new **Subsidiary** exceed twenty percent (20%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such other information as the Company may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired or created organization and its **Insureds** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or creation.  Coverage for any acquired or created organization described in this paragraph, and for the **Insureds** of such organization, shall be subject to such additional or different terms, conditions and limitations of coverage as the Company in its sole discretion may require.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-9392 (5/2004)                      Page 1

**CHUBB**®

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ
08889

*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana, herein called the Company

**READ THE ENTIRE POLICY CAREFULLY.**

Item 1.  **Parent Organization**:
  AKORN INC
  1925 W FIELD CT SUITE 300
  LAKE FOREST, IL 60045

Item 2.  Insuring Clauses:                                                    Limits of Liability:

| | | |
|---|---|---|
| (A) | Insuring Clause  1 - Employee Theft Coverage: | $5,000,000.00 |
| (B) | Insuring Clause  2 - Premises Coverage: | $5,000,000.00 |
| (C) | Insuring Clause  3 - In Transit Coverage: | $5,000,000.00 |
| (D) | Insuring Clause  4 - Forgery Coverage: | $5,000,000.00 |
| (E) | Insuring Clause  5 - Computer Fraud Coverage: | $5,000,000.00 |
| (F) | Insuring Clause  6 - Funds Transfer Fraud Coverage: | $5,000,000.00 |
| (G) | Insuring Clause 7 - Money Orders And Counterfeit Fraud Coverage: | $5,000,000.00 |
| (H) | Insuring Clause  8 - Credit Card Fraud Coverage: | $5,000,000.00 |
| (I) | Insuring Clause  9 - Client Coverage: | $5,000,000.00 |
| (J) | Insuring Clause 10 - Expense Coverage: | $50,000.00 |

Item 3.  Retention:                                                          $500,000.00

Item 4.  **Organization**

  Akorn, Inc. and its Subsidiaries

**CHUBB**®

**Executive Protection Portfolio**℠
*Crime Coverage Section*

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

---

### *Insuring Clauses*

*Employee Theft Coverage Insuring Clause 1*

1. The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

---

*Premises Coverage Insuring Clause 2*

2. The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

   (a) the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

   (b) the actual destruction or disappearance of **Money** or **Securities**,

   within or from the **Premises** or **Banking Premises**.

   Coverage under this Insuring Clause shall also include:

   (i) direct loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**;

   (ii) direct loss of or damage to **Property** contained within any locked vault or safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

   (iii) damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

   (iv) damage to the **Premises** which results from **Robbery** or **Safe Burglary**,

   committed by a **Third Party**.

---

*In Transit Coverage Insuring Clause 3*

3. The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

   (a) the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

   (b) the actual destruction or disappearance of **Money** or **Securities**,

14-02-7307 (Ed. 11/2002)         Page 2 of 17

**CHUBB**®

**Executive Protection Portfolio**<sup>SM</sup>

*Crime Coverage Section*

while **In Transit** or while temporarily within the home of an **Employee or an Organization**.

Coverage under this Insuring Clause shall also include:

(i) direct loss of or damage to **Property** which results from **Robbery** while **In Transit**; and

(ii) direct loss which results from the unlawful taking of **Property** temporarily within the home of an **Employee** or an **Organization**,

committed by a **Third Party**.

*Forgery Coverage Insuring Clause 4*

4. The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**, including:

(a) any check or draft made or drawn in the name of such **Organization** payable to a fictitious payee and endorsed in the name of such fictitious payee;

(b) any check or draft procured in a face to face transaction with such **Organization** or with one acting as the agent of such **Organization** by a **Third Party** impersonating another and made or drawn payable to the one impersonated and endorsed by a **Third Party** other than such one impersonated; and

(c) any payroll check, payroll draft or payroll order made or drawn by such **Organization** payable to bearer as well as to a named payee and endorsed by a **Third Party** other than such named payee without the authority of such named payee.

*Computer Fraud Coverage Insuring Clause 5*

5. The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by an **Organization** resulting from **Computer Fraud** committed by a **Third Party**.

*Funds Transfer Fraud Coverage Insuring Clause 6*

6. The Company shall pay the **Parent Organization** for direct loss of **Money** or **Securities** sustained by an **Organization** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

**CHUBB®**

**Executive Protection Portfolio**<sup>SM</sup>

*Crime Coverage Section*

*Money Orders And Counterfeit Currency Fraud Coverage Insuring Clause 7*

7.  The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Money Orders And Counterfeit Currency Fraud** committed by a **Third Party.**

*Credit Card Fraud Coverage Insuring Clause 8*

8.  The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Credit Card Fraud** committed by a **Third Party**.

*Client Coverage Insuring Clause 9*

9.  The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

*Expense Coverage Insuring Clause 10*

10.  The Company shall pay the **Parent Organization** for:

(a)  **Investigative Expenses** resulting from any loss covered under Insuring Clauses 1 through 9 incurred by an **Organization**, but only if such covered loss under Insuring Clauses 1 through 9 is in excess of the Retention applicable to such covered loss;

(b)  **Computer Violation Expenses** resulting from any loss covered under Insuring Clause 1, 5 or 9 incurred by an **Organization**, but only if such covered loss under Insuring Clause 1, 5 or 9 is in excess of the Retention applicable to such covered loss.

No Retention shall apply to **Investigative Expenses** or **Computer Violation Expenses** covered under Insuring Clause 10.

***Definitions***

11.  When used in this coverage section:

**Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar financial institution.

**Client** means a customer of an **Organization** to whom such **Organization** provides goods or services under written contract or for a fee.

**Computer Fraud** means the unlawful taking or the fraudulently induced transfer of **Money**, **Securities** or **Property** resulting from a **Computer Violation**.

**CHUBB®**

*Executive Protection Portfolio℠*
*Crime Coverage Section*

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are owned and operated or leased and operated by an **Organization**.

**Computer Violation** means the fraudulent:

(a) entry of **Data** into or deletion of **Data** from a **Computer System**;

(b) change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(c) introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed against an **Organization**.

**Computer Violation Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to reproduce or duplicate damaged or destroyed **Data** or computer programs. If such **Data** or computer programs cannot be duplicated from other **Data** or computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore such **Data** or computer programs to substantially the same level or operational capability existing immediately before the covered loss. **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

**Credit Card Fraud** means the **Forgery** or alteration of, on or in any written instrument required in connection with any credit card issued to an **Organization** or, at the request of an **Organization**, to an **Employee**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are processed and stored in a **Computer System**.

**Discovery** or **Discovered** means an **Executive** or **Insurance Representative** has become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage section has occurred or acts have taken place that may subsequently result in a loss of a type covered by this coverage section. This includes loss:

(a) sustained prior to the inception date of any coverage under this coverage section;

(b) which is within the applicable Retention as set forth in Item 3 of the Declarations for this coverage section; or

(c) for which the exact amount or details are unknown.

**Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** acting alone in a **Theft** or **Forgery,** or acting in collusion with any **Employee** in a **Theft** or **Forgery**.

**Employee** means any:

**CHUBB®**

**Executive Protection Portfolio**[SM]
*Crime Coverage Section*

(a)  natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time, seasonal, leased or temporary employee;

(b)  natural person volunteer while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service;

(c)  **Executive** while performing acts within the scope of the usual duties of an **Employee**; or

(d)  natural person fiduciary, trustee, administrator or other plan official, while in the regular service of an **ERISA Plan**, who is required to be bonded by an **Organization** in connection with such **ERISA Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Executive** means any natural person specified below:

(a)  duly elected or appointed director, officer, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

(b)  in-house general counsel of an **Organization** chartered in the United States of America;

(c)  equivalent positions of (a) or (b) above in an **Organization** chartered in any other jurisdiction anywhere in the world; or

(d)  a partner of an **Organization** while engaged in the regular service of such **Organization.**

**Financial Instrument** means a check, draft or similar written promise, order or direction to pay a sum certain in **Money** that is made, drawn by or drawn upon an **Organization** or made or drawn by anyone acting as an **Organization's** agent, or that is purported to have been so made or drawn.

**Forgery** means the signing of the name of another natural person or organization, with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Funds Transfer Fraud** means fraudulent electronic, telegraphic, cable, teletype, facsimile, telephone or written instructions (other than **Forgery**), purportedly issued by an

CHUBB®

**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

**Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent.

**Insurance Representative** means any **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

**Insured** means any **Organization** and, for the purposes of Insuring Clause 1, any **ERISA Plan** or **Non-ERISA Plan**.

**In Transit** means being conveyed outside the **Premises**, from one person or place to another, by an **Organization** within the custody of:

(a)    an **Employee**; or

(b)    a person duly authorized by such **Organization** to have custody of such **Money**, **Securities** or **Property**.

Such conveyance begins immediately upon receipt of **Money**, **Securities** or **Property** by the person(s) described in (a) or (b) above from such **Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

**Investigative Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

**Money** means currency, coin, bank notes and bullion.

**Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(a)    in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(b)    in the regular course of business, of counterfeit United States of America or Canadian paper currency.

**Non-ERISA Plan** means any employee benefit plan not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Organization** means any organization designated in Item 4 of the Declarations for this coverage section.

**Premises** means the interior portion of a building occupied by an **Organization** in conducting its business.

**Property** means tangible property other than **Money** or **Securities**.

**CHUBB**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk

**Robbery** means the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee**, or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money**, **Securites** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such **Employee** or other person.

**Safe Burglary** means the unlawful taking of **Money**, **Securities** or **Property**, by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors, members of the Board of Managers, or management committee members of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Theft** means the unlawful taking of **Money**, **Securities** or **Property** to the deprivation of:

(a)     an **Insured**, solely for the purposes of Insuring Clause 1; or

(b)     a **Client**, solely for the purposes of Insuring Clause 9.

**Third Party** means a natural person other than:

(a)     an **Employee**; or

(b)     a natural person acting in collusion with an **Employee**.

---

*Exclusions*

12.     No coverage will be available under this coverage section for:

(a)     loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion 12(a) shall not apply to otherwise covered loss under Insuring Clause 1 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

(b)     loss of any trade secret, confidential processing method or other confidential information of any kind;

(c)     loss due to **Theft** or **Forgery** committed by a partner of an **Organization**, whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

CHUBB®

**Executive Protection Portfolio℠**
*Crime Coverage Section*

otherwise be covered under Insuring Clause 1 or 9, this Exclusion 12(c) shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage ownership of such **Organization**, on the day immediately preceding the date of **Discovery**, multiplied by such **Organization's** total assets as reflected in such **Organization's** most recent audited financial statements;

(d)    loss or damage due to declared or undeclared war, civil war, insurrection, rebellion, revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

(e)    loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

(f)    loss of income not realized as the result of a covered loss;

(g)    indirect or consequential loss or damage of any kind; provided that this Exclusion 12(g) shall not apply to otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause 10;

(h)    fees, costs or expenses incurred or paid:

(i)    as a result of the reconstitution of **Data** if an **Organization** knowingly used illegal copies of programs;

(ii)    to render the **Data** usable by replacement processing equipment;

(iii)    to design, update or improve software or programs or to perfect their operation or performance; or

(iv)    as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the computer or its facilities;

(i)    fees, costs or expenses incurred or paid in defending or prosecuting any legal proceeding or claim; provided that this Exclusion 12(i) shall not apply to the coverage provided under Subsection 22 Legal Expenses Extension;

(j)    loss or damage due to fire; provided that this Exclusion 12(j) shall not apply to:

(i)    loss of **Money** or **Securities**; or

(ii)    damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

(k)    loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**; provided that this Exclusion 12(k) shall not apply to otherwise covered loss under Insuring Clause 7 or otherwise covered loss of **Property** under Insuring Clause 5;

(l)    loss sustained by one **Insured** to the advantage of any other **Insured**;

**CHUBB**

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

(m) loss of or damage to **Money**, **Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by an **Organization** to have custody of such **Money**, **Securities** or **Property**; provided that this Exclusion 12(m) shall not apply to the extent that coverage under this coverage section is excess of the amount recovered or received by such **Organization** under:

    (i) such **Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

    (ii) any other insurance or indemnity in force which would cover the loss in whole or in part; or

(n) loss or damage due to **Theft**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud**, **Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others; provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clause 1 or 9 resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

13. No coverage will be available under Insuring Clause 1 or 9 for:

    (a) loss caused by any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor or other similar representative; or

    (b) loss caused by an **Employee** which is sustained by an **Insured**:

        (i) after an **Executive** or **Insurance Representative** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act committed by such **Employee** while employed with or in the service of an **Insured**;

        (ii) after an **Executive** or **Insurance Representative** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act, involving **Money**, **Securities** or other property valued at twenty-five thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

        (iii) more than sixty (60) days following the termination of such **Employee**.

14. No coverage will be available under Insuring Clause 2 or 3 for:

    (a) loss or damage due to **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud** or **Credit Card Fraud**; or

    (b) loss of or damage to **Money**, **Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

15. No coverage will be available under Insuring Clause 2, 3, 5, or 6 for loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery)**.

14-02-7307 (Ed. 11/2002)

**CHUBB®**

*Executive Protection Portfolio*<sup>SM</sup>
*Crime Coverage Section*

surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

16.   No coverage will be available under Insuring Clause 4 for loss due to **Forgery** or alteration of any registered or coupon obligation issued or purported to have been issued by an **Insured**, or any coupon whether attached or detached.

17    No coverage will be available under Insuring Clause 5 for loss caused by a **Third Party** which is sustained by an **Organization** sixty (60) days or more after an **Organization** becomes aware of a **Computer Fraud** or other fraudulent, dishonest or criminal act committed by such **Third Party**.

18.   No coverage will be available under Insuring Clause 8 for loss caused by any forgery or alteration of, on or in any written instrument; provided that this Exclusion 18 shall not apply if:

(a)   the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

(b)   an **Organization** is legally liable to the issuer of such credit card for such loss.

19.   No coverage will be available under this coverage section for:

(a)   loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

(b)   loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

(c)   loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause.

*Ownership*

20.   Solely for the purposes of Insuring Clauses 1 through 8, the Company's liability under this coverage section will apply only to **Money**, **Securities** or **Property** owned by the **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any capacity whether or not the **Organization** is liable; provided that:

(a)   the Company's liability will not apply to damage to the **Premises** unless the **Organization** is the owner of such **Premises** or is legally liable for such damage; or

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**CHUBB®**

**Executive Protection Portfolio**<sup>SM</sup>

*Crime Coverage Section*

HIGHLY CONFIDENTIAL
Turner Falk

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

(b)  with respect to Insuring Clause 1, the Company's liability will not apply to **Money**, **Securities** or **Property** of a **Client**.

Solely for the purposes of Insuring Clause 9, the Company's liability under this coverage section will apply only to **Money**, **Securities** or **Property** owned by a **Client**, which is held by the **Organization** in any capacity or for which the **Organization** is legally liable.

*ERISA Plan*

21.  Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for covered loss to the **Parent Organization** shall be held by such **Parent Organization** for the use and benefit of the **ERISA Plan** sustaining such loss.

Solely with respect to loss sustained by an **ERISA Plan**:

(a)  Insuring Clause 1 is amended to read in its entirety as follows:

The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a fraudulent or dishonest act committed by an **Employee** acting alone or in collusion with others.

(b)  The words "sixty (60) days" are deleted from Exclusion 19 of this coverage section, wherever they appear in such Exclusion, and the words "one (1) year" are substituted in place thereof.

No Retention shall apply to loss sustained by an **ERISA Plan** covered under this coverage section.

*Legal Expenses Extension*

22.  In addition to the Limits of Liability set forth in the Declarations for this coverage section, the Company shall pay the **Parent Organization** for:

(a)  As a result of loss covered under Insuring Clause 4, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** or an **Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**;

(b)  As a result of loss covered under Insuring Clause 8, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

*Changes in Exposure*

23.  If before or during the **Policy Period** any **Organization**:

(a)  acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

(b)    acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

then coverage shall be provided for such acquired organization or new **Subsidiary** after the effective date of such acquisition or creation.

If the total revenues of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired organization or new **Subsidiary** shall be null and void from the date of such acquisition or creation. Coverage for such acquired organization or new **Subsidiary** shall be subject to such additional or different limitations, conditions, provisions or other terms as the Company in its sole discretion may require.

### Liability For Prior Losses

24.    In the event of loss sustained prior to the inception date of this coverage section, prior to the effective date of coverage for any additional insureds or prior to the effective date of any coverage added by endorsement, which would otherwise be covered under this coverage section, such prior loss shall be afforded coverage subject to the following:

(a)    an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy, which at the time such prior loss was sustained, afforded some or all of the coverage of an Insuring Clause under this coverage section applicable to such prior loss;

(b)    such coverage continued without interruption from the time such prior loss was sustained until the inception date or effective date(s) as described above;

(c)    such prior loss was first **Discovered** by an **Insured** after the time allowed for discovery under the last such policy; and

(d)    some or all of the coverage of an Insuring Clause under this coverage section would be applicable to such prior loss.

If such prior bond or policy carried by the **Insured** or predecessor in interest of such **Insured** was issued by the Company or its affiliates, such prior bond or policy shall terminate as of the inception of this coverage section and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this coverage section. The **Insured** shall neither be entitled to a separate recovery of the limits of each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The Company's maximum liability for such prior loss shall not exceed the lesser of the limit of liability of the policy in

CHUBB®

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk

force at the time such prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations for this coverage section.

### *Limits of Liability and Retention*

25.   Subject to Subsection 24 Liability for Prior Losses, the Company shall only be liable for loss sustained by an **Insured** during the **Policy Period**.

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations for this coverage section, regardless of the number of **Insureds** sustaining such loss.

The Company's maximum liability shall not exceed the Limit of Liability:

(a)   Applicable to Insuring Clause 1 as set forth in Item 2(A) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(b)   Applicable to Insuring Clause 2 as set forth in Item 2(B) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(c)   Applicable to Insuring Clause 3 as set forth in Item 2(C) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(d)   Applicable to Insuring Clause 4 as set forth in Item 2(D) of the Declarations for this coverage section: for all loss resulting from any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(e)   Applicable to Insuring Clause 5 as set forth in Item 2(E) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(f)   Applicable to Insuring Clause 6 as set forth in Item 2(F) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(g)     Applicable to Insuring Clause 7 as set forth in Item 2(G) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(h)     Applicable to Insuring Clause 8 as set forth in Item 2(H) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(i)     Applicable to Insuring Clause 9 as set forth in Item 2(I) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**; or

(j)     Applicable to Insuring Clause 10 as set forth in Item 2(J) of the Declarations for this coverage section: for all **Investigative Expenses** or **Computer Violation Expenses** resulting from any applicable covered loss.

If a loss is covered under more than one Insuring Clause, the maximum amount payable under this coverage section shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

The Company's liability under this coverage section shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 3 of the Declarations for this coverage section.

---

### Non-Accumulation of Liability

26.     When there is more than one **Insured**, the maximum liability of the Company for loss sustained by any or all **Insureds** shall not exceed the amount for which the Company would be liable if all loss was sustained by any one **Insured**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this coverage section, any prior bond or policy, or any renewal or replacement of this coverage section, the liability of the Company with respect to any loss shall not be cumulative from year to year or from policy period to policy period.

### Proof of Loss and Legal Proceedings

27.     Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or discovery by all **Insureds**.

**CHUBB**

**Executive Protection Portfolio**<sup>SM</sup>
*Crime Coverage Section*

It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Organization** will:

(a)   give written notice to the Company at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery**;

(b)   furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment, and in no event later than six (6) months after such **Discovery**;

(c)   submit to examination under oath at the Company's request;

(d)   produce all pertinent records at such reasonable times and places as the Company shall designate; and

(e)   provide full cooperation with the Company in all matters pertaining to a loss or claim.

The **Parent Organization** may not offer, as a part of any proof of loss, any computation or comparison which involves in any manner a profit and loss computation or comparison. The **Parent Organization** may offer a comparison between an **Organization's** or **Client's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** or **Client** establishes wholly apart from such comparison that it has sustained a covered loss caused by an identified **Employee**.

No **Insured** shall institute legal proceedings against the Company:

(a)   after two (2) years immediately following any **Discovery**; or

(b)   to recover a judgment or settlement against it or its bank resulting from **Forgery**, **Credit Card Fraud** or related legal expenses as set forth in Subsection 22 Legal Expenses Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

---

*Valuation and Foreign Currency*

28.   The Company shall pay:

(a)   the least of:

   (i)   the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**;

   (ii)   the cost of replacing **Securities**; or

   (iii)   the cost to post a Lost Instrument Bond;

(b)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(c)   the least of:

(i)    the actual cash value of **Property**; or

(ii)    the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value,

at the time the **Parent Organization** complies with Subsection 27 Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

(d)    the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**; or

(e)    the United States of America dollar value of any precious metal based on the amount published in *The Wall Street Journal* Cash Prices, Precious Metals, on the day loss involving such precious metal is **Discovered**.

---

*Recoveries*

29.    Recoveries for any loss covered under this coverage section, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(a)    first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(b)    second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(c)    third, to an **Insured** for the Retention applicable to such loss;

(d)    fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.

---

*Other Insurance*

30.    If any **Insured** or any other party in interest in any loss covered by this coverage section has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this coverage section, then this coverage section shall be null and void to the extent of the amount recoverable or received under such bond, indemnity, or insurance; provided that this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, to the extent of the amount of such loss in excess of the amount recoverable or received under such bond, indemnity or insurance.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

TELEPHONE FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     This coverage section is amended to include the following insuring clause:

(11) Telephone Fraud Coverage

The Company shall pay the **Parent Organization** for **Telephone Fraud Financial Loss** sustained by an **Insured** resulting from **Remote Access Fraud.**

(2)     Item 2 of the Declarations for this coverage section is amended to include the following:

Item 2.  Insuring Clauses:                                                Limits of Liability:

(K)     Insuring Clause 11 - Telephone Fraud Coverage:       $1,000,000.00

(3)     Section 11, Definitions, of this coverage section is amended to include the following terms:

(a)     **Calling Card** means a calling card access number or telephone credit card access number issued by a telecommunications company which gives the **Calling Card** customer access to and use of telecommunications services.

(b)     **Remote Access Fraud** means the fraudulent infiltration and manipulation of the **Insured's Telephone System** from a remote location to gain access to outbound long distance telephone service.

(c)     **Telephone Fraud Financial Loss** means toll and line charges the **Insured** is responsible for solely as a result of **Remote Access Fraud**.

(d)     **Telephone System(s)** means PBX, CBX, Merlin, remote access (including DISA), and all related peripheral equipment or similar systems owned or leased by the **Insured** for purposes of voice based telecommunications.

14-02-10647 (12/2004)                    Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

(4)    No coverage will be available under Insuring Clause (11), Telephone Fraud Coverage, for:

    (a)    loss or damage of **Money**, **Securities** or **Property** as a result of an extortion payment surrendered to any person as a result of a threat to do damage to the **Premises** or **Telephone System**; or

    (b)    loss caused by any use of a **Calling Card**.

(5)    Subsection 27, Proof of Loss and Legal Proceedings, of this coverage section is amended to include the following:

With respect to Insuring Clause (11), it is a condition precedent to coverage hereunder that upon **Discovery**, the **Parent Organization** will give written notice to the Company at the earliest practicable moment, and in no event later than sixty (60) days after the billing cut-off date shown in the first telephone service charge bill from the telephone carrier in which **Remote Access Fraud** is documented. However, coverage shall not apply to that portion of loss sustained beginning thirty (30) days from the billing cut-off date shown in the first telephone service charge bill from the telephone carrier in which **Remote Access Fraud** is documented. Upon actual knowledge of **Remote Access Fraud** the **Insured** shall take all reasonable steps to curtail the unauthorized use of the **Telephone System(s)** and otherwise mitigate the loss by notifying the installer(s) of the **Telephone System(s)** and the affected telephone carriers.

Within four (4) months after such **Discovery** the **Parent Organization** shall furnish to the Company affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss.

At the Company's request, the **Insured** shall submit to examination by the Company, subscribe the same under oath if required, and produce for the Company's examination all pertinent records at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to any loss or claim.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

ENDORSEMENT

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

## AMEND DEFINITION OF EXECUTIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of the term **Executive** as defined in Subsection 11 Definitions of this coverage section is amended to read in its entirety as follows:

(a)     duly elected or appointed director, officer, trustee, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019     Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND DEFINITION OF EMPLOYEE TO INCLUDE NON-COMPENSATED OFFICERS ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of "**Employee**" as defined in Subsection 11 Definitions of this coverage section is amended to include  "Non-Compensated Officers" (as defined below).

For purposes of this endorsement, the term "Non-Compensated Officers" means non-compensated dues collectors, shop stewards, shop chairpersons, and other directors or trustees acting as members of any committee duly elected or appointed by resolution of the board of directors or trustees to perform specific, as distinguished from general, directorial acts while in the service of an **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

14-02-12030 (05/2006)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

### AMEND EMPLOYEE THEFT COVERAGE INSURING CLAUSE ENDORSEMENT

In consideration of the premium charged, it is agreed that Insuring Clause (1), Employee Theft Coverage, of this coverage section is deleted and replaced with the following:

1.      Employee Theft Coverage Insuring Clause 1

The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with others.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019          Federal Insurance Company

                                                   Endorsement/Rider No. 5

                                                   To be attached to and
                                                   form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND EXCLUSION 12(m) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (ii) of Exclusion (m), as set forth in Subsection 12, Exclusions, of this coverage section, is deleted and replaced with the following:

(ii)     any other valid and collectible insurance or indemnity in force which would cover the loss in whole or in part; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

PRIVACY AND DATA BREACH EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.      Exclusion 12(b) of this coverage section is deleted.

2.      No coverage will be available under this coverage section for:

(i)      loss involving the disclosure of an **Insured's** or another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information;

(ii)     loss involving the use of another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information; or

(iii)    fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of another entity or person's confidential or personal information, including but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information,

provided, however, that the above exclusions 2(i) and 2(ii) shall not apply to loss that is otherwise covered under any Insuring Clause other than Insuring Clause 10, Expense Coverage.

3.      The definition of **Property** in Section 11, Definitions, of this coverage section shall not include any **Insured's** or another entity or person's confidential or personal information

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

ILLINOIS AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

All references in the policy to the term "spouse" or "domestic partnership" are deemed to include a party to a civil union or domestic partnership.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to the coverage afforded by this endorsement, the following shall apply:

(1)   Item 2. and Item 3. of the Declarations of this coverage section are amended to include the following:

Item 2.

Insuring Clause:                                        Limit of Liability:

Social Engineering Fraud Coverage:        $250,000

Item 3.

Retention:  $500,000

(2)   The following Insuring Clause is added:

Social Engineering Fraud Coverage Insuring Clause

The Company shall pay the **Parent Organization** for loss resulting from an **Organization** having transferred, paid or delivered any **Money** or **Securities** as the direct result of **Social Engineering Fraud** committed by a person purporting to be a **Vendor**, **Client**, or an **Employee** who was authorized by the **Organization** to instruct other **Employees** to transfer **Money** or **Securities**.

(3)   Subsection 11, Definitions, is amended to include the following terms:

**Vendor** means any entity or natural person that has provided goods or services to an **Organization** under a legitimate pre-existing arrangement or written agreement.  However, **Vendor** does not include any financial institution, asset manager, broker-dealer, armored motor vehicle company, or any similar entity.

**Social Engineering Fraud** means the intentional misleading of an **Employee**, through misrepresentation of a material fact which is relied upon by an **Employee**, believing it be genuine.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

(4)    Exclusion 12(k) is deleted.

(5)    Exclusion 12(n) is deleted and replaced with the following:

(n)    loss or damage due to **Theft, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud, Credit Card Fraud, Social Engineering Fraud**, or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clauses (1), Employee Theft Coverage, or (9), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with such authorized representative.

(6)    Exclusion 15 is deleted and replaced with the following:

15.    No coverage will be available under Insuring Clause 2, 3, 5, 6 or Social Engineering Fraud Coverage Insuring Clause for loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property;

(7)    No coverage will be available under Social Engineering Fraud Coverage Insuring Clause for:

(a)    loss or damage due to **Theft** by an **Employee**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders and Counterfeit Currency Fraud** or **Credit Card Fraud;**

(b)    loss of or damage to **Money** or **Securities** while in the mail or in the custody of any carrier for hire, including but not limited to any armored motor vehicle company;

(c)    loss due to any investment in **Securities**, or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine;

(d)    loss due to the failure, malfunction, inadequacy or illegitimacy of any product or service;

(e)    loss due to the failure of any party to perform in whole or in part under any contract;

(f)    loss due to the extension of any loan, credit or similar promise to pay;

(g)    loss due to any gambling, game of chance, lottery or similar game;

(h)    loss of or damage to any **Property;**

(i)    loss due to any party's use of or acceptance of any credit card, debit card or similar instrument, whether or not genuine.

(8)    No coverage will be available under Insuring Clauses 4, 5 and 6 for loss or damage to **Money, Securities** or **Property** as a result of **Social Engineering Fraud**.

(9)    For the purposes of this endorsement, Subsection 25. Limits of Liability and Retention is amended by adding the following to the end of the paragraph that begins "The Company's maximum liability shall not exceed the Limit of Liability:":

Applicable to the Social Engineering Fraud Insuring Clause: for all loss or losses resulting from any act, casualty or event, and series of related acts, casualties or events, or any act or series of acts committed by one natural person or entity, or in which the same group of natural persons or entities acting together are implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement:   September 1, 2019          Company:   Federal Insurance Company

                                               Endorsement No. 9

                                               To be attached to and
                                               form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

### ILLINOIS AMENDATORY ENDORSEMENT
### TO THE CRIME COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.      Subsection 30. Other Insurance of the Crime Coverage Section is amended to read as follows:

        "If any Insured or any other party in interest in any loss covered by this coverage section has any
        bond, indemnity or insurance which would cover such loss in whole or part and such bond, indemnity
        or insurance is subject to the same terms and conditions as this coverage section, then this coverage
        section shall cover its share of such loss subject to its limitations, conditions, provisions and other
        terms, in an amount equal to the proportion that the then-available applicable Limit of Liability under
        this coverage section bears to the aggregate of all limits of liability of all bonds, indemnity, and
        insurance covering such loss, whether such other bond, indemnity or insurance is stated to be
        primary, contributory, excess, contingent or otherwise.   If any Insured or any other party in interest in
        any loss under this coverage section has any bond, indemnity or insurance other than as described
        above which would cover such loss in whole or in part then this coverage section shall cover such
        loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the
        amount of such loss is in excess of the amount of such other insurance whether such other insurance
        is stated to be primary, contributory, excess, contingent or otherwise.

2.      The policy is deemed amended to the extent necessary to effect the purposes of this Amendatory
        Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any
provisions of the policy or any endorsement to the policy, whenever added, that are inconsistent with or contrary to the
provisions of this Amendatory Endorsement, unless such policy or endorsement provisions comply with the applicable
insurance laws of the state of Illinois.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

14-02-7466 (11/2002 ed.)                    Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 10

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

DELETE EXCLUSION 17 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 17 of this coverage section is deleted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8754 (8/2003)                    Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:    Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 11

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF DISCOVERY AND EXCLUSION 13(b) ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The term **Discovery** or **Discovered** as defined in Subsection 11 Definitions of this coverage section is amended to read in its entirety as follows:

**Discovery** or **Discovered** means Risk Manager, Chief Financial Officer, General Counsel of an **Organization** has become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage section has occurred or acts have taken place that may subsequently result in a loss of a type covered by this coverage section.   This includes loss:

(a)    sustained prior to the inception date of any coverage under this coverage section;

(b)    which is within the applicable Retention as set forth in Item 3 of the Declarations for this coverage section; or

(c)    for which the exact amount or details are unknown.

**Discovery** or **Discovered** shall not include knowledge acquired by Risk Manager, Chief Financial Officer, General Counsel of an **Organization** acting alone in a **Theft** or **Forgery,** or acting in collusion with any **Employee** in a **Theft** or **Forgery**.

(2)    Subparagraphs (i) and (ii) of Exclusion 13(b) of this coverage section are amended to read in their entirety as follows:

(i)    after Risk Manager, Chief Financial Officer, General Counsel of an **Organization** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act committed by such **Employee** while employed with or in the service of an **Insured**;

(ii)    after Risk Manager, Chief Financial Officer, General Counsel of an **Organization** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act, involving **Money**, **Securities** or other property valued at twenty-five thousand dollars

14-02-8820 (9/2003)                    Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 11 Definitions of this coverage section, is amended to include any **Employee** while on leave for military service.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

AMEND EXCLUSION 19 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 19 of this coverage section is amended to read in its entirety as follows:

19.    No coverage will be available under this coverage section for:

(a)    loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination;

(b)    loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination; or

(c)    loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within ninety (90) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause issued by the Company or by any affiliate of the Company.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-8907 (10/2004) REV.                    Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company: Federal Insurance Company

Endorsement No. 14

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

## AMEND SUBSECTION 23 CHANGES IN EXPOSURE ENDORSEMENT

In consideration of the premium charged, it is agreed that the first sentence of the final paragraph of Subsection 23 Changes in Exposure of this coverage section is amended to read in its entirety as follows:

> If the total revenues of any such acquired organization or new **Subsidiary** exceed twenty percent (20%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than ninety (90) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company.

The remaining sentences of the final paragraph of Subsection 23 shall remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-8923A (4/2007) rev.                    Page 1

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 15

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

## AMEND VALUATION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of Subsection 28 Valuation and Foreign Currency of this coverage section is amended to read in its entirety as follows:

(a)    the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**, or the cost of replacing such **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 16

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Exclusion 12(j) of this coverage section is deleted.

(2)     No coverage will be available under Insuring Clause 2 or 3 for loss or damage due to fire; provided that this Exclusion shall not apply to:

(i)     loss of **Money** or **Securities**; or

(ii)     damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 17

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)       Exclusion 12(a) of this coverage section is deleted.

(2)       No coverage will be available under Insuring Clause 1 or 9 of this coverage section for loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion shall not apply to otherwise covered loss under Insuring Clause 1 or 9 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**).

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

14-02-8927 (11/2003)                    Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 18

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Exclusion 12(k) of this coverage section is deleted.

(2)     No coverage will be available under Insuring Clause 2, 3, 4, 5, 6, or 8 for loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**; provided that this Exclusion shall not apply to otherwise covered loss of **Property** under Insuring Clause 5.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____

Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

14-02-8928 (11/2003)                   Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:  Federal Insurance Company

Endorsement No. 19

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

_____

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 11., Definitions, of this coverage section is amended to delete paragraph (a) and replace it with the following:

(a) (i)  natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time or seasonal employee;

(ii)  natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service and is assigned to perform such service by any agency furnishing leased personnel or temporary personnel on a contingent or part-time basis; provided that **Employee** shall not include such a natural person, and no coverage will be available under this coverage section for loss caused by such a natural person, if such loss is covered under any bond, indemnity or insurance held by the agency furnishing such personnel;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 20

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Securities**, as defined in Subsection 11 Definitions of this coverage section is amended to include revenue and other stamps in current use, tokens and tickets.   **Securities** does not include **Money**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 21

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND MONEY ORDERS AND COUNTERFEIT CURRENCY FRAUD ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Money Orders And Counterfeit Currency Fraud**, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

**Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(a)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(b)     in the regular course of business, of counterfeit paper currency.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company: Federal Insurance Company

Endorsement No. 22

To be attached to and
form a part of Policy No. 8153-1429

Issued to: AKORN INC

---

AMEND SUBSECTION 27 PROOF OF LOSS AND LEGAL PROCEEDINGS ENDORSEMENT

In consideration of the premium charged, it is agreed that the first sentence of Subsection 27 Proof of Loss and Legal Proceedings of this coverage section is amended to read in its entirety as follows:

Knowledge possessed by Risk Manager, Chief Financial Officer, General Counsel of an **Organization** or **Discovery** shall be deemed knowledge possessed by or discovery by all **Insureds**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 23

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

### AMEND EXCLUSION 12(h)(ii) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (h)(ii) of Exclusion 12 of this coverage section is amended to read in its entirety as follows:

(ii)    to render **Data** usable by replacement processing equipment;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 24

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee** as defined in Subsection 11 Definitions of this coverage section is amended to include any director of an **Organization** while in the regular service of such **Organization** in the ordinary course of such **Organization's** business as an audit committee member of such **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement: September 1, 2019

Company:   Federal Insurance Company

Endorsement No. 25

To be attached to and
form a part of Policy No. 8153-1429

Issued to:   AKORN INC

---

AMEND DEFINITION OF COMPUTER SYSTEM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Computer System**, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:

(a)    owned and operated by an **Organization**;

(b)    leased and operated by an **Organization**; or

(c)    utilized by an **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

14-02-9261 (4/2004)                    Page 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 26

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

### FRAUDULENT INSTRUCTIONS EXCLUSION

In consideration of the premium charged, it is agreed that:

No coverage will be available under Insuring Clauses 2, 3, 4, 5, and 6 for loss resulting from any transfer, payment or delivery of **Money**, **Securities**, or **Property** approved by an **Employee** or arising out of any misrepresentation received by an **Employee**, agent, independent contractor or other representative of the **Insured**, whether such transfer, payment or delivery was made in good faith or as a result of trick, artifice, fraud or false pretenses.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Federal & Vigilant)

Effective date of
this endorsement/rider: September 1, 2019

Federal Insurance Company

Endorsement/Rider No. 27

To be attached to and
form a part of Policy No. 8153-1429

Issued to:  AKORN INC

---

### ERISA AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to loss sustained by any **ERISA Plan** included as **Insured**, this coverage section is amended as follows:

(1)     Subsection 21., ERISA Plan, is deleted.

(2)     Insuring Clause 1. is deleted and replaced with the following:

*Fiduciary Dishonesty Coverage Insuring Clause 1*

The Company shall pay the **Insured** for loss of **Money**, **Securities**, or **Property** resulting directly from **Fraud or Dishonesty** committed by an **Employee** acting alone or in collusion with others.

(3)     Subsection 11., Definitions, is amended as follows:

A.      The definition of **Employee(s)** is deleted and replaced with the following:

**Employee(s)** means any natural person while in the service of any **Insured** who is required to be bonded by Title 1 of **ERISA**, including:

(a)     a fiduciary;

(b)     a trustee;

(c)     an administrator;

(d)     an officer;

(e)     any other natural person who handles **ERISA Plan** assets; or

(f)     any natural person described paragraphs (a) through (e) above during a period not exceeding sixty (60) days following the termination of such natural person's service.

Provided, however, **Employee** shall not include any independent contractor or any agent, broker, factor, commission merchant, consignee, or representative of the same general character or employee thereof.

B.      The definition of **ERISA Plan** is deleted and replaced with the following:

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, as defined under **ERISA**, which is operated solely by an **Organization** or jointly by

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:2

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

C.  The following definitions are added:

**ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

**Fraud or Dishonesty** means any intentional act of larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication, or any other intentional fraudulent or dishonest act. **Fraud or Dishonesty** shall also include any intentional act prohibited by Title 18, Section 1954 of the U.S. Code.

(4)  Subsection 12., Exclusions, is deleted and replaced with the following:

*Limitations*

The Company shall not be liable for loss involving:

(a)  the disclosure of confidential or personal information while in the care, custody or control of an **Insured**, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information, provided that this limitation shall not apply to loss that is otherwise covered under this coverage section caused by an **Employee's** acts of **Fraud or Dishonesty** through the use of, disclosure of or access to such confidential or personal information; or

(b)  fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of an **Insured's** or another entity's or person's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information.

(5)  Subsection 20., Ownership, is amended to the extent that wherever the term **Organization** appears, it is deleted and replaced with **Organization** or **ERISA Plan**.

(6)  Subsection 25., Limits of Liability and Retention, is deleted and replaced with the following:

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations regardless of the number of **Insureds** sustaining the loss.

The payment of any loss under this coverage section shall not reduce the liability of the Company for other losses whenever sustained; provided, however, that the total liability of the Company for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability of this coverage section will apply.

With respect to each **ERISA Plan**:

(a)  if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)  $1,000; or

(2)  ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this coverage section.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

up to a maximum limit of liability of $500,000; or

(b)    if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)    $1,000; or

(2)    ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this coverage section,

up to a maximum limit of liability of $1,000,000,

provided that, in all events (i) if the Limit of Liability as set forth in Item 2 of the Declarations is less than the amounts set forth in paragraphs (a) or (b) above, then the applicable Limit of Liability shall be equal to the minimum limit of insurance as required by **ERISA**; or (ii) if the Limit of Liability as set forth in Item 2 of the Declarations equals or exceeds the amounts set forth in paragraphs (a) or (b) above, then the Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations.

No retention shall apply to loss sustained by an **ERISA Plan** covered under this coverage section.

(7)    The following subsections are added:

*Payover*

In compliance with Title 1 of **ERISA**, payment by the Company shall be held to the benefit of any **Insured(s)** sustaining a loss. If such payment is in excess of the amount of coverage required by **ERISA** for such **Insured(s)**, such excess shall be held for the use and benefit of any other named **Insured(s)** should such **Insured(s)** also **Discover** loss recoverable hereunder. If **Money**, **Securities**, and other **Property** of two or more **Insureds** is commingled, recovery hereunder for loss of such **Money**, **Securities**, and other **Property** shall be shared by such **Insureds** on a pro rata basis in accordance with the amount of coverage each such **Insured** is required to carry pursuant to **ERISA**.

*Extended Discovery Period*

This coverage section covers loss sustained prior to the termination or cancellation of this coverage section and **Discovered**:

(a)    within twelve (12) calendar months following the termination or cancellation of this coverage section in its entirety; or

(b)    within twelve (12) calendar months following the termination or cancellation of this coverage section as to any **Insured**,

in accordance with Subsection 11., Termination of Policy or Coverage Section, of the General Terms and Conditions Section.

Provided that this Extended Discovery Period terminates immediately upon the effective date of any other insurance obtained which replaces the coverage afforded by this coverage section in an amount no less than the minimum amount required under **ERISA** and provides coverage for loss sustained prior its effective date.

*Termination*

This coverage section shall terminate as to any **Employee** and no coverage will be available for loss caused by such **Employee**:

(a)  immediately upon **Discovery** by any **Executive** or **Insurance Representative** (not in collusion with such **Employee**) of any fraudulent or dishonest act on the part of such **Employee** while in the service of any **Insured**;

(b)  after an **Executive** or **Insurance Representative** becomes aware of any fraudulent or dishonest act by such **Employee** involving **Money**, **Securities** or **Property** valued at twenty-five thousand dollars ($25,000) or more, committed prior to such **Employee's** service with any **Insured**; or

(c)  more than sixty (60) days following the termination of service to any **Insured** of such **Employee**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

## ALLIED WORLD NATIONAL ASSURANCE COMPANY

## EXCESS DIRECTORS & OFFICERS LIABILITY INSURANCE FOLLOWING FORM POLICY

**POLICY NUMBER: 0307-5817**
**RENEWAL OF: 0307-5817**

**NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND.**

## DECLARATIONS

**ITEM 1:** NAMED INSURED: Akorn, Inc.

ADDRESS: 1925 W. Field Court, Suite 300
Lake Forest, IL 60045

**ITEM 2:** POLICY PERIOD: From: June 1, 2017 To: June 1, 2018
(12:01 a.m. Standard Time at the address stated in Item 1)

**ITEM 3:** LIMIT OF LIABILITY: $10,000,000
aggregate for all coverages combined (including Defense Costs)

EXCESS OF TOTAL
UNDERLYING LIMITS OF: $10,000,000

**ITEM 4:** UNDERLYING POLICIES AND INSURERS:

**Primary Policy:**

| Insurer | Policy Number | Limits | Policy Period |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO17A | $10,000,000 | June 1, 2017 to June 1, 2018 |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

DO 00020 00 (12/11)

**DECLARATIONS** (continued)                                    **POLICY NO.: 0307-5817**

**Excess Policy(ies):**

| **Insurer** | **Policy Number** | **Limits** | **Policy Period** |
|---|---|---|---|

**ITEM 5:**   PENDING OR PRIOR DATE:     April 24, 2011

**ITEM 6:**   PREMIUM:                          $239,000.00

**ITEM 7:**   A.   DISCOVERY PERIOD/EXTENDED
                     REPORTING PERIOD PREMIUM:     100% of premium set forth in Item 6 above

                B.   DISCOVERY PERIOD/EXTENDED
                     REPORTING PERIOD:                 12 months

**ITEM 8:**   ADDRESS OF INSURER FOR ALL NOTICES UNDER THIS POLICY:

                A.   Claim-Related Notices:   noticeofloss@awac.com

                B.   All Other Notices:

                     1690 New Britain Ave.
                     Farmington, CT 06032

In Witness Whereof, the Insurer has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

               President                                          Asst. Secretary

_____
**AUTHORIZED REPRESENTATIVE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Endorsement No.: 1
This endorsement, effective: June 1, 2017
(at 12:01 A.M. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## ILLINOIS AMENDATORY ENDORSEMENT

This endorsement modifies insurance coverage provided under the EXCESS DIRECTORS & OFFICERS LIABILITY INSURANCE FOLLOWING FORM POLICY.

A.  It is understood and agreed that Paragraph B. PUNITIVE DAMAGES COVERAGE of Clause II. TERMS AND CONDITIONS is deleted in its entirety.

B.  It is understood and agreed that Paragraph E. REPRESENTATIONS AND WARRANTY STATEMENTS of Clause II. TERMS AND CONDITIONS is deleted in its entirety and replaced by the following:

E.  REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this Policy, and the Insured agrees, that the Application, warranty statements, together with attachments and any other materials submitted for this Policy and any Underlying Policy, which are attached to this Policy, will be made a part of this Policy.  The Insurer has relied on all such materials, representations and information as being accurate and complete in issuing this Policy.

C.  It is understood and agreed that Paragraph H. CANCELLATION CLAUSE of Clause II. TERMS AND CONDITIONS is deleted in its entirety and replaced by the following:

H.  CANCELLATION CLAUSE

The Insured may cancel this Policy by mailing to the Insurer advance written notice of cancellation, stating when the cancellation will become effective.

The Insurer may cancel this Policy by mailing to the Insured and the agent of record at the last known addresses known by the Insurer, written notice, stating the reason for cancellation at least ten (10) days prior to the effective of cancellation date if the Insurer cancels for nonpayment of premium and at least thirty (30) days prior to the effective date of cancellation if the Insurer cancels for any other reason.

If this Policy has been in effect for sixty-one (61) days or more, the Insurer may cancel this Policy by mailing to the Insured at the address shown in the Declarations and the agent of record at the last known address written notice, stating the reason for cancellation at least ten (10) days prior to the effective date if the Insurer cancels for nonpayment of premium and sixty (60) days prior to the effective date of cancellation if the Insurer cancels only for the following other reasons:

1.  The Policy was obtained through a material misrepresentation;

2.  Any Insured has violated any of the terms and conditions of the Policy;

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

3.    The risk originally accepted has measurably increased;

4.    The Insurer certifies to the Director of Insurance of the loss of reinsurance for all or a substantial part of the underlying risk; or

5.    The Director of Insurance determines that the continuation of the Policy could place the Insurer in violation of Illinois Insurance Laws.

A U. S. Post Office proof of mailing will be sufficient proof of notice. This proof of mailing will be maintained by the Insurer.  The effective date of cancellation stated in the notice will become the end of the Policy Period. If this Policy is cancelled, the Insurer will send the Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Insured cancels, the refund may be less than pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

D.  It is understood and agreed that the following are added to Clause II. TERMS AND CONDITIONS:

NONRENEWAL

If the Insurer decides not to renew this Policy, the Insurer will mail written notice of nonrenewal, to the Insured and the agent of record at the last known mailing addresses known by the Insurer, stating the reason for nonrenewal at least sixty (60) days before the expiration date of the Policy. A U. S. Post Office proof of mailing will be sufficient proof of notice. This proof of mailing will be maintained by the Insurer.

BANKRUPTCY

The bankruptcy or insolvency of the Insured will not relieve the Insurer from liability under this Policy.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


_____
**AUTHORIZED REPRESENTATIVE**

DO 00043 12 (02/08)                                                    2

Endorsement No.: 2
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## STATE AMENDATORY INCONSISTENCY

It is understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this Policy and any term or condition of this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of either the amendatory or the Policy which are more favorable to the Insured.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 3

This endorsement, effective: June 1, 2017

(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)

Forms a part of Policy No.: 0307-5817

Issued to: Akorn, Inc.

By: Allied World National Assurance Company

## DELETE REPRESENTATIONS CLAUSE AND
## FOLLOW PRIMARY POLICY

It is understood and agreed that Clause II, TERMS AND CONDITIONS, is amended by deleting paragraph E., REPRESENTATIONS AND WARRANTY STATEMENTS, in its entirety.

It is further understood and agreed that this Policy shall follow any representations and warranty terms of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

Endorsement No.: 4
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## DELETE ALTERNATIVE DISPUTE RESOLUTION PROCESS CLAUSE

It is understood and agreed that Clause II., TERMS AND CONDITIONS, is amended by deleting paragraph I., ALTERNATIVE DISPUTE RESOLUTION PROCESS, in its entirety.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00253 00 (01/10)

Endorsement No.: 5
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## AMEND DECLARATIONS PAGE:
## DELETE DISCOVERY PERIOD/EXTENDED REPORTING PERIOD –
## FOLLOW THE PRIMARY POLICY

It is understood and agreed that Item 7 of the Declarations, DISCOVERY PERIOD, is deleted in its entirety.

It is further understood and agreed that this Policy shall follow the discovery period or extended reporting period provisions of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

DO 00261 00 (01/10)

Endorsement No.: 6

This endorsement, effective: June 1, 2017

(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)

Forms a part of Policy No.: 0307-5817

Issued to: Akorn, Inc.

By: Allied World National Assurance Company

## DELETE CANCELLATION CLAUSE AND
## FOLLOW PRIMARY POLICY

It is understood and agreed that Clause II, TERMS AND CONDITIONS, is amended by deleting paragraph H., CANCELLATION CLAUSE, in its entirety.

It is further understood and agreed that this Policy shall follow the cancellation provisions of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

DO 00295 00 (06/11)

Endorsement No.: 7
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## AMEND LOSS PROVISIONS CLAUSE –
## FAILURE TO COOPERATE IS NOT IMPUTED TO OTHER INSURED PERSONS

It is understood and agreed that Clause II, TERMS AND CONDITIONS, is amended by deleting paragraph D. 3., LOSS PROVISIONS, in its entirety and replacing it with the following:

3.  The Insured shall provide the Insurer with such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power to provide and shall do nothing that may prejudice the Insurer's position or potential rights of recovery. The failure of any insured person under this Policy to comply with this paragraph shall not impair the rights of any other insured person under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00299 00 (06/11)

Endorsement No.: 8
This endorsement, effective: June 1, 2017
(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

**AMEND POLICY TO RECOGNIZE LOSS PAYMENT BY
EXCESS DIC INSURER OR ANY OTHER PARTY -
DELETE 'NO BROADER THAN UNDERLYING'**

It is understood and agreed that Clause I, INSURING CLAUSE, is deleted and replaced with the following:

**I.   INSURING CLAUSE**

The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations, the Insureds, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, subject to:

A.  the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;

B.  the Limit of Liability as stated in Item 3 of the Declarations; and

C.  the terms and conditions of, and the endorsements attached to, this Policy.

It is further understood and agreed that paragraphs F. 2. and F. 3., FOLLOWING FORM, of Clause II, TERMS AND CONDITIONS, are deleted and replaced with the following:

2.  In the event of the depletion of the limits of liability of the Underlying Policy(ies) solely as a result of payment of losses covered thereunder, by the Underlying Insurers, the Insureds, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, this Policy shall, subject to the Limit of Liability set forth in Item 3 of the Declarations and to the other terms of this Policy, continue to apply for subsequent Losses as excess insurance over the amount of insurance remaining under such Underlying Policies. In the event of the exhaustion of all of the limits of liability of such Underlying Policy(ies) solely as a result of payment of losses as described in this paragraph, the remaining limits available under this Policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this Policy, continue for subsequent Losses as primary insurance and any retention specified in the Underlying Policy shall be imposed under this Policy.

3.  The Insurer's obligations under this Policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down for any reason, including but not limited to the receivership, insolvency, or inability or refusal to pay of any Underlying Insurer, the cancellation of any Underlying Policy or the existence of a sub-limit of liability in any Underlying Policy. In the event of the receivership, insolvency, or inability or refusal to pay of

DO 00303 00 (06/11)

any Underlying Insurer, or the cancellation of any Underlying Policy, the Insured, any insurer under a difference-in-conditions policy written as specifically excess over the Limit of Liability provided by this Policy and/or any other party, may pay any losses otherwise payable under such Underlying Policy and such payments shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy. In the event a sub-limit of liability exists in the Underlying Policy, any payments of Loss that are subject to such a sub-limit shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00303 00 (06/11)

Endorsement No.: 9
This endorsement, effective: June 1, 2017
(at 12:01 A.M. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## AMEND PENDING OR PRIOR DATE

It is understood and agreed that Item 5 of the Declarations, PENDING OR PRIOR DATE, is deleted in its entirety and replaced with the following:

**ITEM 5:**   PENDING OR PRIOR DATE:

(a)    **April 24, 2011** as respects the $5,000,000 Limit of Liability Excess of Total Underlying Limits of $10,000,000.

(b)    **April 24, 2011** as respects the $5,000,000 Limit of Liability Excess of Total Underlying Limits of $15,000,000, but solely as respects any claim under Insuring Agreement A of the Primary Policy.

(c)    **June 1, 2014** as respects the $5,000,000 Limit of Liability Excess of Total Underlying Limits of $15,000,000, but solely as respects any claim under Insuring Agreements B and C of the Primary Policy.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

AI Manu A

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**POLICYHOLDER DISCLOSURE STATEMENT**
**UNDER THE**
**TERRORISM RISK INSURANCE ACT**

The Insured is hereby notified that under the federal Terrorism Risk Insurance Act, as amended, (the "Act"), the Insured has a right to purchase insurance coverage for losses arising out of an Act of Terrorism, as defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to  human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in case of certain air carriers or vessels or the premises of a United States. mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Insured should read the Act for a complete description of its coverage. The decision to certify or not to certify an event as an Act of Terrorism covered by this law is final and not subject to review.

The Insured should know that where coverage is provided by this policy for losses caused by a Certified Act of Terrorism may be partially reimbursed by the United States Government under a formula established by federal law.  However, the insured's policy may contain other exclusions that might affect coverage, such as an exclusion for nuclear events.  Under the formula, the United States generally reimburses 85%  through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible that must be met by the Insurer, and which deductible is based on a percentage of the Insurer's direct earned premiums for the year preceding the Act of Terrorism

Be advised that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap on all losses resulting from Certified Acts of Terrorism.  If aggregate insured losses attributable to Certified Acts of Terrorism exceed $100 billion in a calendar year the United States Government shall not make any payment for any portion of the amount of such loss that exceeds $100 billion.  If aggregate insured losses attributable to Acts of Terrorism exceed $100 billion in a Program Year and the Insurer has met its deductible under the Act, the Insurer shall not be liable for payment of any portion of the losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Coverage for "insured losses" as defined in the Act is subject to the coverage terms, conditions, amounts and limits in this policy applicable to losses arising from events other than Acts of Terrorism.

Please indicate the selection of the Insured below.

_____    The Insured hereby elects to purchase coverage in accordance with the Act for a premium of $0.00.

_____    The Insured hereby rejects coverage and accepts reinstatement of the exclusion in accordance with the Act.

_____        Akorn, Inc.
Signature of Insured

_____        0307-5817
Print/Title

_____
Date

DO 00014 00 (01/15)



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**ALLIED WORLD NATIONAL ASSURANCE COMPANY**

---

### EXCESS DIRECTORS & OFFICERS LIABILITY INSURANCE
### FOLLOWING FORM POLICY

In consideration of premium paid and subject to the Declarations and Endorsements made a part hereof and the terms, conditions and limitations set forth herein and therein, ALLIED WORLD NATIONAL ASSURANCE COMPANY (herein referred to as the "Insurer"), agrees as follows:

**I.   INSURING CLAUSE**

The Insurer shall pay the individuals and entities insured under the Primary Policy (also referred to herein as the "Insured") for Loss after exhaustion by payments of all applicable underlying limits by either the Underlying Insurers as specified in Item 4 of the Declarations or the Insureds, subject to:

A.   the terms and conditions of the Primary Policy as in effect the first day of the Policy Period;

B.   the Limit of Liability as stated in Item 3 of the Declarations; and

C.   the terms and conditions of, and the endorsements attached to, this Policy.

Notwithstanding the above, this Policy shall not provide coverage broader than that provided by any Underlying Policy listed in Item 4 of the Declarations, or any policy issued by any participating quota share insurer, unless such broader coverage is specifically agreed to by the Insurer herein or in a written endorsement attached hereto.

**II.   TERMS AND CONDITIONS**

A.   DEFINITIONS

Terms defined in the Primary Policy are used in this Policy with the meaning assigned to them in the Primary Policy unless otherwise indicated.

"Defense Costs" shall have the same meaning as the following defined term in the Primary Policy: Defense Costs; Defense Expenses; or Claims Expenses.

B.   PUNITIVE DAMAGES COVERAGE

This Policy shall cover punitive damages to the same extent punitive damages are covered under the Primary Policy.

C.   PENDING OR PRIOR EXCLUSION

This Policy shall follow any exclusion in the Primary Policy regarding pending or prior litigation, administrative, regulatory or other proceedings, investigations, demands, suits, orders, decrees or judgments. The applicable date for determining whether any such matter is "pending or prior" for the purpose of such exclusion in this Policy shall be the Pending or Prior Date set forth in Item 5 of the Declarations.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

D.  LOSS PROVISIONS

1.  This Policy shall follow the notice of claim provisions of the Primary Policy, except as stated otherwise herein.

2.  Notice hereunder shall be given to the Insurer at the address indicated in Item 8 of the Declarations.

3.  The Insured shall provide the Insurer with such information, assistance and cooperation as the Insurer may reasonably request and as shall be in the Insured's power to provide and shall do nothing that may prejudice the Insurer's position or potential rights of recovery.

4.  The Insurer shall maintain full and complete claims control as respects its portion of any claims or Losses arising under this Policy. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer, which consent shall not be unreasonably withheld, shall be recoverable as Loss under the terms of this Policy. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any claim.

E.  REPRESENTATIONS AND WARRANTY STATEMENTS

It is a condition precedent to the Insurer's obligations under this Policy, and the Insured agrees, that all Applications, warranty statements, together with attachments and any other materials submitted for this Policy and any Underlying Policy, shall be deemed attached to and made a part of this Policy.  The Insurer has relied on all such materials, representations and information as being accurate and complete in issuing this Policy.

F.  FOLLOWING FORM

1.  This Policy, except as herein stated, is subject to all terms, conditions, agreements and limitations of the Primary Policy in all respects as in effect on the date hereof. The Insured shall furnish to the Insurer copies of all proposed rewrites or changes by endorsement or otherwise to the Primary Policy. The Insured agrees that should any change to the Primary Policy be made by rewrite, endorsement or otherwise, this Policy shall not be changed without the prior written consent of the Insurer, which consent shall be at the sole discretion of the Insurer. It is further agreed that  should any change of this Policy be consented to by the Insurer, then the premium hereon may be adjusted accordingly**.**

2.  In the event of the depletion of the limits of liability of the Underlying Policy(ies) solely as a result of payment of losses covered thereunder, by the Underlying Insurers and/or the Insureds, this Policy shall, subject to the Limit of Liability set forth in Item 3 of the Declarations and to the other terms of this Policy, continue to apply for subsequent Losses as excess insurance over the amount of insurance remaining under such Underlying Policy. In the event of the exhaustion of all of the limits of liability of such Underlying Policy(ies) solely as a result of payment of losses covered thereunder, by the Underlying Insurers and/or the Insureds, the remaining limits available under this Policy shall, subject to the Limit of Liability as set forth in Item 3 of the Declarations and to the other terms of this Policy, continue for subsequent Losses as primary insurance and any retention specified in the Underlying Policy shall be imposed under this Policy.

3.  The Insurer's obligations under this Policy shall not be increased, expanded or otherwise changed, nor shall the Insurer drop down for any reason, including but not limited to the receivership, insolvency, or inability or refusal to pay of any Underlying Insurer, the cancellation of any Underlying Policy or the existence of a sub-limit of liability in any Underlying Policy. In the event of the receivership, insolvency, or inability or refusal to pay of any Underlying Insurer, or the cancellation of any Underlying Policy, the Insured may pay any losses otherwise payable under such Underlying Policy and such payments by the Insured shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy. In the event a sub-limit of liability exists in the Underlying Policy, any payments of Loss that are subject to such a sub-limit shall be deemed to apply toward exhaustion of the limits of liability of the Underlying Policy for purposes of coverage under this Policy.

G.  CANCELLATION OF UNDERLYING POLICY

The Insured shall give notice to the Insurer as soon as practicable of the cancellation of any Underlying Policy.

In the event any Underlying Policy shall be cancelled by the insurer thereon (other than for non-payment of premium), this Policy shall continue in full force and effect for the remainder of the Policy Period and the Insurer shall be liable to the same extent that it would have been liable if such Underlying Policy had remained in effect.

H.  CANCELLATION CLAUSE

This Policy shall follow the cancellation terms of the Primary Policy except that in the event the Insurer cancels this Policy for non-payment of premium, this Policy shall be void as of the inception date of the Policy Period.

I.  ALTERNATIVE DISPUTE RESOLUTION PROCESS

Any and all disputes or differences which may arise under this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss or the formation and validity of this Policy, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

The mediator(s) or arbitrators shall also give due consideration to the general principles of the

DO 00022 00 (09/07)

law of the state where the Named Insured is incorporated in the construction or interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions and exclusions of this Policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy.  In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys' fees or other costs.  In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least one-hundred-twenty (120) days shall have elapsed from the date of the termination of the mediation.  In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the address for the Named Insured.  The first Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause.

DO 00022 00 (09/07)                                                                                                           4

Endorsement No.: 10

This endorsement, effective: June 1, 2018

(at 12:01 a.m. Standard Time at the address of the Named Insured as shown in Item 1 of the Declarations)

Forms a part of Policy No.: 0307-5817

Issued to: Akorn, Inc.

By: Allied World National Assurance Company

## AMEND POLICY PERIOD

It is understood and agreed that Item 2 of the Declarations, POLICY PERIOD, is deleted in its entirety and replaced with the following:

**ITEM 2.**        POLICY PERIOD:        From: June 1, 2017  To: September 1, 2019
                                                              (12:01 a.m. standard time at the address stated in Item 1)

It is further understood and agreed that any claim(s) made during the Policy Period or the amended or extended Policy Period shall be subject to the one aggregate Limit of Liability stated in Item 3 of the Declarations.

Additional Premium: $746,875.00

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00001 00 (03/07)                                      1

Endorsement No.: 11

This endorsement, effective: June 1, 2018

(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)

Forms a part of Policy No.: 0307-5817

Issued to: Akorn, Inc.

By: **Allied World National Assurance Company**

## FOLLOW FORM OF SPECIFIED TERMS OF PRIMARY POLICY

It is understood and agreed that this Policy shall follow the following terms, conditions or endorsements of the Primary Policy:

Endorsement #44 – Convert Policy To Run-Off Upon Happening Of Specific Event – Form # DO 80 493 08 08

All other terms and conditions of this Policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

DO 00281 00 (01/10)

Endorsement No.: 12
This endorsement, effective: June 1, 2018
(at 12:01 a.m. Standard Time at the address stated in Item 1 of the Declarations)
Forms a part of Policy No.: 0307-5817
Issued to: Akorn, Inc.
By: Allied World National Assurance Company

## PREMIUM IS " FULLY EARNED"  AND
## POLICY IS NON-CANCELLABLE

It is understood and agreed that the premium set forth in Item 6 of the Declarations shall be fully earned as of June 1, 2018.

It is further understood and agreed that this Policy may not be canceled by the Insured or the Insurer; however, the Insurer may cancel solely in the event of non-payment of the premium.

All other terms and conditions of this Policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

DO 00284 00  (01/10)



**Endurance American Insurance Company**
**Wilmington, DE**

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE DECLARATIONS

NOTICE:  PLEASE READ CAREFULLY.  This Policy shall follow all the terms and conditions of the **Followed Form** except as stated herein. Terms defined in the **Followed Form** are used herein with the meaning assigned to them in the **Followed Form** unless otherwise indicated.

**POLICY NUMBER:**   DOX10007587102

| | | |
|---|---|---|
| Item 1. | **Named Insured**: | Akorn, Inc. |
| | Address: | 1925 West Field Court |
| | | Suite 300 |
| | | Lake Forest, IL 60045 |

| | | |
|---|---|---|
| Item 2. | **Policy Period**: | From:  June 01, 2017          To:  June 01, 2018 |
| | | (12:01 AM Standard Time on both dates at the address of the **Named Insured** noted above.) |

Item 3.   **Limit of Liability**:
(including defense costs)  $ 10,000,000 excess of $ 20,000,000

Item 4.   Pending & Prior      $5M Excess of $20M - 06/01/2014
Litigation Date:       $5M excess of $25M - 08/04/2015
This policy follows the pending & prior litigation exclusion in the **Followed Form**, except that the applicable date in such exclusion shall be the date indicated in this Item 4.

Item 5.   Premium:        $ 143,220

| | | |
|---|---|---|
| Item 6. | Producer: | Arthur J. Gallagher Risk Management Services, Inc. |
| | Address: | 300  South Riverside Plaza, Suite 1900 |
| | | Chicago, IL 60606 |

Item 7.   A.   **Underlying Policy(ies)**:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO17A | $ 10,000,000 | Primary |
| Allied World National Assurance Company | 0307-5817 | $ 10,000,000 | $10,000,000 |

B.   **Followed Form**:

| Insurer | Policy Number | Limit of Liability | Attachment |
|---|---|---|---|
| XL Specialty Insurance Company | US00075683DO17A | $ 10,000,000 | Primary |

Item 8.   Forms and Endorsements Effective at Inception:
See attached Forms and Endorsements Schedule, IL 0101.

| | | |
|---|---|---|
| Policy Issuance Date: | June 14, 2017 | Endurance American Insurance Company |
| Policy Issuance Office: | Chicago, IL | EML 0001 0712 |

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE DECLARATIONS

Item 9.    Notice:

A. Claims or Potential Claims:    Endurance U.S. Insurance – Claims
Attn:  Claims Department
750 Third Avenue
18th Floor
New York, NY 10017
Insuranceclaims@sompo-intl.com
1-877-676-7575

B. All Other:    Endurance Professional Solutions
Attn:  Professional Lines Underwriting Department
750 Third Avenue
18th Floor
New York, NY  10017
USCMLFI@sompo-intl.com

This Policy shall constitute the contract between the **Insureds** and the Insurer.

The Insurer hereby causes this Policy to be signed on the Declarations page by a duly authorized representative of the Insurer.

_Joe Kelly III_
_____    June 14, 2017
Authorized Representative    _____
    Date

# FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

**THIS POLICY CONTAINS CLAIMS MADE COVERAGES. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.**

In consideration of premium paid or payable and in reliance on all statements made and information furnished by the **Insureds** in the Application or the underwriting of this Policy, and subject to the terms, conditions and limitations of this Policy, Endurance American Insurance Company (herein referred to as the "Insurer") agrees as follows:

**I.   INSURING CLAUSE**

Subject to the terms and conditions of this Policy, the Insurer shall provide to the **Insureds** insurance coverage for Claims first made during the **Policy Period**, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after (i) the insurers of the **Underlying Policy(ies),** the **Insureds**, and/or any other party shall have paid in legal currency the full amount of the **Underlying Limit** pursuant to Section II.B.1 below, and (ii) the **Insureds** shall have paid the retention or deductible, if any, applicable under the **Primary Policy**. The Insurer shall then be liable to pay only covered Loss in excess of such **Underlying Limit** up to its **Limit of Liability** as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each **Policy Period**, including the Discovery Period if exercised, against all **Insureds** irrespective of the time of payment by the Insurer.

**II.   TERMS AND CONDITIONS**

A.   FOLLOWING FORM

This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the **Followed Form** as of inception of this Policy, and to the extent coverage is further limited or restricted thereby, in any other **Underlying Policy(ies)**.   In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Policy(ies)**. In the event of any conflict between the terms, conditions, and limitations of this Policy and any **Underlying Policy,** the terms, conditions and limitations of this Policy shall control.

B.   UNDERLYING POLICIES

1.   In the event and only in the event of the erosion or exhaustion of the **Underlying Limit** by reason of:

a.   the insurer(s) of the **Underlying Policy(ies),** the **Insureds**, and/or any other party paying in legal currency Loss covered under the respective **Underlying Policy(ies)**; and/or

b.   the insurer(s) of the **Underlying Policy(ies)** paying loss under another policy(ies) issued by such underlying insurer to the **Named Insured** or any of its affiliates;  but only to the extent such **Underlying Policy(ies)**  explicitly requires that such loss payment erodes the limit of liability of such **Underlying Policy(ies)***.*

this Policy shall:  (i) in the event of erosion, pay excess of the eroded **Underlying Limit,** and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this Policy shall only pay excess of the retention or deductible, if any, applicable under the **Primary Policy**, which retention or deductible shall be applied to any subsequent Loss in the same manner as specified in the **Primary Policy**.

2. Notwithstanding any of the terms of this Policy which might be construed otherwise, this Policy shall drop down only in the event of erosion or exhaustion of the **Underlying Limit** as described above, and shall not drop down for any other reason including, but not limited to, uncollectability (in whole or in part) of any **Underlying Policy(ies)**. The risk of uncollectability of the **Underlying Policy(ies)** (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the **Insureds** and is not in any way or under any circumstances insured or assumed by the Insurer.

3. If any **Underlying Policy(ies)** contains a specific grant of coverage that is subject to a sublimit of liability, then coverage under this Policy shall not apply to any Claim which is otherwise subject to such grant of coverage. However, any Loss paid under the **Underlying Policies** on account of such Claim shall erode or exhaust the **Underlying Limit**, as provided in Section II.B.1 above, for purposes of this Policy.

4. If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Underlying Policy(ies)**. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

C. NOTICE

All notices under this Policy shall be in writing and properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address as shown in Item 1. of the Declarations. Notice to the Insurer of any Claim or potential Claim under this Policy shall be given to the Insurer at the address as shown in Item 9.A. of the Declarations. All other notices to the Insurer under this Policy shall be given to the Insurer at the address as shown in Item 9.B. of the Declarations.

Any notice to the insurer of an **Underlying Policy(ies)** shall not constitute notice to the Insurer unless also given to the Insurer as provided in this Section II.C.

D. CLAIMS PROVISIONS

1. The Insurer may, at its sole discretion, participate in the investigation, defense or settlement of any Claim or potential Claim reported to the Insurer under this Policy even if the **Underlying Limit** has not been exhausted.

2. No action by any other insurer shall bind the Insurer under this Policy. The Insurer shall not be liable under this Policy for any settlements, stipulated judgments or defense costs to which the Insurer has not consented, which consent shall not be unreasonably withheld.

E. DISCOVERY PERIOD

The **Insureds** shall have the right to elect a Discovery Period under this Policy as described in, and subject to the terms of, the **Followed Form**. The additional premium for the Discovery Period shall be the same percentage of this Policy's annual premium as the percentage stated in the **Followed Form** for calculating the Discovery Period premium thereunder. The Discovery

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Period shall not be available unless the **Insured** has elected the Discovery Period in all unexhausted **Underlying Policies** and has provided proof thereof to the Insurer.

E. DEFINITIONS

1. Terms defined in the **Followed Form** are used herein with the meaning assigned to them in the **Followed Form** unless otherwise stated herein. Other words and phrases that appear in bold have special meaning and can be found below or in any endorsement or the specific Policy provision where they appear.

2. **Followed Form**, **Underlying Policy(ies)** and **Limit of Liability** have the meanings attributed to them in the Declarations.

3. **Insured(s)** means all natural persons and entities insured by the **Followed Form**.

4. **Named Insured** means the entity named in Item 1 of the Declarations.

5. **Primary Policy** means the first listed policy in Item 7.A of the Declarations.

6. **Policy Period** means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with the **Followed Form**.

7. **Underlying Limit** means an amount equal to the aggregate of all limits of liability, as set forth in Item 7. of the Declarations, for all **Underlying Policies**, plus the retention or deductible, if any, applicable under the **Primary Policy**.

**Endurance American Insurance Company**

**750 3rd Avenue**
**New York, NY 10017**

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President and Senior Vice President and countersigned where required by law on the Declarations page by its duly authorized representative.

**Senior Vice President**                                                   **President**

# FORMS AND ENDORSEMENT SCHEDULE

## FOLLOW FORM EXCESS MANAGEMENT LIABILITY INSURANCE POLICY

| End. No. | Title | Number |
|---|---|---|
| | Follow Form Excess Management Liability Insurance Declarations | EML 0001 0712 |
| | Follow Form Excess Management Liability Insurance Policy | EML 0201 0712 |
| | Signature Page | IL 1007 0114 |
| | Forms and Endorsement Schedule | IL 0101 0712 |
| 1. | Specific Events Exclusion | IL 1002 0712 |
| 2. | Deletion of Most Restrictive Underlying Terms (ABC Coverage) | EML 0902 0712 |
| 3. | DIC Erosion of Underlying Limit | EML 0903 0712 |
| 4. | Amendatory Inconsistency | EML 1324 0513 |
| 5. | Illinois Changes - Cancellation and Nonrenewal | EML 1000 1112 IL |
| 6. | Illinois Changes | EML 1113 1112 IL |
| 7. | Disclosure Pursuant to the Terrorism Risk Insurance Act | IL 1214 0115 |
| 8. | Cap on Losses from Certified Acts of Terrorism | IL 1204 0115 |
| | U.S. Treasury Department's Office of Foreign Assets Control (OFAC) | PN 0001 0712 |

*The titles of the endorsements listed above are solely for convenience and form no part of the terms and conditions of coverage.*

# ENDORSEMENT

| | | |
|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: DOX10007587102 |

| | |
|---|---|
| Endorsement Effective Date: | June 01, 2017 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. |

Endorsement Number: 1

## GENERAL CHANGE
## (SPECIFIC EVENTS EXCLUSION)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that:

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of any other EXLCUSIONS within this policy, the Insurer shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions listed under EVENTS below (hereinafter "**Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

<u>EVENTS</u>

1. *Solomon Yeung, etc. v. Akorn, Inc. et al.*, docket no. 1:15-cv-01944 filed in the Norther District of Illinois on or about March 4, 2015;

2. *Mikolaj Sarzynski, Individually and on Behalf of All Others Similarly Situated, v. Akorn, Inc., Rajat Rai, and Timothy A. Dick*, docket no. 1:15-cv-03921 filed in the Northern District of Illinois on or about May 4, 2015;

3. the Company's intent to restate its consolidated financial statements for the fiscal year ended December 31, 2014, and the fiscal quarters ended June 30, 2014, and September 30, 2014 (collectively, the "Restated Financial Statements").

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance,
act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**.

# ENDORSEMENT

Joe Kelly III

---
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: | DOX10007587102 |
| Endorsement Effective Date: | June 01, 2017 | Endorsement Number: | 2 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

## DELETION OF MOST RESTRICTIVE UNDERLYING TERMS
## (ABC COVERAGE)

It is agreed that:

1.  Section II.A. is deleted in its entirety and is replaced with the following:

    This Policy, except as stated herein, is subject to all terms, conditions, representations and limitations as contained in the **Followed Form**. In no event shall this Policy grant broader coverage than would be provided by the **Followed Form**. In the event of any conflict between the terms, conditions, and limitations of this Policy and the **Followed Form,** the terms, conditions and limitations of this Policy shall control.

    If Loss covered under the **Followed Form** is not covered under another **Underlying Policy** because coverage under such **Underlying Policy** is narrower than the coverage under the **Followed Form**, then for purposes of liability attaching to this Policy the **Underlying Limit** for such **Underlying Policy** shall be eroded or exhausted with respect to such Loss paid by the **Insureds**, an insurer of any DIC policy excess of this Policy and/or any other party paying such Loss.

2.  Section II.B.4. is deleted in its entirety and is replaced with the following:

    If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of the **Followed Form** are changed to limit or restrict coverage, this Policy shall become subject to such changes upon the effective date of the change in the **Followed Form**. To the extent the terms, conditions or limitations of the **Followed Form** are changed to expand or broaden coverage, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

_(signature: Joe Kelly III)_

---
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: | DOX10007587102 |
| **Endorsement** Effective Date: | June 01, 2017 | Endorsement Number: | 3 |

(12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations)

## DIC EROSION OF UNDERLYING LIMIT

It is agreed that:

Section I, Insuring Clause, is deleted in its entirety and is replaced with the following:

Subject to the terms and conditions of this Policy, the Insurer shall provide to the **Insureds** insurance coverage for Claims first made during the **Policy Period**, including the Discovery Period if exercised. Liability for any covered Loss resulting from covered Claims shall attach to the Insurer only after the insurers of the **Underlying Policy(ies)**, the **Insureds**, the insurer of any DIC policy, and/or any other party shall have paid in legal currency the full amount of the **Underlying Limit** (including the applicable retention or deductible under the **Primary Policy**) pursuant to Section II.B.1 below.  The Insurer shall then be liable to pay only covered Loss in excess of such **Underlying Limit** up to its **Limit of Liability** as set forth in Item 3 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made in each **Policy Period**, including the Discovery Period if exercised, against all **Insureds** irrespective of the time of payment by the Insurer.

_Joe Kelly III_

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

### E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: | DOX10007587102 |
| Endorsement Effective Date: | June 01, 2017 | Endorsement Number: | 4 |
| | 12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations. | | |

## ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

A.  A Cancellation Condition is added as follows:

CANCELLATION

1.  The **Named Insured** shown in the Declarations may cancel this Policy by mailing advance written notice of cancellation to the Insurer.

2.  The Insurer may cancel this Policy by mailing to the **Named Insured** written notice stating the reason for cancellation. If the Insurer cancels for nonpayment of premium, the Insurer will mail the notice at least 10 days prior to the effective date of cancellation.

3.  If this Policy has been in effect for more than 60 days or is a renewal or continuation Policy, the Insurer may cancel only for one or more of the following reasons:

    a.  Nonpayment of premium;

    b.  Certification of the Director of Insurance of the loss of reinsurance by the Insurer that provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

    c.  A determination by the Director of Insurance that the continuation of the Policy could place the Insurer in violation of the insurance laws of this State.

4.  Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

5.  If this Policy is cancelled, the Insurer will send the **Named Insured** any premium refund due. If the Insurer cancels, the refund will be pro rata. If the **Named Insured** cancels, then the return premium will be computed at .90 of the pro rata unearned premium. The cancellation will be effective even if the Insurer has not offered a refund.

B.  When The Insurer Does Not Renew Condition is added as follows:

If the Insurer decides not to renew or continue this Policy, the Insurer will mail the **Named Insured** and the **Named Insured's** agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the **Policy Period**. If the Insurer offers to renew or continue and the **Named Insured** does not accept, this Policy will terminate at the end of the current **Policy Period**. Failure to pay the required renewal or continuation premium when due shall mean that the **Named Insured** has not accepted the Insurer's offer.

If the Insurer fails to mail proper written notice of nonrenewal and the **Named Insured** obtains other insurance, this Policy will end on the effective date of that insurance.

# E N D O R S E M E N T

C.  Mailing Of Notices is added as follows:

The Insurer will mail cancellation and nonrenewal notices to the **Named Insured,** and the agent or broker, at the last addresses known to the Insurer. The Insurer shall maintain proof of mailing of a cancellation or nonrenewal notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.

_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Date of Issuance:  June 14, 2017
Endurance American Insurance Company

Policy Form: EML 0201 0712
Endorsement Form: EML 1000 1112 IL

# E N D O R S E M E N T

| | | |
|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: DOX10007587102 |
| Endorsement Effective Date: | June 01, 2017 | Endorsement Number: 5 |

(12:01 AM Standard Time at the address of the
**Named Insured** as shown in the Declarations)

## ILLINOIS CHANGES

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed that:

A.  Paragraph 4. of Item B., Underlying Policies, of Section II, Terms and Conditions, is replaced by the following:

4.  If any **Underlying Policy(ies)** is canceled or terminated during the **Policy Period** including the Discovery Period if exercised, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained. To the extent the terms, conditions or limitations of any of the **Underlying Policy(ies)** are changed, this Policy shall become subject to such changes only if and to the extent the Insurer agrees to such changes in writing and the **Insureds** pay any additional premium reasonably required by the Insurer for such changes.

_(signature) Joe Kelly III_

_____
Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

| | | |
|---|---|---|
| Date of Issuance:  June 14, 2017 | | Policy Form: EML 0201 0712 |
| Endurance American Insurance Company | Page 1 of 1 | Endorsement Form: EML 1113 1112 IL |

## E N D O R S E M E N T

**Named Insured**:  Akorn, Inc.                     Policy Number:  DOX10007587102

Endorsement                                                    Endorsement
Effective Date:  June 01, 2017                        Number:              6
                (12:01 AM Standard Time at the address of the
                **Named Insured** as shown in the Declarations)

### AMENDATORY INCONSISTENCY

It is agreed that:

To the extent there is an inconsistency between an endorsement to this Policy which is labeled as a state amendatory endorsement and any other term or condition of this Policy, then to the extent permitted by law, regulation or State Insurance Department Bulletin or Directive, the Insurer shall apply such terms and conditions of either the state amendatory endorsement or the Policy which are more favorable to the Insured.

_Joe Kelly III_
_____
Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

## E N D O R S E M E N T

| | | | |
|---|---|---|---|
| **Named Insured**: | Akorn, Inc. | Policy Number: | DOX10007587102 |
| Endorsement Effective Date: | June 01, 2017 | Endorsement Number: | 7 |

12:01 AM Standard Time at the address of the **Named Insured** as shown in the Declarations.

## DISCLOSURE PURSUANT TO THE TERRORISM RISK INSURANCE ACT

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

It is agreed that:

**SCHEDULE:  Terrorism Premium (Certified Acts): $0**

**A.**  **Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium (shown in the Schedule above), if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act as amended and reauthorized. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement.

**B.**  **Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% in 2015 and decreases its share 1% each calendar year to a total of 80% in 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.**  **Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# E N D O R S E M E N T

_Joe Kelly III_

---

Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Notice includes copyrighted material of Insurance Services Office, Inc. with its permission.

# E N D O R S E M E N T

**Named Insured**: Akorn, Inc.

Policy Number: DOX10007587102

Endorsement
Effective Date: June 01, 2017
12:01 AM Local Time at the address of
the **Named Insured** as shown in the
Declarations.

Endorsement
Number: 8

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer has met its deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

# E N D O R S E M E N T

_____

Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# POLICYHOLDER NOTICE

## U. S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.  **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons".  This list can be located on the United States Treasury's website – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# Management Liability

303 West Madison, Suite 1800
Chicago, IL  60606

**Named Insured**:  Akorn, Inc.

Policy Number:    DOX10007587102

Endorsement
Effective Date:    June 01, 2018
(12:01 AM Standard Time at the address of the
**Named Insured** as shown in the Declarations)

Endorsement
Number:    9

## POLICY PERIOD EXTENSION

It is agreed that:

1.  ITEM 2. of the Declarations, "**Policy Period**", is deleted in its entirety and replaced with the following:

    ITEM 2.    **Policy Period**:  From: June 01, 2017          To: September 01, 2019
    (12:01 AM Standard Time at the address stated in Item 1.)

2.  The **Limit of Liability** stated in Item 3. of the Declarations shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made during the extended **Policy Period** set forth in paragraph 1. above.

3.  Item 5. of the Declarations, Premium, is deleted and replaced with the following:

    ITEM 5.    **Premium**:  $ 204,088

_Joe Kelly III_

Authorized Representative

This endorsement does not change any other provision of the **Policy**. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**Management Liability**

303 West Madison, Suite 1800
Chicago, IL  60606

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

# ENDORSEMENT

**Named Insured**:  Akorn, Inc.

Policy Number:    DOX10007587102

Endorsement
Effective Date:    June 1, 2018
(12:01 AM Standard Time at the address of the
**Named Insured** as shown in the Declarations.)

Endorsement
Number:    10

## GRANTING DISCOVERY PERIOD/RUN-OFF ENDORSEMENT

It is agreed that:

In consideration of an additional premium of $243,474 which is fully earned as of the Effective Date of this endorsement, it is hereby understood and agreed that this Policy is hereby amended as follows:

1.  ITEM 2 of the Declarations is deleted in its entirety and replaced with the following:

    ITEM 2 **Policy Period**:        From:   Six Years                    To: TBD
    (12:01 AM Standard Time at the address stated in Item 1.)

2.  The **Limit of Liability** stated in Item 3 of the Declarations shall be the maximum aggregate liability of the Insurer under this Policy with respect to all Claims first made during the extended Policy Period set forth in paragraph 1 above. This extended **Policy Period** does not reinstate or increase the **Limit of Liability** stated in Item 3 of the Declarations.

3.  The Insurer shall not be liable for Loss on account of any Claim for Wrongful Acts committed, attempted or allegedly committed or attempted after the Effective Date of this endorsement.

This Policy may not be canceled by the **Named Insured**, any other **Insured** or the Insurer, except that the Insurer may cancel this Policy for failure to pay a premium when due by giving written notice of such cancellation to the **Named Insured**.  Such cancellation shall be effective as of the date set forth in such notice, which shall be not less than fifteen (15) days after such notice, unless the premium is paid before such effective date.

_____
                Authorized Representative

This endorsement does not change any other provision of the Policy.  The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

# ENDORSEMENT

**Named Insured**:  Akorn, Inc.

Policy Number:    DOX10007587102

Endorsement
Effective Date:    June 1, 2018
(12:01 AM Standard Time at the address of the
**Named Insured** as shown in the Declarations)

Endorsement
Number:    11

## GENERAL CHANGE MANUSCRIPT
## (FULLY EARNED PREMIUM ENDORSEMENT)

It is agreed that:

The premium for this Policy shall be fully earned as of June 1, 2018.

_____
            Authorized Representative

This endorsement does not change any other provision of the Policy. The title and any headings in this endorsement are solely for convenience and do not affect its meaning.

Policy Form: EML 0201
Endorsement Form: IL 1001 0712



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

July 31, 2018

Mr. Derek  Van der Voort
ARTHUR J GALLAGHER RISK MANAGEMENT SERVICES, INC
300 S RIVERSIDE PLAZA STE 1900
CHICAGO, IL 60606

Re:    Akorn, Inc.
       Excess Insurance Policy
       Insurance Contract 652005381
       Expiration Date 09/01/2019
       CNA Customer Number 200680

Dear Derek:

We are pleased to enclose the proposed insurance contract for Akorn, Inc..  Please review this proposed insurance contract carefully to ensure that it fulfills the agreed-upon specifications.  Should you detect any problem, please contact me within five (5) business days of the receipt of this proposed insurance contract to advise us of any concerns or questions.

**Please note that this proposed insurance contract is issued in consideration of payment of the quoted premium. If this condition is not fulfilled within 30 days of the proposed effective date of coverage, coverage will not take effect, and we will close our file on this matter without further notice to you or Akorn, Inc..**

If commissions or other compensation are payable hereunder, Insurance Producer will comply with all applicable federal and state laws, rules, regulations and/or orders governing disclosure by an agent, broker or producer to an insured or prospective insured of commissions or other compensation.

Please note that CNA offers a broad array of industry leading products.  To learn more about these products, please visit our website at www.cnapro.com.

We appreciate the opportunity to do business with Akorn, Inc. and with you.  If you should have any comments, questions, or concerns, please do not hesitate to contact me.

Sincerely,

Cole A Hodgin
Underwriting Consulting Director
(312) 822-5444
cole.hodgin@cna.com

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Policy CvLtr Ed  9-05



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**DECLARATIONS**
**EXCESS INSURANCE POLICY**

| ACCOUNT NUMBER | 200680 |
|---|---|
| COVERAGE PROVIDED BY (hereafter Insurer) | Continental Casualty Company |
| POLICY NUMBER | 652005381 |

| Item 1: **NAMED ENTITY AND PRINCIPAL ADDRESS** | **PRODUCER** |
|---|---|
| Akorn, Inc. 1925 W Field CT STE 300 Lake Forest, IL  60045 | ARTHUR J GALLAGHER RISK MANAGEMENT SERVICES, INC 300 S RIVERSIDE PLAZA STE 1900 CHICAGO, IL  60606 |
| Attn: | Derek  Van der Voort |

Item 2.  **Policy Period**:   6/1/2018  To  9/1/2019

12:01 a.m. Standard Time at the Principal Address stated in Item 1.

Item 3.  **Limit of Liability**

$5,000,000 maximum aggregate Limit of Liability under the Policy

Item 4.  Schedule of **Underlying Insurance:**
A.  **Followed Policy**

| Name of Carrier | Policy No | Limits | Ded/Ret Amount |
|---|---|---|---|
| XL Specialty Insurance | US00075683DO17A | $10,000,000 | $2,500,000 |

B.  **Underlying Excess Policies**:    *** SEE ATTACHED SCHEDULE ***

Item 5.  Policy Premium    $170,000

Item 6.  Notices of Claims:

CNA  – Claims Reporting
P.O Box 8317
Chicago, IL 60680-8317
Email address: SpecialtyNewLoss@cna.com
Fax Number: 866-773-7504

All other Notices:

Open Brokerage Global Specialty Lines
CNA Insurance Company
125 Broad Street – 8th Floor
New York, NY 10004

Item 7.  Endorsements forming a part of this Policy at inception:

| | | |
|---|---|---|
| GSL-23282-IL | 2010-12-01 | Amendatory Endorsement Illinois |
| GSL-40799-XX | 2011-08-01 | Fully Earned Premium Rider |
| GSL-29520-XX | 2011-03-01 | State Amendatory Inconsistent |
| GSL-55119-XX | 2012-01-01 | Prior Or Pending Exclusion With Separate Dates Applicable To Increased Limits |
| GSL-7195-XX | 2010-06-01 | Specific Litigation Exclusion |
| CNA-89109-XX | 2017-11-01 | Amend Changes to Underlying Insurance/Depletion of Sub-Limits Section Endorsement (Insurer Agrees to in Writing) |
| CNA-81753-XX | 2015-03-01 | Cap On Losses From Certified Acts Of Terrorism Endorsement |
| CNA-81758-XX | 2015-03-01 | Notice Offer Of Terrorism Coverage Disclosure Of Premium Confirmation Of Acceptance |

These Declarations, along with the completed and signed Application, the Policy, and any written endorsements attached thereto shall constitute the contract between the Insureds and the Insurer.

Authorized Representative:

Date:    July 31, 2018

G-22076-B(c)  (ED. 06-10)

HIGHLY CONFIDENTIAL
Turner Falk
© CNA  All Rights Reserved.
Aug 05, 2020 14:29

**UNDERLYING EXCESS POLICY SCHEDULE**

| Name of Carrier | Policy No. | Limits | Excess of |
|---|---|---|---|
| Allied World National Assurance Company | 0307-5817 | $10,000,000 | $10,000,000 |
| Endurance American Insurance Company | DOX10007587102 | $10,000,000 | $20,000,000 |
| Illinois National Insurance Company | 01-529-45-16 | $5,000,000 | $30,000,000 |

G-22076-B(c)  (ED. 06-10)

© CNA  All Rights Reserved.



EXCESS INSURANCE POLICY

**Words defined in the Followed Policy have the same meaning in this Policy even if not defined herein. In consideration of the payment of the premium and in reliance upon the applications submitted to the Insurer or any insurer of the Underlying Insurance, and any other material submitted in connection with such applications (all of which are deemed attached hereto and made a part hereof) the Insurer and the Insureds agree as follows:**

## I.  FOLLOW FORM EXCESS COVERAGE

The Insurer shall provide coverage in accordance with all of the terms, conditions and limitations (including, but not limited to the exclusions and notice requirements) of the policy scheduled in Item 4.A. of the Declarations (hereafter "**Followed Policy**") except as otherwise set forth herein. Coverage hereunder shall attach only after all of the aggregate Limits of Liability, as set forth in Item 4. of the Declarations have been exhausted through payment of covered loss under all policies scheduled in Item 4. of the Declarations (hereafter "**Underlying Insurance**") by or on behalf of the insurers of such **Underlying Insurance**, or by or on behalf of the Insureds.  The risk of uncollectibility of any **Underlying Insurance** (in whole or in part), whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insureds and is not insured by or assumed by the Insurer.

## II.  LIMIT OF LIABILITY

The amount set forth in Item 3. of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer for all loss under this Policy, regardless of the number of claims made against the Insureds or the time of payment and regardless of whether or not an extended reporting period applies.  If the Limit of Liability under this Policy is exhausted by payment of loss, the Insurer's obligations under this Policy shall be deemed completely fulfilled and extinguished.

## III.  CHANGES TO UNDERLYING INSURANCE/DEPLETION OF SUB-LIMITS

If, subsequent to the inception date of this Policy, there is a change to any **Underlying Insurance** which expands coverage, then this Policy shall become subject to such change only if the Insurer agrees thereto by written endorsement to this Policy.  If any loss under any **Underlying Insurance** is subject to a sub-limit, then this Policy provides no coverage excess of such **Underlying Insurance** sub-limit, but the **Underlying Insurance** shall be deemed depleted by payment of any such sub-limit.

## IV.  INSURER RIGHTS/COOPERATION CLAUSE

The Insurer has the same rights and protections as has the insurer of the **Followed Policy** and has the right, but not the obligation, at its sole discretion, to elect to participate in the investigation, settlement, prosecution or defense of any claim reasonably likely to attach to and be covered under this Policy or any **Underlying Insurance,** even if the **Underlying Insurance** has not been exhausted. The Insureds shall cooperate with the Insurer in such investigation, settlement, prosecution or defense and shall do nothing that prejudices the Insurer's position or rights of recovery.

## V.  NOTICES

Where notice is permitted or required by the **Followed Policy**, the Insureds have the same rights and obligations to notify the Insurer under this Policy, except that such notice shall be given to the Insurer at the applicable address specified in Item 6. of the Declarations.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman                                                                                    Secretary

G-22075-B (Ed. 06-10)

© CNA  All Rights Reserved.



**AMENDATORY ENDORSEMENT - ILLINOIS**

It is hereby agreed that the following amendments are made to the Excess Insurance Policy [Form G-22075-B]:

1.    The policy is amended by the addition of the following:

### CANCELLATION AND NON-RENEWAL

A.    **CANCELLATION**

1.    The Insureds may cancel this Policy at any time. To do so, the Insured must return this Policy to the Insurer or any of its authorized representatives, indicating the effective date of cancellation; or provide a written notice to the Insurer, stating when the cancellation is to be effective.

2.    If this Policy has been in effect for less than sixty (60) days the Insurer may cancel this Policy for any reason by mailing written notice to the Insured, at the last mailing address known to the Insurer, at least:

a.    ten (10) days before the effective date of cancellation, if the Insurer cancels for nonpayment of premium; or

b.    thirty (30) days before the effective date of cancellation, if the Insurer cancels for any other reason.

3.    If this Policy has been in effect for sixty (60) days or more, the Insurer may not cancel this Policy unless such cancellation is based on one or more of the following reasons:

a.    Nonpayment of premium.

b.    This Policy was obtained through a material misrepresentation.

c.    Any Insured violated the terms and conditions of this Policy.

d.    The risk originally accepted has measurably increased.

e.    Certification to the Director of the loss of reinsurance by the Insurer which provided coverage to the insurer for all or a substantial part of the underlying risk insured.

f.    A determination by the Director that the continuation of this Policy could place the Insurer in violation of the insurance laws of this State.

g.    Cancellation of any of the **Underlying Insurance** where; such cancellation is based on any of the reasons noted above; and such **Underlying Insurance** is not replaced without lapse.

The Insurer will mail written notice to the Insured, at the last mailing address known to the Insurer, at least:

i.    ten (10) days before the effective date of cancellation, if the Insurer cancels for the reason set forth in subsection 3.a.; or

ii.    sixty (60) days before the effective date of cancellation, if the Insurer cancels for any reason set forth in subsections 3.b. through 3.g.

4.    The notice will state the actual reason for the cancellation.

5.    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6.    Proof of mailing will be sufficient proof of notice.

7.    An exact and unaltered copy of such notice will also be sent to the Insured's broker, if known, or the agent of record and to the mortgagee or lienholder, at the last mailing address known to the Insurer.

GSL23282IL (12-10)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No:    652005381
Endorsement No:    1
Effective Date:    06/01/2018

© CNA  All Rights Reserved.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**B.    NON-RENEWAL**

1.    The Insurer can non-renew this Policy by mailing written notice to the Insured, at the last mailing address known to the Insurer, at least sixty (60) days prior to the end of the policy period.

2.    The notice of non-renewal will state the actual reason for non-renewal.

3.    Proof of mailing will be sufficient proof of notice.

4.    An exact and unaltered copy of such notice will also be sent to the Insured's broker, if known, or the agent of record and to the mortgagee or lienholder, at the last mailing address known to the Insurer.

**C.    CONDITIONAL RENEWAL**

1.    The Insurer may not increase the renewal premium by 30% or more nor impose changes in deductible or coverage that materially alter the policy, unless the Insurer has mailed to the Insured, at the last mailing address known to the Insurer, written notice of such increase or change at least sixty (60) days prior to the renewal or anniversary date.

2.    If notice is mailed, proof of mailing will be sufficient proof of notice.

3.    An exact and unaltered copy of such notice will also be sent to the Insured's broker, if known, or the agent of record and to the mortgagee or lienholder, at the last mailing address known to the Insurer.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

Policy No:    652005381
Endorsement No:    1
Effective Date:    06/01/2018

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
© CNA  All Rights Reserved.
Aug 05, 2020 14:29



**FULLY EARNED PREMIUM RIDER**

In consideration of the premium paid, it is understood and agreed that the Section titled **CONDITIONS**, paragraph **O. TERMINATION OR CANCELLATION OF BOND,** is deleted in its entirety and replaced with the following:

**O.     TERMINATION OR CANCELLATION**

1.     The premium paid for this Bond shall be deemed fully earned at the inception of this Bond.

2.     This Bond may not be canceled by the Insurer except for failure to pay premium when due.

3.     This Bond terminates in its entirety upon occurrence of any of the following:

(1)     the receipt by the Insurer of a written notice from the **Insured Entity** of its desire to cancel this bond;

(2)     immediately upon the taking over of the **Insured Entity** by a receiver or other liquidator or by State or Federal officials;

(3)     immediately upon the taking over of the **Insured Entity** by another institution;

(4)     immediately upon the exhaustion of the Aggregate Limit of Liability; or

(5)     immediately upon the expiration of the **Bond Period** as set forth in Item 2 of the Declarations.

The mailing of any notice as set forth herein shall be sufficient proof of notice. The effective date of cancellation stated in any such notice, or termination, shall become the end of the **Bond Period**, notwithstanding anything to the contrary stated in Item 2 of the Declarations.

Termination or cancellation of this Bond terminates liability for any **Loss** which is discovered after termination or the effective date of cancellation, except as provided in Section **VI. INSURED SPONSORED PLANS**.

All other terms and conditions of the Bond remain unchanged.

This rider, which forms a part of and is for attachment to the Bond issued by the designated Insurers, takes effect on the effective date of said Bond at the hour stated in said Bond, unless another effective date is shown below, and expires concurrently with said Bond.

GSL40799XX (8-11)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No:     652005381
Endorsement No:    2
Effective Date:    06/01/2018

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

© CNA  All Rights Reserved.



**STATE AMENDATORY INCONSISTENT**

In consideration of the premium paid for this Policy, it is understood and agreed that in the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy, then, where permitted by law, the Insurer shall apply those terms and conditions of either the amendatory endorsement or the Policy which are more favorable to the Insureds.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL29520XX (3-11)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No: 652005381
Endorsement No: 3
Effective Date: 06/01/2018

© CNA  All Rights Reserved.



**PRIOR OR PENDING EXCLUSION
WITH SEPARATE DATES APPLICABLE TO INCREASED LIMITS**

In consideration of the premium paid for this Policy, it is understood and agreed that the following new exclusion is added to the Policy:

### PRIOR OR PENDING EXCLUSION

This Policy follows the Prior or Pending Exclusion of the **Followed Policy**, with the addition of the following new language:

In connection with any claim made against an Insured based upon or arising out of arising out such prior or pending matters, which was pending on or during the time periods set forth below, the limit of liability for such claim shall be equal to the limit of liability for that time period as set forth below with respect to the applicable insuring agreement. The Limits of Liability set in the below table are sublimits of and erode the available aggregate Limit of Liability on the Declarations and in no way increase the Insurer's maximum Limit of Liability under this Policy.

Directors & Officers Liability Side A Insuring Agreement:

| Prior or Pending Time Period | Sublimit of Liability |
| --- | --- |
| 4/24/2011 | $5,000,000 excess of $35,000,000 |

All other Insuring Agreements:

| Prior or Pending Time Period | Sublimit of Liability |
| --- | --- |
| 6/1/2018 | $5,000,000 excess of $35,000,000 |

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL55119XX (1-12)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No:   652005381
Endorsement No:   4
Effective Date:   06/01/2018

© CNA  All Rights Reserved.



**SPECIFIC LITIGATION EXCLUSION**

In consideration of the premium charged, it is understood and agreed that notwithstanding any provisions of the **Underlying Insurance**, the Insurer shall not be liable to make payment for loss in connection with any claim based upon, arising out of, relating to, directly or indirectly resulting from, or in consequence of, or in any way involving the litigation specified below or any fact, circumstance, situation, transaction or event underlying or alleged in such litigation.

Specified Litigation: Matters Involving the Fresenius Acquisition of Akorn, Inc.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL7195XX (6-10)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No: 652005381
Endorsement No:  5
Effective Date:  06/01/2018

© CNA  All Rights Reserved.



**AMEND CHANGES TO UNDERLYING INSURANCE/DEPLETION OF SUB-LIMITS SECTION
ENDORSEMENT
(INSURER AGREES TO IN WRITING)**

It is understood and agreed that the section entitled **CHANGES TO UNDERLYING INSURANCE/DEPLETION OF SUB-LIMITS**, the first sentence is deleted in its entirety and is replaced with the following:

> If, subsequent to the inception date of this Policy, there is a change to any **Underlying Insurance**, then this Policy shall become subject to such change only if the Insurer agrees thereto in writing provided such agreement shall not be unreasonably withheld.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

CNA89109XX (11-17)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No: 652005381
Endorsement No: 6
Effective Date: 06/01/2018

© CNA  All Rights Reserved.



# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT

It is understood and agreed as follows:

Whenever used in this endorsement, 1) "we" means the insurer listed on Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable.

## A.    Cap on Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as extended and reauthorized (the "Act"). The criteria contained in the Act for a "certified act of terrorism" include the following:

**1.**    The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.**    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## B.    Application of Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

CNA81753XX (3-15)
Page 1
Continental Casualty Company
Insured Name: Akorn, Inc.

Policy No:    652005381
Endorsement No:    7
Effective Date:    06/01/2018

© CNA  All Rights Reserved.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

**Policy Holder Notice – Countrywide**

# IMPORTANT INFORMATION

## NOTICE – OFFER OF TERRORISM COVERAGE; DISCLOSURE OF PREMIUM

**THIS NOTICE DOES NOT FORM A PART OF THE POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

As used herein, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable.

You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally, the Act provided that to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act removed the requirement that the act of terrorism must be committed by or on behalf of a foreign interest, and now certified acts of terrorism may encompass, for example, a terrorist act committed against the United States government by a United States citizen, when the act is determined by the federal government to be "a certified act of terrorism."

In accordance with the Act, we are required to offer you the ability to purchase coverage for losses resulting from an act of terrorism that is certified under the federal program. The other provisions of this policy, including nuclear, war or military action exclusions, will still apply to such an act.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The Department of the Treasury will pay a share of terrorism losses insured under the federal program. In 2015, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention, and shall decrease by 1 percentage point per calendar year until equal to 80%.

LIMITATION ON PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29

Copyright CNA All Rights Reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:29



**Policy Holder Notice – Countrywide**

Further, this coverage is subject to a limit on our liability pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

CONFIRMATION OF ACCEPTANCE OF COVERAGE

In accordance with the Act, we offered you coverage for losses resulting from an act of terrorism that is certified under the federal program. This notice confirms that you have chosen to accept our offer of coverage for certified acts of terrorism. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage, if any, is shown separately on the Declarations or the Certificate of Insurance, as applicable.



Copyright CNA All Rights Reserved.

| Policy Number: | **US00075683DO17A** | | ☐ **Greenwich Insurance Company** |
|---|---|---|---|
| Renewal of Number: | US00075683DO16A | | ☒ **XL Specialty Insurance Company** |

Members of the XL America Companies

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

**MANAGEMENT LIABILITY AND
COMPANY REIMBURSEMENT
INSURANCE POLICY DECLARATIONS**

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

---

**Item 1.**     **Name and Mailing Address of Parent Company:**

Akorn, Inc.
1925 West Field Court, Suite 300
Lake Forest, IL  60045

---

**Item 2.**     **Policy Period:**     **From:**     June 01, 2017     **To:**     June 01, 2018

**At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**     **Limit of Liability:**

$10,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**     **Retentions:**

| | | |
|---|---|---|
| $0 | each **Insured Person** under INSURING AGREEMENT I (A) |
| $2,500,000 | each **Claim** under INSURING AGREEMENT I (B) |
| $2,500,000 | each **Claim** under INSURING AGREEMENT I (C) |

---

**Item 5.**     **Optional Extension Period:**

Length of Optional Extension Period:

(Either one year or two years after the end of the **Policy Period**, at the election of the **Parent Company**)

Premium for Optional Extension Period:     One Year:  $560,000.00

Two Years:  N/A

Three Years:  N/A

---

**Item 6.**     **Pending and Prior Litigation Date:**     April 24, 2002

---

**Item 7.**     **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

## MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT POLICY DECLARATIONS

**Item 8.    Premium:**

Taxes, Surcharges or Fees:                    $0.00
Total Policy Premium:                          $320,000.00

**Item 9.    Policy Forms and Endorsements Attached at Issuance:**

DO 71 00 09 99   XL 82 01 07 07   XL 80 24 03 03   DO 72 06 02 00   DO 83 27 07 01   DO 83 125 08 06
DO 83 126 08 06   DO 83 133 12 06   DO 80 395 01 07   DO 80 213 02 03   XL 83 07 01 00
DO 80 562 06 10   DO 83 130 08 06   DO 80 17 05 00   DO 83 09 06 00   DO 80 284 08 04   DO 80 02 02 10
DO 80 342 10 05   DO 80 376 11 06   XL 80 02 03 00   DO 80 436 08 07   DO 83 12 08 00
DO 80 503 11 08   DO 80 142 10 01   DO 80 123 06 01   DO 80 46 07 00   DO 80 129 07 01
DO 80 357 05 06   DO 80 504 12 08   DO 80 286 08 04   DO 80 559 06 10   Manuscript 194 07 01
Manuscript 7260 07 07   XL 83 85 08 08   DO 80 289 09 04   DO 80 717 10 15   DO 80 627 05 12
DO 80 241 11 03   DO 80 05 03 00   DO 80 567 07 10   DO 80 578 11 10   DO 80 480 06 08
XL 80 72 06 13   XL 80 74 07 13

Countersigned: _____    By: _____
                        Date                                    Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.                        Theresa M. Morgan
President                                      Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.                        Theresa M. Morgan
President                                      Secretary

**XL Specialty Insurance Company**

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

_____

Joseph Tocco
President

_____

Toni Ann Perkins
Secretary

LAD 400 0915 XLS

© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed.  As defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  However, your policy may contain other exclusions that may affect your coverage.  The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **US00075683DO17A**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons*.  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government.  Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.* This list can be found on the U.S. Department of the Treasury's web site - http://www.treasury.gov/resource-center/sanctions/Programs/Pages/iran.aspx, see List of CISADA and NDAA Prohibitions or Conditions

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 0914

©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The XL Catlin insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

*   Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
*   Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;
*   Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

PN CW 02 1015

© 2015 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;

PN CW 02 10 15

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

<u>Violation of the Privacy Policy</u>

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.



PN CW 02 10 15

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

PN CW 01 0915

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New York** | **General: All applications for commercial insurance, other than automobile insurance**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance**: Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

PN CW 01 0915

© 2015 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| Rhode Island | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Tennessee | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| Utah | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**ILLINOIS**

This notice is to advise you if you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

FOR INFORMATION, OR TO MAKE A COMPLAINT, CALL:

1-800-622-7311
XL CATLIN
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040

You may also contact the Public Service Division of the Department of Insurance at the following address:

Illinois Department of Insurance
Consumer Division or Public Services Section
320 W. Washington Street
Springfield, IL 62767

Toll-free: 1-866-445-5364
TDD 217/524-4872 / Fax: 217/558-2083

http://mc.insurance.illinois.gov/messagecenter.nsf

PN IL 02 1015    © 2015 X.L. America, Inc.  All Rights Reserved.    Page 1 of 1
May not be copied without permission.

**Endorsement No.: 1**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

**Endorsement No.: 2**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 8. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

DO 72 06 02 00

**Endorsement No.: 3**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ILLINOIS AMENDATORY ENDORSEMENT

1.      Section VI. GENERAL CONDITIONS (C) OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES (1) is deleted and replaced by the following:

(1)      Except as provided in Section (C)(2) below, if the Insureds have insurance provided by other companies against a Loss covered by this Policy, the Insurer shall not be liable under this Policy for a greater proportion of such Loss than the Limit of Liability stated in the Declarations bears to the total applicable Limit of Liability for all valid and collectible insurance against such Loss.

2.      Section VI.  GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (2) is amended by the addition of the following:

The Insurer will also mail a copy of notice of cancellation to the Parent Company's broker and any mortgagee or lienholder, if known.

3.      Section VI.  GENERAL CONDITIONS (E) CANCELLATION AND RENEWAL OF COVERAGE (3) is amended by the addition of the following:

The notice of non-renewal will state the reason for such non-renewal.  The Insurer will also mail a copy of the notice to the Parent Company's agent of record or broker and any mortgagee or lienholder, if known.

All other terms, conditions and limitations of this Policy remain unchanged.

DO 83 27 07 01

**Endorsement No.: 4**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND INSURED vs. INSURED EXCLUSION

In consideration of the premium charged, Section III Exclusions (G) of the Policy is amended to read in its entirety as follows:

"(G)    by, on behalf of, or in the name or right of, the Company or any Insured Person, except and to the extent such Claim:

(1)    is brought derivatively by a security holder of the Company who, when such Claim is made and maintained is acting independently of, and without the active solicitation, assistance, participation or intervention of an Insured Person or the Company;

(2)    is brought by the Bankruptcy Trustee or Examiner of the Company or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the Company;

(3)    any Claim in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an Insured Person which is part of or results directly from a Claim which is not otherwise excluded by the terms of this Policy; or

(4)    is an Employment Practices Claim;"

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 125 08 06

**Endorsement No.: 5**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought and maintained by an Insured Person:

    (a)    who has not served as a director, officer, member of the Board of Managers, or employee of the Company for at least two (2) years prior to the date such Claim is first made; and

    (b)    who is acting independently of, and without the solicitation, assistance, participation or intervention of an Insured Person or the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 126 08 06

**Endorsement No.: 6**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought and maintained in a non-common law jurisdiction outside the United States of America, including its territories and possessions.

All other terms, conditions and limitations of this Policy shall remain unchanged.



DO 83 133 12 06

**Endorsement No.: 7**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought by a creditors committee of the Company in the event such Company files for relief under Title 11 of the United States Code.

All other terms, conditions and limitations of this Policy shall remain unchanged.



DO 80 395 01 07

**Endorsement No.: 8**                          **Effective: June 01, 2017**
**Named Insured: Akorn, Inc.**                  **12:01 A.M. Standard Time**
**Policy No.: US00075683DO17A**                 **Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF LOSS ENDORSEMENT

In consideration of the premium charged, Section II Definitions (M) of the Policy is amended to read in its entirety as follows:

"(M)    'Loss' means damages, judgments, settlements or other amounts (including punitive, exemplary or multiplied damages, where insurable by law) and Defense Expenses in excess of the Retention that the Insured is legally obligated to pay. Loss will not include

(1)      fines, penalties or taxes imposed by law;

(2)      taxes or wages; or

(3)      matters which are uninsurable under the law pursuant to which this Policy is construed.

NOTE:  With respect to judgments in which punitive, exemplary or multiplied damage are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law.  If, based on the written opinion of counsel for the Insured, punitive damages are insurable under applicable law, the Insurer will not dispute the written opinion of the counsel for the Insured."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 213 02 03

**Endorsement No.: 9**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF SECURITIES CLAIM ENDORSEMENT

In consideration of the premium charged, Section II Definitions (Q) of the Policy is amended to read in its entirety as follows:

"(Q)     'Securities Claim' means a Claim, other than an administrative or regulatory proceeding against or investigation of a Company, made against any Insured:

    (1)     for a violation of any federal, state, local regulation, statute or rule (whether statutory or common law) regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is:

        (a)     brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the purchase or sale of, or offer to purchase or sell, securities of the Company; or

        (b)     brought by a security holder of a Company with respect to such security holder's interest in securities of such Company; or

    (2)     brought derivatively on behalf of the Company by a security holder of such Company.

Notwithstanding the foregoing, the term 'Securities Claim' shall include an administrative or regulatory proceeding against a Company, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 213 02 03

XL 83 07 01 00

**Endorsement No.: 10**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SPECIFIED CLAIMS EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Loss, including Defense Expenses, in connection with any proceeding set forth below, or in connection with any Claim based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any such proceeding or any fact, circumstance or situation underlying or alleged therein:

Those legal proceedings described in Item 3. Of the Form 10K annual report pursuant to Section 13r 15(d) of e Securities Exchange Act of 1934 for year ended December 31, 2001.

All other terms, conditions and limitations of this Policy shall remain unchanged.



XL 83 07 01 00

DO 80 562 06 10

**Endorsement No.: 11**                                          **Effective: June 01, 2017**
**Named Insured: Akorn, Inc.**                               **12:01 A.M. Standard Time**
**Policy No.: US00075683DO17A**                      **Insurer: XL Specialty Insurance Company**

# SECTION 11, 12 & 15 ENDORSEMENT

In consideration of the premium charged:

(1)     Notwithstanding Endorsement No. 8. to this Policy, Section II Definition (M)(3) of the Policy is amended to read in its entirety as follows:

"(3)     matters which are uninsurable under the law pursuant to which this Policy is construed; provided that the Insurer will not assert that the portion of any settlement in a Claim arising from an initial or subsequent public offering of the Company's securities constitutes uninsurable loss due to the alleged violations of Section 11 and/or 12 of the Securities Act of 1933 as amended (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933)."

(2)     Section III Exclusion (F)(2) of the Policy will not apply to allegations in a Claim asserted against an Insured under Section 11 and/or 12 of the Securities Act of 1933 as amended arising out of an initial or subsequent public offering of the Company's securities (including alleged violations of Section 11 and/or 12 of the Securities Act of 1933 by a Controlling Person pursuant to Section 15 of the Securities Act of 1933).

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 562 06 10                                                                                         Page 1 of 1
© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**DO 83 130 08 06**

**Endorsement No.: 12**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCLUSION (G) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (G) of the Policy shall not apply to the extent a Claim is brought by an employee or an Insured Person of the Company pursuant to any federal or state whistleblower protection statute or any rule or regulation promulgated thereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

DO 80 17 05 00

**Endorsement No.: 13**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ADD COVERAGE FOR COSTS INCURRED IN INVESTIGATING AND EVALUATING SHAREHOLDER DERIVATIVE DEMANDS

(1)     In addition to the coverage otherwise provided under this Policy, but still subject to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, the Insurer shall pay on behalf of the Company all Investigation Costs resulting solely from any Shareholder Derivative Demand first made during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act committed or attempted, or allegedly committed or attempted, by any Insured Person.

(2)     "Investigation Costs" mean reasonable fees and expenses of attorneys and experts retained by the Company, or by its board of directors or any committee thereof, that are incurred by the Company in the Company's investigation or evaluation of a Shareholder Derivative Demand.  Investigation Costs will not include the Company's overhead expenses or any salaries, wages, fees or benefits of its directors, officers or employees.

(3)     "Shareholder Derivative Demand" means a written demand, made by one or more of the shareholders of the Company upon the Company's board of directors, for the Company to bring a civil proceeding in a court of law against an Insured Person.

(4)     The Insurer's maximum aggregate limit of liability under this Policy for Investigation Costs shall be $250,000, which amount shall be part of, and not in addition to, the Insurer's maximum aggregate Limit of Liability under this Policy as set forth in ITEM 3 of the Declarations.  Payment by the Insurer of Investigation Costs shall reduce the Limit of Liability.

(5)     The coverage provided under paragraph (1) above will be subject to the exclusions set forth in Section III of this Policy and to any exclusions that may be set forth in other endorsements to this Policy, and any references in those exclusions to Loss and Claims shall be deemed to refer instead to Investigative Costs and Shareholder Derivative Demands, respectively.

(6)     No retention will apply to Investigation Costs payable under paragraph (1) above.

(7)     It shall be the duty of the Company to investigate and evaluate any Shareholder Derivative Demand.

(8)     For purposes of the coverage provided under paragraph (1) above, all references in Sections V.C and VI to Loss and Defense Expenses shall be deemed to refer instead to Investigative Costs, and all references in Sections V.C and VI to Claims shall be deemed to refer instead to Shareholder Derivative Demands.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 83 09 06 00

**Endorsement No.: 14**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ERISA EXCLUSION

In consideration of the premium charged, Section III Exclusions (C) is deleted and replaced by the following:

(C)      for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulation promulgated thereunder or any similar, federal, state or local law or regulation;

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 284 08 04

| | |
|---|---|
| **Endorsement No.: 15** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

# AMEND GENERAL CONDITIONS (C)(1) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

"(1)    All Loss payable under this Policy will be specifically excess of and will not contribute with any other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy.  This Policy will not be subject to the terms of any other insurance policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 02 02 10

**Endorsement No.: 16**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person," as defined in Section II Definition (J)(1) of the Policy, shall include those individuals holding the following positions for the Company:

General Counsel

All other terms, conditions and limitations of this policy shall remain unchanged.

DO 80 342 10 05

**Endorsement No.: 17**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# AMEND DEFINITION OF APPLICATION ENDORSEMENT

In consideration of the premium charged, the term "Application" shall include all reports, statements, prospectuses and other materials filed by the Company with the Securities and Exchange Commission on or after that date which is one (1) year before the date of the Application but before the Inception Date set forth in ITEM 2 of the Declarations, and Section II DEFINITIONS (A) of the Policy will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

DO 80 376 11 06

**Endorsement No.: 18**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PRIORITY OF PAYMENTS

In consideration of the premium charged:

(1)    It is understood and agreed that if Loss, including Defense Expenses, shall be payable under more than one of the INSURING AGREEMENTS, then the Insurer shall, to the maximum extent practicable and subject at all times to the Insurer's maximum aggregate Limit of Liability as set forth in ITEM 3 of the Declarations, pay such Loss as follows:

    (a)    first, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under INSURING AGREEMENT (A);

    (b)    second, the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Company under INSURING AGREEMENT (B); and

    (c)    third, the Insurer shall make such other payments which the Insurer may be liable to make under INSURING AGREEMENT (C) or otherwise.

(2)    The bankruptcy or insolvency of any entity or organization entitled to coverage under this Policy or of any Insured Person will not relieve the Insurer of any of its obligations hereunder.   It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the Insured Persons.  Further, if a liquidation or reorganization proceeding is commenced (whether voluntarily or involuntarily) under Title 11 of the United States Code, as amended, or any similar state, local or foreign law ("Bankruptcy Law") by or against the Parent Company and/or any other entity or organization entitled to coverage under this Policy, then with respect to any covered Claim, the Insureds hereby:

    (a)    waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Bankruptcy Law; and

    (b)    agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

(3)    Nothing in this endorsement is intended, nor shall it be construed, to increase the Insurer's maximum aggregate Limit or Limits of Liability under this Policy as set forth in ITEM 3 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 02 03 00

**Endorsement No.: 19**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# WORLDWIDE ENDORSEMENT

In consideration of the premium charged:

(1)   Notwithstanding differences in the substantive and procedural laws of any foreign jurisdiction as compared to the United States federal and state laws, the Insurer agrees to provide coverage in foreign jurisdictions worldwide and agrees that it shall interpret the coverage provided by this Policy at least as broadly, and with the same intent of coverage, as if Loss had been sustained in the United States.

(2)   In the event that a jurisdiction in which any Insured(s) is doing business requires by law or regulation that the Insurer uses approved, filed or otherwise accepted local policy forms, the Insurer shall take such steps as are necessary to ensure that the coverage provided under this Policy is effective in such jurisdiction on the same or better terms and for the same term as hereunder.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 436 08 07

**Endorsement No.: 20**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# AMEND NOTICE OF CLAIM ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (A)(1) of the Policy is amended to read in its entirety as follows:

"(1)    As a condition precedent to any right to payment under this Policy with respect to any Claim, the Insured shall give written notice to the Insurer of any Claim as soon as practicable after it is first made and the Chief Executive Officer, Chief Financial Officer and/or General Counsel of the Parent Company first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period."

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

DO 83 12 08 00

**Endorsement No.: 21**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DISHONESTY EXCLUSION

In consideration of the premium charged, Section III Exclusion (F) is deleted and replaced by the following:

(F)       brought about or contributed to in fact by any:

    (1)       intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

    (2)       profit or remuneration gained by any Insured to which such Insured is not legally entitled;

    as determined by a final adjudication in the underlying action;

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 503 11 08

**Endorsement No.: 22**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF CLAIM ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Claim," as defined in Section II Definitions of the Policy, will include any official written request for Extradition of any Insured Person or the execution of a warrant for the arrest of any Insured Person where such execution is an element of Extradition.

(2)     Solely for the purposes of this Endorsement, the term "Extradition" means any formal process by which an Insured Person located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 142 10 01

**Endorsement No.: 23**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND SECTION IV ENDORSEMENT

In consideration of the premium charged, Section IV Limit of Liability, Indemnification and Retentions (F) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 123 06 01**

| | |
|---|---|
| **Endorsement No.: 24** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

# AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, Section II Definitions (J)(3) and (J)(4) are amended to read in their entirety as follows:

(3)    an individual identified in (J)(1) above who, at the request of the Company, is serving as a director, officer, trustee, regent or governor of a Non-Profit Entity;

(4)    any individual identified in (J)(1) above who, at the request of the Company is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated, of a Joint Venture; or

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 46 07 00

**Endorsement No.: 25**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged, the term "Insured Person" shall include any employee of the Company, but only if and to the extent that such employee is included as a co-defendant in a Claim contemporaneously with or subsequent to the naming of one or more directors or officers of the Company as a defendant or defendants in such Claim for one or more Wrongful Acts; provided that:

(1)     subject to of the terms, conditions, limitations and endorsements of this Policy, the Insurer shall be liable in respect of Claims against such Insured Persons only to pay Loss under Section I. Insuring Agreement (B), which Loss the Company shall pay to or on behalf of such Insured Persons as indemnification, and

(2)     the Insurer shall not be liable to pay Loss under Section I. Insuring Agreement (A) in respect of Claims against such Insured Persons.

All other terms, conditions and limitations of this policy shall remain unchanged.

**Endorsement No.: 26**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EMERGENCY LOSS ENDORSEMENT

In consideration of the premium charged:

(1)    In addition to the coverage afforded pursuant to Insuring Agreements (A), (B) and (C), but subject to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations and the provisions below, the Insurer shall pay on behalf of the Company Emergency Loss resulting from an Emergency occurring during the Policy Period, or, if applicable, the Optional Extension Period and reported to the Insurer pursuant to paragraph (7) below.

(2)    It is understood and agreed that the payment of any Emergency Loss pursuant to this Policy shall not waive any rights of the Insurer available under this Policy or at law.

(3)    Solely with respect to this endorsement, the following terms shall have the meanings set forth below:

(a)    "Effect of the Common Stock Price" means that the price per share of the Company's common stock shall decrease by the greater of $5 per share or 10% net of the change in the Standard & Poor's Composite Index within a 24 hour period.

(b)    "Emergency" means the public announcement of any of the following events which, in the good faith opinion of the chief financial officer of the Company, is reasonably likely to cause or did cause an Effect on the Common Stock Price:

(i)    the Company's past or future earnings or sales, which is substantially less favorable than any of the following: (A) the Company's prior years earning or sales for the same period; (B) the Company's prior public statements or projections regarding earnings or sales for such period; or (C) an outside securities analyst's published estimate of the Company's earnings or sales;

(ii)    an unforeseen loss of: (A) the Company's intellectual property rights for a patent, trademark or copyright, other than by expiration; (B) a major customer or client of the Company; or (C) a major contract with the Company;

(iii)    the recall of a major product of the Company or the unforeseen delay in the production of a major product of the Company;

(iv)    the Company has caused the bodily injury, sickness, mental anguish, emotional distress, disease or death of a group of persons, or damage or destruction of any tangible property including loss of use thereof;

(v)    layoffs by the Company of its employees, or the death or resignation of one or more key directors or officers of the Parent Company;

(vi)    a restatement of the previously filed financial statements of the Company;

(vii)    the elimination or suspension of regularly scheduled dividends previously paid by the Company;

(viii)    the Company intends to write-off a material amount of its assets;

(ix)    the Company has defaulted or intends to default on its debt or intends to engage in a debt restructuring;

(x)     the Company intends to file for bankruptcy protection, a third party is seeking to file for involuntary bankruptcy on behalf of the Company, or bankruptcy proceedings are imminent, whether voluntary or involuntary;

(xi)    the commencement or threat of commencement of litigation or governmental or regulatory proceedings against the Company; or

(xii)   an unsolicited written offer or bid, whether publicly announced or privately made, by any person or entity, other than an Insured or any affiliate of an Insured, to a director or officer of the Company to effect a Change in Control;

provided that Emergency shall not include any event relating to:

(1)     any fact, circumstance, situation, transaction, event, or wrongful act which was the subject of any notice given under any other policy;

(2)     any fact, circumstance, situation, transaction, event or wrongful act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to April 24, 2001; or

(3)     any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste.

An Emergency shall first occur when any Company or any of its directors or officers first becomes aware of such Emergency.  An Emergency shall conclude immediately when the Emergency Firm advises the Company that such Emergency no longer exists or when the applicable limit of liability has been exhausted.

(c)     "Emergency Firm" means any public relations firm, crisis management firm or law firm hired by the Company, with the prior written approval of the Insurer, to perform Emergency Services.

(d)     "Emergency Loss" means:

(i)     reasonable and necessary fees and expenses incurred by an Emergency Firm in the performance of Emergency Services for the Company;

(ii)    reasonable and necessary fees and expenses incurred in the printing, advertising, mailing of materials; and

(iii)   travel costs incurred by any director, officer, member of the Board of Managers, employee or agent of the Company or the Emergency Firm,

in connection with an Emergency and incurred during the pendency of, of within 90 days immediately prior to and in anticipation of, an Emergency for which the Company is legally liable.

(e)     "Emergency Services" means those services performed by an Emergency Firm in advising the Company or a director, officer or employee of the Company on minimizing potential harm to the Company from an Emergency, including but not limited to maintaining and restoring investor confidence in the Company.

(4)    The term "Loss," as defined in Section II Definitions (M) of the Policy, shall include Emergency Loss.

(5)    The maximum aggregate limit of liability for all Emergency Loss resulting from all Emergencies occurring during the Policy Period shall be $100,000 ("Emergency Sublimit"), which amount is part of and not in addition to the maximum aggregate Limit of Liability of the Insurer under this Policy as set forth in Item 3 of the Declarations.

(6)    As a condition precedent to any right to payment under this Policy with respect to any Emergency, the Insured shall give written notice to the Insurer of an Emergency as soon as practicable after the Emergency commences but in no event later than thirty (30) days after the Company first incurs Emergency Loss.  All notices must be sent by certified mail or the equivalent to the address set forth in Item 7 of the Declarations; Attention: Claim Department.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 357 05 06

**Endorsement No.: 27**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EMPLOYED LAWYERS ENDORSEMENT (WITH SUBLIMIT)

In consideration of the premium charged:

(1)   The coverage afforded under this Policy will, subject to all of its terms, conditions, limitations and exclusions, be extended to apply to Loss resulting from a Claim made against any Employed Lawyer of the Company (an "Employed Lawyer Claim").

(2)   The term "Employed Lawyer" means any employee of the Company if and to the extent such employee is or, during the course of such person's employment was,"

(a)   admitted to the practice of law; and

(b)   employed within the Company's office of general counsel or its functional equivalent for the purpose of providing legal services to or for the benefit of the Company.

(3)   The term "Insured Person" also includes any Employed Lawyer.

(4)   The term "Wrongful Act" also includes any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by an Employed Lawyer, but only in connection with an Employed Lawyer's performance of, or actual or alleged failure to perform, legal services to or for the benefit of the Company within the scope of his or her employment.

(5)   No coverage will be available under this endorsement for Loss, including Defense Expenses, from any Claim against an Employed Lawyer based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(a)   the service by any such person in any capacity, whether or not with the Company, other than those explicitly set forth in this endorsement; or

(b)   an Employed Lawyer's performance of, or actual or alleged failure to perform, any legal services other than legal services to or for the benefit of the Company within the scope of the Employed Lawyer's employment.

(6)   The Insurer's maximum aggregate limit of liability for all Loss from all Employed Lawyer Claims shall be $10,000,000, which amount shall be part of, and not in addition to, the maximum aggregate Limit of Liability for this Policy as set forth in Item 3 of the Declarations, which is applicable to all Loss from all Claims for which this Policy provides coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**DO 80 504 12 08**

| | |
|---|---|
| **Endorsement No.: 28** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# AMEND CANCELLATION ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (E)(1) of the Policy is amended to read in its entirety as follows:

"(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall return to the Parent Company the gross pro rata unearned premium (minus brokerage commission).  Return or tender of the unearned premium is not a condition of cancellation."



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 286 08 04

**Endorsement No.: 29**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, Section II Definition (J)(5) of the Policy shall include the domestic partner of any person set forth in Section II Definition (J)(1) – (J)(4), but only to the extent the domestic partner is a party to any Claim solely in their capacity as a domestic partner to such persons and only for the purposes of any Claim seeking damages recoverable from community property, property jointly held by any such person and domestic partner, or property transferred from any such person to the domestic partner.

All other terms, conditions and limitations of this Policy shall remain unchanged.



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**DO 80 559 06 10**

| | |
|---|---|
| **Endorsement No.: 30** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

# AMEND INSURER'S RIGHTS OF SUBROGATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that, in the event of payment under the Policy, the Insurer will not be subrogated to any Insured's potential or actual rights of recovery in connection therewith against any Insured Person unless it shall have been determined by final adjudication in the underlying Claim that such Insured Person committed any act or omission or gained any profit or remuneration so that Section III. EXCLUSION (F) of this Policy, as amended, would be applicable to such Insured Person, and Section VI. GENERAL CONDITIONS (G)(2) of this Policy will be deemed to have been amended accordingly.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**Endorsement No.: 31**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# BANKRUPTCY ENDORSEMENT

In consideration of the premium charged:

(1)  Section II Definitions (B)(3) of the Policy is deleted in its entirety.

(2)  The term "Company," as defined in Section II Definitions (D) of the Policy, shall include the Parent Company and any covered Subsidiary as a debtor in possession, as such term is used in Chapter 11 of the United States Bankruptcy Code.

(3)  The bankruptcy or insolvency of any Insured shall not relieve the Insurer of any of its obligations under this Policy.  It is understood and agreed that the coverage provided under this Policy is intended to protect and benefit the Insured Persons.  If a liquidation or reorganization proceeding is commenced by the Company, whether voluntary or involuntary, under Title 11 of the United States Code, or any similar state, local or foreign law (collectively, "Bankruptcy Law"), then, with respect to a Claim under this Policy, the Insureds hereby:

(a)  waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Bankruptcy Law; and

(b)  agree not to oppose or object to any efforts by the Insurer or any Insured Person to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 32**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND REPRESENTATION CLAUSE ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (I) of the Policy is amended to read in its entirety as follows:

"(I)    REPRESENTATION CLAUSE

The Insured represents that the statements and particulars contained in the Application as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy.  No knowledge or information possessed by any Insured will be imputed to any other Insured.  The Insurer may not void and/or rescind this Policy, other than for non-payment of premium."

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 83 85 08 08

| | |
|---|---|
| Endorsement No.: 33 | Effective: June 01, 2017 |
| Named Insured: Akorn, Inc. | 12:01 A.M. Standard Time |
| Policy No.: US00075683DO17A | Insurer: XL Specialty Insurance Company |

# PENDING AND PRIOR LITIGATION EXCLUSION (SPLIT LIMIT)

In consideration of the premium charged:

(1)    With respect to the first $5,000,000 of the Limit of Liability of this Policy, the Insurer shall not be liable to make any payment for Loss, including Defense Expenses, in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to April 24, 2010.

(2)    In addition to, and not in limitation of the above paragraph:

  (a)    with respect to $2,500,000 of the Limit of Liability of this Policy which is excess of the first $5,000,000 of the Limit of Liability of this Policy, the Insurer shall not be liable to make any payment for Loss, including Defense Expenses, in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration as of April 24, 2010; and

  (b)    with respect to $2,500,000 of the Limit of Liability of this Policy which is excess of the first $7,500,000 of the Limit of Liability of this Policy, the Insurer shall not be liable to make any payment for Loss, including Defense Expenses, in connection with any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration as of April 24, 2011.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 289 09 04

**Endorsement No.: 34**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# OUTSIDE DIRECTORSHIP ENDORSEMENT

In consideration of the premium charged:

(1)    The term "Non Profit Entity", as defined in Section II Definitions of the Policy, is amended to include the following entity (the "For-Profit Entity"):

Aciex Therapeutics

(2)    The term "Insured Person", as defined in Section II Definitions of the Policy, is amended to include service by the following Insured Person(s) as a director or officer of the For-Profit Entity, but only during such time that such service is at the specific written request of the Company:

Rajat Ral

With respect to the For-Profit Entity, the term "Insured Person" shall not include service as a director or officer by any Insured Person other than the Insured Person(s) specifically identified in paragraph (2).

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 717 10 15**

**Endorsement No.: 35**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DELETE EXCLUSION (B) ENDORSEMENT

In consideration of the premium charged, Section III Exclusion (B) of the Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 627 05 12

| | |
|---|---|
| **Endorsement No.: 36** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

# AMEND NOTICE OF CLAIM

In consideration of the premium charged: it is understood and agreed that the Insureds' failure to provide written notice of any Claim to the Insurer within the time prescribed in Section VI. GENERAL CONDITIONS (A)(1) will not invalidate coverage under this Policy unless the failure to provide such timely notice has actually prejudiced the Insurer; provided, however, that there will be an irrebuttable presumption of prejudice to the Insurer if, before written notice of a Claim is given to the Insurer, an Insured's liability in connection with such Claim is determined by a court of competent jurisdiction or by binding arbitration or an Insured enters into any settlement or other compromise of such Claim.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 241 11 03

| | |
|---|---|
| **Endorsement No.: 37** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

# AMEND DEFINITION OF INSURED PERSON

In consideration of the premium charged:

(1)     Solely for the purposes of this endorsement, the following terms shall have the meanings set forth below:

    (a)     "Co-Defendant Insured Person" means any natural person employee of the Company, but solely in connection with services performed for the Company; and

    (b)     "Original Insured Person" means any Insured Person, other than a Co-Defendant Insured Person.

(2)     The term "Insured Person," as defined in Section II Definitions (J) of the Policy, is amended to include any Co-Defendant Insured Person, but only with respect to, to the extent that, and during such time that a Claim:

    (a)     made against a Co-Defendant Insured Person is also made and continuously maintained against an Original Insured Person; and

    (b)     is for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such Co-Defendant Insured Person committed or allegedly committed in connection with services performed for the Company.

(3)     No coverage will be available under this Policy for any Claim made: (a) solely against a Co-Defendant Insured Person, or (b) against a Co-Defendant Insured Person and person or entity, other than an Original Insured Person.

(4)     No coverage will be available under this Policy for any Claim made against a Co-Defendant Insured Person based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving a Co-Defendant Insured Person in connection with any services performed for any entity other than the Company, or acting in their capacity as a consultant to any entity other than the Company.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**DO 80 05 03 00**

| | |
|---|---|
| **Endorsement No.: 38** | **Effective: June 01, 2017** |
| **Named Insured: Akorn, Inc.** | **12:01 A.M. Standard Time** |
| **Policy No.: US00075683DO17A** | **Insurer: XL Specialty Insurance Company** |

# AMEND DEFINITION OF "CLAIM"

In consideration of the premium charged, the term "Claim" will be deemed to include any proceeding or investigation which is comparable to a proceeding or investigation described in Section II.(C)(2), (3) or (4) of the Policy, and which is brought or commenced in a jurisdiction other than the United States, its territories and possessions before any court, tribunal, agency, organization or other official body having the authority under the laws of such jurisdiction to enter judgment or otherwise make a binding determination of liability or responsibility.

All other terms, conditions and limitations of this Policy shall remain unchanged.



DO 80 567 07 10

**Endorsement No.: 39**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# ADDITIONAL INSURED ENDORSEMENT

In consideration of the premium charged:

(1)     The term "Company," as defined in Section II Definitions (D) of the Policy, is amended to include the following entities scheduled below, (each an "Additional Company"):

| Additional Company | Pending and Prior Litigation Date |
|---|---|
| Hi-Tech Pharmacal Co., Inc. | April 17, 2014 |

(2)     No coverage will be available under this Policy for Claims made against any Additional Company, or any Insured Person thereof, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, Company Wrongful Act or Employment Practices Wrongful Act underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth opposite such Additional Company in paragraph (1) above of this endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 567 07 10

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

**DO 80 578 11 10**

**Endorsement No.: 40**                    **Effective: June 01, 2017**
**Named Insured: Akorn, Inc.**             **12:01 A.M. Standard Time**
**Policy No.: US00075683DO17A**            **Insurer: XL Specialty Insurance Company**

# AMEND GENERAL CONDITIONS (G)(1) ENDORSEMENT

In consideration of the premium charged, Section VI General Conditions (G)(1) of the Policy is amended to read in its entirety as follows:

"(1)    The Insured agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.  The failure of any Insured Person to give the Insurer cooperation and information as required in this paragraph shall not impair the rights of any other Insured Person under this Policy."

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2010 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

DO 80 480 06 08

**Endorsement No.: 41**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EMAIL NOTICES ENDORSEMENT

In consideration of the premium charged, Section VI General Condition (A)(3) of the Policy is amended to read in its entirety as follows:

"(3)  All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by:

(a)    certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations:  Attention Claim Department; or

(b)    electronic mail (email) to:  proclaimnewnotices@xlcatlin.com."

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 480 06 08

© 2008 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 72 06 13

**Endorsement No.: 42**                                    **Effective: June 01, 2017**
**Named Insured: Akorn, Inc.**                             **12:01 A.M. Standard Time**
**Policy No.: US00075683DO17A**                            **Insurer: XL Specialty Insurance Company**

# LINKED LIMIT ENDORSEMENT

In consideration of the premium charged, the Insured agrees with the Insurer that the total of all limits of liability under this Policy and any and all other insurance policies issued or reinsured by the Insurer or its affiliates scheduled hereunder to the Insured or any of the Insured's worldwide affiliates, officers, directors, or employees, (this Policy together with all such other policies being referred to herein as "Program Policies") shall not exceed the amount of the Program Aggregate Limit indicated below:

**Program Aggregate Limit**:  $10,000,000

**Schedule of Program Policies:** (list all policies below):

|          | Named Insured | Issuing XL Group Insurer | Policy Number | Policy Period |
|----------|---------------|--------------------------|---------------|---------------|
| Policy 1 | Akorn, Inc.   | XL Insurance Company SE  | CH00009864DO17A | June 1, 2017- June 1, 2018 |
| Policy 2 |               |                          |               |               |
|          |               |                          |               |               |
|          |               |                          |               |               |

In the event that any payment is made under this Policy or any other Program Policy with the effect that the Program Aggregate Limit is exceeded, the Insured under this Policy shall immediately upon the request of the Insurer pay to the Insurer the sum of such excess.

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

XL 80 74 07 13

**Endorsement No.: 43**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2017**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# SIMULTANEOUS TERMINATION ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that if this Policy is canceled pursuant to Section VI General Conditions (E)(1) or (E)(2) of the Policy, any and all other insurance policies issued or reinsured by the Insurer or its affiliates scheduled below to the Insured or any of the Insured's worldwide affiliates, officers, directors, or employees, (this Policy together with all such other policies being referred to herein as "Program Policies"), shall be deemed terminated and cancelled automatically and simultaneously with this Policy.

**Schedule of Program Policies:**

|  | Named Insured | Issuing XL Group Insurer | Policy Number | Policy Period |
|---|---|---|---|---|
| Policy 1 | Akorn, Inc. | XL Insurance Company SE | CH00009864DO17A | June 1, 2017- June 1, 2018 |
| Policy 2 |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2013 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

### MANAGEMENT LIABILITY AND COMPANY REIMBURSEMENT INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

### I.    INSURING AGREEMENTS

(A)    The Insurer shall pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act,** except for **Loss** which the **Company** is permitted or required to pay on behalf of the **Insured Persons** as indemnification.

(B)    The Insurer shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Insured Persons** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act** or **Employment Practices Wrongful Act.**

(C)    The Insurer shall pay on behalf of the **Company Loss** resulting solely from any **Securities Claim** first made against the **Company** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Company Wrongful Act.**

### II.    DEFINITIONS

(A)    "**Application**" means:

    (1)    the application attached to and forming part of this Policy; and

    (2)    any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)    "**Change In Control**" means:

    (1)    the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets by another entity such that the **Parent Company** is not the surviving entity;

    (2)    the acquisition by any person, entity or affiliated group of persons or entities of the right to vote, select or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

    (3)    the appointment of a Receiver, Conservator, Liquidator, Trustee, Rehabilitator, or any comparable authority, with respect to the **Parent Company.**

(C)    "**Claim**" means:

    (1)    a written demand for monetary or non-monetary relief;

    (2)    any civil proceeding in a court of law or equity, or arbitration;

    (3)    any criminal proceeding which is commenced by the return of an indictment; and

    (4)    a formal civil, criminal, administrative regulatory proceeding or formal investigation of an **Insured Person** or the **Company** (but with respect to the **Company** only for a **Company Wrongful Act**) which is commenced by the filing or issuance of a notice of charges, formal investigative order or similar document identifying in writing such **Insured Person** or the **Company** as a person or entity against whom a proceeding as described in (C)(2) or (3) above may be commenced, including any

proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body having jurisdiction over any **Employment Practices Wrongful Act**.

(D)   "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the Policy Period, subject to GENERAL CONDITIONS VI (D).

(E)   "**Company Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by the Company in connection with a **Securities Claim**.

(F)   "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium for an appeal bond, attachment bond or similar bond but will not include applying for or furnishing such bond. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers or employees.

(G)   "**Employment Practices Wrongful Act**" means any actual or alleged:

(1)   wrongful termination of employment whether actual or constructive;

(2)   employment discrimination of any kind including violation of any federal, state or local law involving employment or discrimination in employment which would deprive or potentially deprive any person of employment opportunities or otherwise adversely affect his or her status as an employee, because of such person's race, color, religion, age, sex, national origin, disability, pregnancy, or other protected status;

(3)   sexual or other harassment in the workplace; or

(4)   wrongful deprivation of career opportunity, employment related misrepresentations, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)   "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Ac**t.

(I)   "**Insured**" means the **Insured Persons** and the **Company**.

(J)   "**Insured Person**" means:

(1)   any past, present or future director or officer, or member of the Board of Managers, of the **Company** and those persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

(2)   any past, present or future employee of the **Company** to the extent any **Claim** is a **Securities Claim**;

(3)   an individual identified in (J)(1) above who, at the specific written request of the **Company**, is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**;

(4)   any individual identified in (J)(1) above who, at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

(5)   the lawful spouse of any person set forth in the above provisions of this definition, but only to the extent the spouse is a party to any Claim solely in their capacity as a spouse of such persons and only for the purposes of any Claim seeking damages recoverable from marital community property, property jointly held by any such person and spouse, or property transferred from any such person to the spouse.

In the event of the death, incapacity or bankruptcy of an individual identified in (J)(1), (2), (3), (4) or (5) above, any **Claim** against the estate, heirs, legal representatives or assigns of such individual for a **Wrongful Act** or **Employment Practices Wrongful Act** of such individual will be deemed to be a **Claim** against such individual.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

(K)   "**Interrelated Wrongful Acts**" means any **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events.

(L)   "**Joint Venture**" means any corporation, partnership, joint venture, association or other entity, other than a **Subsidiary**, during any time in which the Parent Company, either directly or through one or more **Subsidiary(s)**;

   (1)   owns or controls at least thirty three percent (33%), but not more than fifty percent (50%), in the aggregate of the outstanding securities or other interests representing the right to vote for the election or appointment of those persons of such an entity occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**; or

   (2)   has the right, by contract, ownership of securities or otherwise, to elect, appoint or designate at least thirty three percent (33%) of those persons described in (L)(1) above.

(M)   "**Loss**" means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** in excess of the Retention that the **Insured** is legally obligated to pay. **Loss** will not include:

   (1)   the multiplied portion of any damage award;

   (2)   fines, penalties or taxes imposed by law; or

   (3)   matters which are uninsurable under the law pursuant to which this Policy is construed.

   **NOTE**: With respect to judgments in which punitive damages are awarded, the coverage provided by this Policy shall apply to the broadest extent permitted by law. If, based on the written opinion of counsel for the **Insured**, punitive damages are insurable under applicable law the Insurer will not dispute the written opinion of counsel for the Insured.

(N)   "**Non-Profit Entity**" means a corporation or organization other than the **Company**, which is exempt from taxation under Section 501 (c)(3), (4) and (10) of the Internal Revenue Code as amended or any rule or regulation promulgated thereunder.

(O)   "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(P)   "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(Q)   "**Securities Claim**" means a **Claim** made against an Insured for:

   (1)   any actual or alleged violation of the Securities Act of 1933 as amended, the Securities Exchange Act of 1934 as amended, any similar federal or state statute or any rules or regulations promulgated thereunder; or

   (2)   any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty arising from or in connection with the purchase or sale of, or offer to purchase or sell any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(R)   "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(s)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(S)   "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an:

   (1)   **Insured Person** of the **Company** or a person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary**;

(2)   **Insured Person** of the **Company** who at the specific written request of the **Company** is serving as a director, officer, trustee, regent or governor of a **Non-Profit Entity**; or

(3)   **Insured Person** of the **Company**, who at the specific written request of the **Company** is serving in an elected or appointed position having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an **Insured Person** of the **Company**, regardless of the name or title by which such position is designated, of a **Joint Venture**.

## III.   EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured Person**, or with respect to INSURING AGREEMENT (C), the **Company**:

(A)   for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, libel, slander, oral or written publication of defamatory or disparaging material, disease or death of any person, or damage or destruction of any tangible property including loss of use thereof; however, this EXCLUSION (A) will not apply to any allegations of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**;

(B)   for any actual, alleged or threatened discharge, dispersal, release, escape, seepage, transportation, emission, treatment, removal or disposal of pollutants, contaminants, or waste of any kind including but not limited to nuclear material or nuclear waste or any actual or alleged direction, request or voluntary decision to test for, abate, monitor, clean up, recycle, remove, recondition, reclaim, contain, treat, detoxify or neutralize pollutants, contaminants or waste of any kind including but not limited to nuclear material or nuclear waste. With respect to a Claim made under INSURING AGREEMENT (A) only, this EXCLUSION (B) will not apply to a **Claim** unless a court of competent jurisdiction specifically determines the **Company** is not permitted to indemnify the **Insured Person**;

**NOTE**: EXCLUSIONS (A) and (B) above will not apply with respect to a **Securities Claim** brought by a security holder of the **Company**, or a derivative action brought by or on behalf of, or in the name or right of, the **Company,** and brought and maintained independently of, and without the solicitation, assistance, participation or intervention of, an **Insured**.

(C)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (ERISA) as amended or any regulations promulgated thereunder or any similar law, federal, state or local law or regulation;

(D)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to the Pending and Prior Litigation Date set forth in ITEM 6 of the Declarations;

(E)   based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability policy, Directors and Officers liability policy or similar policy;

(F)   brought about or contributed to in fact by any:

(1)   intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

(2)   profit or remuneration gained by any Insured to which such Insured is not legally entitled;

as determined by a final adjudication in the underlying action or in a separate action or proceeding;

(G)   by, on behalf of, or at the direction of the **Company**, except and to the extent such **Claim**:

(1)   is brought derivatively by a security holder of the **Company** who, when such **Claim** is made and maintained, is acting independently of, and without the solicitation, assistance, participation or

intervention of an **Insured Person** or the **Company**; or

(2)    is brought by the Bankruptcy Trustee or Examiner of the **Company** or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company**;

(H)    by, on behalf of, at the direction of or in the name or right of any Non-Profit Entity or Joint Venture against an Insured Person for a Wrongful Act or Employment Practices Wrongful Act while acting in his or her capacity as a director, officer, trustee, regent or governor of such, or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of an Insured Person of the Company, regardless of the name or title by which such position is designated; or

(I)    based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as a **Insured Person** of any entity other than the **Company**, **Non-Profit Entity** or **Joint Venture**.

No conduct of any **Insured Person** will be imputed to any other Insured to determine the application of any of the above EXCLUSIONS.


### IV.    LIMIT OF LIABILITY, INDEMNIFICATION AND RETENTIONS

(A)    The Insurer shall pay the amount of **Loss** in excess of the applicable Retention(s) set forth in ITEM 4 of the Declarations up to the Limit of Liability set forth in ITEM 3 of the Declarations.

(B)    The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy. Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

(C)    With respect to the Company's indemnification of its **Insured Persons**, the certificate of incorporation, charter, by-laws, articles of association, or other organizational documents of the **Parent Company**, each **Subsidiary** and each **Non-Profit Entity** or **Joint Venture**, will be deemed to provide indemnification to the **Insured Persons** to the fullest extent permitted by law.

(D)    The Retention applicable to INSURING AGREEMENT (B) shall apply to any **Loss** as to which indemnification by the **Company**, **Non-Profit Entity** or **Joint Venture** is legally permissible, whether or not actual indemnification is made unless such indemnification is not made by the **Company**, **Non-Profit Entity** or **Joint Venture** solely by reason of its financial insolvency. In the event of financial insolvency, the Retention(s) applicable to INSURING AGREEMENT (A) shall apply.

(E)    If different retentions are applicable to different parts of any **Loss**, the applicable Retention(s) will be applied separately to each part of such Loss, and the sum of such Retention(s) will not exceed the largest applicable Retention set forth in ITEM 4 of the Declarations.

(F)    Notwithstanding the foregoing, solely with respect to a **Securities Claim**, no **Retention** shall apply to such **Claim** and the **Insurer** will reimburse those **Defense Expenses** incurred by the **Insured** if:

(1)    the **Securities Claim** is dismissed, or there is a stipulation to dismiss the **Securities Claim**, with or without prejudice and without the payment of any monetary consideration by the **Insured**;

(2)    there is a final judgment of no liability obtained prior to or during trial, in favor of the **Insured**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or

(3)    there is a final judgment of no liability obtained after trial, in favor of the Insured, after the exhaustion of all appeals.

Any reimbursement in the case of (F)(1), (2), or (3) above will only occur if ninety (90) days after the date of dismissal, stipulation, final judgment of no liability is obtained and only if:

(a)    the same **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is not brought again within that time; and

(b)    the **Insured** provides the Insurer with an Undertaking in a form acceptable to the Insurer that

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

such reimbursement of the applicable Retention(s) will be paid back to the Insurer in the event the **Securities Claim** (or a **Securities Claim** containing **Interrelated Wrongful Acts**) is brought after the ninety (90) day period.

## V.   DEFENSE, SETTLEMENT AND ALLOCATION OF LOSS

(A)   It shall be the duty of the **Insured** and not the duty of the Insurer to defend any **Claim** under this Policy.

(B)   No **Insured** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(C)   Upon the written request of an **Insured**, the Insurer will advance **Defense Expenses** on a current basis in excess of the applicable Retention, if any, before the disposition of the **Claim** for which this policy provides coverage. As a condition of the advancement of **Defense Expenses**, the Insurer may require a written undertaking, in a form satisfactory to the Insurer, which will guarantee the repayment of any **Loss** including **Defense Expenses** paid to or on behalf of the Insured if it is finally determined that the **Loss** incurred is not covered under this Policy.

(D)   If both **Loss** covered by this Policy and Loss not covered by this Policy are incurred, either because a **Claim** made against the Insured contains both covered and uncovered matters, or because a **Claim** is made against both the Insured and others (including the **Company** for **Claims** other than **Securities Claims**) not insured under this Policy, the **Insured** and the Insurer will use their best efforts to determine a fair and appropriate allocation of **Loss** between that portion of Loss that is covered under this Policy and that portion of Loss that is not covered under this Policy. Additionally, the **Insured** and the Insurer agree that in determining a fair and appropriate allocation of **Loss**, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the **Claim** by, the Insured and others.

(E)   In the event that an agreement cannot be reached between the Insurer and the **Insured** as to an allocation of **Loss**, as described in (D) above, then the Insurer shall advance that portion of **Loss** which the **Insured** and the Insurer agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law.

## VI.   GENERAL CONDITIONS

(A)   **NOTICE**

(1)   As a condition precedent to any right to payment under this Policy with respect to any **Claim**, the **Insured** shall give written notice to the Insurer of any Claim as soon as practicable after it is first made.

(2)   If, during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** and if, during the **Policy Period**, the Insured:

(a)   provides the Insurer with written notice of the specific **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, the circumstances by which the Insured first became aware of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**; and

(b)   requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act**;

then any **Claim** subsequently made arising out of such **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** will be treated as if it had been first made during the **Policy Period.**

(3)   All notices under GENERAL CONDITIONS (A)(1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 7 of the Declarations; Attention: Claim Department.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**(B)    INTERRELATED CLAIMS**

All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the time at which the earliest such **Claim** is made or deemed to have been made pursuant to GENERAL CONDITIONS (A)(1) above or GENERAL CONDITIONS (A)(2), if applicable.

**(C)    OTHER INSURANCE AND SERVICE IN CONNECTION WITH NON-PROFIT ENTITIES AND JOINT VENTURES**

(1)    All **Loss** payable under this Policy will be specifically excess of and will not contribute with any other insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically excess of this Policy. This Policy will not be subject to the terms of any other insurance policy.

(2)    All coverage under this Policy for **Loss** from **Claims** made against the **Insured Persons** while acting in their capacity as a director, officer, trustee, regent or governor of a **Non-Profit Entity** or persons occupying elected or appointed positions having fiduciary, supervisory or managerial duties and responsibilities comparable to those of the **Insured Persons** of the **Company**, regardless of the name or title by which such position is designated, of a J**oint Venture** will be specifically excess of and will not contribute with, any other insurance or indemnification available to such **Insured Person** from such **Non-Profit Entity** or J**oint Venture** by reason of their service as such.

**(D)    MERGERS AND ACQUISITIONS (CHANGES IN EXPOSURE OR CONTROL)**

(1)    If during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** occurring after the consummation of the transaction.

(2)    If, however, by reason of the transaction (or series of transactions) described in (D)(1) above, the entity, assets, **Subsidiary** or liabilities so acquired or so assumed, exceed thirty five percent (35%) of the total assets or liabilities of the **Company**, as represented in the **Company's** most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any **Loss** involving a **Claim** for a **Wrongful Act**, **Company Wrongful Act**, or **Employment Practices Wrongful Act** that occurred after the transaction has been consummated. Coverage beyond the ninety (90) day period will be provided only if:

(a)    the Insurer receives written notice containing full details of the transaction(s); and

(b)    the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate.

(3)    With respect to the acquisition, assumption, merger, consolidation or otherwise of any entity, asset, **Subsidiary** or liability as described in (D)(1) and (2) above, there will be no coverage available under this Policy for **Claims** made against the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary**, liability, or **Insured Person** for a **Wrongful Act**, **Company Wrongful Act** or **Employment Practices Wrongful Act** committed any time during which such entity, asset, liability or **Subsidiary** is not an **Insured**.

(4)    If during the **Policy Period** any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who, because of their service with such **Subsidiary**, were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(5)    If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** against an **Insured** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed or allegedly committed up to the time of the **Change In Control**; and

(a)    coverage will cease with respect to any **Claim** for a **Wrongful Act, Company Wrongful Act** or **Employment Practices Wrongful Act** committed subsequent to the **Change In Control**; and

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

(b) the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control.**

**(E)    CANCELLATION AND RENEWAL OF COVERAGE**

(1)    Except for the nonpayment of premium, as set forth in (E)(2) below, the Parent Company has the exclusive right to cancel this Policy. Cancellation may be effected by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

(2)    The Insurer may only cancel this Policy for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured,** if applicable.

(3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**(F)    OPTIONAL EXTENSION PERIOD**

(1)    If either the **Parent Company** or the Insurer does not renew this Policy, the **Parent Company** shall have the right, upon payment of an additional premium set forth in ITEM 5 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 5 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Ac**t, **Company Wrongful Act**, or E**mployment Practices Wrongful Act**, occurring prior to the Policy Expiration Date.

(2)    As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full. The right of the **Parent Company** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Parent Company** advising it wishes to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)    If the **Parent Company** elects to purchase the Optional Extension Period as set forth in (F)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)    The purchase of the Optional Extension Period will not in any way increase the Limit Of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period.**

**(G)    ASSISTANCE, COOPERATION AND SUBROGATION**

(1)    The **Insured** agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

(2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured**. The I**nsured** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

**(H)    EXHAUSTION**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss,** the premium as set forth in ITEM 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind

whatsoever under this Policy.

**(I)    REPRESENTATION CLAUSE**

The **Insured** represents that the statements and particulars contained in the **Application** as well as any prior application submitted to the Insurer are true, accurate and complete, and agree that this Policy is issued in reliance on the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are material to the risk assumed and form the basis of this Policy. No knowledge or information possessed by any Insured will be imputed to any other Insured except for material facts or information known to the person(s) who signed the Application. In the event that any of the particulars or statements in the **Application** are untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

**(J)    ACTION AGAINST THE INSURER, ASSIGNMENT, AND CHANGES TO THE POLICY**

(1)    No action may be taken against the Insurer unless, as a condition precedent thereto:

   (a)    there has been full compliance with all of the terms and conditions of this Policy; and

   (b)    the amount of the obligation of the **Insured** has been finally determined either by judgment against the Insured after actual trial, or by written agreement of the **Insured**, the claimant and the Insurer.

(2)    Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the Insurer to determine their liability, nor may the **Insured** implead the Insurer in any **Claim**.

(3)    Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)    Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations may only be waived or changed by written endorsement.

**(K)    AUTHORIZATION AND NOTICES**

It is understood and agreed that the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)    the payment of the premiums;

(2)    the receiving of any return premiums that may become due under this Policy;

(3)    the giving of all notices to the Insurer as provided herein; and

(4)    the receiving of all notices from the Insurer.

**(L) ENTIRE AGREEMENT**

The **Insured** agrees that the Declarations, Policy, including the endorsements, attachments and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured** relating to this insurance.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**Endorsement No.: 44**       **Effective: June 01, 2018**       **DO 80 493 08 08**
**Named Insured: Akorn, Inc.**       **12:01 A.M. Standard Time**
**Policy No.: US00075683DO17A**       **Insurer: XL Specialty Insurance Company**

# CONVERT POLICY TO RUN-OFF UPON HAPPENING OF SPECIFIC EVENT

In consideration of the premium charged:

(1)    Immediately the date which the event described in paragraph (2) below occurs:

    (a)    coverage under this Policy will continue in full force and effect with respect to any Claim for a Wrongful Act, Employment Wrongful Act and Company Wrongful Act committed or allegedly committed before such event, but coverage will cease with respect to any Claim for a Wrongful Act, Employment Wrongful Act and Company Wrongful Act committed or allegedly committed on or after such event (hereinafter, the date of such event, "Conversion Date").

    (b)    The Expiration Date set forth in Item 2 of the Declarations shall be amended to that date exactly six (6) years after the Conversion Date.

    (c)    The term "Company" shall not include those Subsidiaries created or acquired after the Conversion Date.

    (d)    Section VI General Conditions (F) of the Policy and Item 5 of the Declarations, and all other references in the Policy to an Optional Extension Period, are deleted in their entirety.

    (e)    Section VI General Conditions (D) is deleted in its entirety.

    (f)    The entire premium for this Policy shall be deemed fully earned and there shall be no premium adjustment in the event of any cancellation of this Policy pursuant to Section VI General Conditions (E) of the Policy.

    (g)    Section VI General Conditions (A)(2) of the Policy is deleted in its entirety.

(2)    The event upon the happening of which coverage under this Policy will cease with respect to continuing Wrongful Acts, Employment Wrongful Acts and Company Wrongful Acts as described in paragraph (1) above, is as follows:

Change of Control

All other terms, conditions and limitations of this Policy shall remain unchanged.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

DO 80 14 04 00

**Endorsement No.: 45**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2018**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# AMEND POLICY PERIOD ENDORSEMENT

In consideration of an additional premium of $1,000,000.00 charged:

(1)     Item 2 of the Declarations is amended to read as follows:

Item 2. Policy Period:   From:   June 01, 2017          To: September 01, 2019
At 12:01 AM Standard Time at your Mailing Address Shown Above.

(2)     It is expressly understood and agreed that the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations shall continue to be the maximum aggregate Limit of Liability for the entire Policy Period, as amended above.

(3)     Item 8 of the Declarations is amended to read as follows:

Item 8. Premium:
Taxes, Surcharges or Fees          $0.00
Total Policy Premium               $1,320,000.00

(4)     The term "Application," as used in this Policy, shall be deemed to include any additional application and any updated or supplemental information relating to the application for this Policy attached to and forming part of this Policy, including any materials submitted therewith, all of which are on file with the Insurer and are a part of the Policy, as if physically attached.

All other terms, conditions and limitations of this Policy shall remain unchanged.

DO 80 12 04 00

**Endorsement No.: 46**
**Named Insured: Akorn, Inc.**
**Policy No.: US00075683DO17A**

**Effective: June 01, 2018**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# FULLY-EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, the entire premium for this Policy, as set forth in ITEM 8 of the Declarations, shall be deemed to be fully earned as of the Policy Inception Date set forth in ITEM 2 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT# *11*

This endorsement, effective *12:01 am* *August 28, 2017*   forms a part of
policy number   *01-498-04-39*
issued to   *AKORN, INC.*

by   *Illinois National Insurance Company*

## REINSTATEMENT ADDENDUM
## (ONE REINSTATEMENT)

*1. Supplemental Declarations*:

| | |
|---|---|
| **First Reinstated Limit of Liability**: | $ 10,000,000 |

*2. Reinstatement of Limit*:   This policy shall provide one **Reinstated Limit of Liability** which shall be excess of this policy's **Limit of Liability** and amounts actually paid under all other insurance policies providing a limit of liability excess of this policy's **Limit of Liability**, and shall remain subject to the excess, DIC and other terms, conditions and limitations of this policy.

*3. Per Claim Sublimit of Liability:*   The aggregate limit of the **Insurer's** liability for all **Loss** under this policy in connection with any **Claim** or **Pre-Claim Inquiry** and all **Related Matters** thereto is $10,000,000, notwithstanding that **Loss** may be paid for such **Claim** or **Pre-Claim Inquiry** under the **Limit of Liability** and/or **Reinstated Limit of Liability**.

4. As used in this Reinstatement Addendum:

**"Related Matter"** means all **Claims** and **Pre-Claim Inquiries** alleging, arising out of, based upon or attributable to the same or related facts, **Wrongful Acts**, circumstances or situations, or the same or related series of facts, **Wrongful Acts**, circumstances or situations.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

123315 (10/16)                    **END 11**

ENDORSEMENT# *12*

This endorsement, effective *12:01 am*  *August 28, 2017*    forms a part of

policy number  *01-498-04-39*

issued to   *AKORN, INC.*

by  *Illinois National Insurance Company*

## DELETION OF ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the following endorsement is deleted in its entirety:

Endorsement # 7:    DECLARATIONS AMENDED

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

94406 (04/07)          **END 12**

ENDORSEMENT# 13

This endorsement, effective *12:01 am* *August 28, 2017*   forms a part of
policy number *01-498-04-39*
issued to *AKORN, INC.*

by *Illinois National Insurance Company*

**DECLARATIONS AMENDED**
**(REVISED ATTACHMENT POINT FOR CLAIMS FIRST MADE ON OR**
**AFTER JUNE 1, 2015)**

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to any **Claim** first made against an **Insured Person** on or after June 1, 2015, the Declarations are amended by deleting the **Limit of Liability**, **Total Underlying Limits** and SCHEDULE OF UNDERLYING COVERAGE in their entirety and replacing them with the following:

| **Limit of Liability:** | $10,000,000 |
|---|---|
| **Total Underlying Limits:** | $35,000,000 |

| RETENTIONS OF UNDERLYING POLICIES: | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY (Primary) | $2,500,000 |

SCHEDULE OF UNDERLYING COVERAGE

| Notes | Underlying Insurer | Underlying Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| Followed Policy | XL Specialty Insurance Company | US00075683D017A | $10,000,000 Primary | 06/01/2017 to 09/01/2019 |
| | Allied World National Assurance Company | 0307-5817 | $10,000,000 xs $10,000,000 | 06/01/2017 to 09/01/2019 |
| | Endurance American Insurance Company | DOX10007587102 | $10,000,000 xs $20,000,000 | 06/01/2017 to 09/01/2019 |
| | Illinois National Insurance Company | 14980439 | $5,000,000 xs $30,000,000 | 06/01/2018 to 09/01/2019 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT   **END 13**

**ENDORSEMENT#** *14*

This endorsement, effective *12:01 am*    *August 28, 2017*    forms a part of

policy number *01-498-04-39*

issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 123315 | 10/16 | REINSTATEMENT ADDENDUM |
| 94406 | 04/07 | DELETION OF ENDORSEMENT |
| MNSCPT | | DECLARATIONS AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 014*

(1/05)                                    Page 1 of 1

ENDORSEMENT# 15

This endorsement, effective *12:01 am* *June 1, 2018* forms a part of

policy number *01-498-04-39*

issued to *AKORN, INC.*

by *Illinois National Insurance Company*

### DECLARATIONS AMENDED - POLICY PERIOD
### (ACCOUNT SPECIFIC)

In consideration of the premium charged it is hereby understood and agreed that the **Policy Period** of the Declarations is deleted in its entirety and replaced with the following:

**Policy Period**:

From: 12:01 EST June 01, 2017

To: 12:01 EST September 01, 2019

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

126698 (11/17)                    **END 15**

**ENDORSEMENT#** *16*

This endorsement, effective *12:01 am*    *June 1, 2018*    forms a part of
policy number *01-498-04-39*
issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 126698 | 11/17 | DECLARATIONS AMENDED - POLICY PERIOD |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 016*

(1/05)                                        Page 1 of 1

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30



**Illinois National Insurance Company**

A capital stock company

POLICY NUMBER: 01-498-04-39          REPLACEMENT OF POLICY NUMBER: 01-425-46-58

## SIDE-A EDGE<sup>SM</sup>

**NOTICES:** DEPENDING ON THE TERMS, CONDITIONS AND LIMITATIONS OF THE **FOLLOWED POLICY**, THIS POLICY MAY: (1) ONLY PROVIDE COVERAGE FOR LIABILITY FROM **CLAIMS** FIRST MADE OR FIRST MADE AND REPORTED, OR PRE-CLAIM INQUIRIES FIRST RECEIVED OR FIRST RECEIVED AND REPORTED, DURING ITS **POLICY PERIOD** OR **DISCOVERY PERIOD** (IF APPLICABLE); (2) HAVE ITS **LIMIT OF LIABILITY** REDUCED BY THE PAYMENT OF DEFENSE COSTS; AND (3) NOT IMPOSE A DUTY TO DEFEND ON THE **INSURER**.

PLEASE READ THE **FOLLOWED POLICY** AND THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE AND TERMS WITH YOUR INSURANCE AGENT OR BROKER

## DECLARATIONS

| | | | | |
|---|---|---|---|---|
| **Named Entity:** | AKORN, INC. | | | |
| **Named Entity Address:** | 1925 W FIELD CT STE 300 | **Limit of Liability:** | $ | 10,000,000 |
| | LAKE FOREST, IL 60045-4824 | **Total Underlying Limits:** | $ | 30,000,000 |
| **Named Entity Domicile:** | IL | **Policy Period:**    From: | | June 1, 2017 |
| **Insurer Address:** | 175 WATER STREET | To: | | June 1, 2018 |
| | NEW YORK, NY, 10038 | **Premium:** | $ | 84,436 |
| **Claims Address:** | | **TRIA Premium** | $ | 836 |
| e-mail: | c-claim@aig.com | | | |
| Mail: | AIG, Financial Lines Claims | | | |
| | P.O. Box 25947 | | | |
| | Shawnee Mission, KS  66225 | | | |
| **Passport** | This policy does not serve as a master Passport policy. | | | |
| **Reinstatement Feature** | This policy does not include a Reinstatement Feature. If it does, see the Reinstatement Addendum for details. | | | |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

## SCHEDULE OF UNDERLYING COVERAGE

| | Underlying Insurer | Underlying Policy | Underlying Limit | Underlying Policy Period |
|---|---|---|---|---|
| * | XL Specialty Insurance Company | US00075683DO17A | $10,000,000 Primary | 06/01/2017 - 06/01/2018 |
| | Allied World National Assurance Company | 0307-5817 | $10,000,000 xs $10,000,000 | 06/01/2017 - 06/01/2018 |
| | Endurance American Insurance Company | DOX10007587102 | $10,000,000 xs $20,000,000 | 06/01/2017 - 06/01/2018 |

The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address**. Subject to the *CHANGES* Clause, **"Followed Policy"** means the policy in the Schedule with an "*" at the beginning of its row. If that policy is comprised of multiple coverage sections, "**Followed Policy**" only means the directors and officers liability insurance coverage section of that policy. **"TRIA Premium"** means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002. Amount indicated above is included in **Premium**. A copy of the TRIA disclosure sent with the original quote is attached hereto.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

117121 (12/13)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
2
© All rights reserved.

**IN WITNESS WHEREOF,** the **Insurer** has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

**PRESIDENT**
**Illinois National Insurance Company**

**SECRETARY**
**Illinois National Insurance Company**

**AUTHORIZED REPRESENTATIVE**

| COUNTERSIGNED AT | DATE | COUNTERSIGNATURE |
|---|---|---|

```
ARTHUR J GALLAGHER RISK MNGT SERV INC
300 S. RIVERSIDE PLAZA
STE. 1900
CHICAGO, IL 60606
```

*1317910*

© All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *AKORN, INC.*

Policy Number: *01-498-04-39*
Policy Period Effective Date From: *June 1, 2017*       To: *June 1, 2018*

© 2015 National Association of Insurance Commissioner

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30



## SIDE-A EDGE<sup>SM</sup>

Guide

1. **INSURING AGREEMENTS** ………………………………………………**2**
   - *Excess and Difference in Conditions ("DIC") Insured Person Side-A Coverage*
   - *DIC Events*
   - *Follow Form*
   - *Followed Sublimits*
   - *Underlying Match Assurance*

2. **EXTENSIONS AND ADDITIONAL PROTECTION** ………………………**4**
   - *Blanket, For Profit Outside Director Liability*
   - *Civil Fines & Penalties*
   - *Enhanced Discovery*
   - *Executive Protection Suite*
   - *Non-rescindable*

   *Recognition Of Erosion*

3. **WORLDWIDE AND CROSS-BORDER** ………………………………**6**
   - *Global Liberalization*
   - *Passport Master Policy Program*

4. **EXCLUSION** …………………………………………………………**6**
   - *Exclusions Not Followed*
   - *Conduct Exclusion*

5. **GENERAL TERMS AND CONDITIONS** ……………………………**6**
   - *Limits Of Liability*
   - *Claims Made & Pre-Claim Inquiries Received*
   - *Other Insurance & Indemnification*
   - *Notices & Authority*
   - *Rights*
   - *Changes*
   - *Conformance To Law*

6. **DEFINITIONS** ………………………………………………………**9**

   ADDENDUM:  REINSTATEMENT FEATURE, if included.

117121 (12/13) © All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

In consideration of the payment of the premium, the **Insurer** and the **Insured Persons** agree as follows:

1. INSURING AGREEMENTS

This policy provides coverage to **Insured Persons** solely for **Loss** that arises from **Claims** first made against **Insured Persons**, and **Pre-Claim Inquiry Costs** that arise from any **Pre-Claim Inquiry** first reported, during the **Policy Period** or the applicable **Discovery Period**. This policy is an excess follow form and difference in conditions insurance policy. It only protects and benefits **Insured Persons**.   No entity is covered in any respect under this policy.

A term in bold typeface not defined in this policy or stated in the Declarations shall have the same meaning as the same term defined in the **Followed Policy**.

| | |
|---|---|
| *Excess and Difference in Conditions ("DIC") Insured Person Side-A Coverage* | This policy shall pay:<br><br>(i)  the **Loss** of any **Insured Person**, where such **Loss** arises from any **Claim** for any **Wrongful Act** of such **Insured Person**; and<br><br>(ii)  the **Pre-Claim Inquiry Costs** of any **Insured Person**;<br><br>in either case: (a) excess of amounts paid under any **Underlying Policy** and of amounts indemnified or advanced from an **Organization** or **Outside Entity**; or (b) on a drop-down basis solely as provided in the *Difference in Conditions ("DIC") Event Coverage* below. |
| *DIC Events* | The policy will drop down and pay the **Loss** or **Pre-Claim Inquiry Costs** insured under the *Excess and DIC Insured Person Side-A Coverage* upon the occurrence of any one or more of the following events:<br><br>(i)  this policy affords broader coverage than the **Underlying Policy**;<br><br>(ii)  the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** within any applicable retention of an **Underlying Policy**;<br><br>(iii)  an **Outside Entity** and the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** within any applicable retention of any **Underlying Policy** or management liability policy issued to the **Outside Entity**;<br><br>(iv)  the refusal in writing of an **Underlying Insurer** for any reason to pay any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** pursuant to the terms and conditions of its **Underlying Policy**; |

1. INSURING AGREEMENTS (Continued)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

(v) the failure of an **Underlying Insurer** for any reason to pay or advance any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** within sixty (60) days of a written request from the **Named Entity** or an **Insured Person**;

(vi) the actual or intended avoidance, rescission or cancellation of an **Underlying Policy** by an **Underlying Insurer**;

(vii) the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** by reason of bankruptcy, receivership or any similar proceeding;

(viii) an **Outside Entity** and the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** by reason of bankruptcy, receivership or any similar proceeding; or

(ix) the financial inability by reason of bankruptcy, receivership, liquidation or any similar proceeding of an **Underlying Insurer** to provide coverage to any **Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization**, **Outside Entity** or **Underlying Insurer** is deemed:

(a) "failed" if it has been requested by or on behalf of an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by, or is not collectible from, an **Organization**, **Outside Entity** or **Underlying Insurer**, respectively, within sixty (60) days of such request.

(b) "refused" if an **Organization**, **Outside Entity** or **Underlying Insurer** gives a written notice of the refusal to the **Insured Person**.

*Follow Form*

This policy shall provide coverage for **Insured Persons** in accordance with the terms, conditions and limitations of the coverage for non-indemnified **Loss** and **Pre-Claim Inquiry Costs** of **Insured Persons** within the **Followed Policy** as they were in existence at the inception of the **Policy Period**, as modified by and subject to the terms, conditions and limitations of this policy.

*Followed Sublimits*

If any **Loss** or **Pre-Claim Inquiry Costs** are subject to a sublimit of liability under the **Followed Policy**, this policy shall pay such **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** excess of amounts actually paid under any **Underlying Policy**, regardless of whether the full limit of liability of any **Underlying Policy** has been exhausted. This policy shall provide coverage for such **Loss** subject to a sublimit of liability equal to that set forth in the **Followed Policy**, which shall be part of and not in addition to this policy's **Limit of Liability**.

1. INSURING AGREEMENTS (Continued)

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

*Underlying Match Assurance*

For any **Claim** against or **Pre-Claim Inquiry** received by any **Insured Person**, this policy shall be extended to include coverage for **Loss** of **Insured Persons** provided by any **Underlying Policy** (including but not limited to the **Followed Policy**) that is not already encompassed in this policy, excess of amounts actually paid under any **Underlying Policy** and amounts actually indemnified or advanced from an **Organization** or **Outside Entity**. In no event shall this provision increase any limit of liability of this policy.

## 2. EXTENSIONS AND ADDITIONAL PROTECTION

*Blanket, For Profit Outside Director Liability*

In addition to the definition of "**Outside Entity Executive**" set forth in the **Followed Policy**, **Outside Entity Executive** under this policy shall also mean any **Executive** of an **Organization** who is or was acting at the specific and verifiable request or direction of an **Organization** as an **Executive** of any for-profit entity, but only when such specific and verifiable request or direction occurs prior to the **Wrongful Act** giving rise to a **Claim**.

In addition to the definition of "**Outside Entity**" set forth in the **Followed Policy**, **Outside Entity** under this policy shall also mean any for-profit entity.

*Civil Fines & Penalties*

In addition to the definition of "**Loss**" set forth in the **Followed Policy**, **Loss** shall also include civil fines and civil penalties assessed by any **Enforcement Body** against any **Insured Person** in connection with a **Claim** if such assessment does not relate to any determination of a grossly negligent or deliberate violation of law by such **Insured Person** and is not otherwise prohibited by the assessment itself.

*Enhanced Discovery*

This policy shall follow the terms, conditions and limitations of the Discovery Section or Clause of the **Followed Policy**.

Additionally, in the event the **Named Entity** first becomes the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**) during the **Policy Period**, the **Insured Persons** shall have the right to a discovery period of unlimited duration commencing on the date of entry of a final order of dissolution in such bankruptcy case, in which to give the **Insurer** written notice of:

(a) **Claims** first made against an **Insured Person**;
(b) **Pre-Claim Inquiries** first received by an **Insured Person**; and
(c) circumstances of which an **Insured Person** shall become aware;

after the date of entry of a final order of dissolution in such bankruptcy case and solely with respect to a **Wrongful Act** that occurs prior to such date. Such discovery period shall be provided upon payment of an additional premium equal to 100% of the premium level in effect for this policy.

## 2. EXTENSIONS AND ADDITIONAL PROTECTION (Continued)

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL

**SIDE-A EDGE**

Any **Executive** that ceases to serve as an **Executive** during the **Policy Period** shall be provided, for no additional premium, with a discovery period of unlimited duration in which to give the **Insurer** written notice of: (i) **Claims** first made against such former **Executive**; and (ii) **Pre-Claim Inquiries** first received by such former **Executive**; after the effective date of such former **Executive's** ceasing to serve in their capacity as **Executive** and solely with respect to a **Wrongful Act** that occurs prior to such date.   This discovery period for former **Executives** shall be specifically excess of any valid and collectible insurance otherwise in place for such former **Executives**. The **Limit of Liability** for any discovery period provided under this policy shall be part of, and not in addition to, the corresponding **Limit Period of Liability** for the **Policy Period**.   This discovery period of unlimited duration, however, shall not apply to any **Executive** who ceases to serve as an **Executive** as a result of a **Transaction**.

*Executive Protection Suite*

**Loss** shall also mean the following items, provided that they arise out of a **Claim** or **Pre-Claim Inquiry**:

(1) **Clawback Costs**;

(2) **Extradition Costs**;

(3) UK **Corporate Manslaughter Act Defense Costs**;

(4) **Executive ReputationGuard Expenses**, subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

(5) **Asset Protection Costs**, subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

*Non-rescindable*

The **Insurer** shall not be entitled, under any circumstances, to rescind or void this policy in whole or in part.

*Recognition Of Erosion*

This policy shall recognize erosion of an **Underlying Limit** of an **Underlying Policy** through payments by others of **Loss** insured under that **Underlying Policy**.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

117121 (12/13)

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

## 3. WORLDWIDE AND CROSS-BORDER

*Global Liberalization*

The coverage afforded by this policy shall apply anywhere in the world.

For **Loss** from that portion of any **Claim**, or **Pre-Claim Inquiry Costs** from that portion of any **Pre-Claim Inquiry**, maintained in a **Foreign Jurisdiction**, the **Insurer** shall apply the terms and conditions of this policy as amended to include those of any **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insured Persons** in the **Foreign Jurisdiction**. This *Global Liberalization* Clause shall not apply to any provision of any **Foreign Policy** that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

*Passport Master Policy Program*

If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity**. The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy.

## 4. EXCLUSION

*Exclusions Not Followed*

This policy shall not follow the Exclusions Section or Clause of the **Followed Policy**.

*Conduct Exclusion*

The **Insurer** shall not be liable to make any payment for that portion of **Loss** in connection with any **Claim** made against any **Insured Person** that arises out of, is based upon or is attributable to: (a) any remuneration, profit or other advantage to which a final, non-appealable adjudication in the underlying action establishes that the **Insured Person** was not legally entitled; or (b) any deliberate criminal or deliberate fraudulent act by the **Insured Person**, if a final, non-appealable adjudication in the underlying action establishes that such deliberate criminal or deliberate fraudulent act was committed; provided, however: (i) this exclusion shall not apply to **Defense Costs**; and (ii) part (a) of this exclusion shall not apply in a **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations.

## 5. GENERAL TERMS AND CONDITIONS

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL

*Limits Of Liability*

The **Limit of Liability** is the aggregate limit of the **Insurer's** liability for all **Loss** and **Pre-Claim Inquiry Costs** arising from all **Claims** first made, and all **Pre-Claim Inquiries** first received, during the **Policy Period** or **Discovery Period** (if applicable).

*Claims Made & Pre-Claim Inquiries Received*

This policy provides coverage for **Claims** first made against an **Insured Person**, and **Pre-Claim Inquiries** first received by an **Insured Person**, during the **Policy Period** or the **Discovery Period** (if applicable) and reported in the manner as may be required by the **Followed Policy**.

**Claims** first made against an **Insured Person** and **Pre-Claim Inquiries** first received by an **Insured Person** prior to the inception date of this policy, and **Claims** deemed as first made against an **Insured Person** and **Pre-Claim Inquiries** deemed as first received by an **Insured Person** under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

All **Claims** made against an **Insured Person**, and all **Pre-Claim Inquiries** received by an **Insured Person**, alleging, arising out of, based upon or attributable to the same or related facts, **Wrongful Acts**, circumstances or situations, or the same or related series of facts, **Wrongful Acts**, circumstances or situations, shall be deemed to be a single **Claim** or **Pre-Claim Inquiry** made or received at the time the earliest such **Claim** was first made against, or **Pre-Claim Inquiry** was first received by, an **Insured Person**.

*Other Insurance & Indemnification*

This policy shall follow the terms, conditions and limitations of the **Followed Policy's** Other Insurance Section or Clause. The coverage provided by this policy:

(a) for **Outside Entity Executives** is specifically excess over any directors and officers liability policy issued to an **Outside Entity**;

(b) for **Loss** in connection with any **Claim** made against an **Insured Person** that is for bodily injury, sickness, disease, or death of any person, or damage to or destruction of any tangible property, shall apply specifically as excess over any property, casualty or commercial general liability insurance issued to or available to an **Organization** or **Outside Entity**, either directly or as an additional insured, and any personal liability insurance issued to such **Insured Person**; and

(c) for **Loss** in connection with any **Claim** made against an **Insured Person** as a fiduciary of any employee benefit plan sponsored by an **Organization** or any matter claimed against such **Insured Person** by reason of his or her status as such, shall apply specifically as excess over any fiduciary liability insurance policy that names any **Organization** as a sponsor of a covered plan.

5.  GENERAL TERMS AND CONDITIONS  (Continued)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
obermayer.com
Aug 05, 2020 14:30

117121 (12/13)

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

*Notices & Authority*

Where the **Followed Policy** requires or permits notice to its insurer, the **Named Entity** and the **Insured Persons** have the same obligations and rights to notify the **Insurer** under this policy, except that with respect to this policy, any notice to the **Insurer** must be directed as follows:   (a) for claims-related matters, by mail or e-mail to the **Claims Address**; and (b) for all other notices, by mail to the **Insurer Address**.   The **Named Entity** shall act on behalf of each and every **Insured Person** with respect to the giving and receiving of notice of cancellation or nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and in the exercising of any right to a **Discovery Period**.

*Rights*

The **Insurer** shall have the same rights, privileges and protections afforded to the **Underlying Insurer** of the **Followed Policy** in accordance with the terms, conditions and limitations of the **Followed Policy**.   The **Insurer** shall also have the right, in its sole discretion, but not the obligation, to effectively associate with the **Insured Persons** in the defense and settlement of any **Claim** or **Pre-Claim Inquiry** that appears to be reasonably likely to involve the **Insurer**. The **Named Entity**, each **Organization** and the **Insured Persons** shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request and shall not do anything that prejudices the **Insurer's** position or potential rights of recovery of payments made in connection with this Policy.

Notwithstanding the foregoing paragraph, the failure of the **Named Entity**, each **Organization** or any **Insured Person** to give the **Insurer** such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this policy.

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this policy any indemnification or advancement owed to any **Insured Person** by any **Organization**, then that **Organization** shall reimburse the **Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer**. The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this policy shall not impair the rights of any **Insured Person** under this policy.   In no event shall any such advancement by the **Insurer** relieve any **Organization**, **Outside Entity** or **Underlying Insurer** of any duty it may have to provide advancement, make any payment or provide indemnification to any **Insured Person**.

5.  GENERAL TERMS AND CONDITIONS  (Continued)

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL

| | |
|---|---|
| *Changes* | *If, subsequent to the issuance of the Followed Policy, the terms, conditions or limitations of an Underlying Policy are modified, the Named Entity and the Insured Persons must notify the Insurer in writing, as soon as practicable, of such modification. If any changes to the Followed Policy: (a) expand coverage, (b) change the Named Entity's name or address, or (c) modify premium, this policy shall not follow those changes unless the Named Entity or the Insured Persons have secured the Insurer's written consent to do so.* |
| *Conformance To Law* | *Coverage under this policy shall not be provided to the extent prohibited by any law.* |

6. DEFINITIONS

| | |
|---|---|
| **"Asset Protection Cost"** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof. |
| **"Clawback Costs"** | means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by an **Executive** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 ("SOX 304") or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank 954"). "**Clawback Costs**" do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to either SOX 304 or Dodd-Frank 954. |
| **"Derivative Demand"** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive.** |
| **"Derivative Investigation"** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond. |
| **"Enforcement Body"** | means: (a) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk

117121 (12/13)

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**6.  DEFINITIONS (Continued)**

Securities and Exchange Commission and any attorney general); or (b) the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

| | |
|---|---|
| **"Executive ReputationGuard Expenses"** | means reasonable and necessary fees, costs and expenses of a **Panel PR Firm** retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the damage to the **Executive's** reputation from a **Personal Reputation Crisis**.  "**Executive ReputationGuard Expenses**" shall not include any fees, costs or expenses of any **Panel PR Firm** incurred by an **Executive** if such **Panel PR Firm** is also retained by or on behalf of an **Organization**. |
| **"Extradition"** | means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation. |
| **"Extradition Costs"** | means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person**. |
| **"Foreign Jurisdiction"** | means any jurisdiction, other than the United States of America or any of its territories or possessions. |
| **"Foreign Policy"** | means the standard policy form, including all mandatory endorsements, if any, typically offered for sale in a **Foreign Jurisdiction** for comparable risks by the **Insurer** or any of its affiliates that provides excess "Side-A" (non-indemnifiable loss) executive management liability coverage substantially similar to the coverage provided by this form.  If no such policy exists, then "**Foreign Policy**" means the portions of the standard directors and officers liability policy form addressing coverage for "Side-A" (non-indemnifiable loss) for **Insured Persons**.  The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage. |
| **"Liberty Protection Costs"** | means: (a) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a: (i) specified residence; or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or (b) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified |

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

117121 (12/13)

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com

6. DEFINITIONS (Continued)

amount required by a court during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**; or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**.

**"Panel PR Firm"** — means any public relations, crisis management or brand management firm specifically retained by an **Executive** in connection with a **Personal Reputation Crisis** but only if such firm is listed under the "ReputationGuard®" link at http://www.aig.com/us/panelcounseldirectory as an approved ReputationGuard® **Panel PR Firm** at the time the firm is retained.

**"Personal Reputation Crisis"** — means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of an **Organization** made during the **Policy Period** regarding any **Wrongful Acts** that form the basis of any **Claim** or **Pre-Claim Inquiry** covered under this policy.

**"Pre-Claim Inquiry"** — means any pre-**Claim**:

(a) verifiable request for an **Insured Person** of any **Organization**: (i) to appear at a meeting or interview; or (ii) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:

(1) **Enforcement Body**; or

(2) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

(A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

(B) as part of its **Derivative Investigation**; and

(b) arrest or confinement of an **Executive** of an **Organization** to a: (i) specified residence; or (ii) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization**.

**"Pre-Claim Inquiry"** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

117121 (12/13)

Ⓒ All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**SIDE-A EDGE**

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

6.  DEFINITIONS (Continued)

**"Pre-Claim Inquiry Costs"** means:

(a) as respects a **Pre-Claim Inquiry** under subparagraph (a) of the definition of such term, the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding: (i) any compensation of any **Insured Person**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party; and

(b) as respects a **Pre-Claim Inquiry** under subparagraph (b) of the definition of such term, **Liberty Protection Costs**.

**"Transaction"** unless defined in the **Followed Form**, means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**"UK Corporate Manslaughter Act Defense Costs"** means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

**"Wrongful Act"** in addition to the definition provided in the **Followed Policy**, also means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by any **Insured Person** as a fiduciary of any employee benefit plan sponsored solely by any **Organization** or any matter claimed against such **Insured Person** solely by reason of his or her status as such.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

117121 (12/13)

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**ENDORSEMENT# _1_**

This endorsement, effective _12:01 am    June 1, 2017_    forms a part of
policy number   _01-498-04-39_
issued to   _AKORN, INC._

by    _Illinois National Insurance Company_

**NOTICE OF CLAIM**
**(REPORTING BY E- MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

    c- claim@AIG.com

    Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227- 1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

    (b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

    (c)   "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 001*

99758 (8/08)                     Page 1 of 1

**ENDORSEMENT#** *2*

This endorsement, effective *12:01 am   June 1, 2017*   forms part of policy no.: *01-498-04-39* issued to *AKORN, INC.*

by: *Illinois National Insurance Company*

### ILLINOIS AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### <u>CANCELLATION AND NONRENEWAL</u>

A. The cancellation provision of this policy is replaced by the following:

CANCELLATION

1. The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2. If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

   a. Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

   A copy of the notice will also be sent to the mortgagee or lien holder at the last mailing address known to the Insurer.

3. If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

© All rights reserved.

*END 002*
Page 1 of 2

52142(7/13)

HIGHLY CONFIDENTIAL
Turner Falk
Aug 05, 2020 14:30

**ENDORSEMENT#** *2*   (continued)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL

If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4. The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5. Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6. If this policy is cancelled, the Insurer will send the Named Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.

7. Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.

B. The nonrenewal provision of this policy is replaced by the following:

**NONRENEWAL**

1. If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy.  A copy of the notice will also be sent to:

   a. The broker, if known to the Insurer, or the agent of record; and

   b. The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

   Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.
   This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other terms, conditions and exclusions shall remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

**END 002**
Page 2 of 2

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
obermayer.com
Aug 05, 2020 14:30

ENDORSEMENT# 3

This endorsement, effective *12:01 am* *June 1, 2017*                    forms a part of
policy number   *01-498-04-39*
issued to    *AKORN, INC.*

by   *Illinois National Insurance Company*

**ECONOMIC SANCTIONS ENDORSEMENT**

Product Name: SIDE - A EDGE POLICY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided  and payment of loss  under this policy shall only  be made
in full compliance with  enforceable United Nations economic  and trade sanctions  and the
trade and  economic sanction  laws or  regulations of  the European  Union and  the United
States of  America, including,  but not  limited to,  sanctions, laws  and regulations
administered and  enforced by  the U.S.  Treasury Department's  Office  of Foreign  Assets
Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

119679 (09/15)                              *END 3*

ENDORSEMENT# 4

This endorsement, effective *12:01 am* *June 1, 2017*                forms a part of
policy number *01-498-04-39*
issued to   *AKORN, INC.*

by *Illinois National Insurance Company*

## AMENDED SIDE A EDGE AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

### I.

The Declarations are amended to add the following at the end thereof:

| | |
|---|---|
| *SAME* | *The **Followed Policy** does not include a Side-A Match Edge endorsement providing Side-A coverage that follows the terms and conditions of this policy.* |

### II.

Clause 1. INSURING AGREEMENTS is deleted in its entirety and replaced with the following:

### 1. INSURING AGREEMENTS

This policy provides coverage to **Insured Persons** solely for **Loss** that arises from **Claims** first made against **Insured Persons**, and **Pre-Claim Inquiry Costs** that arise from any **Pre-Claim Inquiry** first reported to the **Insurer**, during the **Policy Period** or the applicable **Discovery Period**. This policy is an excess follow form and difference in conditions insurance policy. It only protects and benefits **Insured Persons**. No entity is covered in any respect under this policy.

A term in bold typeface not defined in this policy or stated in the Declarations shall have the same meaning as the same term defined in the **Followed Policy**.

*Excess and Difference in Conditions ("DIC") Insured Person Side-A Coverage*

This policy shall pay:

(i) the **Loss** of any **Insured Person**, where such **Loss** arises from any **Claim** for any **Wrongful Act** of such **Insured Person**; and

(ii) the **Pre-Claim Inquiry Costs** of any **Insured Person**;

**ENDORSEMENT# 4**    **(Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

in either case: (a) excess of amounts paid under any **Underlying Policy** (including payments by any **Insured Person** or others of **Loss** or **Pre-Claim Inquiry Costs** insured under that **Underlying Policy** and payments under any other policy with a limit of liability tied in with the limit of liability of that **Underlying Policy**) and of amounts indemnified or advanced from an **Organization** or **Outside Entity**; or (b) on a drop-down basis solely as provided in the Difference in Conditions ("DIC") Event Coverage below.

*DIC Events*    The policy will drop down and pay the **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** if, for any reason, an **Organization** or **Outside Entity** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** within an applicable retention; or an **Underlying Insurer** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** under an **Underlying Policy**; including but not limited to the occurrence of any one or more of the following events:

(i)    this policy affords broader coverage than the **Underlying Policy**;

(ii)    the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** within any applicable retention of an **Underlying Policy**;

(iii)    an **Outside Entity** and the **Organization** fails or refuses for any reason to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** within any applicable retention of any **Underlying Policy** or management liability policy issued to the **Outside Entity**;

(iv)    the refusal in writing of an **Underlying Insurer** for any reason to pay any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** pursuant to the terms and conditions of its **Underlying Policy**;

(v)    the failure of an **Underlying Insurer** for any reason to pay or advance any **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** within sixty (60) days of a written request from the **Named Entity** or an **Insured Person**;

(vi)    the actual or intended avoidance, rescission or cancellation of an **Underlying Policy** by an **Underlying Insurer**;

(vii)    the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** by reason of bankruptcy, receivership or any similar proceeding in any jurisdiction worldwide;

M122379 (09/16)    *END 4*

**ENDORSEMENT# 4**    **(Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

(viii) an **Outside Entity** and the **Organization** fails or refuses to advance, pay or indemnify **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** serving as an **Outside Entity Executive** by reason of bankruptcy, receivership or any similar proceeding in any jurisdiction worldwide;

(ix) the financial inability by reason of bankruptcy, receivership, liquidation or any similar proceeding in any jurisdiction worldwide of an **Underlying Insurer** to provide coverage to any **Insured Person**; or

(x) an **Underlying Insurer** is unable to or precluded from paying **Loss** or **Pre-Claim Inquiry Costs** of an **Insured Person** by reason of bankruptcy, receivership or any similar proceeding in any jurisdiction worldwide by or against an **Organization**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization**, **Outside Entity** or **Underlying Insurer** is deemed:

(a) "failed" if it has been requested by or on behalf of an **Insured Person** and has not been provided by, agreed to be provided by or acknowledged as an obligation by, or is not collectible from, an **Organization**, **Outside Entity** or **Underlying Insurer**, respectively, within sixty (60) days of such request.

(b) "refused" if an **Organization**, **Outside Entity** or **Underlying Insurer** gives notice of the refusal to the **Insured Person**.

*Follow Form*    This policy shall provide coverage for **Insured Persons** in accordance with the terms, conditions and limitations of the **Followed Policy**, as modified by and subject to the terms, conditions and limitations of this policy, including but not limited to the *Changes* Clause of this policy regarding midterm modifications to an **Underlying Policy** (including but not limited to the **Followed Policy**).

*Followed Sublimits*    If any **Loss** or **Pre-Claim Inquiry Costs** are subject to a sublimit of liability under the **Followed Policy**, this policy shall pay such **Loss** or **Pre-Claim Inquiry Costs** of any **Insured Person** excess of amounts actually paid under any **Underlying Policy**, regardless of whether the full limit of liability of any **Underlying Policy** has been exhausted. This policy shall provide coverage for such **Loss** or **Pre-Claim Inquiry Costs** subject to a sublimit of liability equal to that set forth in the **Followed Policy**, which shall be part of and not in addition to this policy's **Limit of Liability**.

M122379 (09/16)    *END 4*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

ENDORSEMENT# *4*    (Continued)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

This endorsement, effective *12:01 am    June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

| | |
|---|---|
| *Underlying Match Assurance* | For any **Claim** against or **Pre-Claim Inquiry** received by any **Insured Person**, this policy shall be extended to include coverage for **Loss** or **Pre-Claim Inquiry Costs** of **Insured Persons** provided by any **Underlying Policy** (including but not limited to the **Followed Policy**) that is not already encompassed in this policy, excess of amounts actually paid under any **Underlying Policy** and amounts actually indemnified or advanced from an **Organization** or **Outside Entity**. In no event shall this provision increase any limit of liability of this policy. |

**III.**

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled " *Civil Fines & Penalties*" is deleted in its entirety and replaced with the following:

| | |
|---|---|
| *Civil Fines & Penalties* | **Loss,** as defined in Clause 6. Definitions, of this policy (as amended), includes civil fines and civil penalties assessed by any **Enforcement Body** against any **Insured Person** in connection with a **Claim** if such assessment does not relate to any willful or deliberate violation of law by such **Insured Person** and is not otherwise prohibited by the assessment itself. Such fines and penalties include but are not limited to Section 2(g)(2)(B) of the U.S. Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B) and § 78ff(c)(2)(B), or Section 11(1)(a) of the United Kingdom Bribery Act of 2010, Chapter 23, or the equivalent subsection of any comparable anti-corruption or anti-bribery statute. |

**IV.**

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled " *Enhanced Discovery*" is amended by deleting the second paragraph in its entirety and replacing it with the following:

> Additionally, in the event the **Named Entity** first becomes the subject of a bankruptcy proceeding (or the equivalent in a **Foreign Jurisdiction**) during the **Policy Period**, if the **Insurer** or **Insured Persons** subsequently elect not to renew this policy, then the **Insured Persons** shall have the right to a discovery period of unlimited duration commencing at the end of the **Policy Period**, in which to give the **Insurer** written notice of:
>
> (a) **Claims** first made against an **Insured Person** after the end of the **Policy Period** and solely with respect to **Wrongful Acts** that occur prior to the end of the **Policy Period**;

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

M122379 (09/16)    ***END 4***

ENDORSEMENT# *4*    (Continued)

This endorsement, effective  *12:01 am*      *June 1, 2017*        forms a part of
policy number  *01-498-04-39*
issued to     *AKORN, INC.*

by      *Illinois National Insurance Company*

     (b) **Pre-Claim Inquiries**  first  reported by  an **Insured  Person**  after the
end  of the  **Policy  Period**  and solely  with respect to  acts or
omissions that occur prior to the end of the **Policy Period**; and

     (c) circumstances that  occur prior to  the end of  the **Policy Period**  of
which an  **Insured Person** shall  become aware after the end  of the
**Policy Period**;

Such discovery period shall be provided for no additional premium.

**V.**

In Clause  2. EXTENSIONS  AND ADDITIONAL  PROTECTION,  the section  entitled  "
*Enhanced Discovery*" is further amended by deleting the  third paragraph in its entirety and
replacing it with the  following:

Any **Executive** that ceases to serve as an  **Executive** of an **Organization**
during the **Policy  Period** shall  be provided,  for no  additional premium,
with a  discovery period  of unlimited  duration in which  to  give the
**Insurer** written notice of:

(i)     **Claims** first  made against  such former **Executive** after  the
effective date  of such  former  **Executive's** ceasing  to serve  in
their capacity as  **Executive** of  an **Organization**  and solely  with
respect to **Wrongful Acts** that occur prior to such date; and

(ii)    **Pre-Claim Inquiries** first reported by  such former **Executive** after
the effective date of such former **Executive's** ceasing to serve in
their capacity as  **Executive** of  an **Organization**  and solely  with
respect to acts or omissions that occur prior to such date.

This discovery period for former **Executives** shall be  specifically excess
of  any valid  and  collectible insurance  otherwise in  place  for  such
former **Executives**.  The **Limit of  Liability** for  any discovery  period
provided under this  policy shall be  part of, and  not in addition  to, the
corresponding **Limit of Liability** for the **Policy Period**.

M122379 (09/16)                 *END 4*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**ENDORSEMENT# 4**    **(Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

## VI.

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled "*Non-rescindable*" is deleted in its entirety and replaced with the following:

*Non-rescindable*

The **Insurer** shall not be entitled, under any circumstances, to rescind or void any coverage under this policy in whole or in part.

## VII.

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled "*Recognition of Erosion*" is deleted in its entirety and replaced with the following:

*Recognition Of Erosion*

This policy shall recognize erosion of an **Underlying Limit** or any followed sublimit of liability of an **Underlying Policy** through payments by others of **Loss** and **Pre-Claim Inquiry Costs** insured under that **Underlying Policy**.

## VIII.

In Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION, the section entitled " *Blanket, For Profit Outside Director*" is deleted in its entirety and replaced with the following:

*Blanket, For Profit Outside Director Liability*

In addition to the definition of " **Outside Entity Executive**" set forth in the **Followed Policy**, **Outside Entity Executive** under this policy shall also mean any **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of any for-profit entity, but only when such specific request or direction occurs prior to the **Wrongful Act** giving rise to a **Claim**.

In addition to the definition of " **Outside Entity**" set forth in the **Followed Policy**, **Outside Entity** under this policy shall also mean any for-profit entity.

## IX.

Clause 2. EXTENSIONS AND ADDITIONAL PROTECTION of the policy is amended by adding the following paragraphs at the end thereof:

**ENDORSEMENT# 4** (Continued)

This endorsement, effective *12:01 am* *June 1, 2017* forms a part of
policy number *01-498-04-39*
issued to *AKORN, INC.*

by *Illinois National Insurance Company*

| | |
|---|---|
| *Spousal and Legal Representative Extension* | If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or **Domestic Partner** of such **Insured Person**; or (ii) a property interest of such spouse or **Domestic Partner**, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or **Domestic Partner** or the property of that spouse or **Domestic Partner** to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or **Domestic Partner**. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed. |
| | "**Domestic Partner**" means any individual person legally recognized as a domestic or civil union partner under: (1) the provisions of any applicable federal, state, or local law; or (2) the provisions of any formal program established by the **Named Entity** or any **Subsidiary**. |
| *Policy Access Fund* | The **Insurer** shall pay the reasonable fees, costs and expenses incurred by an **Insured Person** to: |
| | (a) gain access to the limit of liability provided by an **Underlying Policy**; or |
| | (b) defend against efforts by third parties to seize or attach this policy or any **Underlying Policy**; |
| | provided the **Organization**, **Outside Entity** and/or **Underlying Insurer** fails, refuses or is financially unable to indemnify, advance or pay such fees, costs and expenses. The **Policy Access Fund** coverage shall be subject to a maximum amount per **Policy Period** of $100,000, which limit shall be in addition to the **Limit of Liability** provided by this policy. |

M122379 (09/16)    **END 4**

ENDORSEMENT# *4*    (Continued)

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

*Bankruptcy Clause*

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy Law; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

**X.**

In Clause 4. EXCLUSION, the section entitled " *Conduct Exclusion*" is deleted in its entirety and replaced with the following:

*Conduct Exclusion*    The **Insurer** shall not be liable to make any payment for that portion of **Loss** or **Pre-Claim Inquiry Costs** in connection with any **Claim** made against any **Insured Person** for: (a) any remuneration, personal profit or other financial advantage to which a final, non-appealable adjudication against such **Insured Person** in the underlying action establishes that the **Insured Person** was not legally entitled; or (b) any deliberate criminal or deliberate fraudulent act by the **Insured Person**, if a final, non-appealable adjudication against such **Insured Person** in the underlying action establishes that such deliberate criminal or deliberate fraudulent act was committed;

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

M122379 (09/16)    **END 4**

**ENDORSEMENT# *4*    (Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of

policy number *01-498-04-39*

issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

provided, however:

(i)        this exclusion shall not apply to **Defense Costs**;

(ii)      part (a) of this exclusion shall not apply in an **Employment Practices Claim** or in a **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations;

(iii)     with respect to part (b) of this exclusion, for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred; and

(iv)     with respect to part (b) of this exclusion, this exclusion shall not apply to **Independent Directors;**

Solely for purposes of this exclusion, " **Independent Director**" means with respect to the **Organization**, a "Non-Employee Director" as that term is defined in Rule 16b-3 promulgated under the Securities Exchange Act of 1934 provided that the term "issuer" as used in that Rule shall be deemed to refer to such **Organization.**

## XI.

In Clause 5. GENERAL TERMS AND CONDITIONS, the section entitled " *Claims Made & Pre-Claim Inquiries Received*" is amended by deleting the second and third paragraphs in their entirety and replacing them with the following:

**Claims** first made against an **Insured Person** and **Pre-Claim Inquiries** first reported by an **Insured Person** prior to the inception date of this policy, and **Claims** deemed as first made against an **Insured Person** and **Pre-Claim Inquiries** deemed as first reported by an **Insured Person** under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

**ENDORSEMENT# 4** **(Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

All **Claims** made against an **Insured Person**, and all **Pre-Claim Inquiries** reported by an **Insured Person**, alleging, arising out of, based upon or attributable to the same or related **Wrongful Acts**, circumstances or situations, or the same or related series of **Wrongful Acts**, circumstances or situations, shall be deemed to be a single **Claim** or **Pre-Claim Inquiry** made or reported at the time the earliest such **Claim** was first made against, or **Pre-Claim Inquiry** was first reported by, an **Insured Person**.

**XII.**

In Clause 5. GENERAL TERMS AND CONDITIONS, the section entitled " *Other Insurance & Indemnification*" is amended by adding the following at the end thereof:

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. Such insurance as is provided by this policy shall apply as primary to any personal umbrella excess liability insurance purchased by any **Insured Persons**.

Notwithstanding the foregoing or the terms and conditions of the **Followed Policy**, if for any reason any **Underlying Insurer** fails or refuses to pay **Loss** or **Pre-Claim Inquiry Costs** covered under the terms and conditions of this policy, this policy shall pay such **Loss** or **Pre-Claim Inquiry Costs**.

**XIII.**

In Clause 5. GENERAL TERMS AND CONDITIONS, the section entitled " *Notices & Authority*" is deleted in its entirety and replaced with the following:

**ENDORSEMENT# 4**    **(Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

Notices &   Where the **Followed Policy** requires or  permits notice to its insurer,  the
Authority   **Named Entity** and  the **Insured Persons** have the  same obligations and
rights to notify  the **Insurer** under  this policy, except  that with respect
to this policy, any notice to the **Insurer** must be directed as follows:  (a)
for **Claim**-related and **Pre-Claim Inquiry**-related matters, by mail  or
e-mail to the  **Claims Address**; and  (b) for all  other notices,  by mail to
the **Insurer Address**.  The **Named Entity** shall act on  behalf of each and
every **Insured Person** with respect to  the giving and receiving of notice
of cancellation or nonrenewal, the payment of premiums  and the
receiving of any return premiums that  may become due under this
policy, the receipt and acceptance of any endorsements issued  to form
a part of  this policy and  in the  exercising of any  right to  a **Discovery
Period**.

Notwithstanding the foregoing,  a failure  to provide  notice as  soon as
practicable shall  not  preclude  coverage  under  the policy  unless the
**Insurer** has been prejudiced by such failure.

### XIV.

In Clause 5. GENERAL TERMS  AND CONDITIONS,  the section  entitled  " *Rights*" is
amended by adding the following at the end thereof:

In the event the **Insurer** recovers amounts  it paid under this policy, the
**Insurer** will reinstate the   **Limits of Liability**  of this policy  to the extent
of such recovery, less its  costs incurred in administering and  obtaining
such recovery.  The **Insurer** assumes no duty to seek a recovery of any
amounts paid  under this  policy. The  **Insurer**, in  its sole  and  absolute
discretion, shall determine the amounts to be credited, if any, toward a
reinstatement of the **Limits of Liability**.

### XV.

In Clause 6. DEFINITIONS, the definitions of "  **Asset Protection Cost**," "  **Clawback Costs**," "
**Executive ReputationGuard  Expenses**"   "  **Extradition**,"  "  **Liberty  Protection  Costs**,"  "
**Pre-Claim Inquiry**," and  " **Wrongful Act**" are deleted in their  entirety and replaced with  the
following:

M122379 (09/16)    *END 4*

**ENDORSEMENT# *4*** **(Continued)**

This endorsement, effective *12:01 am* *June 1, 2017* forms a part of
policy number *01-498-04-39*
issued to *AKORN, INC.*

by *Illinois National Insurance Company*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

| | |
|---|---|
| **"Asset Protection Cost"** | means reasonable fees, costs and expenses consented to by the **Insurer**, such consent not to be unreasonably withheld, and incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof. |
| **"Clawback Costs"** | means the reasonable fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond), such consent not to be unreasonably withheld, and incurred by an **Executive** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 ("SOX 304") or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank 954"), or any similar local, state or foreign statute under the securities laws providing for the recovery, return or reimbursement of incentive-based compensation from an **Executive** due to an accounting restatement by an **Organization**. " **Clawback Costs**" do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to SOX 304, Dodd-Frank 954 or any similar local, state or foreign statute. |
| **"Executive ReputationGuard Expenses"** | means reasonable fees, costs and expenses of a **Panel PR Firm** retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the damage to the **Executive's** reputation from a **Personal Reputation Crisis**. |
| **"Extradition"** | means any formal process by which an **Insured Person** located in any country is surrendered or sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation. |
| **"Liberty Protection Costs"** | means: |

    (a) reasonable fees, costs and expenses consented to by the **Insurer**, such consent not to be unreasonably withheld, and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre- **Claim** arrest or confinement to a: (i) specified residence; or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or

    (b) reasonable and necessary premiums (but not collateral) consented to by the **Insurer**, such consent not to be unreasonably withheld, and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**; or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**ENDORSEMENT# *4*    (Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

| | |
|---|---|
| **"Pre-Claim Inquiry"** | means any pre- **Claim**: |
| | (a) request  for an **Insured Person**  of any **Organization**: (i) to  appear at a meeting or interview; (ii) to provide testimony or  a sworn statement; or (iii)  produce documents, that, in  any  such case,  concerns the business of that  **Organization**  or that  **Insured Person's**  insured capacities, but only if the request came from any: |
| |     (1) **Enforcement Body**; or |
| |     (2) **Organization**, or, on  behalf of  an **Organization**, by  its  board of directors (or the equivalent management  body) or any committee of the  board of  directors (or  the equivalent  management body); and |
| | (b) arrest or  confinement of an **Executive** of  an **Organization** to a: (i) specified residence; or (ii)  secure custodial premises  operated by or on behalf of an  **Enforcement Body**, in  connection with the  business of any **Organization** or an **Insured  Person's** capacity as an **Executive** or **Employee** of an **Organization.** |
| | " **Pre-Claim Inquiry**" shall  not include  any routine  or regularly  scheduled regulatory or  internal  supervision, inspection, compliance,  review, examination, production  or audit, including any  request for  mandatory information  from a  regulated  entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process. |
| **"Wrongful Act"** | in  addition to the  definition provided in  the **Followed Policy**,  also means any actual or  alleged breach of duty,  neglect, error, misstatement, misleading statement,  omission or act by any  **Insured Person** as a fiduciary of  any  employee benefit plan  sponsored solely by  any **Organization** or any matter claimed against such **Insured Person** by reason of his or her status as such. |

## XVI.

In Clause 6. DEFINITIONS, the following definitions are added to the end thereof:

**"Insured Person"** in addition to the  definition provided in  the **Followed  Policy**, **Insured Person** also means any **Shadow Director** or de facto director.

**ENDORSEMENT# *4*    (Continued)**

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of

policy number *01-498-04-39*

issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

| | |
|---|---|
| **"Loss"** | **Loss** means the amounts that the **Insured Persons** are legally obligated to pay as a result of a **Claim**, including but not limited to: |

**(a) Defense Costs;**

(b) damages, judgments (including pre/post-judgment interest on a covered judgment), and settlements;

(c) the listed items set out in Clause 2, Extensions, Executive Protection Suite of this policy;

(d) punitive or exemplary damages or the multiple portion of a multiplied damages award;

(e) the premium (but not collateral) for any bail or similar bond incurred by an **Insured Person** in connection with a **Claim**;

(f) taxes imposed upon the **Organization** for which an **Insured Person** is legally liable by reason of the **Organization's** bankruptcy or insolvency; and

(g) taxes imposed upon an **Insured Person** due to any payment of **Loss** by the **Insurer** under this policy.

**Loss** (other than **Defense Costs**) shall not include:

(i) matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed;

(ii) taxes, except as covered under Clauses (f) and (g) above;

(iii) fines or penalties, except to the extent covered under Clause 2, EXTENSIONS AND ADDITIONAL PROTECTION, *Civil Fines & Penalties* of this policy; and

(iv) any statutory liability imposed upon an **Insured Person** as a result of the failure of the **Organization** to have paid any taxes owed to a federal or state government.

**Loss** shall specifically include plaintiff attorneys' fees awarded or approved by a court in connection with a **Non-Monetary Settlement**.

The insurability of fines, penalties, taxes, and punitive, exemplary and multiplied damages shall be governed by such applicable law that most favors coverage for such fines, penalties, taxes, and punitive, exemplary and multiple damages.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

M122379 (09/16)    *END 4*

ENDORSEMENT# *4*    **(Continued)**

This endorsement, effective *12:01 am      June 1, 2017*    forms a part of
policy number    *01-498-04-39*
issued to    *AKORN, INC.*

by    *Illinois National Insurance Company*

Notwithstanding the above, the  **Insurer** shall not  assert that, in  a **Claim** alleging violations of Section 11,  12 or 15 of  the U.S. Securities Act of 1933, as amended, or similar statutory provisions of any state  or foreign securities law, the  portion of  any amounts incurred  by **Insured  Persons** which is attributable  to such violations  constitutes uninsurable loss  and shall treat that  portion of  all such settlements,  judgments and  **Defense Costs** as constituting **Loss** under this policy.

**"Non-Monetary Settlement"**    means a settlement of  a **Claim** brought  by one or  more shareholders of an **Organization**, either  directly  or  derivatively  on  behalf  of  an **Organization**, wherein no  monetary consideration  would be  received by such shareholder(s) or **Organization**, including but not limited to any such **Claim** alleging that the price or consideration paid or proposed  to be paid for the acquisition or completion  of the acquisition of  all or substantially all the ownership interest in or assets of an entity is inadequate.

**"Shadow Director"**    means any natural person who, as  a consequence of being an **Executive** or **Employee** of any **Organization** is deemed a  shadow director, as defined in Section  251 of  the U.K. Companies  Act 2006,  of any other **Organization** or any **Outside Entity.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

M122379 (09/16)    *END 4*

ENDORSEMENT# 5

This endorsement, effective *12:01 am   June 1, 2017*    forms a part of
policy number *01-498-04-39*
issued to    *AKORN, INC.*

by *Illinois National Insurance Company*

**RENEWAL TRANSITION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.  *Liberalization Right*: If, in relation to a **Claim** first made during the **Policy Period** or **Discovery Period** of this policy, the **Named Entity** believes the terms and conditions of the **Prior Policy** provide coverage for **Loss** that is not provided under the terms and conditions of this policy, the **Named Entity** may elect to have all or part of that **Claim** adjusted according to the terms and conditions of the **Prior Policy**, except as provided in Clause 3. below. To do so, the **Named Entity** must notify the **Insurer** in writing of that election and the language of the **Prior Policy** that the **Named Entity** believes provides the coverage that is not provided under this policy for such **Claim**.

2.  *Prior Policy*: " **Prior Policy**" means the following policy issued by the **Insurer** (or an insurance company affiliate thereof)**:** Executive Shield policy number 01-425-46-58 issued to AKORN, INC. for the policy period from June 1, 2016 to June 1, 2017. **Prior Policy** shall not mean any predecessor thereto or renewal or replacement thereof.

3.  *Liberalization Exceptions*:

    (a)  No coverage shall be provided for any **Claim** or other matter which was the subject of any notice given under the **Prior Policy** or any preceding policy;
    (b)  the liberalization features of this endorsement shall not apply to any of the following items:
        (1)  the **Policy Period, Limit of Liability,** Retention amounts and **Continuity Dates** of this policy;
        (2)  the definition of " **Loss**" of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

M120257 (08/15)    ***END 5***

ENDORSEMENT# 6

This endorsement, effective *12:01 am* *June 1, 2017*        forms a part of
policy number  *01-498-04-39*
issued to    *AKORN, INC.*

by *Illinois National Insurance Company*

## PENDING AND PRIOR LITIGATION EXCLUSION FOR ADDITIONAL EXCESS LIMITS

In consideration  of the  premium charged,  it  is hereby  understood and  agreed that  with respect to the **Limit of Liability** of this policy  $5,000,000 excess of the first $15,000,000 **Limit of Liability** of this  policy, the **Insurer**  shall not  be liable  for any **Loss**  in connection with any  **Claim**  made against  or  any **Pre-Claim Inquiry**  received by any  **Insured Person** alleging, arising out of, based upon or attributable to, as of April  24, 2011, any pending or prior: (1) litigation; or (2)  administrative or regulatory proceeding or  investigation of which an **Insured Person** had notice, or alleging or  derived from the same or essentially the  same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

117133 (12/13)                    **END 6**

ENDORSEMENT# 7

This endorsement, effective *12:01 am   June 1, 2017*        forms a part of

policy number  *01-498-04-39*

issued to    *AKORN, INC.*

by  *Illinois National Insurance Company*

**DECLARATIONS AMENDED**
**(REVISED ATTACHMENT POINT FOR CLAIMS FIRST MADE ON OR**
**AFTER AUGUST 4, 2015)**

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to any **Claim** first made against an **Insured Person** on or after August 4, 2015, the Declarations are amended by deleting the **Limit of Liability**, **Total Underlying Limits** and SCHEDULE OF UNDERLYING COVERAGE in their entirety and replacing them with the following:

| | |
|---|---|
| **Limit of Liability:** | $10,000,000 |
| **Total Underlying Limits:** | $30,000,000 |

| RETENTIONS OF UNDERLYING POLICIES: | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY (Primary) | $2,500,000 |

**SCHEDULE OF UNDERLYING COVERAGE**

| Notes | Underlying Insurer | Underlying Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| Followed Policy | XL Specialty Insurance Company | US00075683DO17A | $10,000,000 Primary | 06/01/2017 to 06/01/2018 |
| | Allied World National Assurance Company | 0307-5817 | $10,000,000 xs $10,000,000 | 06/01/2017 to 06/01/2018 |
| | Endurance American Insurance Company | DOX10007587102 | $10,000,000 xs $20,000,000 | 06/01/2017 to 06/01/2018 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                    *END 7*

**ENDORSEMENT#** *8*

This endorsement, effective *12:01 am*    *June 1, 2017*    forms a part of
policy number    *01-498-04-39*
issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 117121 | 12/13 | SIDE - A EDGE POLICY DECLARATIONS |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 117121 | 12/13 | SIDE - A EDGE POLICY |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 52142 | 07/13 | ILLINOIS AMENDATORY- CANCELLATION/NONRENEWAL |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| M122379 | 09/16 | AMENDED SIDE A EDGE AMENDATORY ENDORSEMENT |
| M120257 | 08/15 | RENEWAL TRANSITION ENDORSEMENT |
| 117133 | 12/13 | PENDING AND PRIOR LITIGATION EXCLUSION FOR ADDITIONAL EXCESS LIMITS |
| MNSCPT | | DECLARATIONS AMENDED |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 96453 | 08/16 | ILLINOIS CONSUMER COMPLAINT NOTIFICATION |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 008*

## ILLINOIS CONSUMER COMPLAINT NOTIFICATION

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

AIG

Consumer Complaints Division

12 Metrotech Center, 27th Floor

Brooklyn, NY 11201

Phone: 1-877-541-9748

Fax: 718-250-1779

consumer@aig.com

Illinois Department of Insurance (2 locations)

Consumer Division

320 W. Washington Street

Springfield, IL 62767

Consumer Division

122 S. Michigan Ave., 19th Floor

Chicago, IL 60603

(866) 445-5364 (toll free)

(217) 558-2083 (fax) (Springfield)

(217) 782-4515 (Tel.) (Springfield)

(312) 814-2420 (Tel.) (Chicago)

http:// insurance.illinois.gov/consumer_complaints@ins.state.il.us

96453 (08/16)



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

# CLAIM REPORTING FORM

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  *01-498-04-39*        Date: _____

Type of Coverage: D&O _____    E&O _____    Fidelity _____  (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

*AKORN, INC.*
_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext ___

eMail: _____@_____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: *ARTHUR J GALLAGHER RISK MNGT SERV INC*

Address: *300 S. RIVERSIDE PLAZA, STE. 1900*

Address: *CHICAGO, IL 60606*

Contact: *DEREK VAN DER VOORT*        Phone:_____

eMail: *Derek_Vandervoort@AJG.com*

Send Notice of Claims to:    AIG                      Phone: (888) 602-5246
                             Financial Lines Claims   Fax:   (866) 227-1750
                             P.O. Box 25947           Email: c-Claim@AIG.com
                             Shawnee Mission, KS 66225

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30



## CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL

**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  *01-498-04-39*

Date of Discovery: _____    Estimated Amount of loss: _____

Cause of Loss:    Employee Dishonesty  _____        Computer Fraud  _____

Funds Transfer  _____        Robbery/Burglary  _____

ID Theft  _____        Forgery  _____

Client Property  _____        In Transit  _____

ERISA  _____        Credit Card Forgery  _____

Other  _____    if Other, describe: _____

Send Notice Of Claims To:    AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone: (888) 602-5246
Fax:    (866) 227-1750
Email:  c-Claim@AIG.com

*centralized Customer Link and Information Management*

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30



HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

## *Illinois National Insurance Company*
**A capital stock company**

Policy Number:    01-529-45-16                Replacement of:    N/A

## EXCESS EDGE®

**NOTICES:**  *Depending on the terms, conditions and limitations of the **Followed Policy**, this policy may (1) only provide coverage for loss from claims first made or first made and reported during its **Policy Period**; (2) have its limit of liability reduced by the payment of defense costs and/or claim expenses, and (3) not impose a duty to defend on the **Insurer**. Please read the **Followed Policy** and this policy carefully and discuss the coverage provided thereunder and hereunder with your insurance agent or broker.*

### DECLARATIONS

| | | | |
|---|---|---|---|
| **Policyholder:** | AKORN, INC. | | |
| **Policyholder Address:** | 1925 W FIELD CT STE 300 LAKE FOREST, IL 60045-4862 | **Limit of Liability:** | $ 5,000,000 |
| | | **Total Underlying Limits:** | $ 30,000,000 |
| **Policyholder Domicile:** | Illinois | **Policy Period:** From: | June 1, 2018 |
| **Insurer Address:** | 175 Water Street New York, NY 10038 | To: | September 1, 2019 |
| | | **Premium:** | $ 180,000 |
| **Claims Address:** e-mail: | c-claim@AIG.com | **TRIA Premium** | $ 1,782 |
| Mail: | AIG, Financial Lines Claims P.O. Box 25947 Shawnee Mission, KS 66225 | | |

### SCHEDULE OF UNDERLYING COVERAGE

| | Underlying Insurer | Underlying Policy | Underlying Limit | Underlying Policy Period |
|---|---|---|---|---|
| | XL Specialty Insurance Company | US00075683DO17A | $10,000,000 Primary | 06/01/2017 to 09/01/2019 |
| | Allied World National Assurance Company | 0307-5817 | $10,000,000 xs $10,000,000 | 06/01/2017 to 09/01/2019 |
| * | Endurance American Insurance Company | DOX10007587102 | $10,000,000 xs $20,000,000 | 06/01/2017 to 09/01/2019 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

The **Policy Period** incepts and expires as of 12:01 A.M. at the **Policyholder Address**. Terms with **"Bold"** typeface are used in this policy with the meanings and values ascribed to them above; however, subject to the Changes clause, the **"Followed Policy"** means the policy in the Schedule with an "*" at the beginning of its row, but only with respect to the following **Followed Coverage Section(s)**: 1.  **'TRIA Premium'** means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act, as amended.  Amount indicated above is included in **Premium**. A copy of the TRIA disclosure sent with the original quote is attached hereto.

*1689121*
103224 (02/10)

© All rights reserved.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

In consideration of the payment of the premium, Illinois National Insurance Company   (the **"Insurer"**) and insureds agree as follows:

*INSURING AGREEMENT*

This policy shall provide coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, as modified by and subject to the terms, conditions and limitations of this policy.

The **Insurer's** coverage obligations under this policy attach to the **Insurer** only after the **Total Underlying Limits** have been exhausted through payments by, on behalf of or in the place of the **Underlying Insurers** of amounts covered under the **Underlying Policies**.  This policy shall continue in force as primary insurance only upon the exhaustion of the **Total Underlying Limits** by reason of such payments and satisfaction of any applicable retention.  This policy shall recognize erosion of an **Underlying Limit** of an **Underlying Policy** through payments by others of covered amounts under that **Underlying Policy**.  The risk of uncollectability of any part of the **Total Underlying Limits**, for any reason, is expressly retained by the **Policyholder** and any insureds, and is not insured under this policy or assumed by the    **Insurer.**

*LIMIT OF LIABILITY*

The **Limit of Liability** is the aggregate limit of the  **Insurer's** liability for all coverage under this policy.

*NOTICES*

Where the **Followed Policy** requires or permits notice to its insurer, the **Policyholder** or the insureds have the same obligations and rights to notify the **Insurer** under this policy, except that with respect to this policy, any notice to the **Insurer** must be directed as follows:  (i) for claims-related matters, by mail or e-mail to the **Claims Address**; and (ii) for all other notices, by mail to the **Insurer Address**.

*RIGHTS*

The **Insurer** shall have the same rights, privileges and protections afforded to the **Underlying Insurer** of the **Followed Policy** in accordance with the terms, conditions and limitations of the **Followed Policy**.  The **Insurer** shall also have the right, in its sole discretion, but not the obligation, to effectively associate with the insureds in the defense and settlement of any claim that appears to be reasonably likely to involve the **Insurer**. The **Policyholder**, its subsidiaries and any insureds shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request and shall not do anything that prejudices the **Insurer's** position or potential rights of recovery.

*RELIANCE*

The **Insurer** has issued this policy in reliance upon the completeness and accuracy of the applications, warranties, statements, the binders for the **Underlying Policies**, any attachments thereto and any other materials submitted for this policy, which shall be deemed attached hereto and made a part hereof.

*CHANGES*

If, subsequent to the issuance of the **Followed Policy**, the terms, conditions or limitations of an **Underlying Policy** are modified, the insureds must notify the **Insurer** in writing, as soon as practicable, of such modification. If any changes to the **Followed Policy**: (i) expand coverage, (ii) change the policyholder name or address, or (iii) modify premium, this policy shall not follow those changes unless the **Insurer** reflects its agreement to do so in a written endorsement attached to this policy.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative.  This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____          _____          _____
PRESIDENT                             AUTHORIZED REPRESENTATIVE               SECRETARY

_____          _____          _____
COUNTERSIGNATURE                       DATE                    COUNTERSIGNATURE LOCATION
(WHERE REQUIRED BY LAW)

ARTHUR J GALLAGHER RISK MNGT SERV INC
300 S. RIVERSIDE PLAZA
STE. 1500
CHICAGO, IL 60606

*1689121*

103224 (02/10)                              -2-                    © All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *AKORN, INC.*

Policy Number: *01-529-45-16*
Policy Period Effective Date From: *June 1, 2018*          To: *September 1, 2019*

◊ 2015 National Association of Insurance Commissioner

96555 (1/15)

**ENDORSEMENT#** *1*

This endorsement, effective   *12:01AM*   *June 19, 2018*   forms part of
policy no.:   *01-529-45-16*
issued to   *AKORN, INC.*

by:   *Illinois National Insurance Company*

### ILLINOIS AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy;  and 2) "you", "your", "Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### CANCELLATION AND NONRENEWAL

A. The cancellation provision of this policy is replaced by the following:

CANCELLATION

1.  The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.  If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

    a.  Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

    b.  Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

    A copy of the notice will also be sent to the mortgagee or lien holder at the last mailing address known to the Insurer.

3.  If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

    a.  Nonpayment of premium;

    b.  The policy was obtained through a material misrepresentation;

    c.  The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

    d.  The risk originally accepted has measurably increased;

    e.  Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

    f.  A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

© All rights reserved.

*END 001*

52142(7/13)                                                     Page 1 of 2

ENDORSEMENT# *1*   (continued)

If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation.  When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

4.  The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.  Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.  If this policy is cancelled, the Insurer will send the Named Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.

7.  Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.

B.  The nonrenewal provision of this policy is replaced by the following:

**NONRENEWAL**

1.  If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy.  A copy of the notice will also be sent to:

a.  The broker, if known to the Insurer, or the agent of record; and

b.  The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

Proof of mailing on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service will be maintained by the Insurer and will be sufficient proof of notice.

This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other terms, conditions and exclusions shall remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

***END 001***
Page 2 of 2

<u>ENDORSEMENT#</u> *2*

This endorsement, effective at *12:01AM*    *June 19, 2018*    forms a part of
Policy number *01-529-45-16*
Issued to: *AKORN, INC.*

By: *Illinois National Insurance Company*

## AMENDATORY ENDORSEMENT

## ILLINOIS

This endorsement modifies insurance provided under the following:

## EXCESS EDGE<sup>SM</sup>

The policy is amended as follows:

1.  The *RELIANCE* Clause is modified to the extent necessary to provide the following:

    Any occurrence of the term "warranty" is deleted in its entirety.

2.  The *RIGHTS* Clause is amended to include the following at the end thereof:

    Bankruptcy or insolvency of any insured not release the **Insurer** from its duties to pay under the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED  REPRESENTATIVE

© All rights reserved.

*END 002*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

ENDORSEMENT# *3*

Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

This endorsement, effective at *12:01AM*    *June 19, 2018*    forms a part of
Policy number *01-529-45-16*
Issued to: *AKORN, INC.*

By: *Illinois National Insurance Company*

Product Name: *Excess Edge*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 003*

<u>ENDORSEMENT#</u> *4*

This endorsement, effective at *12:01AM*   *June 19, 2018*   forms a part of
Policy number *01-529-45-16*
Issued to: *AKORN, INC.*

By: *Illinois National Insurance Company*
Product Name: *Excess Edge*

## STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1. In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with the law of the state identified in the **Policyholder Address**; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2. This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 004*

120026 (5/15)                                                     Page 1 of 1

<u>ENDORSEMENT#</u> *5*

This endorsement, effective *12:01AM* *June 19, 2018* forms a part of policy number *01-529-45-16*

issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

**MANAGEMENT LIABILITY ADAPTER**

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

**1. RECOGNITION OF EROSION**

The *INSURING AGREEMENT* Clause is amended by adding the following to the end thereof:

In the event that any **Underlying Policy** recognizes erosion of its **Underlying Limit** by payments made under any other insurance policy issued by that **Underlying Insurer**, this policy will deem the amount of erosion recognized as if it had actually been paid under that **Underlying Policy**.

**2. NOTICES BY E-MAIL**

The *NOTICES* Clause is deleted in its entirety and replaced with the following:

*NOTICES* Where the **Followed Policy** requires or permits notice to its insurer, the **Policyholder** and the insureds have the same obligations and rights to notify the **Insurer** under this policy, except that with respect to this policy, any notice to the **Insurer** must be directed as follows: (i) for claims-related matters, by mail or e-mail to the **Claims Address**; and (ii) for all other notices, by mail to the **Insurer Address** or by e-mail to the underwriter assigned to this policy at the time of such notice or any of that underwriter's managers.

**3. RELIANCE - SEVERABILITY**

The *RELIANCE* Clause is amended by adding the following to the end thereof:

Notwithstanding the foregoing, this policy shall follow any provisions in the **Followed Policy** regarding: (i) the severability and non-imputation of the statements, representations or warranties of any **Insured** and (ii) the limitation and restrictions in rescission or voidance of the **Followed Policy**.

© All rights reserved.

*END 005*

105472 (7/10)

1

HIGHLY CONFIDENTIAL
Turner Falk
Aug 05, 2020 14:30

**ENDORSEMENT#**  *5*    (continued)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**4.  CHANGES BY E-MAIL**

The *CHANGES* Clause is deleted in its entirety and replaced with the following:

*CHANGES*   If, subsequent to the issuance of the **Followed Policy**, the terms, conditions or limitations of an **Underlying Policy** are modified, the insureds must notify the **Insurer** in writing or by e-mail, as soon as practicable, of such modification. If any changes to the **Followed Policy**: (i) expand coverage, (ii) change the policyholder name or address, or (iii) modify premium, this policy shall not follow those changes unless the **Insurer** reflects its agreement to do so: (a) in a written endorsement to this policy, or (b) after review of the specific wording change, by e-mail from an underwriter or manager designated in part (ii) of the *NOTICES* Clause (as amended above).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

_____
                        AUTHORIZED REPRESENTATIVE

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

⊚ All rights reserved.

*END 005*

105472 (7/10)

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

ENDORSEMENT# 6

This endorsement, effective *12:01AM    June 1, 2018*      forms a part of
policy number   *01-529-45-16*
issued to   *AKORN, INC.*

by   *Illinois National Insurance Company*

## FULLY EARNED PREMIUM ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the premium set forth in the Declarations shall be fully earned as of the inception date of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

122798 (11/16)         **END 6**

<u>ENDORSEMENT#</u> *7*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

This endorsement, effective at *12:01AM*    *June 19, 2018*    forms a part of
Policy number *01-529-45-16*
Issued to: *AKORN, INC.*

By: *Illinois National Insurance Company*
Product Name: *Excess Edge*

### PENDING AND PRIOR LITIGATION EXCLUSION AMENDED (EXCESS LIMITS)

In consideration of the premium charged, it is understood and agreed that with respect to the *$5,000,000* **Limit of Liability** of this policy excess of the *$30,000,000* **Total Underlying Limits**, the **Insurer** shall not be liable for any loss in connection with any claim made against any insured alleging, arising out of, based upon or attributable to, as of *June 1, 2018*, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an insured had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

120222 (8/15)

*END 007*
Page 1 of 1

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

**ENDORSEMENT#** *8*

This endorsement, effective *12:01AM*     *June 19, 2018*     forms a part of policy number   *01-529-45-16*
issued to *AKORN, INC.*

by     *Illinois National Insurance Company*

## SPECIFIC CLAIM EXCLUSION
## RECOGNITION OF EROSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment under this policy in connection with: (i) any claim, notice, event, investigation or action referred to in item (1) below (hereinafter "**Event**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event**; or (b) any claim arising from any **Event**; or (iii) any claim alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as defined below), regardless of whether or not such claim involved the same or different insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

EVENT(S)

(1) *MATTERS INVOLVING THE FRESENIUS ACQUISITION OF AKORN*

It is further understood and agreed that, notwithstanding the above, the **Insurer** shall recognize that covered amounts paid under such insurer's respective **Underlying Policy**, pursuant to any **Event**, prosecution or **Interrelated Wrongful Act** listed above shall contribute to and shall reduce the **Total Underlying Limits**.

For the purposes of this endorsement, "**Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event** and/or (ii) any **Wrongful Act** that is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event**; "**Wrongful Act**" shall have the same meaning in this policy as is attributed to it in the **Followed Policy**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 008*

103436 (11/09)                     Page 1 of 1

ENDORSEMENT# *9*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

This endorsement, effective at *12:01AM    June 7, 2018*    forms a part of
Policy number *01-529-45-16*
Issued to: *AKORN, INC.*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

By: *Illinois National Insurance Company*

Product Name:    *Excess Edge*

## FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.  However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 009*

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30

HIGHLY CONFIDENTIAL
Turner Falk
Aug 05, 2020 14:30

**ENDORSEMENT#** *10*

This endorsement, effective *12:01AM*    *June 19, 2018*    forms a part of

policy number *01-529-45-16*

issued to *AKORN, INC.*

by    *Illinois National Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 103224 | 02/10 | EXCESS DEC AND POLICY - ADMITTED |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 52142 | 07/13 | ILLINOIS AMENDATORY- CANCELLATION/NONRENEWAL |
| 106173 | 07/10 | ILLINOIS AMENDATORY ENDORSEMENT |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 120026 | 05/15 | STATE AMENDATORY INCONSISTENT |
| 105472 | 07/10 | MANAGEMENT LIABILITY ADAPTER |
| 122798 | 11/16 | FULLY EARNED PREMIUM ENDORSEMENT |
| 120222 | 08/15 | PENDING AND PRIOR LITIGATION EXCLUSION AMENDED (EXCESS LIMITS) |
| 103436 | 11/09 | SPECIFIC CLAIM EXCLUSION RECOGNITION OF EROSION |
| 125595 | 03/17 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 96453 | 07/17 | ILLINOIS CONSUMER COMPLAINT NOTIFICATION |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 010*

78859 (10/01)                                        Page 1 of 1

## ILLINOIS CONSUMER COMPLAINT NOTIFICATION

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

AIG
Consumer Complaints Division
80 Pine Street, 13th Floor
New York, NY 10005
Phone: 1-877-541-9748
Fax: 844-637-6862
consumer@aig.com

Illinois Department of Insurance (2 locations)

Consumer Division
320 W. Washington Street

Springfield, IL 62767

Consumer Division
122 S. Michigan Ave., 19th Floor
Chicago, IL 60603

(866) 445-5364 (toll free)
(217) 558-2083 (fax) (Springfield)
(217) 782-4515 (Tel.) (Springfield)
(312) 814-2420 (Tel.) (Chicago)
http://insurance.illinois.gov/consumer_complaints@ins.state.il.us

96453 (07/17)



# CLAIM REPORTING FORM

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number: _01-529-45-16_        Date: _____

Type of Coverage: D&O _____ E&O _____ Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

_AKORN, INC._____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____@ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: _ARTHUR J GALLAGHER RISK MNGT SERV INC_

Address: _300 S. RIVERSIDE PLAZA, STE. 1500_____

Address: _CHICAGO, IL 60606_____

Contact: _DEREK VAN DER VOORT_____  Phone:_____

eMail: _derek_vandervoort@ajg.com_____

Send Notice of Claims to:    AIG                    Phone: (888) 602-5246
                             Financial Lines Claims  Fax:   (866) 227-1750
                             P.O. Box 25947          Email: c-Claim@AIG.com
                             Shawnee Mission, KS 66225

HIGHLY CONFIDENTIAL
Turner Falk
obermayer.com
Aug 05, 2020 14:30



## CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL

**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *Illinois National Insurance Company*

Reported under Policy/Bond Number:  _01-529-45-16_

Date of Discovery: _____  Estimated Amount of loss: _____

Cause of Loss:   Employee Dishonesty  _____        Computer Fraud  _____

Funds Transfer  _____        Robbery/Burglary  _____

ID Theft  _____        Forgery  _____

Client Property  _____        In Transit  _____

ERISA  _____        Credit Card Forgery  _____

Other  _____    if Other, describe: _____

Send Notice Of Claims To:    AIG                    Phone:  (888) 602-5246
                             Financial Lines Claims   Fax:    (866) 227-1750
                             P.O. Box 25947           Email:  c-Claim@AIG.com
                             Shawnee Mission, KS 66225

*centralized Customer Link and Information Management*