## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| AKORN, INC., *et al.*,[1] | ) Case No. 20-11177 (KBO) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Docket No. 18** |

### ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ASSETS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively the "Debtors" or "Seller") for an order, pursuant to sections 363(b), 363(f), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006(f), 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing and approving, among other things, (a) entry into that certain *Asset Purchase Agreement*, dated May 20, 2020 (as amended, and including all exhibits, schedules, and annexes thereto, the "APA"),[2] with Akorn Holdings Topco LLC (the "Purchaser"), a copy of which is annexed hereto as **Exhibit A**,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are:  Akorn, Inc. (7400); 10 Edison Street LLC (7890); 13 Edison Street LLC; Advanced Vision Research, Inc. (9046); Akorn (New Jersey), Inc. (1474); Akorn Animal Health, Inc. (6645); Akorn Ophthalmics, Inc. (6266); Akorn Sales, Inc. (7866); Clover Pharmaceuticals Corp. (3735); Covenant Pharma, Inc. (0115); Hi-Tech Pharmacal Co., Inc. (8720); Inspire Pharmaceuticals, Inc. (9022); Oak Pharmaceuticals, Inc. (6647); Olta Pharmaceuticals Corp. (3621); VersaPharm Incorporated (6739); VPI Holdings Corp. (6716); and VPI Holdings Sub, LLC.  The location of the Debtors' service address is:  1925 W. Field Court, Suite 300, Lake Forest, Illinois 60045.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the APA, as applicable.

(b) the proposed sale (the "Sale") of substantially all of the assets (the "Acquired Assets") of the Debtors free and clear of all liens, claims, encumbrances, and interests (together, the "Encumbrances") pursuant to the terms of the APA, (b) assumption and assignment of those contracts of the Debtors identified in the APA (the "Assigned Contracts") and assignment of the Assigned Contracts to Purchaser, and (c) other related relief; and the Court having entered an order [Docket No. 181] (the "Bid Procedures Order") approving the bid procedures (the "Bid Procedures"); and the Court having conducted a hearing on the Motion commencing on September 1, 2020 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having (i) reviewed and considered the Motion, all relief related thereto, the objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (ii) found that, after an extensive marketing process by the Debtors, Purchaser has submitted the highest or otherwise best bid for the Acquired Assets; and that adequate and sufficient notice of the Bid Procedures, the APA, and all transactions contemplated thereunder and in this Sale Order were given pursuant to and consistent with the Bid Procedures Order; and that reasonable and adequate notice of the Motion and Bid Procedures Order having been provided to all persons required to be served in accordance with the Bankruptcy Code and the Bankruptcy Rules; and that all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and that jurisdiction exists for the Court to consider the Motion and after due deliberation thereon; and upon the arguments and statements in support of the Motion presented at the Sale Hearing before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at

the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A.    **Jurisdiction and Venue.**  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory bases for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rule 6004-1.

C.    **Final Order.**  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

D.    **Notice**.  As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, APA, Sale Hearing, Sale, and transactions contemplated thereby has been provided in accordance with the Bid Procedures Order, sections 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008.  The Debtors have complied with all obligations to provide notice of the Motion as set forth in the Bid Procedures Order.  The notices described above were good, sufficient, and appropriate

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

under the circumstances, and no other or further notice of the Motion, APA, Auction, or Sale Hearing is or shall be required.  The disclosures made by the Debtors concerning the Motion, the APA, the Auction, and Sale Hearing were good, complete, and adequate.  The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

E.    In accordance with the Bid Procedures Order, the Debtors have served a notice of the Assigned Contracts (the "Cure Notice"), as evidenced by the *Certificate of Service* [Docket No. 545] and *Supplemental Certificate of Service* [Docket No. 588], which Cure Notice identifies all defaults and actual pecuniary loss to the non-Debtor party resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor parties can assert under the Assigned Contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Assigned Contracts (the foregoing amounts as stated in the Cure Notice, collectively referred to as the "Cure Amounts") upon each non-Debtor counterparty to an Assigned Contract.  The service and provision of the Cure Notice were good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Assigned Contracts or establishing a Cure Amount for the respective Assigned Contract.  Non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assigned Contract and the Cure Amount set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an

objection to the stated Cure Amounts (a "Cure Objection") has expired and, to the extent any such party timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Cure Objection by August 25, 2020 at 12:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline"), such party shall be deemed to have consented to the (i) assumption and assignment of the Assigned Contract and (ii)  proposed Cure Amount set forth on the Cure Notice (except as otherwise agreed by the Debtors and the Purchaser).

F.    **Corporate Authority**.  (i) The Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the Debtors' sale of the Acquired Assets has been duly and validly authorized by all necessary corporate action, (ii) the Debtors have all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, (iii) the Debtors have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the APA, are required for the Debtors or the Purchaser to consummate such transactions.

G.    The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor Purchaser is entering into the transactions contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

H.    The Debtors are the sole and lawful owner of the Acquired Assets.  Subject to sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Acquired Assets to Purchaser, in accordance with the APA will be, as of the Closing Date (as defined in the APA), a

legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest Purchaser with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Encumbrances. Claims, as defined in the Asset Purchase Agreement, shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtors or claims liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement applicable law, equity, or otherwise (including, without limitation, rights with respect to claims and Encumbrances (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Purchaser's interests in the Acquired Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use, or any other type of tax, or (iii) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities or Permitted Encumbrances.

I.    **Sale in Best Interests of the Debtors' Estates**.  Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for

the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to maximize the value of the Debtors' estates.

J.      The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

K.      The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

L.      **Good Faith of Purchaser and Seller**.  The APA was negotiated, proposed, and entered into by the Debtors and Purchaser without collusion, in good faith, and as the result of arm's-length bargaining positions and is substantively and procedurally fair to all parties. Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither any of the Debtors nor Purchaser has engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders.  Purchaser is purchasing the Acquired Assets,

in accordance with the APA, in good faith, and is a good faith purchaser within the meaning of

section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded

by such provision and otherwise has proceeded in good faith in all respects in connection with the

Debtors' chapter 11 cases.  As demonstrated by (i) any testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, substantial marketing efforts and a competitive sale process were conducted in

accordance with the Bid Procedures Order and, among other things: (a) the Debtors and Purchaser

complied with the provisions in the Bid Procedures Order; (b) Purchaser agreed to subject its bid

to the competitive bid procedures set forth in the Bid Procedures Order; (c) Purchaser in no way

induced or caused the chapter 11 filing by the Debtors; and (d) all payments to be made by

Purchaser in connection with the Sale have been disclosed.

M.    **<u>Highest or Otherwise Best Offer.</u>**  The Bid Procedures are reasonable and

appropriate and represent the best available method for conducting the sale process in a manner

that maximizes value for the benefit of the Debtors' estates.  The Debtors' marketing and sales

process with respect to the Acquired Assets in accordance with the Bid Procedures afforded a full,

fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to

purchase the Acquired Assets.  The Debtors conducted a marketing process in accordance with,

and have otherwise complied in all respects with, the Bid Procedures and the Bid Procedures

Order.  A reasonable opportunity has been given to any interested party to make a higher or

otherwise better offer for the Acquired Assets.  The APA constitutes the highest or otherwise best

offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than

would be provided by any other available alternative.  The Debtors' determination that the APA

constitutes the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise

of their fiduciary duties and constitutes a valid and sound exercise of the Debtors' business judgment.

N.    **Consideration**.  The consideration provided by Purchaser pursuant to the APA (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formally the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than Purchaser.  Approval of the Motion, the APA, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

O.    **No Successor.**  The transactions contemplated under the APA do not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and Purchaser; Purchaser is not a mere continuation of the Debtors or their estates; and Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat, or unclaimed property laws, or other law, rule, or regulation (including. without limitation. filing requirements under any such laws, rules. or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule

or regulation, or doctrine. and Purchaser and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"),  929 U.S.C. §§ 210 et seq. or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities or Permitted Encumbrances, the (i) transfer of the Acquired Assets to Purchaser and (ii) assumption and assignment to Purchaser of the Assigned Contracts do not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

P.    **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and therefore, the Debtors may sell the Acquired Assets free and clear of any Encumbrances in the property, other than as expressly contemplated by the APA.  Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale to Purchaser and the assumption of any Assumed Liabilities or Permitted Encumbrances by Purchaser were not free and clear of all Encumbrances other than the Assumed Liabilities or

Permitted Encumbrances. The Debtors may sell the Acquired Assets free and clear of any Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each entity with an Encumbrance, lien, claim, or interest in the Acquired Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance, lien, claim, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of Encumbrances who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Encumbrances are adequately protected by having their Encumbrances attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

Q.    **Cure/Adequate Assurance**. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. Payment of the Cure Amounts by the Debtors shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any

party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code. Purchaser's financial wherewithal to consummate the transactions contemplated by the APA and the evidence presented at the Sale Hearing demonstrating Purchaser's ability to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

R.      Any objections to the assumption and assignment of any of the Assigned Contracts by Purchaser in accordance with the APA are hereby overruled. To the extent that any counterparty failed to object to the proposed Cure Amounts timely, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Assigned Contract(s) to Purchaser in accordance with the APA.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      **Motion is Granted**. The Motion and the relief requested therein is GRANTED and APPROVED as set forth herein.

2.      **Objections Overruled**. Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice.

3.     **Approval**.  The APA, and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved in all respects.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors and the Purchaser are hereby authorized to (a) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the APA, provided that such additional documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the APA and the instruments to the APA contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the APA, including (1) the assumption and assignment to Purchaser (in accordance with the APA) of the Assigned Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, (2) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the APA and that satisfy the requirements of applicable law, (3) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the APA, (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state Law, and (e) any transaction necessary to effectuate the G Reorganization Election (as defined in the APA).  Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other

provisions of this Sale Order; *provided, however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

4.       This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Encumbrances or other interests in, against, or on all or any portion of the Acquired Assets (whether known or unknown), Purchaser, and all successors and assigns of Purchaser, the Acquired Assets, and any trustees, if any, subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' chapter 11 cases.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, Purchaser, and the respective successors and assigns of each of the foregoing.

5.       **Transfer of Acquired Assets Free and Clear of Encumbrances**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to Purchaser in accordance with the APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest Purchaser with title in and to the Acquired Assets and, other than the Assumed Liabilities or Permitted Encumbrances, Purchaser shall take title to and possession of the Acquired Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever, including, but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Acquired Assets or

their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

6.     Unless otherwise expressly included in the definition of "Assumed Liabilities" or "Permitted Encumbrances" in the APA, Purchaser shall not be responsible for any Encumbrances, including in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust, and security interests; (c) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act, (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive Environmental Response Compensation and Liability Act, (xv) state discrimination laws, (xvi) state unemployment compensation laws or any other similar state laws, or (xvii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) to the extent not included in the

foregoing, any of the Excluded Liabilities under the APA;  and (i) any theories of successor or transferee liability.

7.      All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to Purchaser in accordance with the APA on the Closing Date or at such time thereafter as Purchaser may request. On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Acquired Assets, if any, as such Encumbrances may have been recorded or may otherwise exist.

8.      If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances on, against, or in, all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities or Permitted Encumbrances) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances, liens, claims, interests, or other interests that the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets.

9.      On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to Purchaser of the Debtors' interests in the Acquired Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interest of any kind or nature

whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities or Permitted Encumbrances, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected. This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities or Permitted Encumbrances.

10. **Prohibition of Actions Against Purchaser**. Except for the Assumed Liabilities or Permitted Encumbrances, or as otherwise expressly provided in this Sale Order or the APA, Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets or other Assumed Liabilities or Permitted Encumbrances expressly identified in the APA, including, but not limited to, any liability for any Encumbrances, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection

with, or in any way relating to the operation of the Debtors' business prior to the Closing Date. For the avoidance of doubt, (i) nothing in this Sale Order or the APA shall constitute a determination that any of the Debtors may or may not be liable for any of the relief sought in the Multidistrict Litigation pending in the Eastern District of Pennsylvania styled as *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* MDL No. 2724 (the "Generics MDL"), and (ii) nothing in this Sale Order shall prejudice the rights, if any, of the plaintiffs in the Generics MDL to assert that the Purchaser may be liable for any of the same or similar conduct, actions, or omissions occurring after the Closing Date (subject in all respects to the Purchasers' rights to assert any and all defenses).

11.   Except with respect to the Assumed Liabilities or Permitted Encumbrances, or as otherwise expressly provided for in this Sale Order or the APA, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Acquired Assets to Purchaser in accordance with the APA, are hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Encumbrances in and to the Acquired Assets, including, without limitation, the following actions:  (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its successors, assets, or properties; (b) enforcing, attaching,

collecting, or recovering, in any manner, any judgment, award, decree, or order against Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.  Notwithstanding anything in this Sale Order or the APA to the contrary, nothing herein shall impact the rights, if any, of any plaintiff in the Generics MDL to (i) commence, prosecute, and enforce any nonmonetary relief obtained in the Generics MDL against the Purchaser related to any post-Closing conduct inconsistent with such relief (subject in all respects to the Purchasers' rights to assert any and all defenses), or (ii) obtain discovery from and enforce all discovery obligations and orders obtained in the Generics MDL against the Purchaser and any of its employees or agents (subject in all respects to the rights of any party (including the Purchaser) to otherwise challenge such discovery), (iii) commence, prosecute, and enforce any and all applicable relief against the Purchaser for any post-Closing conduct not related to the Acquired Assets (subject in all respects to the Purchasers' rights to assert any and all defenses), or (iv) commence, prosecute, and enforce any and all relief against any other parties in the Generics MDL (subject in all respects to such parties' rights to assert any and all defenses).

12.    To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental

authorization or approval of the Debtors with respect to the Acquired Assets to the extent transferred in the APA, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to Purchaser in accordance with the terms of the APA and this Sale Order.

14.     Purchaser has given substantial consideration under the APA for the benefit of the Debtors, their estates, and their creditors.  The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of Encumbrances or liens against or interests in, or claims against, any of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities or Permitted Encumbrances. The consideration provided by Purchaser for the Acquired Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

15.     Notwithstanding the foregoing, nothing herein shall prevent (a) the Debtors from pursuing an action against Purchaser arising under the APA or the related documents, or (b) any administrative agencies, governmental, tax, and regulatory authorities, secretaries of state, federal, state, and local officials from properly exercising their police and regulatory powers.

16.     **Assumption and Assignment of Contracts.**  The Debtors are hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to Purchaser, in accordance with the APA, effective upon the Closing Date, the Assigned Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than

the Assumed Liabilities or Permitted Encumbrances) and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be reasonably necessary to assign and transfer the Assigned Contracts and the Assumed Liabilities or Permitted Encumbrances to Purchaser in accordance with the APA.

17.    With respect to the Assigned Contracts:  (a) each Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each Assigned Contract, in accordance with the APA, have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of Purchaser in accordance with the APA, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Purchaser in accordance with the APA; and (f) upon the

Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

18.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as reasonably practicable by payment of the Cure Amounts by the Debtors.  To the extent that any counterparty to an Assigned Contract did not object to its Cure Amount by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Assigned Contract(s) to Purchaser in accordance with the APA.

19.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, Purchaser, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the Cure Notice reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Purchaser of the Assigned Contracts in accordance with the APA.

20.     Upon the Debtors' assignment of the Assigned Contracts to Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts by the Debtors, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by Purchaser under such Assigned Contract or (b) otherwise take action against Purchaser as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assigned

Contract.  Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against Purchaser, any counterclaim, defense, setoff, recoupment, or any other Claim asserted or assertable against the Debtors and (ii) imposing or charging against Purchaser any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Purchaser of any Assigned Contract in accordance with the APA.  The validity of such assumption and assignment of each Assigned Contract shall not be affected by any dispute between the Debtors and any non-Debtors party to an Assigned Contract relating to such contract's respective Cure Amounts.

21.     Except as provided in the APA or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities or Permitted Encumbrances, and all holders of such Encumbrance, lien, claim, and interest are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property, or their assets or estates.  The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

22.     Notwithstanding anything herein to the contrary and subject to the APA, prior to the Closing Date, Purchaser may remove any contract or lease from the list of Assigned Contracts (and thereby exclude such Contract from the definition of Assigned Contracts) pursuant to the

procedures set forth in the APA.  To the extent applicable, the Debtors shall file a schedule of the final Assigned Contracts reasonably promptly after the Closing Date.

23.     **Good Faith**.   The transactions contemplated by the APA are undertaken by Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts) with Purchaser, unless such authorization is duly stayed pending such appeal.  Purchaser is a good faith purchaser of the Acquired Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

24.     **Failure to Specify Provisions**.   The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Sale Order shall govern if there is any inconsistency between the APA (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Sale Order shall control.

25.     **Non-Material Modifications**.   The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

26. **Amounts Payable by Debtors.** Any amounts payable by any Debtor under the agreements or any of the documents delivered by any Debtor in connection with the APA shall be paid in the manner provided in the APA and the Bid Procedures Order, without further order of this Court, shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Bid Procedures Order, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by an express agreement with Purchaser, its successors, or assigns.

27. **Additional Provisions**.

(i)   **Government Entities**.  Notwithstanding any provision to the contrary in the Sale Motion, this Sale Order, and any implementing sale documents (collectively, the "Sale Documents"), nothing in the Sale Documents shall: (1) authorize the assumption, sale, assignment or other transfer to the Purchaser of any federal (i) grants, (ii) grant funds, (iii) contracts, including but not limited to, the U.S. Department of Veterans Affairs Federal Supply Schedule Contract Numbers V797P-5209B and 36F79720D0129, (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements, including but not limited to any Medicare Coverage Gap Discount Program Agreement, or other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtors and the Purchaser with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive,

alter or otherwise limit the United States' property rights, including but not limited

to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff

or recoupment rights of a governmental unit (as defined in 11 U.S.C. § 101(27));

(5) authorize the assumption, transfer, sale or assignment of any governmental

unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or

the discontinuation of any obligation thereunder, without compliance with all

applicable legal requirements, obligations and approvals under non-bankruptcy

laws; (6) release, nullify, preclude or enjoin the enforcement of any police or

regulatory liability to a governmental unit that any entity would be subject to as the

owner or operator of property after the date of entry of this Order; (7) confer

exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28

U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8)

modify the scope of 11 U.S.C.§ 525; or (9) bar or estop the United States from

asserting against the Debtors, their successors or assigns, their property, or their

assets or estates, any claims, liabilities and obligations assumed by the Purchaser

that the United States would be entitled to assert against the Debtors and the

Debtors' estates under applicable law notwithstanding such assumption.  Nothing

in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or

enjoins the enforcement of any police or regulatory liability to a governmental unit

that any entity would be subject to as the post-sale owner or operator of property

after the date of entry of this Order.

(ii)   **Chubb Insurance Company**.  Notwithstanding anything to the contrary in the

Motion, the APA, the Bidding Procedures, the Bidding Procedures Order, any Cure

Notice or assumption notice, any purchase agreement, or this Sale Order, nothing shall permit or otherwise effect a sale, an assignment or any other transfer at this time of (a) any insurance policies that have been issued by ACE American Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, Chubb Custom Insurance Company  and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), and/or (b) any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, unless and until a further order is entered by this Court, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Purchaser and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order.  Such further order, without further notice, may provide, among other things, that (i) subject to the execution of an assumption agreement by the Debtors, the Purchaser and the Chubb Companies, in form and substance satisfactory to each of the parties (the "Chubb Assumption Agreement"), the Debtors are authorized to assume and assign the Chubb Insurance Contracts to the Purchaser and the Purchaser shall assume and shall be liable for any and all now existing or hereinafter after arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Chubb Insurance Contracts; (ii) the Debtors are authorized to enter into the Chubb Assumption Agreement; and/or (iii) such other and further relief as may be requested by the Chubb Companies, the Debtors and/or the Purchaser.

(iii)    **Caremark and CVS**.  The Debtors shall assume and assign to Purchaser the (a) Rebate Agreement, dated January 1, 2014, by and between CaremarkPCS Health, L.L.C and Akorn, Inc. (the "CaremarkPCS Agreement"), (b) Medicare Part D Program Rebate Agreement, dated January 1, 2018, by and between Caremark Part D Services, L.L.C. and Akorn, Inc. (the "Caremark Part D Agreement"), (c) Store Brand Agreement, dated May 1, 2011, by and between CVS Pharmacy, Inc. and Akorn, Inc. (the "CVS Pharmacy Store Brand Agreement"), and (d) Quality Agreement, dated September 27, 2018, by and between CVS Pharmacy, Inc. and Akorn, Inc. (the "CVS Pharmacy Quality Agreement," and together with the CaremarkPCS Agreement, Caremark Part D Agreement, and CVS Pharmacy Store Brand Agreement, the "Caremark/CVS Agreements"), each as amended, supplemented, or modified.  Notwithstanding the proposed Cure Amounts set forth on the Cure Notices served on CaremarkPCS Health, L.L.C., Caremark Part D Services, L.L.C, and CVS Pharmacy, Inc. (collectively, "Caremark/CVS"), Purchaser shall pay the amounts necessary to cure all defaults and actual pecuniary losses sustained by Caremark/CVS (whether pre-petition or post-petition) resulting from all such defaults and losses under the Caremark/CVS Agreements.  For the sake of clarity, Purchaser shall assume all rebate and product-return liabilities arising under the Caremark/CVS Agreements, consistent with its obligations under the APA, including, without limitation, Section 1.3(d) of the APA, and Caremark/CVS reserve their respective rights to cure pursuant to section 365 of the Bankruptcy Code should there be any additional defaults or other obligations of the

Debtors under the Caremark/CVS Agreements arising or accruing prior to the Closing Date.

(iv)    **Humana**.  Notwithstanding anything to the contrary herein or in the APA or in the Cure Notice, Humana, Inc., Humana Pharmacy, Inc. Humana Insurance Company, and affiliates (collectively, "Humana") have not stipulated to the Cure Amounts relating to that certain Pharmaceutical Purchasing Agreement, as amended, by and between Akorn, Inc. and Humana and as listed in the Notices of Cure Amounts received by Humana (the "Pharmaceutical Purchasing Agreement").  Humana, the Debtors and the Purchaser agree to resolve any and all outstanding Cure Amounts and payment disputes relating to the Pharmaceutical Purchasing Agreement after the assumption and assignment of the Pharmaceutical Purchasing Agreement. The Purchaser has agreed to assume all of the Debtors' outstanding obligations under the Pharmaceutical Purchasing Agreement, including any and all unpaid obligations arising prior to the assumption and assignment of the  Pharmaceutical Purchasing Agreement.  For the avoidance of doubt, the Debtors further stipulate and agree that the assumption and assignment of the Pharmaceutical Purchasing Agreement in no way affect any claims held by Humana against the Debtors in (i) that certain multidistrict litigation styled *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 18-cv-03299 in the United States District Court for the Eastern District of Pennsylvania and (ii) that certain lawsuit styled *Humana Inc. v. Actavis Elizabeth, LLC, et al.*, No. 19-cv-04862 in the United States District Court for the Eastern District of Pennsylvania.

(v)    **Catalent**.  For the avoidance of doubt, and irrespective of the specific content of, and agreements listed in, Schedule 1.1(b) of the APA and/or any Cure Notice served upon Catalent Pharma Solutions, LLC and/or any of its affiliates and related companies (collectively, "Catalent"), all contracts, agreements, addenda, amendments, quotations, solutions, purchase orders, project plans, and other instruments related thereto, existing between Catalent, on the one hand, and one or more of the Debtors, on the other hand, shall be assumed by the Debtors and assigned to the Purchaser in accordance with the APA and this Sale Order effective upon the Closing Date.  The Cure Amount due under the Catalent Contracts is $665.00 and shall be paid by the Debtors in accordance with Paragraph 17(v) of this Sale Order.  Notwithstanding anything to the contrary in the Motion, the APA, the Bid Procedures Order or this Sale Order, (i) all obligations under each and any of the Catalent Contracts, including, but not limited to, indemnity obligations or warranties or any other obligation that qualifies as an Excluded Liability under the APA, shall be performed by Purchaser notwithstanding such qualification whether such obligation arises prior to or after the Closing Date, and (ii) nothing in the Motion, the APA, the Bid Procedures Order of this Sale Order shall release, enjoin, bar or result in the satisfaction of (a) any claims or other rights of Catalent that have accrued or otherwise arisen under any of the Catalent Contracts before the Closing Date, including, but not limited to, affirmative claims, counterclaims and defenses. For the avoidance of doubt, all obligations under any of the Catalent Contracts shall be treated as an Assumed Liability under the APA.

(vi)   **Walgreen**.  For the avoidance of doubt, and irrespective of the specific content of, and agreements listed in, Schedule 1.1(b) of the APA and/or any Cure Notice served upon Walgreen Co. and Walgreens Boots Alliance Development GmbH (collectively, "Walgreen"), all contracts, agreements, addenda, amendments, quotations, solutions, purchase orders, project plans, and other instruments related thereto (collectively, the "Walgreen Agreements"), existing between Walgreen, on the one hand, and one or more of the Debtors, on the other hand, shall be assumed by the Debtors and assigned to the Purchaser in accordance with the APA and this Sale Order effective upon the Closing Date.  Notwithstanding anything to the contrary herein or in the APA or in the Cure Notice, Walgreen has not stipulated to the Cure Amounts relating to the Walgreen Agreements.  Walgreen, the Debtors and the Purchaser agree to resolve any and all Cure Amounts and payment disputes relating to the Walgreen Agreements after the assumption and assignment of the Walgreen Agreements. The Purchaser has agreed to assume all of the Debtors' obligations under the Walgreen Agreements, including any and all unpaid obligations arising prior to the assumption and assignment of the Walgreen Agreements.  To the extent Walgreen, the Debtors, and the Purchasers cannot consensually reconcile the Cure Amounts and payment disputes relating to the Walgreen Agreements, parties herein reserve their rights to petition the Court to resolve such disputes after 90 days from entry of this Sale Order and the Court expressly retains such authority.

(vii)   **Rising Pharmaceuticals**.  Notwithstanding anything to the contrary in this Sale Order and/or the APA related to the Sale and any other associated transaction

documents, the following assets are excluded from such Sale:  (a) Flunisolide Nasal Solution (the "<u>Product</u>"); (b) the Product ANDA; (c) any agreements related to the Product and Product ANDA; and (d) books and records related to the Product, including but not limited to, commercial batch records, and Product reports (inclusive of any development reports, annual reports, PADER reports and/or any reports related to any attempts to address ongoing issues related to the Product Out of Specification and related device failures).

(viii)   **Mitsubishi Tanabe Pharma Corporation**.   Notwithstanding anything to the contrary contained therein or herein, nothing contained in the APA or this Sale Order, including without limitation in paragraphs 18-20 of this Sale Order, shall affect the right of Mitsubishi Tanabe Pharma Corporation ("<u>MTPC</u>"), after the date of assumption and/or assumption and assignment (the "<u>Assignment Date</u>") of that certain *Confidential Settlement and License Agreement* dated September 8, 2015 (the "<u>License Agreement</u>") by and among, *inter alia*, MTPC, Akorn, Inc. and Akorn Opthalmics, Inc., to assert indemnification or other claim(s) of any type or nature against the Purchaser arising under or in connection with the License Agreement that arose or are based on any acts, occurrences or conditions existing on or before the Assignment Date, all of which such claims are expressly preserved.

(ix)   **Texas Comptroller**.  The assets sold pursuant to this Order and the terms of the Asset Purchase Agreement shall not include unclaimed property held in trust by the Seller, as defined pursuant to State unclaimed property laws including Texas Property Code, Title 6, Chapter 72-76, and other applicable Texas laws.

(x)  **Express Scripts, Inc.**.  For the avoidance of doubt, and irrespective of the specific content of, and agreements listed in, Schedule 1.1(b) of the APA and/or any Cure Notice served upon Express Scripts, Inc., Priority Healthcare Distribution, Inc d/b/a CuraScript SD, Econdisc Contracting Solutions, LLC, Ascent Health Services, LLC, and Express Scripts Senior Care Holdings, Inc., (collectively, "Express"), all contracts, agreements, addenda, amendments, quotations, solutions, purchase orders, project plans, and other instruments related thereto (collectively, the "Express Agreements"), existing between Express, on the one hand, and one or more of the Debtors, on the other hand, shall be assumed by the Debtors and assigned to the Purchaser in accordance with the APA and this Sale Order effective upon the Closing Date.  Notwithstanding anything to the contrary herein or in the APA or in the Cure Notice, Express has not stipulated to the Cure Amounts relating to the Express Agreements.  Express, the Debtors and the Purchaser agree to resolve any and all Cure Amounts and payment disputes relating to the Express Agreements after the assumption and assignment of the Express Agreements. The Purchaser has agreed to assume all of the Debtors' obligations under the Express Agreements, including any and all unpaid obligations arising prior to the assumption and assignment of the Express Agreements.  To the extent Express, the Debtors, and the Purchasers cannot consensually reconcile the Cure Amounts and payment disputes relating to the Express Agreements, parties herein reserve their rights to petition the Court to resolve such disputes and the Court expressly retains such authority.

(xi)  **Prescient Holdings Group, LLC**.  For the avoidance of doubt, and irrespective of the specific content of, and agreements listed in, Schedule 1.1(b) of the APA and/or any Cure Notice served upon Prescient Holdings Group, LLC (collectively, "Prescient"), all contracts, agreements, addenda, amendments, quotations, solutions, purchase orders, project plans, and other instruments related thereto (collectively, the "Prescient Agreements"), existing between Prescient, on the one hand, and one or more of the Debtors, on the other hand, shall be assumed by the Debtors and assigned to the Purchaser in accordance with the APA and this Sale Order effective upon the Closing Date.  Notwithstanding anything to the contrary herein or in the APA or in the Cure Notice, Prescient has not stipulated to the Cure Amounts relating to the Prescient Agreements.  Prescient, the Debtors and the Purchaser agree to resolve any and all Cure Amounts and payment disputes relating to the Prescient Agreements after the assumption and assignment of the Prescient Agreements. The Purchaser has agreed to assume all of the Debtors' obligations under the Prescient Agreements, including any and all unpaid obligations arising prior to the assumption and assignment of the Prescient Agreements.

(xii)  **Cleaver Brooks**.  Notwithstanding any provision in this Sale Order or in the APA to the contrary, the Cure Amount owed to Cleaver Brooks Sales & Service, Inc. ("Cleaver Brooks") shall include all amounts owed through the date of entry of any order assuming or assuming and assigning any executory contract or unexpired lease wherein Cleaver Brooks is a counterparty thereto. The total Cure Amount through August 14, 2020 is $21,933.51. The Debtor and Cleaver Brooks shall work together in good faith to determine any additional Cure Amount accruing from

August 14, 2020 through the date of entry of any order assuming or assuming and assigning any executory contract or unexpired lease wherein Cleaver Brooks is a counterparty thereto and, unless otherwise resolved informally by the Debtors and Cleaver Brooks, a stipulation will be filed under Certification of Counsel setting the final Cure Amount on any executory contract or unexpired that is assumed or assumed and assigned by the Debtors wherein Cleaver Brooks is a counterparty thereto.

(xiii)   **DP West Lake at Conway, LLC**.  Notwithstanding any other provisions of this Sale Order or the APA, this paragraph shall be applicable to DP West Lake At Conway, LLC (the "Office Landlord"), which along with Debtor Akorn, Inc. are parties to that certain Office Lease dated as of December 21, 2006, which has been subsequently amended by that certain First Amendment to Office Lease dated as of February 27, 2018, and as further amended by that certain Second Amendment to Office Lease dated as of October 31, 2018 (collectively, the "DP West Lease"), for property located at 1925 West Field Court, Lake Forest, IL, along with a related Parking Agreement dated October 20, 2014, as subsequently amended by seven different amendments dated December 15, 2014, January 7, 2015, January 12, 2016, February 15, 2016, October 9, 2017, February 27, 2018 and October 31, 2018 (the "Parking Agreement").  The DP West Lease and related Parking Agreement shall be assumed by the Debtors and assigned to the Purchaser in accordance with the APA and this Sale Order effective on the Closing Date.  The Cure Amount is $436.72 and the 2019 CAM Reconciliation credit has been applied to the obligations under the DP West Lease and the Parking Agreement as agreed by the

parties.  The Purchaser will assume all of the obligations of the tenant under the DP West Lease and related Parking Agreement which are accrued but unpaid, which include the year end adjustments for operating expenses due for the entire calendar year of 2020.  The Debtors will continue to pay postpetition obligations under the DP West Lease and the Parking Agreement through the Closing Date. The Debtors, Purchaser, and Office Landlord agree to execute a document in a form acceptable to the Office Landlord in which the Purchaser ratifies the Lease and Parking Agreement and assumes the Lease and Parking Agreement obligations.

(xiv)    **Cenveo Worldwide Limited**.  Notwithstanding anything in this Sale Order and/or the APA related to the Sale and any other associated transaction documents, with respect to the objection of Cenveo Worldwide Limited (f/k/a Cenveo Corporation) ("Cenveo") [Docket No. 555], (i) the Cure Amount for that certain Master Services Agreement dated as of December 18, 2008 (as amended by the first through seventh amendments thereto) and associated Statement of Work dated as of October 10, 2008 (as amended) (collectively, the "Cenveo Contract"), as to which Akorn, Inc. is the current Debtor counterparty, shall be established as $0.00 as of the Petition Date; and (ii) upon assumption of the Cenveo Contract, the Purchaser shall honor all outstanding obligations under the Cenveo Contract and shall pay any outstanding amounts owed under the Cenveo Contract arising from and after the Petition Date in the ordinary course of business, which obligations shall be treated as Assumed Liabilities under the APA.

(xv)    **Leadiant Biosciences, Inc.**  Notwithstanding the foregoing, and for the avoidance of doubt, nothing in this Sale Order shall constitute a waiver or modification of any

rights under any contracts between Leadiant Biosciences, Inc., any of the Debtors, or the Purchaser, including Leadiant's rights with respect to that certain batch of finished product, as referenced in Purchase Order 082120CYS (the "Product"), or be deemed to transfer, restrain, or otherwise modify or affect Leadiant's rights with respect to any of its property in the possession, custody or control of any of the Debtors, including, but not limited to, active pharmaceutical ingredients for production of the Product, stability samples to conduct quality testing of the Product, and/or the four Norlake Scientific Premier freezers held by the Debtors for the storage of the Product, which shall remain property of Leadiant in accordance with the terms of its existing contracts with the Debtors. Notwithstanding anything to the contrary herein or in the APA or in the Cure Notice, Leadiant has not stipulated to the cure amounts for the assumption and assignment of its executory contracts with the Debtors, and all objections to the assumption and assignment of such agreements are preserved pending the continued hearing on the *Objection of Leadiant Biosciences Inc. to Notices to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 563] in this proceeding.

(xvi)   **Exela Pharma Sciences LLC**.  Notwithstanding anything in this Sale Order and/or the APA related to the Sale and any other associated transaction documents, nothing shall permit or otherwise constitute a finding or effect a sale, an assignment or any other transfer at this time of Exela Pharma Sciences LLC's (collectively, "Exela") contracts, agreements, addenda, amendments, quotations, solutions, purchase orders, project plans, and other instruments related thereto (collectively, the "Exela Agreements"), unless and until a further order is entered by this Court, at a

subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Purchaser, and Exela, with the burdens and rights of the parties, including the objections set forth in the *Objection of Exela Pharma Sciences LLC to the Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 564], fully preserved pending entry of such further order.

(xvii) **Simple Science, LLC**.  Notwithstanding anything in this Sale Order and/or the APA related to the Sale and any other associated transaction documents, nothing shall permit or otherwise effect a sale, an assignment or any other transfer at this time of the Development, License, Supply and Commercialization Agreement (the "Simple Science Agreement") as amended, and referred to in the *Simple Science, LLC's Objection to Assumption and Assignment Identified Contracts Between Simple Science, LLC and Various* [Docket No. 515] (the "Simple Science Objection"), unless and until a further order is entered by this Court, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Purchaser and Simple Science, LLC, with the rights of the parties, including the objections set forth in the Simple Science Objection, fully preserved pending entry of such further order.

**Cancellation of Notes, Instruments, Certificates, and Other Documents**.  On the Closing Date: (a) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating the Loan Agreement Indebtedness shall be cancelled and deemed surrendered as to the Debtors, and the Debtors shall not have any continuing obligations

thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating the Loan Agreement Indebtedness shall be fully released, settled, and compromised; *provided, however*, that notwithstanding anything to the contrary contained herein or in any plan of reorganization for the Debtors, any indenture or agreement that governs the rights of the agent under the Loan Agreement Indebtedness (the "Term Loan Agent") shall continue in effect to allow the Term Loan Agent, as applicable, to (i) enforce its rights, claims, and interests (and those of any predecessor or successor thereto) vis-à-vis any parties other than the Debtors, (ii) receive distributions under any plan of reorganization of the Debtors and to distribute them to holders of allowed claims under the Loan Agreement in accordance with the terms of the Loan Documents, (iii) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of allowed claims under the Loan Agreement, including any rights to priority of payment and/or to exercise charging liens, and (iv) appear and be heard in these Chapter 11 Cases or in any proceeding in the Court, including to enforce any obligation owed under the Plan to the Term Loan Agent or holders of allowed claims under the Loan Agreement, as applicable.

28.     **Release of Liens**.  In addition, the Term Loan Agent shall be authorized to execute and deliver all documents reasonably requested by the Debtors to evidence the release of such mortgages, deeds of trust, liens, pledges, and other security interests relating to the Loan

Agreement Indebtedness and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

29. **Payment of Fees and Expenses of Term Loan Agent**. The unpaid reasonable and documented out-of-pocket fees and expenses of the Term Loan Agent and its counsel shall be paid in full, in cash on or before the Closing Date.

30. **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the APA or this Sale Order.

31. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof. Time is of the essence in closing the transactions referenced herein, and the Debtors and Purchaser intend to close the Sale as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

32. **Calculation of Time.** All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006.

33. **Further Assurances**. From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the

APA, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title, and interest in and to the Acquired Assets.

34.    **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to Purchaser in accordance with the APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the APA, (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, (c) protect Purchaser against any Encumbrances or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

**Dated: September 2nd, 2020**
**Wilmington, Delaware**

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE